**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**DONALD R. COCHRAN**
**Plaintiff-Below,**

**Case No. #** ⁻ 0 8 ⁻ 1 0 9 ⁻

**V.**

**THOMAS CARROLL (warden)**
**Defendant-Below,**



FILED

FEB 20 2008

U.S DISTRICT COURT
DISTRICT OF DELAWARE

## APPENDIX TO WRIT OF HABEAS CORPUS MOTION

**This is Appendix to Opening Brief of Writ of Habeas Corpus Motion.**

Dated : 2 - 16 - 08

**Respectfully, Submitted**

*Donald Cochran*

**Donald R. Cochran**
**D.C.C**
**1181 Paddock Road**
**Smyrna, Delaware 19977**

# TABLE OF CONTENTS

Description                                                                    Page No. #

Exhibits to the Memorandum of Habeas Corpus (EX A-45 thru A-85) (Lower Right Corner) ... 1

Motion For Discharge of Delaware Warrants . . . . . . . . . . . . .    42

Delaware Warrant # AB 19879 CFANO . . . . . . . . . . . . . . . .    43

Delaware Warrant # Waiver of Extradition on AB 19879 CFANO . . . . . . . .    44

Indictment (undated) . . . . . . . . . . . . . . . . . . . . . . .    45

T.I.S. Form (Dated 2/3/03) . . . . . . . . . . . . . . . . . . . .    48

Post Conviction Motion and appendix . . . . . . . . . . . . . . .    49

Counsel's Response to Post Conviction Motion . . . . . . . . . .    119

States Response to Post Conviction Motion . . . . . . . . . . . .    121

Response to Counsel and States Response . . . . . . . . . . . . .    137

Commissioner's Report / Recommendation . . . . . . . . . . . . .    180

Court's Order on Post Conviction Motion . . . . . . . . . . . . .    189

Motion for Correction of Illegal Sentence . . . . . . . . . . . .    191

Court Order on Motion of Illegal Sentence . . . . . . . . . . . .    212

Appeal of Post Conviction Motion #49, 2007 . . . . . . . . . . .    243

States Motion to Affirm . . . . . . . . . . . . . . . . . . . . .    244

Request to Respond to Motion to Affirm . . . . . . . . . . . . .    352

Motion to Respond to Motion to Affirm . . . . . . . . . . . . . .    355

Court order on Appeal of Post Conviction Motion #49, 2007 . . .    357

Motion to Appeal Illegal Sentence & Appendix #50, 51 2007 . .    360

States Answering Brief & Appendix . . . . . . . . . . . . . . . .    408

Motion to Answer STATES Answering Brief . . . . . . . . . . . .    491

Court Order of Appeal of Illegal Sentence #50, 51 2007 . . . .    496

States Answer to Direct Appeal . . . . . . . . . . . . . . . . .    499

Recipeit of Air mail of Direct Appeal which proves it was there July 16, 2003. 504

Court Order of Direct Appeal . . . . . . . . . . . . . . . . . .    505

Letter from STATE to the Court . . . . . . . . . . . . . . . . .    508



# IN THE CIRCUIT COURT
# FOR PINELLAS COUNTY, FLORIDA

CASE #     CRCAB19879CFANO

*ㅗㅗ67967*

# WAIVER OF EXTRADITION

I,    DONALD RICHARD COCHRAN    being advised of my rights under the Statutes of Florida of
the issuance and service of a warrant of extradition, and being further advised of my constitutional rights to
obtain a writ of habeas corpus,

And being personally charged with having committed the crime of:
POSS.OF DEADLY WEAPON DURING COMMISSION OF FELONY, ASSAULT, BURGLARY

In the State of    DELAWARE    , I do hereby and without reservation and in view of my legal
rights in extradition proceedings as heretofore explained to me before this Honorable Court, waive any and all
such legal rights and do further by my signature hereto affixed, consent to this Waiver of Extradition and
further consent to be returned to the State of    DELAWARE    , there to stand trial on the charges
alleged.

In further witness of my voluntary and unconditional consent, I do further state that my signature below
affixed was so signed in the presence of this Honorable Court without any threats, promises, duress, or
agreements whatsoever and with full knowledge of my rights as stated above.

Signed in the presence of:

CIRCUIT JUDGE, PINELLAS COUNTY, FLORIDA

Sign this  28th  day of  August

A.D., 2001, at Clearwater, Florida

Witness by: DET. M. Gardner

THE ABOVE NAMED RESPONDENT, HAVING
WAIVED HIS RIGHT OF EXTRADITION, IS
HEREBY REMANDED WITHOUT BOND PENDING
ARRIVAL OF THE DEMANDING STATE.

EX. A- 45

-1-



## IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT OF FLORIDA
### IN AND FOR PINELLAS COUNTY
### CRIMINAL DIVISION

STATE OF FLORIDA

             Plaintiff            Case Number(s)   O1 - 13909CFANO·C

v.

DONALD COCHRAN

aka _____

             Defendant

## CHANGE OF PLEA FORM

1. I, __DONALD COCHRAN__ , Defendant herein, do hereby withdraw my plea of not guilty and enter a plea of (guilty) (nolo contendere no contest) to the charge(s) of __ROBBERY ( STRONG ARM )__ _____ in the above-referenced case(s).

2. I understand that the plea of "not guilty" denies my guilt; a plea of "guilty" admits my guilt; and, a plea of "nolo contendere" or "no contest" means that, while I do not admit guilt, I will not contest the evidence against me. I understand that, if the court accepts my change of plea, I give up (waive) my right to a jury trial, and that I will be sentenced as a felony offender, based upon my plea.

3. I understand the charge(s) which has/have been placed against me and to which I am changing my plea. My lawyer has explained to me the elements of the crime(s), and any defenses I may have as well as the maximum penalty for the crime(s) to which I am pleading guilty or no contest, which is _____.
__15 YRS FSP__

4. I understand that the guideline recommendations (will) (will not) be applied to my sentence.

5. I understand that, depending upon the nature of the offense(s) to which I am changing my plea; and/ or upon the nature of any prior convictions, I may NOT be eligible for certain credits which shorten the length of the sentence imposed. The credits to which I may NOT be entitled include, but are not limited to, control release date (CRD) credits, and/or award(s) of gain time while I am in prison. I further understand that I may serve more time on my sentence than I would if I were not convicted of offense(s) of a nature such as these.

6. I understand that, if the court accepts my plea, I am hereby giving up (waiving) my right to a public jury trial, the right to require the State to prove the charge(s) against me beyond a reasonable doubt, and the right to see and hear the witnesses against me and to have my lawyer question them. I am also waiving the right to employ any defenses which I may have, the right to subpoena and the right to present witnesses, or other evidence, and the right to testify or remain silent, as I choose. I am waiving the right to have a jury decide whether I am guilty or not guilty.

7. I further understand that, by pleading guilty or no contest, I am hereby waiving my right to appeal the facts of the case. My lawyer has explained to me the meaning of an appeal. I further understand that I have thirty (30) days from this date to appeal the court's sentence and that, if I cannot afford to hire a lawyer to represent me for the purposes of an appeal, one will be appointed for me.

8. I do not require the State to tell the court the facts upon which the charge or charges are based before the court accepts my change of plea.

9. I am entering this plea because I believe it is in my best interest to do so, and it is what I wish to do of my own free will. No one has pressured me or forced me to enter this plea against my will. No one has promised me anything to entice me to change my plea to "guilty" or "no contest"; however, there has been an understanding that my sentence will consist of __15.16 M&S FLORIDA__
STATE PRISON ADJUDICATION
SENTENCE TO RUN CONCURRENTLY WITH ANY SENTENCE SERVED IN DELAWARE
AND SENTENCE MAY BE SERVED IN DELAWARE (DEF. AWAITS EXTRADITION)
COSTS & FEES @ LIENS

A-46



Page 2 Change of Plea Form ____ Case Number(s) _____ 01- 1390ۥCAAAۥ0

10. If I am to be placed on probation or community control, I will pay $50.00 per month towards court costs
    in the amount of $ _____ as ordered by this Court commencing with the first day of probation
    or community control until paid in full.

11. I agree to restitution in the amount of $ _____. If the amount of restitution is not decided
    at this time, I hereby waive any right to notice which I may have before such restitution may be imposed.
    I also waive any right to attend any hearing for such purposes.

12. My attorney has reviewed with me all statutory costs being assessed by the Court, including all mandatory
    and discretionary costs. My attorney has further advised me that I have a right to have the amount of each
    discretionary cost and certain mandatory costs individually announced in open court. I hereby waive my
    right to such individual announcement. I agree to pay all fines and costs, including the fines and costs
    checked on the attached sheets.

13. I further agree that there will be lien(s) placed against me and/or my real property for any unpaid fines,
    Public Defenders' fees, costs of prosecution, and court costs.

14. I hereby waive any right I may have to a Pre-Sentence Investigation (PSI), so that I may proceed directly
    to sentencing.

15. If I am not a citizen of the United States of America, I understand that this criminal proceeding could
    cause me to be deported to the country of my origin.

16. If I have ever been convicted of or pled to a sexually violent offense, I understand that I may later be
    subject to a civil commitment proceeding for sexually violent predators.

17. My education consists of ____ years of school. At this time, I am not under the influence of any alcoholic
    beverage, or other drug or medicine, nor am I suffering from any mental or emotional problems which
    affect my understanding of this plea form.

18. I have read every word of this written plea form. All blank spaces have been filled in and there are no
    blank spaces upon my accepting and signing this plea form. I have discussed, with my lawyer, the contents
    of the plea form, and I understand this written plea form fully. My lawyer has answered any questions
    which I have had.

19. I am satisfied with my lawyer's advice and help concerning my decision to change my plea, and in all
    matters pertaining to the above-referenced case(s).

    SWORN TO, SIGNED, AND FILED IN OPEN COURT, in the presence of the presiding judge and defense
    counsel of record, this 28 day of SEPTEMBER _____, 2001 .

                                                        x _____
                                                            Defendant

I hereby certify that I am counsel for the above-named Defendant in the above-referenced case(s), that I have
explained to my client the elements, evidence, defenses, and rights related to the charge(s) against him/ her.
I have further reviewed with my client all statutory fines and costs being assessed against him/her, including
all mandatory and discretionary costs. I believe that my client understands the contents and the meaning of
this plea form, his/her rights, and the consequences of his/her change of plea, and that he/she is entering this plea
freely, voluntarily, and knowingly.

                                                        _____
                                                        Counsel for Defendant

I hereby find that the above-named Defendant did, on this date, freely, voluntarily, and knowingly change
his/her plea in the above-referenced case(s).

                                                        _____
                                                        Presiding Judge

TO: District Attorney General. Office
     55 The Green
     Dover Delaware

FR: Donald R Cochran #166499

RE: Extradiction To Delaware /
     Speedy Trial Request


OCTOBER 4, 2001

Dear D. A. G,

   I have been Advised That I have a detainer Being
Lodge Against me for: Assault, Burglary, Poss. Deady Weapon,
False Imp., Criminal Mis., By Delaware at Kent County.

   This letter is to Request your office to be brought
back to Delaware for the charges I'm Being detained for. I
Also will like to exercise my Right for a Speedy Trial.
would like to be picked up.

                    Thank You
                    Donald Cochran

C:



A-48

EX-3

- 4 -

TO: DISTRICT ATTORNEY General's OFFICE
55 THE GREEN
DOVER DELAWARE

FR: DONALD R. COCHRAN # 166499

RE: 2ND REQUEST EXTRADICTION/
SPEEDY TRIAL REQUEST

DEAR D. A. G.                              JANUARY 1, 2002

THIS is my 2ND LETTER BEING FILED TO YOUR OFFICE
ASKING TO BE BROUGHT BACK TO DELAWARE, FOR TRIAL ON THE
PENDING CHARGES. I AM ONCE AGAIN REQUESTING FOR A
SPEEDY TRIAL. I AM BEING DETAINED AT HARDEE CORRECTION
INSTITUTE IN FLORIDA.

ON OR ABOUT, SEPTEMBER 28, 2001 A JUDGEMENT WAS
ENTERED (UNDER A PLEA AGREEMENT), BY THE SIXTH
JUDICIAL CIRCUIT COURT OF FLORIDA. I ASK THAT THE
ARRANGMENTS BE MADE FOR MY TRANSFER BACK TO DELAWARE.
I WOULD LIKE A SPEEDY TRIAL FOR THE CHARGES PENDING.

THANK YOU
DONALD COCHRON

C:



A-49

EX-4

TO: DISTRICT ATTORNEY General's OFFICE
   55 THE GREEN
   DOVER DELAWARE

FR: DONALD R COCHRAN  # 166499

RE: 3RD REQUEST EXTRADICTION /
    SPEEDY TRIAL REQUEST

DEAR D. A. G.                    MAY 12, 2002

    I AM WRITING A 3RD TIME TO YOUR OFFICE
ADVISING YOU THAT I HAVE BEEN AWAITING TO BE
PICKED UP FOR THE Charges in (Smyrna / Dover) of
THE ASSAULT, I.E. AND NO ONE HAS MADE ANY EFFORT
OF BRINGing ME BACK TO DELAWARE TO STAND TRIAL
FOR THEM

    I REQUEST A SPEEDY TRIAL FOR THE Charges
THAT FACE ME.

                    THANK YOU
                    DONALD Cochran

C:



A-50

- 6 -

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _HARDEE WORK Cp._

CLASSIFICATION

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Dental | ☒ Other |
|---|---|---|---|---|

JUL 25 2002    MRS _____ STATION

| FROM: | Inmate Name Donald Cochran | DC Number 016499 | Quarters B-1-10L | Job Assignment FOOD SERVICE | Date 7-23-02 |
|---|---|---|---|---|---|

**REQUEST**

There a detainer on me from the state of
Delaware. And would to file for Detainer
Interstate Compact. I wrote to The warden
asking for This. It was received on July 2 02
& He said He would forward a copy to sentence
specialist for handling. Haven't heard anything
Back Mr. Vinci said to write to you And ask
you to get the paper work Done Please let
me Know something Back soon. This time
was suppose suppose to Bue concurrent
with any Fine I get sentenced There. Thank you
Donald Cochran

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All
informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                    DATE RECEIVED: _____

I apologize for the delay.

I called Tallahassee to verify your eligibility to file I.A.D
& they Referred me to Dover Delaware.

I Must received a Reply Back from then I will
keep a copy of your Request & will advise you
of the outcome.

The following pertains to informal grievances only:

Based on the above information, your grievance is _____ (Returned, Denied, or Approved). If your informal grievance is denied,
you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.)

| Official (Signature): | Date: 8/8/02 |
|---|---|

Distribution:   White   -Returned to Inmate    Pink   -Retained by official responding, or if the response is to an
                Canary  -Returned to Inmate             informal grievance then forward to be placed in inmate's file.

A-51

DC6-236 (Revised 8-00)



EX-7

```
            SUPERIOR COURT CRIMINAL DOCKET              Page    1
                  ( as of   12/11/2003 )

State of Delaware v.  DONALD R COCHRAN              DOB: 04/21/1961
State's Atty: MARIE O GRAHAM , Esq.         AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.          RICK


Assigned Judge:

Charges:
Count    DUC#        Crim.Action#    Description      Dispo.    Dispo. Date
--------------------------------------------------------------------------
 001    0102010757   IK02010397w    PDWDCF           RPG       02/03/2003
 002    0102010757   IK02010398w    ASSAULT 1ST      RPG       02/03/2003
 003    0102010757   IK02010399w    BURGLARY 1ST     RPG       02/03/2003
 004    0102010757   IK02010400w    UNLAW IMPR 1ST   NOLP      02/03/2003
 005    0102010757   IK02010401w    CRIM MISC <1000  NOLP      02/03/2003
 006    0102010757   IK02010402W    NONC W/CON BOND  NOLP      02/03/2003

       Event
No.    Date         Event                          Judge
--------------------------------------------------------------------------
 1     01/10/2002
       CASE ACCEPTED IN SUPERIOR COURT.
 2     01/10/2002
       CASE CONSOLIDATED WITH 0102015219
 3     01/10/2002
       RULE 9 WARRANT ISSUED.
 4     10/28/2002                              FREUD ANDREA MAYBEE
       RULE 9 WARRANT RETURNED, BAIL SET AT
       SECURED BAIL-HELD              33,000.00 100%
       DEF. WAS ARRAIGNED.
       CCR: 11/12/02 AT 9:00 A.M.
 5     10/28/2002                              FREUD ANDREA MAYBEE
       ARRAIGNMENT CALENDAR - DEFENDANT WAIVED READING; ENTERED PLEA OF NOT
       GUILTY; JURY TRIAL DEMANDED.
       RULE 9 WARRANT RETURNED.
       CCR: 11/12/02 AT 9:00 A.M.
 6     11/12/2002                              VAUGHN JAMES T. JR.
       CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW 12/11, TRIAL 12/16/02
 7     11/25/2002
       SUBPOENA(S) ISSUED.
 8     12/11/2002                              RIDGELY HENRY DUPONT
       FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL & FCR 12/16/02
 9     12/16/2002                              RIDGELY HENRY DUPONT
       TRIAL CALENDAR-CONTINUED 2/3, FCR 1/29/03. DEFENSE REQUEST.
       DEFENSE ATTY. IN TRIAL.
10     01/15/2003
       SUBPOENA(S) ISSUED.
11     01/29/2003                              WITHAM WILLIAM L. JR.
```



A-52

IN THE MATTER OF:
State v. Donald Cochran
Super. Ct. No.:
IK02-01-0397 thru 0399


AFFIDAVIT OF:
Carole Richardson

State of Delaware     )
                      )S.S.:
County of Kent        )


I, Carole Richardson, being duly sworn depose and say:


1. I am the affiant herein and make this affidavit in support of my son Donald Cochran's claims of the ineffective assistance of legal counsel, etc..

2. Acting on behalf of my son Donald I called Joseph M. Bernstein (lawyer) and questioned him about extradition matters and he told me that he had handled over 200 cases of extradition waivers like those of my son's. I told him more about my son's case. He said that he'd look into it and get back with me on it, sayin that it sounded like we had a good chance to beat this.

3. Taking Mr. Bernstein at his word, I hired him and sent him the money to get statrted.

4. Mr. Bernstein spoke with Donald and told him that the motion that Donald's jail friend had done had to have a few things changed, but that he would do it.

5. That's when things started. He failed us as a lawyer. My son asked Mr. Bernstein when he was going to file that motion. I called Mr. Bernstein many times(3 to 5 times a week) to ask him about when he was going to file the motion. He told me soon, but had one excuse after another each time we spoke.

6. On the day of trial he still had not filed the motion; hr told us both that he would file it after trial. He had me so upset that day - telling my son that he had to take a plea, and if he didn't they would burn him for taking up their time, the Court's and the Prosecutor's time - that he was going to get 50 years.

7. Bernstein was going back and forth trying to scare my son into the plea; he even tried to get me to send my son a scarey message to take the plea and told me to tell him that he would get 7 to 9 years if he did, and time for being in Florida.


1

*A-56*





8. I was never so upset. I could feel the pain my son was going through - trusting a lawyer who lied to us and was not following the instructions that we were giving, or the law, and giving us untrue legal advice.

9. Mr. Bernstein took advantage of me and promised that he would file that motion and didn't, That is what I hired him to specifically do for my son - not scare him into a plea bargain.

10. My son asked the judge during the day of trial if Bernstein could file the motion and the judge said that it had to be done before the trial, which means that Bernstein lied to us and violated my son's right to motion to dismiss the case for the State failing to extradite and trial him within 180 days as the law says.

11. These facts are true and correct as I recollect.

Subscribed and sworn to this  $8$  day of  $October$  ,2004.

Notary Public

Carole Richardson

2

$A$-$57$

$-13$

4

1   Mr. Cochran operating under some degree of --

2           MR. BERNSTEIN: Your Honor, the basis for

3   the Robinson plea is this: Mr. Cochran, beyond

4   recalling kicking in the door to the residence, has

5   no recollection of the events that occurred after

6   that. He was in a highly intoxicated state and also

7   had been using drugs that day.

8           There was some -- the reasoning -- there

9   was a reason, a reason he went into the house. The

10  reason he went into the house was he had a long-term

11  relationship with Mrs. Naylor's daughter. He was

12  walking by the residence, saw the daughter's truck

13  parked outside. He wanted to -- some things he

14  wanted to discuss with her. The victim in this case

15  was not -- was a totally unintended victim. She

16  happened to be there.

17          Mr. Cochran had some issues with the

18  victim's daughter, and those are things we will get

19  into more detail about at sentencing, but for

20  present purposes Mr. Cochran does not have a

21  recollection beyond going into the house. To put it

22  in his words, he snapped. We have no reason -- I

23  have looked at the pictures. Mr. Cochran has had an



SHEILA A. DOUGHERTY
Official Court Reporter

A-58

1   opportunity to look at them. I don't believe there

2   really is any dispute that the victim here suffered

3   these injuries, the way she suffered them, and at

4   whose hand. The victim knows Mr. Cochran, has known

5   him for a while. It is not a question of a stranger

6   on stranger here. So we believe there is a factual

7   basis for the plea.

8            THE COURT: Okay.

9            MR. BERNSTEIN: May we continue with the

10  colloquy if the Court will have Mr. Cochran sworn?

11           THE COURT: Before I do that I want to

12  take a one minute recess, and I will be right back.

13           MR. GAREY: I wanted to say it wasn't the

14  victim's daughter, it was a friend of the victim's

15  son.

16           THE COURT: All right. One minute recess.

17  Be right back.

18           (A brief recess was taken.)

19           MR. BERNSTEIN: One correction, Your

20  Honor. I misspoke when I said the dispute that

21  Mr. Cochran had was with Miss Naylor's daughter. It

22  was with her son. I wanted to clear that up. Is

23  that right?



SHEILA A. DOUGHERTY
Official Court Reporter

$A-54$

6

```
1              THE COURT:  All right.  Thank you,

2   Mr. Bernstein.

3              I will ask Mr. Cochran to come forward to

4   the podium and be sworn in.  Any objections to

5   swearing on the Bible, Mr. Cochran?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  All right.  Please swear him.

8                       * * * * *

9                 DONALD R. COCHRAN

10                      * * * * *

11             the defendant herein, being duly sworn,

12             was examined and testified as follows:

13   BY THE COURT:

14      Q.   All right, Mr. Cochran, I have some

15   questions which I need to have answered under oath.

16   That is the purpose of your being sworn in.

17      A.   Yes, sir.

18      Q.   You heard the statements of your attorney,

19   Mr. Bernstein, as well as the statements of the

20   prosecution.  I want to ask you:  Did you hear

21   everything that was said?

22      A.   Yes, sir.

23      Q.   Was everything said true and correct?
```



SHEILA A. DOUGHERTY
Official Court Reporter

A-60

7

1    A.   No, sir.

2    Q.   What I am asking you, everything that the

3    attorneys, that is, Mr. Bernstein stated.

4    A.   He didn't get all the facts right, sir.  I

5    been two years.  This will be -- I am fighting for

6    my life here, and he didn't state some facts right

7    that should be stated right, and the reason why I

8    just didn't go in, and I don't remember what

9    happened to her, but he didn't state all the facts

10   right.

11   Q.   Are you saying that Mr. Bernstein did not

12   state all the facts that you thought he should have

13   stated?

14   A.   Yes, sir.  He was basically right, but he

15   doesn't have the facts right.  It wasn't

16   Mrs. Naylor's daughter, it was the woman I had been

17   seeing for ten years was sleeping around with

18   someone I called a friend, Tom Naylor, and I had

19   been drinking heavy and on drugs, and was going to

20   get more drugs, and they had lied to me.  Tom Naylor

21   had lied to me.  He was a friend and said he didn't

22   know who she was seeing, and I was getting some more

23   drugs and happened to see the truck at her -- his



SHEILA A. DOUGHERTY
Official Court Reporter

A-61

8

1    house, and I snapped from there, and all I remember

2    was kicking the door in. I don't remember the

3    events that happened inside. I had a blackout. And

4    that's the facts.

5        Q.   Okay. Most of what you said seems to me

6    to not be totally contrary to what your attorney

7    stated. Do you -- but do you want a moment to talk

8    with your attorney again?

9        A.   No, sir. He just said that it was the

10   victim's daughter and it wasn't the victim's

11   daughter.

12            THE COURT: That is the only inaccuracy?

13            MR. BERNSTEIN: I just corrected that.

14            THE COURT: I understand, Mr. Bernstein.

15   BY THE COURT:

16       Q.   That was the only inaccuracy that you

17   recall; correct?

18       A.   Yes, sir.

19       Q.   Did not Mr. Bernstein make a correction to

20   that?

21       A.   She said it was his son -- he said it was

22   her son, but it was the woman I had been seeing,

23   about ten years, and Mrs. Naylor's son.



SHEILA A. DOUGHERTY
Official Court Reporter

A-62

-18-

12

1    Court, but who pleads guilty before trial. You

2    waive these rights. Do you understand that?

3         A.   Yes.

4         Q.   Okay. These rights are outlined for you

5    in paragraphs one through seven. Do you see that?

6         A.   Yes.

7         Q.   On the form?

8         A.   Yes, sir.

9         Q.   Okay. Is it your intention to waive these

10   rights by pleading guilty right now?

11        A.   Yes, sir.

12        Q.   Okay. And did you fill out the rest of

13   the form correctly?

14        A.   Yes, sir, we did.

15        Q.   Okay. Now, this form, as I mentioned

16   before -- we will get it straight now -- indicates

17   you will be pleading no contest or under State

18   versus Robinson to one count of burglary in the

19   first degree, which carries a maximum statutory

20   penalty of up to 20 years, plus a fine of up to

21   $2,300.

22             THE COURT:  I think -- isn't that at the

23   discretion of the Court, Mr. Garey? Isn't the fine



13

1   at the discretion of the Court?

2          MR. GAREY:  Yes, Your Honor.

3          MR. BERNSTEIN:  I believe so.

4   BY THE COURT:

5   Q.   Under burglary first.  Okay.  Then under

6   assault first we have a potential maximum penalty to

7   you of up to ten years imprisonment, and a fine at

8   the discretion of the Court, as well as a 20-year

9   potential incarceration for possession of a deadly

10  weapon during the commission of a felony.  So

11  altogether when you add up the total maximum

12  penalties you are facing, you are facing a potential

13  incarceration of up to 50 years in jail at Level 5,

14  plus fines determined at the discretion of the Court

15  according to law.  Do you understand that?

16  A.   Yes.

17  Q.   Okay.  Do you also understand because of

18  the nature of the offenses that you are going to be

19  entering this plea today, that you are also facing a

20  minimum mandatory penalty of up to four years

21  imprisonment.  Do you understand that?

22  A.   Yes, sir.

23  Q.   Okay.  Having said all that, and despite



SHEILA A. DOUGHERTY
Official Court Reporter

$A$-64

14

1   that, is it your intention to plead guilty today?

2        A.    Yes.

3        Q.    Pursuant to the Robinson plea?

4        A.    Yes, sir.

5        Q.    A Robinson plea; is that correct?

6        A.    Yes.

7        Q.    Has anyone forced or threatened you to

8   enter this plea today?

9        A.    Yes.  No, sir.

10       Q.    Are you in fact for purposes -- let me

11  explain something to you.  I should have explained

12  this to you earlier.  When I asked you whether you

13  were going to plead guilty, I am saying that because

14  for purposes of the plea colloquy that we are going

15  to treat this plea just as if you are pleading

16  guilty, where all the elements of the crime are

17  being admitted, even though you are going to be

18  pleading no contest or a plea pursuant to State

19  versus Robinson.  Do you understand that?

20       A.    Yes.

21       Q.    Okay.  And when I say "guilty," that is

22  what I am referring to.

23       A.    Yes, sir.



SHEILA A. DOUGHERTY
Official Court Reporter

A-65

15

1     Q.    Okay.  All right.  So no one has forced or

2   threatened you to enter this plea today; is that

3   correct?

4         A.    No, sir.

5         Q.    Are you in fact guilty of this plea?

6         A.    Yes.

7         Q.    I am sorry.  These crimes?

8         A.    Yes.

9         Q.    Turning next to the Truth in Sentencing

10  Guilty Plea Form -- I am sorry.  We just went over

11  that, but I did not ask you this.  Did you sign this

12  form in your own handwriting?

13        A.    Yes, sir.

14        Q.    Okay.  Now, referring to the plea

15  agreement, the plea agreement which has been

16  reviewed by counsel today, and discussed with you as

17  well, does this plea agreement reflect everything

18  that you have agreed to do?

19        A.    Yes.

20        Q.    Did you sign the form?

21        A.    Yes.

22        Q.    Thank you.  Have you had enough time to

23  talk to your attorney about this?



SHEILA A. DOUGHERTY
Official Court Reporter

A-66

-22-

16

1      A.   Yes.

2         Q.   Thank you.  Do you believe your attorney

3    has fully advised you of your rights pertaining to

4    your plea?

5      A.   Yes.

6         Q.   And has he otherwise represented you in

7    this case to your satisfaction?

8      A.   Yes.

9         Q.   Thank you.

10             THE COURT:  All right.  Mr. Bernstein, is

11   there any reason why the Court should not accept

12   this plea?

13             MR. BERNSTEIN:  No.  There are a couple

14   other things I wanted to put on the record.

15             One of the things that I looked into when

16   I got into this case was potential speedy trial

17   claim on Mr. Cochran's part because of the fact that

18   he was brought back on a detainer from Florida.  I

19   looked into that and in fact had prepared a written

20   motion for -- on speedy trial grounds, had this case

21   gone to trial.  For the record, I am just going to

22   file that motion with the Court.

23             I explained to Mr. Cochran that because he



SHEILA A. DOUGHERTY
Official Court Reporter

  A-67

-23-

1   is entering a guilty plea he will not be able to

2   raise that in the future or now. I also told

3   Mr. Cochran that, and Mr. Cochran has given this

4   matter quite a bit of thought. These are very

5   serious charges obviously. And I explained to

6   Mr. Cochran that once the Court accepts this plea he

7   can't come back tomorrow and say, "I want to take it

8   back."

9           As I said, I say that because I know

10  Mr. Cochran has given this matter a lot of thought

11  and he ultimately decided that this plea was in his

12  best interest in the long run, and that is why he is

13  standing here today, but I want to make sure that

14  those things, the fact that there was a potential

15  speedy trial motion, he is aware of that, and he

16  knows he is giving that up as part of this plea

17  agreement, and it is on the record, and he

18  understands that.

19          THE COURT: All right. Thank you,

20  Mr. Bernstein.

21          Mr. Bernstein is quite accurate,

22  Mr. Cochran. If that motion is going to be filed,

23  and you may file the motion if you wish, but despite



SHEILA A. DOUGHERTY
Official Court Reporter

A-68

- 24 -

18

1    that if you are going to enter your plea today, and
2    the Court is going to treat your plea as a guilty
3    plea, which it can do so under the law, you are
4    going to make that matter moot and that matter will
5    not be successful at this point and because you are
6    facing some pretty serious time because of these
7    charges.  Do you have something else you want to
8    say?

9             THE DEFENDANT:  No.  I just wanted to
10   question, if I would have filed that speedy trial
11   motion, the violation of due process, would you have
12   had that heard before I went to court, or what?
13   They said I would have went to trial today
14   regardless if I had filed that, and there was some
15   issue with it because the State of Delaware knew
16   where I was, and they -- a judge in Florida told me
17   they was coming to get me, and I tried everything to
18   get up here.  But Mr. Garey wants to give me a lot
19   of time, and they knew I was there and had a plea
20   agreement to be extradited here, and you know, I
21   just -- he said if I didn't take the plea today,
22   that the motion for the speedy trial would be heard
23   after the trial, and I don't know, I just wanted



19

1 │ that on the record.

2 │     I don't know why he wanted to put that on

3 │ the record if it didn't mean anything, so but I took

4 │ the plea.  I just would like that question answered

5 │ in front.  I have had a judge tell me some things

6 │ that the prosecutors and attorneys have told me

7 │ different, so I don't know, you know, what is up.  I

8 │ am fighting for my life on this motion, on this

9 │ matter.

10 │     MR. BERNSTEIN:  Your Honor, the reason I

11 │ mentioned that is because there is an argument that

12 │ can be made that -- however, taking all things into

13 │ consideration, Mr. Cochran decided to enter this

14 │ plea.  I simply wanted to put on the record so

15 │ Mr. Cochran understands that there is no question at

16 │ all that by pleading guilty he won't be able to

17 │ pursue that, at least with respect to these charges.

18 │     THE COURT:  Has a speedy trial motion been

19 │ filed yet?

20 │     MR. BERNSTEIN:  It has not been filed.  It

21 │ is in my folder.

22 │     THE COURT:  All right.

23 │     MR. BERNSTEIN:  I am just going to file it



SHEILA A. DOUGHERTY
Official Court Reporter

A-70

-26-

20

1    as a matter of record.

2            THE COURT:  All right.  I understand.

3            I will say this to Mr. Cochran.  Had this

4    motion been filed prior to this plea being taken,

5    and of course it should be filed prior to this

6    matter being set, being present for trial, prior to

7    the trial date, excuse me, and the trial date was

8    scheduled for today.

9            MR. BERNSTEIN:  I didn't have all the

10   paperwork to back it up.

11           THE COURT:  I understand.  All I am

12   saying, I am only reciting all this, because if it

13   had been filed the Court would have had to decide it

14   first before it accepted your plea.  However, you

15   have chosen at this point to enter the plea the way

16   you did.

17           THE DEFENDANT:  Yes, sir.  The reason for

18   that is because I was told that the motion would

19   have been filed and I would have went to trial

20   today, and I wouldn't have had the motion heard, and

21   I asked him about it being heard before they took me

22   to trial, and he said I would go to trial today.

23           I believe that there was some -- now he is



SHEILA A. DOUGHERTY              A-71
Official Court Reporter

-27-

1   saying that there was some argument that could be
2   brought about the violation of a due process, and I
3   was -- all I wanted was just to be fair with this
4   all, you know, and now they are bringing this up and
5   if he had told me that I might have -- I had nothing
6   to lose to have the motion heard for the speedy
7   trial because it violated my 6th Amendment right,
8   and the charges should be dropped under that. And I
9   had no, you know, they said if I didn't take, if I
10  didn't -- if I put the motion in for the speedy
11  trial argument that I would have to go to trial
12  today.

13          And now you are saying that that is not
14  true, so I don't know. I am not a lawyer. I been
15  trying for two years to get this taken care of, sir,
16  and I just want the fairest and the right way, you
17  know, where I have a 6th Amendment right that was
18  violated, and now he wants to put that on the
19  record, that just shows that there might have been
20  something that could have been done about it.
21          MR. BERNSTEIN: Your Honor, just to
22  clarify, I told Mr. Cochran that his motion would be
23  heard on the merits before the trial. However, he




SHEILA A. DOUGHERTY          A-72
Official Court Reporter

$-28$

1    could not plead guilty and have the motion heard.

2              THE DEFENDANT:   I wasn't going to do that.

3    I was going to see what happened with the speedy

4    trial motion and then see.

5              MR. BERNSTEIN:   There wouldn't be any plea

6    agreement; is that correct, Mr. Garey?

7              MR. GAREY:   That's correct, Your Honor.

8              THE COURT:   That makes sense, obviously.

9    If you had a pending motion for dismissal because of

10   the violation of what you view to be a violation of

11   your Constitutional rights from the fact that you

12   did not have a speedy trial, that would have had to

13   have been decided first before the Court could

14   accept a plea; but it was not filed, so the Court

15   could accept the plea.

16             Now, if you want to think about that for a

17   moment I will give you a chance to talk with your

18   attorney, but I assume you weighed all the pros and

19   cons of doing this and not doing that -- hear me out

20   at this time -- and that is why you are proposing

21   the plea which the Court is prepared to accept at

22   this time.   But if it is your intention to move

23   forward with your motion for speedy trial, then I


SHEILA A. DOUGHERTY
Official Court Reporter

A-73

-29-

23

1   will not accept this plea.  You have to make up your

2   mind what you want to do.

3        THE DEFENDANT:  Right.  Well, I think I am

4   entitled to an answer.  If the motion is heard for

5   the speedy trial first, before I go to trial, and

6   then you decide on that, it is either dismissed or

7   not dismissed, and then you proceed to a trial, or

8   is there a plea?

9        MR. GAREY:  Your Honor, I have something

10  to say.

11       MR. BERNSTEIN:  I gave this to Mr. Garey

12  Friday.

13       THE DEFENDANT:  I am saying apparently

14  there is some argument to it.

15       MR. GAREY:  The State is prepared to

16  extend the plea that we extended to Mr. Cochran.

17  However, if the plea is not accepted, and we hear

18  motions, there will not be a plea agreement.  We

19  will be going to trial.  There is no Constitutional

20  right to a plea by solution.  So that is --

21       THE COURT:  And you will be going to trial

22  on all charges; correct?

23       MR. GAREY:  That is correct.



SHEILA A. DOUGHERTY
Official Court Reporter

A-74

24

1            THE COURT:  Okay.

2            THE DEFENDANT:  Well, just go ahead with

3    this.

4            THE COURT:  Do you want to take a moment

5    to talk to your attorney?  I can break.

6            THE DEFENDANT:  No.  It is all right.  I

7    will take -- I will take the Robinson.

8            THE COURT:  All right.  So you are

9    prepared to go forward?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Okay.  All right.  So you have

12   had enough time to talk with your attorney; is that

13   correct?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  And Mr. Bernstein has

16   stood up and made that presentation.

17           Other than that, Mr. Bernstein, is there

18   any other reason why this Court should not go

19   forward with the plea?

20           MR. BERNSTEIN:  No.  I just wanted to make

21   sure the Court was aware of those facts and that

22   Mr. Cochran was aware that he had a right to pursue

23   one or the other, but not both.

SHEILA A. DOUGHERTY
Official Court Reporter

A-75

21

25

1                THE COURT:  Okay.  I think we pretty much

2      fleshed that out and made that pretty clear, is my

3      understanding.

4                Mr. Cochran does understand that; correct?

5                THE DEFENDANT:  Yes, sir. ·

6                THE COURT:  Okay.  Thank you, Mr. Cochran.

7      Thank you, Mr. Bernstein.

8                Just a minute.  We are not quite done yet.

9                Mr. Garey, is there any other reason why

10     you see -- a reason why this Court should not accept

11     this plea?

12               MR. GAREY:  No, Your Honor.

13               THE COURT:  Okay.  All right.  The Court,

14     having heard the presentations by the attorneys and

15     having gone through the plea colloquy with the

16     defendant, and having taken some time to explain

17     both the nature of what the Robinson plea is all

18     about and having explained that to him, the Court is

19     satisfied that there is sufficient proof to

20     establish that the prosecution could present a prima

21     facie case before the Court, and there is a basis in

22     fact for the plea, and there is also a basis for

23     Mr. Cochran to enter the Robinson plea as well.



SHEILA A. DOUGHERTY          $A - 76$
Official Court Reporter

-32-

26

1           Therefore, the Court will accept the plea

2    as submitted, and in accordance with the

3    recommendation submitted to the Court by counsel I

4    will order a presentence investigation be conducted

5    by our ISO office at this time.        :

6           What date are we going to have for the

7    sentencing?

8           THE CLERK:   April 17.

9           THE COURT:   April 17.   Now, let me also

10   just take a moment to explain, Mr. Cochran, what the

11   sentencing will be all about.

12          THE DEFENDANT:   Yes, sir.

13          THE COURT:   At that time your attorney,

14   Mr. Bernstein, may appear on your behalf, and so the

15   State through Mr. Garey.   I will receive from a

16   presentence officer, who is an officer of this

17   Court, he will conduct an investigation about who

18   you are, your background.   He will explain what he

19   finds about the nature of the offenses for which you

20   are pleading, entering your plea about, and he will

21   also solicit information from any victims about

22   restitution potentially, and also you will have an

23   opportunity, if you wish, to submit any letters of



27

1    recommendation or any letters of mitigation you want

2    to submit through your attorney, and I will have

3    that in a package.  That report will be submitted to

4    me, and it will make a recommendation to me.  Your

5    attorney will be allowed to see it.  He will not be

6    allowed to see what is specifically being

7    recommended for me to sentence you to.

8            Now, I may choose not to accept that

9    report.  I will also hear from both your attorney

10   and the State at a sentencing hearing, and you will

11   be allowed to also talk to me as well, and have

12   anybody present as well, and at that time I will

13   then make a determination of what your sentence

14   ought to be.  Okay?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  What is the date?

17           THE CLERK:  April 17.

18           THE COURT:  April 17.  Okay.

19           MR. BERNSTEIN:  Do we have a time frame?

20           THE COURT:  Usually nine o'clock.

21           MR. BERNSTEIN:  All right.

22           THE COURT:  I am sure, Mr. Bernstein, if

23   you are going to be a little delayed, just let us



SHEILA A. DOUGHERTY
Official Court Reporter

A-78

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

**DELAWARE PSYCHIATRIC CENTER,**
a Facility of and for and on behalf of, the
Division of Alcoholism, Drug Abuse and
Mental Health, Department of Health and
Social Services, State of Delaware,
                                    **Petitioner**

v.

**DONALD COCHRAN**

                    **Respondent**

CONFIDENTIAL INFORMATION
For professional use by authorized
persons only -- not to be duplicated
or released to others.

### AFFIDAVIT

I, <u>Jiro R. Shimono, ACSW,</u> first duly sworn in accordance with law declares
as follows:

1. I am the <u>Director</u> of the Delaware Psychiatric Center, the Petitioner
in the above captioned matter; and

2. The facts alleged in the foregoing Complaint are true and correct to
the best of my knowledge and belief.

_____
**HOSPITAL OFFICIAL**

SWORN TO AND SUBSCRIBED before me this 14th day of <u>June</u>, 1999.

_____
**NOTARY PUBLIC**

My Commission expires on __10/19/01__ .

A-74

-35-

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a Facility of :
and for and on behalf of, the Division of                :     C.A. No.
Alcoholism, Drug Abuse and Mental Health, the     :
Department of Health and Social Services,             :
State of Delaware,                                                    :
                                        Petitioner,              :
                                                                        :
        v.                                                            :
                                                                        :
DONALD COCHRAN,                                             :
                                        Respondent.          :

### COMPLAINT

1.      Respondent was provisionally admitted as an involuntary mental patient in the said Hospital upon the certificate of a Psychiatrist.  *See attached for date of admission.*

2.      Respondent was examined by the Hospital's examining Psychiatrist and certified by him/her to be a mentally ill person in need of observation and treatment in a mental hospital.  *See attached for date of examination.*

3.      Petitioner reasonably and in good faith believes that respondent is a mentally ill person and should be continued as a patient in said Hospital pursuant to 16 Del. C. Chapter 50.

4.      Attached is the Certificate for Involuntary Admission, incorporating all the pertinent information needed to comply with 16 Del. C. Chapter 50.

5.      Respondent has been advised of his/her rights under 16 Del. C. Chapter 50.

WHEREFORE, Petitioner prays that the Court enters an Order scheduling a hearing on this issue of whether or not the Respondent's confinement is based upon probable cause, and such further Orders as shall be deemed right and proper by the Court.

June 14, 1999
Date

Kathryn L. Bunyille, Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Petitioner

$A - 8^0$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a    :
Facility of and for and on behalf of,    :
The Division of Alcoholism, Drug Abuse and    :
Mental Health, the Department of Health and    :
Social Services, State of Delaware,    :     C.A. No.
                     :
           Petitioner,    :
                     :
    v.                    :
                     :
DONALD COCHRAN,           :
              Respondent.    :

### NOTICE OF HEARING

      You, the respondent, are to appear before the Superior Court on **Wednesday JUNE 23, 1999 at 8:30 a.m.** for a Mental Hearing. Please report to the Delaware Psychiatric Center Jane E. Mitchell Building, 1901 N. DuPont Highway, New Castle, DE 19720, for this hearing. If you have any questions, please talk to your Court appointed attorney who will contact you during the week prior to the above-scheduled hearing. Your spouse, other nearest relative or person of close relationship will also receive a copy of this notice.

Kathryn Brunell                  June 14, 1999
DEPUTY ATTORNEY GENERAL         DATE



*A-81*

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a Facility of :
and for and on behalf of, the Division of                  :
Alcoholism, Drug Abuse and Mental Health, the       :
Department of Health and Social Services, State        :       C.A. No.
of Delaware,                                                            :
                                                                              :
            Petitioner                             :
                                                                              :
      v.                                                         :
                                                                              :
DONALD COCHRAN,                                               :
                                                                              :
            Respondent                         :

CONFIDENTIAL INFORMATION
For professional use by authorized
persons only -- not to be duplicated
or released to others.

### ORDER SETTING DATE FOR PROBABLE CAUSE HEARING

AND NOW, TO-WIT, this      day of              , 1999, the Petition in this

cause having been presented to the Court and maturely considered, it is hereby

ORDERED THAT:

1.    A hearing to determine whether probable cause exists for Respondent's confinement as a

patient at the Delaware Psychiatric Center shall be held on the **23RD Day of JUNE, 1999** at 8:30 in the

forenoon;

2.    Unless notice of this hearing, and copies of the Petition and of this Order as proposed,

have already been supplied to Respondent, Respondent's Counsel and the spouse, nearest relative or other

person in close relationship who would best represent the Respondent's interest, Counsel for Petitioner

shall supply such notice and copies of the Petition and this Order to each of them no later than the third

day before the date of the hearing;

3. Martin C. Meltzer, Esquire  is appointed as attorney to represent the Respondent in the

probable cause hearing and in any other hearings scheduled by the Court in the above-captioned case.

                                                   JUDGE

$A$-82

DISCHARGE SUMMARY                                    PAGE 4
COCHRAN, DONALD
HOSPITAL #45012

RELEASE NOTE AND AFTERCARE PLAN: Patient was discharged direct to 27
Tilbert Circle, Dover, Delaware; 424-1164. He was referred to probation on 6/21/99;
contact person is Dave Benson. He was also referred to Pathways on 6/20/99.
Anticipated problems are that patient may return to using alcohol or drugs, may encounter
legal difficulties and may encounter family problems.

Reviewed by:

_Nishita Mehta, M.D._

David Springer, M.D.

CONFIDENTIAL INFORMATION
for professional use by authorized
persons only - - not to be duplicated
or released to others

Dict. 06/18/99
Typed 06/30/99
NM/gaf



A-83

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE,

    v.

DONALD COCHRAN,
    Defendant.

Crim. A. No.  IK02-01-0397 thru 0399

ID. No.

## AFFIDAVIT OF DONALD COCHRAN

I, Donald Cochran, swear that the facts contained in this affidavit are true and correct as I believe them to be, and support my claims of the ineffective assistance of counsel and other violations of the Constitutions.

1. After my arrival to the Delaware Correctional Center October 24, 2002 my Mother, Mrs. Carole Richardson, talked with Attorney Joseph Berstein about my case here. She hired Mr. Berstein based on his telling her that he was an expert on extradition issues and the best of trial lawyers.

2. Mr. Berstein came to the Delaware Correctional Center to talk with me approximately November, 2002. We talked about my case and what he could do for me based upon the pretrial motion to dismiss because of violations of my Speedy Trial rights.

3. On the visit(above mentioned) Mr. Berstein took a Motion to Dismiss from me, which some inmate at the Law Library helped me do. I do not have legal skills and have to rely on the other inmates to help do my legal work for me. Left to my own abilities I am not able to draft motions, etc.. After talking with the different guys in the law library they feel that I had some violations done to me in my case by the prosecutor and defense lawyer, Mr. Berstein[Mr. Bernstein].

4. Mr. Bernstein drafted his own motion from the facts he took from the motion the inmate did for me. I talked with him at the Kent County Courthouse at a case review where he showed me his motion in rough draft. He also told me that he hadn't been able to talk with the prosecutor, John Garey, but that he would make Mr. Garey sweat when he shows him the mtion to dismiss for failure to indict in a timely manner, failure to extradict timely, and failure to bring me to trial within a year.

A-84

- 40 -

5. Mr. Bernstein then went on to say that there had been no plea offer made but that in his 20 years of practicing law he believed that I would receive no more than 7 to 9 years. he assured me that he would mail the motion off so it would be filed before my trial date, which was in February of 2003.

6. I again talked with Mr. Bernstaein on the date trial had been scheduled and he said he wanted me to plead guilty in open plea to three of the five charges. I asked him about filing the motion to dismiss and he said that he wasn't going to file it because if he did and we lost trial I would get 50 years.

7. I told him that I did not want to plead guilty but wanted the motion filed. He left, came back, and told me that he could get me a Robinson Plea and credit for the time I served in Florida waiting to be extradicted to Delaware, I told him that I was not interested and wanted him to file the motion. He said it was the wrong thing to do, that I would be wasting the Court's time. We kept arguing about filing the motion; he refused and said that even if we filed it that day it would not be heard until after the trial – that they were up stairs picking the jury as we spoke.

8. The Corrections Officers came in the room and said they were waiting for us to come upstairs. He asked them to give him a few minutes, and pulled out the plea agreement offer and said they were not offering more than 18 years on a Robinson Plea and that he'd get me 7 to 9 with the rest on probation.

9. So I caved in and signed the plea against my better judgment. After the judge accepted the State's plea Mr. Bernstein stood up and said that for the record he wanted to file the motion for dismissal. That is when I started questioning the court about it. He talked me out of filing it when he knew it had merit.

10. The rest is in the transcripts. I didn't want to take a plea but felt that I had no choice sine[since] my lawyer wasn't acting in my best interest.

11. The facts are true and correct as I believe and remember.

Subscribed and sworn to this 28 day of September, 2004.

_____
Notary Public

_____
Donald Cochran

A-85

2

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA IN AND FOR PINELLAS COUNTY

CRC AB19878CFANO-J
CRC AB19879CFANO
CRC AB19880CFANO

STATE OF FLORIDA

VS.

FUGITIVE

DONALD R COCHRAN
SPN: 02267967

## MOTION FOR DISCHARGE

The State of Florida, by and through the undersigned Assistant State Attorney, moves this Honorable Court to discharge the Defendant as to the above-captioned cause and as grounds therefore would show:

The subject has been released to Florida Department of Corrections.

Done in Clearwater, Pinellas County, Florida, this *22N8*day of JANUARY 2002.

BERNIE McCABE, STATE ATTONEY
Sixth Judicial Circuit of Florida

By: _____
Assistant State Attoney

## Order

The foregoing cause coming on to be heard upon the State's Motion for Discharge, and the same having been duly considered by the Court, it is
ORDERED AND ADJUDGED that the said Defendant is hereby discharged as to the above-captioned cause.
DONE AND ORDERED in Clearwater, Pinellas County Florida, this _____ day of JANUARY, 2002.

(b)

_____
CIRCUIT COURT JUDGE

ony □  Misdemeanor □   Combined or consolidated warrant   Report No.   Court Case No.

arge: ASSAULT / BURG / IMP / CRIMIS

DOB **01 - 54369**   AB **19879** CF ANO

'endant's Name (Last, First, Middle)  **COCHRAN, DONALD R**   DOB **4/21/61**

Sex **M**  Race **W**  Ht. **600**  Wt. **200**  Hair **BRO**  Eyes **BLU**  Skin **MED**

ss **CRAWFORD, RICK A**   Driver's License No.

State —— Scars, Tattoos, Unique Physical Features **INDAR - RIHT ARM**

:al Address (Street, City, State)   Zip Code   Telephone   Place of Birth **DEL**  Citizenship **US**

rmanent Address (Street, City, State)  **TRANSIENT**   Zip Code   Telephone   Employed by/School **UNEMP**

apon Seized  :□  No □   Type   Indication of  Drug Influence □ Ø □   Y N UNK-   Indication of Mental Y N UNK  Health Issues  □ Ø □   Indication of  Alcohol Influence  Y N UNK  □ Ø □

Defendant's Name (Last, First, Middle)  **N/A**   DOB   Sex   Race   In Custody  Yes □  No □  Felony □  Misd. □

Defendant's Name (Last, First, Middle)  **N/A**   DOB   Sex   Race   In Custody  Yes □  No □  Felony □  Misd. □

: undersigned swears that he has reasonable grounds to believe that the above named defendant on the **23** day of **AUG**, **2001**, approximately **1011** a.m./p.m. at **CENTRAL AV / BCH DR**, in Pinellas County did:

**HAVE A WARRANT OUT OF SMYRNA PD, DELAWARE**

**FOR ASSAULT, BURGLARY, POSS WEAPON, FALSE IMP, CRIMIS**

**ISSUEP ON 2/13/01**

**$801000125**

**NO BOND**

ner traffic citations   Contrary to Florida Statute/Ordinance **901.32**

REST DATE **8/23/01**   Time **1011**  a.m. p.m. Aggravating/Mitigating Factors **NONE**

oking Officer **3240**   Amount of Bond **NONE**   Bond Out Date   Time   a.m. p.m.

:m Notified of Advisory  Y  **N**   Injuries to Victim  Y  **N**   Medical-Treatment to Victim  Y  **N**

ild abuse/neglect referral made to DCF   Y  **N**

REQUEST FOR INVESTIGATIVE COSTS.

suant to F.S. 92.525 and under penalties of perjury, I declare that I have read the foregoing ument and that the facts stated in it are true.

| DATE | OFFICER | HOURS | X | PAY RATE | OR | COST |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

:larant   Agency **1646469**   **SPPD**

OTHER - Describe

Continuation sheet  Y  N

ited Name  **M. KOVACSEV**   SPN   TOTAL  $

**NOTICE TO APPEAR ONLY**

IISDEMEANOR - You MUST appear at the Criminal Justice Center, Courtroom 17, Third Floor, 14250 49th Street North, Clearwater, Florida, on the _____ day of _____, _____ , at _____ a.m. p.m.

'RDINANCE VIOLATION - You MUST comply with EITHER A or B:
. Comply with the Waiver Information on the reverse side of this form and pay a fine in the amount of $ _____ for a Category _____ offense within twenty (20) calendar days of this Notice.

. Appear at the Criminal Justice Center, 14250 49th Street, Courtroom 17, Third Floor, Clearwater, Florida, on the _____ day of _____, _____ , at _____ a.m. p.m.

ON-CRIMINAL VIOLATION - You MUST pay a fine in the amount of $ _____ within ten (10) calendar days, or comply with the non-criminal violation formation on the bottom of the reverse side of this form.

REE TO APPEAR AT THE TIME AND PLACE DESIGNATED ABOVE TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT JLD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, OR PAY THE FINE REQUIRED BY THE DATES SET OUT ON FORM, THAT I MAY BE HELD IN CONTEMPT OF COURT AND THAT A WARRANT FOR MY ARREST WILL BE ISSUED. I HEREBY CERTIFY BY MY SIGNATURE THE OW LISTED ADDRESS IS MY CORRECT ADDRESS.

Defendant's Signature   (Street, City, State, Zip Code)   Date of Receipt of Notice

Copies to:  White  - Court   Green  - Jail   Goldenrod  - Defendant

9 (Revised 11/99)   Blue- State Attorney   Pink - Police Dept.   WD2/CoCr1-2/(59A,b,c,d)12/21/99

-43-

# IN THE CIRCUIT COURT
# FOR PINELLAS COUNTY, FLORIDA

CASE #    CRCAB19879CFANO
$\quad\quad\quad\quad\quad\quad\quad$ 2267967

# WAIVER OF EXTRADITION

I,    DONALD RICHARD COCHRAN    being advised of my rights under the Statutes of Florida of the issuance and service of a warrant of extradition, and being further advised of my constitutional rights to obtain a writ of habeas corpus,

And being personally charged with having committed the crime of:
POSS. OF DEADLY WEAPON DURING COMMISSION OF FELONY, ASSAULT, BURGLARY

In the State of    DELAWARE    , I do hereby and without reservation and in view of my legal rights in extradition proceedings as heretofore explained to me before this Honorable Court, waive any and all such legal rights and do further by my signature hereto affixed, consent to this Waiver of Extradition and further consent to be returned to the State of    DELAWARE    , there to stand trial on the charges alleged.

In further witness of my voluntary and unconditional consent, I do further state that my signature below affixed was so signed in the presence of this Honorable Court without any threats, promises, duress, or agreements whatsoever and with full knowledge of my rights as stated above.

Signed in the presence of:

CIRCUIT JUDGE, PINELLAS COUNTY, FLORIDA

Sign this 28th day of AUGUST

A.D., 2001, at Clearwater, Florida

Witness by: DET. M. Gardner

THE ABOVE NAMED RESPONDENT, HAVING
WAIVED HIS RIGHT OF EXTRADITION, IS
HEREBY REMANDED WITHOUT BOND PENDING
ARRIVAL OF THE DEMANDING STATE.

- 44 -

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| THE STATE OF DELAWARE | : | ID NO 0102010757/0102015219 |
| vs. | : | INDICTMENT BY THE |
| DONALD R. COCHRAN | : | GRAND JURY |

The Grand Jury charges DONALD R. COCHRAN with the following offenses:

<u>COUNT 1</u>                        T K-02-01-0399

BURGLARY IN THE FIRST DEGREE, a felony, in violation of Title 11, Section 826 of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the County of Kent, State of Delaware, did knowingly enter or remain unlawfully in the dwelling of Mary Naylor located at 18 E. Commerce Street, Smyrna, Delaware, with the intent to commit the crime of Assault First Degree therein and while in said dwelling did cause physical injury to said Mary Naylor, who was not a participant in the crime by striking her several times with hr fist and a bottle.

COUNT 2                        T K-02-01-0398

ASSAULT IN THE FIRST DEGREE, a felony, in violation of Title 11, Section 613 of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the County of Kent, State of Delaware, did intentionally cause serious physical injury to Mary Naylor by striking her in the face with a bottle, a deadly weapon.





COUNT 3                               ⊤K-02-01-0397

POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A

FELONY, a felony, in violation of Tittle 11, Section 1447 of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the

County of Kent, State of Delaware, did knowingly and unlawfully possess a deadly

weapon during the commission of a felony, by possessing a bottle, a deadly weapon,

during the commission of Assault in the First Degree.

COUNT 4                               ⊤K-02-01-0400

UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE, a felony, in violation of

Title 11, Section 782 of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the

County of Kent, State of Delaware, did knowingly and unlawfully restrain Mary Naylor

under circumstances which exposed her to the risk of serious physical injury.

COUNT 5                               ⊤K-02-01-0401

CRIMINAL MISCHIEF, a misdemeanor, in violation of Title 11, Section 811(a)(1)

of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the

County of Kent, State of Delaware, did intentionally cause damage of less than

$1,000.00 to property consisting of a residence door belonging to Mary Naylor.





COUNT 6                    TK-02-01-0402

NON-COMPLIANCE WITH BOND CONDITIONS, a felony, in violation of Title

11, Section 2113(c)(1) of the Delaware Code.

DONALD R. COCHRAN on or about the 12th day of February, 2001, in the

County of Kent, State of Delaware, did knowingly and unlawfully violate a No Contact

Order set forth by Judge Skelley of the Justice of the Peace Court by attempting to

have contact with Pamela Hawkins by breaking into the residence of Mary Naylor where

Ms. Hawkins was residing.

A TRUE BILL

_____
ATTORNEY GENERAL

_____
(FOREPERSON)

_____
(SECRETARY)

_____
DEPUTY ATTORNEY GENERAL

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR _Kent_ COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | ID: 0102010757 |
| v. Donald Cochran | ) ) | CRA: |

### The defendant must answer the following questions in his or her own handwriting.

Date of Birth _4-21-61_          Last grade in school completed _12th_

Have you ever been a patient in a mental hospital? ☒ Yes ☐ No
Are you under the influence of alcohol or drugs at this time? ☐ Yes ☒ No
Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? ☒ Yes ☐ No
Have you been promised anything that is not stated in your written plea agreement? ☐ Yes ☒ No
Has your attorney, the State, or anyone threatened or forced you to enter this plea? ☐ Yes ☒ No

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
    (1) to be **presumed innocent** until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
    (2) to a **speedy and public trial**;
    (3) to **trial by jury**;
    (4) to **hear and question the witnesses** against you;
    (5) to **present evidence** in your defense;
    (6) to **testify** or not testify yourself; and,
    (7) to **appeal** to a higher court? ☒ Yes ☐ No

| OFFENSE | STATUTORY PENALTY Incarceration | Amount of Fine (range if applicable) | TIS GUIDELINE |
|---|---|---|---|
| Burg I | 20 yrs | 2,200 | 2 yr min / 2-5 Lvs |
| Assault II | 10 20 yrs | " | up to 30 mos |
| PDW DCF | 20 yrs | " | 2 yr min / 2-5 yrs 4-5 |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:** Incarceration: _50_     Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early
    release credits which you may earn will be limited to a maximum of ninety (90) days per year? ☒ Yes ☐ No
Is there a **minimum mandatory penalty?** ☒ Yes ☐ No
If so, what is it? _4 yrs_
Is there a **mandatory revocation of driver's license** or privileges for this offense or as a result of your plea? ☐ Yes ☒ No
If so, what is the length of revocation? _____ years
Has anyone promised you what your sentence will be? ☐ Yes ☒ No
Were you on **probation or parole** at the time of this offense? (A guilty plea may constitute a violation.) ☒ Yes ☐ No
Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be
    a juror, to hold public office, and other civil rights? ☒ Yes ☐ No
Have you been advised that this is an offense which results in the loss of the **right to own or possess**
    a deadly weapon? ☒ Yes ☐ No
Have you been advised that this is an offense which requires **registration as a sex offender?** ☐ Yes ☒ No
Are you satisfied with your lawyer's representation of you and that your lawyer has **fully advised you**
    of your rights and of your guilty plea? ☒ Yes ☐ No
Have you read and understood all the information contained in this form? ☒ Yes ☐ No

| | | |
|---|---|---|
| _Joseph M B___ | _2-3-03_ | X _Donald Coch___ |
| Defense Counsel | Date | Defendant |
| Print name: _Joseph Bernstein #760_ | | Print name: _Donald Cochran._ |

Copies: Superior Court, Attorney General, Attorney for Defendant, Defendant

Document No.: 02-03-10-00-05-01 (Rev. 03/09/00)

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DONALD R. COCHRAN,　　　　　　　CR. A. NOS. IK02-01-0397 thru
　　Defendant　　　　　　　　　　　　　　　　　　　0399

　　V.

STATE OF DELAWARE,　　　　　　I.D. NO# 0102010757
　　Plaintiff

## BREIF IN SUPPORT OF RULE 61

　　NOW Comes Defendant Donald R. Cochran who moves
this Honorable Court by Motion and giving notice of Post
Relief Conviction Rule 61. Defendant ask's this honorable
Court to grant this motion and all Relief Requested. And
to Review all issues within the Full Interest of Justice.

Date: February 16, 2006

Respectfully Submitted,
Donald R. Cochran
Donald R. Cochran
D.C.C.
1181 Paddock Road
Smyrna Delaware
19977



# TABLE OF CONTENTS

| | Page |
|---|---|
| CASE CITINGS | 2,3 |
| CASE HISTORY | 4 |
| PROCEDURAL REQUIREMENTS RELIEF FROM BAR | 5,6 |
| ARGUMENTS | 7 thru 26 |
| RELIEF | 27 |
| APPENDIX | 28 |
| EXHIBITS | 29 |
| CERTIFICATE OF SERVICE | last page |

## DEL. CASES:

Rule 48 b Super. Ct. Cr. R. 48/Super. Ct. Cr. Rules Rule 11(d)

11 Del. C. § 2542 / 11. Del.C. § 4331(d)

Middlebrook v. State Del. Supr. 802 A.2d 268 273(2002)

Pierson v. State Del. Supr. 311 A.2d 854 Appeal after Remand 338 A.2d 571 (1973)

State v. Pauitt Del. Supr. 805 A.2d 177 (2002)

Harris v. State Del. Supr. 410 A.2d 500, 502 (1979)

State v. Knox Del. Supr. A.2d Feb. 26 (2003) AFF'D Del. Supr. 826 A.2d 298 (2003)

Weeks v. State Del. Supr. 653 A.2d 266, 270 (1995)

Middlebrook v. State Del. Supr. 802, A.2d 268 (2002)

Somerville v. State Del. Supr. 703 A.2d 629 (1997)

State v. Pryer Del. Supr. A.2d (Oct. 11, 2001)

Howard v. State Del. Supr. 458 A.2d 1180, 1184-85 (1983)

Constitution 14th Amendment Art. 1. § 7

Robinson v. State Del. Supr. 600 A.2d 356, 360 (1991)

Moore v. State cite as 2005 WL 3027680 Del. Supr.

Mac Donald v. State Del. Supr. 778 A 2d 1064 (2001)

## U.S. CASES:

United States Const. Amend. 6

U.S. v. Marion 404 U.S. 307, 320 (1971)

U.S. v. Williams, 615 F. 2d 585 (3rd Cir. 1980)

U.S. ex Rel Hollerman v. Duckworth 652 F Supp. 82 (N.D.Ill. 1986)

U.S. v. Kauffman 109 F.3d 186 (3rd Cir. 1997)

Godinez V. Moran. 113 S. Ct. 2680, 2688 (1993)

Dusky V. United States 362 U.S. 402 (1960)

Kansas V. Hendricks, 521 U.S. 346 (1997)

Maryland V. Brady 373 U.S. 83 1963

U.S. V. Vekeler 62 F.3d 544, 550 (3rd Cir. 1995)

Pennsylvania V. Ritchie 480 U.S. 395 (1987) cites 1999 WL 123247 (D. Del.)

U.S. V. Marion, 404 U.S. 307 (1971)

Upshaw V. Singletary 76 F.3d 576 (11th Cir. 1995)

Hall V. Washington 106 F.3d 742 (7th Cir. 1997)

Hill V. Lockhart 877 F.2d 698 (8th Cir. 1989)

Hill V. Lockhart 474 U.S. 52 (1985)

U.S. V. Scott 625 F.2d 623 (5th. 1981)

U.S. V. Timmerick 441 U.S. 780 (1979)

McCoy V. Wainwright. 804 F.2d 1196 (11th Cir 1986)

Burnett V. Hargett 174 F.3d 1128 (10th Cir. 1999)

Strickland V. Washington (cite as 466 U.S. 668 104 S. Ct. 2052 1984)

Kubot V. Thieret 867 F.2d 351, 369 (7th Cir. 1989)

Brewer V. Aiken 935 F.2d 850, 855 (7th Cir. 1991)

# CASE HISTORY

On February 12, 2001 after heavy drinking and drug use on the way to buy more drugs defendant spotted his girlfriend of 10 years and the mother of his son, truck parked in front of his friends house which caused him to lose it. Defendant was charged, after having a blackout from seeing his girlfriend's truck in front his friends house, with first degree burglary, first degree assault, possession of a deadly weapon during the commission of a felony, first degree unlawful imprisonment, misdemeanor criminal mischief. Defendant was said to have forcibly entered his friends house and struck Mary Naylor in the face with a bottle. Due to the factors of the Drinking and drug use and some mental health promblems it caused the defendant to black out after seeing his girlfriends truck parked in front of his friends house which he has no memory of the invents that took place once inside the residence. Which in turn lead to the Robinson Plea on February 3, 2003.

## PROCEDURAL REQUIREMENTS

Before the COURT can grant a Rule 61 it must first determine that the defendant has meet the procedural Requirements before determing the merits of the case. The defendant will Prove and show that in this case, this case cannot be barred under any procedural grounds and all merits must be addressed as a matter of LAW and in the INTEREST OF JUSTICE. The procedural bar does not apply to the defendant because the Court lacked the authority and the Jurisdiction to Proceed convict, EXCEPT a plea, OR punish the defendant. Under clearly established LAW that once Jurisdiction has been lost the Court cannot Proceed any farther. TO proceed in the SUPERIOR Court it must be by indictment. It can be by information if it is waived and signed in Open COURT. Defendant was charged with these offenses on February 12, 2001. Defendant was not indicted on these charges within the TWO (2) Terms to be handed down by the Grand Jury. Also there was more than a 75 day delay without a Preliminary hearing or indictment after arrest. Defendant was indicted 11 months after being charged of these offenses on or about January 7, 2002. see exhibit __A-7__. Failure to comply to the above said statements constitutes loss of Jurisdiction and violates Petitioners Rights. Also Petitioner waived extradition and signed extradition papers on August 28, 2001 which under the Interstate agreement on Detainers act gave this Court and Jurisdiction 180 days to bring Petitioner back to Delaware which did not happen in this case. Failure to comply with the 180 day clause of the Interstate Agreement on Detainers

Act the Court lost Jurisdiction to proceed and by proceeding clearly violated Petitioners constitutional Rights secured under Interstate agreement on Detainees act. By denial of Petitioners Constitutional Rights of due Process protection all relief from Procedural bars must be granted and addressed in the interest of Justice. And Lastly, Just prior to being charged for these offenses Petitioner was placed in the Delaware Psychiatrict Center upon motion from the State. The STATES Physician determined that Petitioner suffered from a mental disease/disorder. And in actual clinical reports and records the States Physician determines that Petitioner is incapable of making Rational or Reasonable decisions in matters of seriousness. due to mental disorders. Since there is ample evidence that Petitioner suffered with mental problems clearly determined by the state's own Physician Petitioners mental condition was never determined if there was sufficient competency to enter into a Plea agreement since such Requires one to have Rational as well as factual understanding of the proceeding. The mental condition of a defendant is to be considered in any criminal case. Therefore the Court did not have Jurisdiction to proceed, to offer or to except a plea Agreement. without first having and holding an evidentiaryhearing to determine Petitioner's competency with ample evidence of autual clinical reports and records the merits of all said above statements warrants the this Court to address these issues IN THE INTEREST of The LAW. Petitioner has demonstrated that Petitioner Falls under the exception of Procedural default and all merits must be addRessed by this Court.

# ARGUMENTS

1. Violation of Speedy Trial/Lack of Jurisdiction/ Failure to Comply I.A.D. Agreement/Untimely Indictment

2. Ineffective Assistance of Counsel

3. Failure to Hold Evidentiary Hearing to Determine Competency

4. Lack of Mitigating Evidence

FaiLURE TO COMPLY wiTH IA.D. AGREEMENT/UNTIMELY INDICTMENT

# ARGUMENT

Under the clearly established LAW on the Interstate Agreement on Detainers Act Petitioner contents that his Rights were violated and the Jurisdiction of this Court was Lost. It states under extradition that once extradition has been signed the state where the charges are pending than has the Jurisdiction of 180 days to bring defendant to that jurisdiction and have trial commensed on the charges pending. Failure to comply with the 180 day trial clause of the Interstate Agreement on Detainers Act and failure to commonse trial within the 365 day stipulation of the Speedy Trial Act Both the statutes and constitution call for dismissal under the circumstances. 11 Del C. § 2542, 4th Amendment. U.S. Constitution. and Del. Constitution Art. I § 7. This Jurisdiction and this Court of Delaware was first alerted and notified of Petitioner's willingness and availability to be brought back to this Jurisdiction. Which was the day Petitioner signed and waived Extradition on August 28,2001 see exhibit A-1 Also in a Plea Agreement from Florida see exhibit A-2 Delaware also had knowledge of Petitioner's availability to be brought back to this Jurisdiction Florida again made it clear in their Plea Agreement that Petitioner's Florida's sentence would and could run concurrent with any sentence imposed by Delaware officials. And clearly states Petitioner awaits extradition. Also during a peroid between October 4, 2001 thru May 12, 2002 Petitioner wrote Delaware 3 letters see exhibit A-3-5 asking to be brought back to Delaware for his right to a speedy Trial. In another attempt Petitioner contacted Florida officials asking for their help to be brought back to Delaware. Florida officials said they tried to contact Delaware about this matter

56

but Delaware officials never bothered to answer them back _seventh_
A-6 . This shows and proves Petitioner made many efforts to be
brought back to Delaware for his Right to a speedy Trial. There was
ample notification and efforts made for Petitioner to be brought
back to Delaware. Delaware ignored and failed to bring Petitioner
back to this Jurisdiction in time for his Right to a Speedy Trial.
And by bringing Petitioner back to this Jurisdiction on October
24, 2002 14 months after Petitioner first signed extradition
Delaware violated Petitioner's Right to Due Process and violated
the LAW secured by the Interstate Agreement on Detainers Act
which in turn violated Petitioner Speedy Trial Right. Which
under the LAW warrants the charges to be dismissed.
Under the LAWS of this State and all other states and the Petitioners
Rights under LAWS of 14th Amendment. For any Court to proceed it
must have Jurisdiction to do so. Even though a Court of LAW may
have Jurisdiction at the beginning of the proceedings Jurisdiction may
also be lost during its proceedings for violating the Rights of a
defendant. At the point where Jurisdiction is lost any proceedings
after that point are invalid. Petitioner was charged with these offenses
on February 12, 2001 Petitioner was indicted on these charges not
until January 7, 2002 and the case was accepted in the Superior
Court January 10 2002 see exhibit A-7 11 months after being
charged with offenses. An indictment is to be handed down by the
Grand Jury within Two(2) terms and the case is to be tried within
one year see Middlebrook V. State, Del. Supr.. 802 A. 2d 268. 273
(2002). Our Supreme Court has stated that a 75 day delay following
an arrest without either a preliminary hearing or indictment violates
one's Rights. Pierson V. STATE, Del. Supr.. 311 A. 2d 854 appeal after
Remand. 338 A. 2d 571 (1973) Dismissal is Required where such a

delay is attributable to the STATE. Super. CT. Crim Rules. Rule
48: STATE v. Pruitt Del. Super., 805 A.2d 177(2002). The delay of
over more than(1) one year before trying the case, after Petitioner first
initially waived his Right to be extradited to this jurisdiction for the
purpose of disposing of the outstanding charges violates my speedy Trial
Rights and warrants dismissal under the provisions of the statutes and
constitutions. 11 Del. C. § 2542; United States Constitution. Amend.6;
Delaware Constitution. Art I § 7. Middlebrook at 273, 275 citing
United States v. Marion 404 U.S. 307, 320(1971).

INEFFECTIVE ASSISTANCE OF COUNSEL

ARGUMENT

Counsel for Petitioner was clearly ineffective when we look at the totality of the circumstances. Counsel Joe Bernstein had an obligation to file Pretrial motions to dismiss for violations of Extradiction LAWS and Speedy Trial. U.S. v. Williams, 615 F. 2d 585 (3rd Cir. 1980); U.S. ex rel Hollerman v. Duckworth, 652 F. Supp. 82 (N. D. Ill. 1986)(post-stricland); Middlebrook v. STATE Del. Supr. 802 A. 2d 268 (2002) citing U.S. v. Marion 404 U.S. 307 (1971) Had Counsel filed Standard Pretrial motions he would have discovered records and and reports by STATEs own physician on my admittance to Delaware Psychiatrict Center which shows and states Petitiones mental state is questionable see exhibit A-8—10_____. Counsel had been advised about Petitioners mental problems But again Counsel ignored and failed to investigate this information. OR advise the Court of this matter which is a mitigating factor. Failure to investigate and present defense and mitigating circumstances regarding a defendants mental state constitutes ineffective assistance of counsel and calls for an evidentiary hearing. Upshow v. Singletary, 70 F. 3d 576 (11th Cir. 1995); Hall v. Washington, 106 F. 3d 742 (7th Cir. 1997). Counsel Bernstein was hired because he claimed he was an expert on extradition Laws. In a certified affidavit from Petitioners mother Corole Richardson who hired Bernstein will explain how & why Bernstein was hired see exhibit A-11_____. In an certified affidavit from Petitioner Donald Cochran it touches on the events that took place when Bernstein took Petitioners case. How Bernstein drafted a motion for Dismissal from a motion he took from Petitioner. Bernstein promised to file that motion for Dismissal. But never did. Instead he talks Petitioner out of filing That motion for Dismissal coerced Petitioner into taking plea by making promises that never happen and by saying that by wasting the Courts time Donald Cochran's affidavit see exhibit A-38

~59~

would make the prosecutor and the judge angry. And petitioner would get 50 years. Bernstein and Petitioner argued over this matter for a while Bernstein said he would get Petitioner a Robinson Plea Because of mental problems and as mentioned in Transcripts where Petitioner states he blacked out see exhibit A-12 A-16 and Bernstein said that Petitioner would get 7 to 9 years Level 5 no more the rest would be probation. Which didn't happen in this case. From evidence according to the States own psychiatrist see exhibit A-8-10 it states Petitioner was not capable to make Reasonable/Rational decisions for himself and thus I was not able to make a Knowing and voluntary waiver of my Rights to go to trial and alternatively plead guilty. Knox supra Somerville v. STATE Del. Supr., 703 A.2d 629 (1997) The plea was entered as a result of promises and a threat of getting 50 years if Petitioner didn't take the plea. From the pressure and the threat of 50 years Petitioner caved and took the plea. And as soon as the Judge accepted the Plea Agreement. Bernstein stood up and said to the Court that he had a Motion For Dismissal that he wanted to file for the record. see exhibit A-21. Petitioner Right away tells the Court that Petitioner has been asking Bernstein to file that Motion all Morning. that's not in the Transcripts but it should be on the audio tape of Plea agreement hearings. But in the Transcripts of the Plea Agreement you can see there is confusion on the part of the Petitioner and Petitioner ask Judge question's about Motion For Dismissal The Judge asks Bernstein where the motion For Dismissal was Bernstein states that the Motion was in his briefcase and that he didn't file it because he didn't have the paperwork to back it up. Which clearly shows and proves that Bernstein failed to investigate and failed to obtain important information that would prove Petitioners case and violation of Petitioners Rights see exhibit A-25 Bernstein Knew that the motion was valid and should have been filed. His effort to

have it put on record was to cover his improprieties. Also in the Plea
Agreement Transcripts as the confusion and questions from Petitioner
continue Prosecutor John Garvy stands up and says that Petitioner
can have Motion For Dismissal heard But after that there would be no
Plea Agreement and that he would go forward with a trial. And
then the Judge said yes and that it would be a trial on all the
charges and then said to the Petitioner to weigh his pros and cons
see exhibit ___A - 28___. That added more pressure to Petitioner
and seemed to prove what Bernstein said about getting the court mad
and wasting there time that Petitioner would get 50 years. And if clear
Bernstein didn't prepare for any proceedings let alone a trial. So Petitioner
clearly confused stayed with the Robinson Plea. In a Robinson Plea a
defendant has the right to have his mental condition considered to determine
if he had the Requisite state of mind for knowledge or intent Robinson
v. STATE Del. Supr., 600 A. 2d 356. 360 (1991). In the Interest of
Justice and the Law once there was a question about a pretrial motion
under clearly established Law the Judge knows that a defendant has
a Right to all pretrial motions and a right to counsel who will investigate
and come to Court prepared with all evidence records/reports to backup
a defendants claim. The Judge shouldn't have allowed Bernstein to file
that Motion For Dismissal knowing Bernstein stated he didn't have the
paperwork to Back it up. He should have ordered a continuance and
give Bernstein a chance to get paperwork Ready or offered Petitioner
a chance at counsel who would be prepared with evidence and information
of Petitioners claim of violations of his Right's Petitioner had the
Right to prove his claims At his Right to all pretrial motions. This
should have been done In the Interest of Justice. In essence, counsel
forced me to take Robinson Plea by failing to investigate, file for discovery,
file dismissal motions, asking for evidentary hearing, put on an affirmative
defense, or other wise consider a trial strategy and prepare for trial.
which counsels conduct falls below the norm of professionalism.

which warrants an evidentiary hearing /withdrawal of the Plea Agreement
STATE V. PRYER. Del. Supr., A.2d (Oct 11, 2001): Howard V. STATE Del.
Supr.. 458 A.2d 1180, 1184-85 (1983) citing Super. Ct. Crim. Rules,
Rule 11(d). See Hill V. Lockhart, 877 F 2-d 698 (8th Cir. 1989) Hill V.
Lockhart 474 U.S. 52 (1985). A conviction on a guilty plea that
is entered solely as a result of faulty legal advice is a miscarriage of
justice. U.S. V. Scott. 625 F.2d 623 (5th Cir. 1981). This tendering
by Petitioner that Petitioner would not have pleaded guilty had counsel
not lied to and pressured Petitioner distinguises the case from
Timmerick and relieves Petitioner of the rule set forth therein.
Id., citing U.S. V. Timmerick. 441 U.S. 780 (1979) Counsel knew of
the psychiatrict reports and records and Petitioner's stay at the Delaware
psychiatrict Center had counsel conducted discovery he could have
used this information to present an affirmative defense based on an
irresisitable impulse or at least investigate the possible defense. Such
failure falls below the professional norm and has obvisously prejudiced
the Petitioner in that Petitioner was forced and tricked into a Plea Agreement.
MacDonald V. STATE. Del. Supr., 778 A.2d 1064 (2001): McCoy V.
Wainwright, 804 F.2d 1196 (11th Cir. 1986): Burnett V. Hargett, 174
F.3d 1128 (10th Cir. 1999), Also at the time of Petitioners Court
proceedings Bernstein was involved and preparing for a murder trial
see Court docket sheet were he writes and asks for continuance on
Petitioners proceedings. Also Bernstein is Tom Capno's counsel where
Bernstein was more dedicated to these cases and let Petitioners case
fall through the legal cracks of the law, By failing to do absolutely
nothing that would benefit his client the Petitioner in the Interest of
Justice or the LAW. Counsel failed to produce exculpatory evidence
in violation of Maryland V. Brady 373, U.S. 83 (1963) under Brady
Counsel must disclose exculpatory evidence. At sentencing part of
proceedings Counsel failed to advice or address the Court of
many mitigating factors or failed to bring up the letters written
Docket sheet exhibit A-7

for the petitioner on behalf of his character. And failed the Petitioner his Right to have witnesses speak on his behalf at the sentencing part of the proceedings. There were no mitigating factors brought up on behalf of the Petitioner, such as his mental health concerns. Only aggravating factors where brought up a sentencing in what looks like was an overzealousness to prosecute. Had these mitigating factors been brought to the Courts attention and had they been given some consideration. Like the consideration that was given to the aggravating factors The Petitioner may have gotten a lesser of a harsh sentence which may have been somewhere within the guidelines. But no such mitigating factors where ever brought up or mention only aggravating factors. There is ample case authority stating that a prosecutor is to seek justice and not merely convictions. which didn't happen in this case. Surely counsel Joe Bernstein was ineffective under our precedent case authority. Harris at 502; Kauffman. supra. When Petitioners counsel failed to investigate all material information and failed to file Pretrial motions with all paperwork to support the motions in a timely fashion Clearly prejudice the Petitioner in this case. And had Petitioner's Counsel investigated all material information and had the paperwork to back up Pretrial motions and had the motions been filed in a timely fashion. It would have made a favorable difference in Petitioner case. Even the Judge states in Plea Agreement Transcripts that that Pre trial Motions should be filed before trial seexh. bit A-25 To prevail on the claim of ineffective assistance of counsel Petitioner must demonstrate that Counsels Representation fell below an objective standard of reasonableness and that a Reasonable probability exist, but for counsel's substandard performance the judge would have concluded that the balance of aggravating and mitigating circumstances did not warrant the sentence received do to all mitigating factors Strickland 466 U.S. At 695, 104 S. Ct. at 2068.69 Brewer V. Aiken 935 F.2d 850, 855 (7th Cir. 1991)

Counsel's performance standard envisions a wide range of permissible actions for the attorney in question and it normally requires us to defer to an attorneys choice of strategy. Strickland 466 U.S. at 689 104 S.Ct. at 2065; Emerson 91 F.3d at 906. Neverthless where Counsel's errors are such that he was not functioning as counsel guaranteed the defendant by the sixth Amendment Strickland 464 U.S. at 687 104 S.Ct. at 2064 his performance is deficient for these purposes. In the Context of a sentencing phase were defendant faced a 50 year Prison sentence, it is particularly important that counsel not be allowed to shirk his responsibility Thus while we defer to legitimate, strategic decision-making from the perspective of strategic competence, I hold that defense Counsel's must make a significant effort, based on Reasonable investigation and logical argument, that's favorable to the defendant's case before a Court of Law and to focuss on mitigating factors that would change the out come of the proceedings. Kubat V. Thieret. 867 F.2d 351 369 (7th Cir. 1989).

FAILURE TO HOLD EVIDENTIARY HEARING

## TO DETERMINE COMPETENCY

ARGUMENT:

Prior to the offenses Petitioner was charged with. Petitioner was placed in the Delaware Psychiatrict Center upon Aequest made by Petitioners mother and by and thru the help of Probation officers. After the initial evaluation and observation of the Petitioner. The States own psychiatrist admitted The Petitioner and determined that the Petitioner suffered from a mental disease / disorder that made Petitioner a danger to himself and to others and was incapable of making Rational or reasonable decisions in matters of grave importance see exhibits __A - 8 -10__. The mental condition of a defendant is to be considered in any criminal case see Harris V. STATE Del. Supr. 410 A. 2d 500, 502 (1979): United States V. Kauffman. 109 F. 3d 186 (3rd Cir. 1997). and had counsel for the Petitioner investigated these claims that were told to him by the Petitioner he would have discovered the information and evidence that there was the possibility that the Petitioner lacked mens Rea and/or actus Rea to be criminally libel. Rule 11 pleas Require the compent of knowing and voluntary waiver before they can be legally binding, and it can be argued that the prosecutor and the Court took advantage of the Petitioner who was said to be incapable of making Reasonable or Rational decisions in matters of seriousnous. See STATE V. Knox. Del. Super. A. 2d (Feb. 26, 2003) aff'd, Del. Supr. 826 A. 2d 298 (2003). It was never determined whether I had the present sufficient competency to enter into the Robinson Plea Agreement since such Requires one to have a rational as well as factual understanding of the proceedings Weeks V. STATE. Del. Supr. 653 A. 2d 266. 270 (1995) citing Godinez V. Moran. 113 S. Ct. 2680. 2688 (1993), quoting. Dusky V. United States 362 U.S. 402 (1960). This is very important since the States

own psychiatrist was the last person to speak of my state of mind and clearly stated that Petitioner could not make Rational or Reasonable decisions with Respect to hospitalization and treatment even see exhibit ___A-9___. In fact according to the Doctors Reports it was very possible to have put on an affirmative defense of irresistable impulse see. Kansas V. Hendricks, 521 U.S. 346 (1997). The evidence of the lack of mens Rea and/or actus Rea is in the Robinson Plea Agreement Transcripts wherein it was explained to the Court that the Petitioner had an emotional trauma over his girlfriend cheating on Petitioner with someone Petitioner deemed a friend and Petitioner Kicked in the door and had a blackout after that see exhibits ___A-16___ Petitioner clearly demonstrated what the Kendricks court considers a standard of the lack of volitional control. The facts are via State Psychiatrist Reports on file that stated that I was a danger to myself and others and basically that this type of behavior was likely to continue unless treatment was had by Petitioner. Which was a condition Petitioner was to do as a Requirement in order to be Released from Delaware Psychiatrist Center see exhibit ___A-37___. Petitioner's probation officer Dave Benson was advised of the Petitioners conditions of Release and was to see to it that Petitioner complied to the Conditions. see exhibit ___A-37___. Dave Benson found his self to be under investigation and was suspended. Petitioner had started working on treatment but after being passed around to different Probation officers who didn't have Petitioners file and didn't know about Petitioner's case. Petitioner soon fell back to his old ways and never complied to the conditions set forth upon Petitioner's Release from Delaware Psychiatrist Center which in turn lead to what the State's Psychiatrist said would happen. Which was that Petitioner would continue to have behavior problems if Petitioner didn't comply to treatment see exhibit ___A-37___. Even the charge of burglary cannot be supported since it Requires breaking

and entering with an intent to commit a felony. The Plea Agreement Transcripts State clearly that Petitioner had a blackout see exhibit ___A-16___. Also Statements were made by MRS. Naylor to Pre Sentence Investigator that she knew Petitioner was not intending to cause her harm. And that she was not concerned for her safety. Also in Plea Transcripts it states Petitioner had no recollection of the facts after Door being kicked in because Petitioner snapped. see exhibit ___A-12___.

In a Robinson Plea Agreement the Petitioner had the Right to have his mental condition considered to determine if Petitioner had the Requisite state of mind for Knowledge or intent. In the Interest of Justice the Court should of had Knowledge of all the above factors, statements, Records/Reports. which Petitioners counsel failed to provide any evidence to the Court in support of Petitioner's claims of all above stated factors. In the Interest of Justice Petitioner had the Right to have had an evidentiary hearing to determine Petitioners mental state and on all the above factors.

LACK OF MITIGATING EVIDENCE

ARGUMENT:

There is ample case authority stating that a prosecutor, to seek justice and not merely convictions. And that all mitigating evidence is to be considered and is to be present at the sentencing phase of the proceedings. The mental condition of a defendant is to be considered in any criminal case. Harris V. State, Del. Supr., 410 A. 2d 500, 502 (1979): United States V. Kauffman, 109 F. 3d 186 (3rd Cir. 1997)

Petitioner argues that prosecutor and Petitioner's counsel failed to produce exculpatory in violation of Maryland V. Brady 373 U. S. 83 1963. Under Brady, Counsel must disclose exculpatory evidence to prosecution and that the evidence is material to either guilt or not guilt. Brady 373 U.S. 83 1963. In order to establish a Brady violation a defendant must first demonstrate that counselor had requested information within its actual or constructive possession. United States V. Yekeler 62 F. 3d 544 550 (3rd cir. 1995). The undisclosed evidence must be material. And evidence is material only if there is a reasonable probability that had the evidence been disclosed to the Court the results of the sentencing proceedings would have been different due to all the mitigating circumstances. Pennsylvania V. Ritchie 480 U.S. 39, 57 (1987) cite as 1999 WL 123247 (D. Del.). The Sixth Amendment applicable to the States through the Fourteenth amendment. Provides the accused in a criminal prosecution the right to offer the testimony of any favorable witness and to have compulsory process for obtaining witnesses in his favor. United States Const. Amend. VI. Washington V. Texas 388 U.S. 14, 18-19 (1967). In order to establish a violation of the sixth amendments right to compulsory process defendant must demonstrate that he was deprived of the opportunity to present evidence in his favor. And that the excluded testimony would have been material and and favorable to his defence and sentence.

- 68 -

Petitioner claims that clearly there were mitigating factors and evidence that were never investigated or brought up to the Courts attention, which Petitioner had a Right to have the mitigating evidence present and to be considered. And had Petitioners counsel investigated and advised the Court of the mitigating evidence and had this mitigating evidence been given the same consideration and thought that the aggravating factors got in this case. Petitioner's case and sentence would then have been cast in a dramatically different light. And in the interest of Justice Petitioner may have got a less harsh of a sentence.

A presentence investigation was ordered for Petitioner at the Plea Agreement hearing. A presentence investigation should include information about the history and the characteristic of the defendant which includes prior criminal record also a victim impact statement in accordance with 11 Del.C. § 4331(d): Moore v. State cik as: 2005 WL 3027680(Del. Supr.) Petitioner was never given an opportunity to review the Presentence investigation. Petitioners counsel never disclosed any information to Petitioner about the presentence investigation and Petitioner was never given an opportunity to comment on the presentence investigation in Court. In Moores case information in the presentence investigation that was never intended for Moore to see was used as evidence that the Court Relied upon in sentencing Moore. Thus. Moore should have been given the opportunity to address this information that was kept from him before being sentenced. And in this case Petitioner claims that in the presentence investigation of him there were important mitigating evidence and factors that were left out of the report that the Court never got to see. Therefore the Court was not able to considered this important mitigating evidence upon sentencing the Petitioner. Petitioner's counsel should have set aside time and made a point to review the presentence investigation with Petitioner. Fundamental fairness would entitle Petitioner an opportunity to make the Court aware of the mitigating evidence that was left out of

the report at sentencing. Petitioner Claims he was presudiced by MR. Sheperd's presentence investigation. How Moore was presudiced by the Court was the Court relied on information that was never intended for Moore to see as evidence which the Court based part of Moore's sentence on upon sentencing Moore. Petitioner was Presudice when MR. Sheperd who conducted The presentence investigation touched on a mitigating factor of Petitioners mental state but MR. Sheperd failed to investigate Petitioner's mental problems thoroughly. Petitioner made MR. Sheperd aware of Petitioner's mental Claims in the interview conducted by MR. Sheperd. MR. Sheperd failed to investigate these Claims which are mitigating evidence and factors that are favorable to the Petitioners Case thoroughly. If he investigated thoroughly he would records and reports of Petitioner mental troubles. Failing to include all the mitigating evidence favorable to Petitioner's case deprived the Petitioner an opportunity for the Court to view this information and use it as evidence which should have been considered upon sentencing the Petitioner. Failing to include all the mitigating evidence and factors in MR. Sheperd's presentence investigation is a miscarriage of Justice and in Fundamental fairness the Petitioner should have been given an opportunity to Review his presentence investigation before he was sentenced and been given and opportunity to dispute the mitigating evidence MR. Sheperd failed to investigate thoroughly and provide to the Court as evidence to be sentenced by. A defendant has the Right to have all mitigating evidence and factors present and to be heard and considered at sentencing. In and attempt not Rehash arguements and to drag this arguement out The Court can view the Plea Agreement transcripts on the events that took place which the Petitioner was charged with these offenses. see exhibit A-12-32 Jim Sheperd interviewed Petitioner at Delaware Correctional Center before Petitioner was sentenced. In the interview we went over the history and the events of the case that led up to the night Petitioners

was charged with these offenses. MR. Sheperd was aware of
the case thru other interviews. Petitioner told MR. Sheperd
what he knew. In this case Petitione had mental problems
from problemsin part over Relationship with girlfriend Pam Hawkins
And Petitioner was drinking and using drugs heavy. Petitioner snapped
and suffered a blackout from the trama of seeing his girlfriends
Pam Hawkins truck parked in front of his friends house TOM
Naylor  And during Blackout Petitioner hurt MRS Naylor but
Petitioner has no recollection of who or what Petitioner
did over the trama he felt. Petitioner told MR. Sheperd it was
a crime committed out or over passion. From the trama Petitioner
felt over Petitioner girlfriend cheating on Petitioner with a friend
of Petitioner. And that Petitioner was having mental Problems
and that Petitioner was admitted to Delaware Psychiatrict
Center due Petitioner Relationship problems and drinking
and drugging. And that Petitioner was abused by Petitioners father
in which Petitioner Father was violent and beat Petitioner and
Petitioner's mother, and brother and sister. They were beat very bad.
This started Petitioners problems, drinking and using drugs to
escape. Petitioner told MR. Sheperd he was very sorry, that
Petitioner has never hurt anyone before and it was eating Petitioner
up for what Petitioner did. MR. Sheperd said he knew. Petitione
was very sorry and MR. Sheperd could tell it bother the Petitioner.
MR. Sheperd said he would look more into Petitioners case.
And talk with a few more people. And told Petitioner not to worry
that he wasn't going to go along with what the state Recommended
and that Petitioner wouldn't be and old man when Petitioner was
Released. And that the state's Recommendation was more than
what they Recommend to someone who has killed someone. Just
Recently Petitioner found some of what MR. Sheperd put in the
presentence investigation. Petitioner feels MR. Sheperd left out
mitigating evidence and MR. Sheperd did not talk to all involved

Just prior to being charged with these offenses Petitioner was taken into custody by request of Petitioner's mother and by and thru the help of of Petitioner's probation officer and was taken to Delaware Psychiatric Center over concerns of his mental condition. After the initial 72 hour observation. The State's own psychiatrist admitted Petitioner to the center. And in the records and reports the state's own psychiatrist states clearly that Petitioner suffered from mental illness which made Petitioner incapable of making reasonable or rational decisions for himself. And a motion for a hearing to see if Petitioner was competent was ordered. see exhibit (A-33-36)(A8-10) Petitioner's counsel told Petitioner that he would advise the Court of his mental problems and about his stay at Delaware Psychiatric Center and that some of his problems stem from Drugs and Drinking and relationship problems over his girlfriend cheating on him with a friend. But Petitioner's counsel onced again failed him when he told Petitioner he was going to tell the Court that these crimes were cause of crimes out of passion due to petitioner's girlfriend cheating on him with a friend. Petitioner's counsel never advised the Court of these mitigating factors or any mitigating factors for that matter which in turn deprived Petitioner of his right to have all mitigating evidence present at his sentencing. In what may have been an overzealousness to prosecute. Prosecution makes it look like Petitioner entered to rob and hurt Mrs. Naylor for no reason at all. And in the Plea Agreement transcripts it state's clearly that Petitioner Blackedout after seeing his girlfriends truck parked in front of his friends house. And since Petitioner has no recollection of the facts after that point. see exhibit A-12-A-16. He was offered a Robinson Plea. upon that agreement the Petitioner had the right to have his mental condition considered to determine if he had the requisite state of mind for knowledge or intent. Robinson V. STATE Del. Supr., 600 A. 2d 356, 360(1991).

In the mental Response to Petitioners mental problems. MR. Sheperd states Petitioner was committed to the Delaware Psychiatrist Center for a 72 hour observation which was result of Petitioner becoming more depressed over his relationship with girlfriend. Pam Hawkins which led to excessive drinking. And upon his release he was told to seek substance abuse counseling. Petitioner claims that had MR. Sheperd thoroughly investigated Petitioners claims of mental problem and his stay at the Delaware psychiatrict Center. MR Sheperd would have found records and reports from States own psychiatrist stating Petitioner suffered from a mental illness which made Petitioner incapable of making reasonable or rational decisions for himself and Petitioner was a danger to himself and others. And a motion that was ordered from State's psychiatrist ordering a hearing to see if Petitioner was competent. see exhibit (A-8-10)(A-33-36). And Petitioner was not told to seek substance abuse counseling. Petitioner was ordered to as a condition of Petitioners release. States psychiatrist states that if Petitioner does not comply with Petitioners conditions of release Petitioner would continue to have behavior problems and continue Petitioner's trouble with the law. see exhibit A-37 . Petitioner was prejudice by not having all the mitigating evidence investigated thoroughly and all this information kept from MR. Sheperds Report. MR. Sheperds report is for the Court to see and view and considere the information upon sentencing a defendant. This mitigating evidence is favorable to the Petitioners case and it should have been given the same consideration and thought that the aggravating factors got for determing Petitioners sentence. MR. Sheperd states in the evaluation That an argument could be made that given the nature of Petitioners addiction to alcohol and illegal drugs the Petitioners treatment needs might mitigate to some degree the need for punishment. But MR. Sheperd feels that a mitigating need for treatment is not valid in this case. And when MR. Sheperd stated that an argument could be made

-73-

for anything real a prosecutor may file in response that was not a valid argument. MR. Sheperd should have at least investigated and put all the information in his Report. So at least the Court could have viewed all the information and made their own decision. Since there was some information that was left out of MR. Sheperds report. Had this information been put in the report and put together with Petitioner's drug and alcohol and relationship problems. The Court could have then seen that all this evidence was a factor in this case. All this mitigating evidence would make the argument a very favorable and valid one for the Petitioner. MR. Sheperd may not think it's a valid argument. But the State's psychiatrist may not agree. MR. Sheperd did not leave any aggravating evidence out of his report for the Court to consider upon sentencing Petitioner. MR. Sheperd also never talked to all parties involed in this case. Which Pam Hawkins and Tom Naylor were a factor in this case. And could have shed some light on Petitioner's mental state. Petitioner's father was never interviewed which would have proved that Petitioner and his family were violently abused. And that this abused started his problems with drugs and alcohol. Also three different judges were involed in Petitioner's case, therefore it's unclear who handled all the letters written on Petitioner's character which would have showed that Petitione is loved and was having some problems. These letters were never brought up at sentencing. In fact, there was no mitigating factors or evidence considered at all in this case. MR. Sheperd should have included all this information in his report so it could have been used as evidence for the Court to at least consider that there was a mitigating side to this case. And had the mitigating evidence got the same consideration that the aggravating factors got in this case. It would show this case in a dramatically different light. Petitioner asks the Court to consider the evidence that was left out of the presentence investigation report. And to consider this evidence as factor that played a part in this case which would have made a difference at Petitioner's sentencing.

# RELIEF

Petitioner asks this Honorable Court to grant all the Relief requested or whatever this Court may deem appropriate.

1. Grant evidentiary hearing
2. Vacate Conviction / sentence
3. Grant new trial

Petitioner also swears that all the foregoing is true and correct to the best of his Knowledge.

Date: February 16, 2006

Respectfully Yours
Donald R. Cochran
Donald R. Cochran

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

DONALD R. COCHRAN
   Defendant

V.

STATE OF DELAWARE
   Plaintiff

CR. A. NOS. IK 02-01-0397 thru
            0399

I.D. NO.#   0102010757


## APPENDIX


This is Petitioner's appendix of exhibits in support of
his motion Post conviction Relief Rule 61


Date: February 16, 2006

DonalD R. Cochran
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware
    19977

# Exhibits                                   Page

1. Waiver of Extradition                          A-1
2. Florida Plea Agreement                         A-2
3. Letters to Attorney Generals office            A-3 thru 5
4. Florida Inmate Request form                    A-6
5. Superior Court Docket Sheet                    A-7
6. Mental Records                                 A-8 thru 10
7. Mothers Affidavit                              A-11
8. Plea Agreement transcripts                     A-12 thru 32
9. Mental Records                                 A-33 thru 37
10. Petitioner's Affidavit                        A-38

# IN THE CIRCUIT COURT
# FOR PINELLAS COUNTY, FLORIDA

CASE #    CRCAB19879CFANO
$2267967$

# WAIVER OF EXTRADITION

I,    DONALD RICHARD COCHRAN    being advised of my rights under the Statutes of Florida of the issuance and service of a warrant of extradition, and being further advised of my constitutional rights to obtain a writ of habeas corpus,

And being personally charged with having committed the crime of:
  POSS.OF DEADLY WEAPON DURING COMMISSION OF FELONY, ASSAULT, BURGLARY

In the State of    DELAWARE    , I do hereby and without reservation and in view of my legal rights in extradition proceedings as heretofore explained to me before this Honorable Court, waive any and all such legal rights and do further by my signature hereto affixed, consent to this Waiver of Extradition and further consent to be returned to the State of    DELAWARE    , there to stand trial on the charges alleged.

In further witness of my voluntary and unconditional consent, I do further state that my signature below affixed was so signed in the presence of this Honorable Court without any threats, promises, duress, or agreements whatsoever and with full knowledge of my rights as stated above.

Signed in the presence of:

CIRCUIT JUDGE, PINELLAS COUNTY, FLORIDA

Sign this  28th  day of  AUGUST

A.D., 2001, at Clearwater, Florida

Witness by:  DET. M. Gardner

**THE ABOVE NAMED RESPONDENT, HAVING
WAIVED HIS RIGHT OF EXTRADITION, IS
HEREBY REMANDED WITHOUT BOND PENDING
ARRIVAL OF THE DEMANDING STATE.**

~78~

## IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT OF FLORIDA
### IN AND FOR PINELLAS COUNTY
### CRIMINAL DIVISION

STATE OF FLORIDA

            Plaintiff         Case Number(s) _O1 - 13909 CFAND-C_

v.

    DONALD COCHRAN

aka _____

            Defendant

## CHANGE OF PLEA FORM

1. I, __DONALD COCHRAN_____, Defendant herein, do hereby withdraw my plea of not guilty and enter a plea of (guilty) (nolo contendere no contest) to the charge(s) of __ROBBERY ( STRONG ARM )_____ _____ in the above-referenced case(s).

2. I understand that the plea of "not guilty" denies my guilt; a plea of "guilty" admits my guilt; and, a plea of "nolo contendere" or "no contest" means that, while I do not admit guilt, I will not contest the evidence against me. I understand that, if the court accepts my change of plea, I give up (waive) my right to a jury trial, and that I will be sentenced as a felony offender, based upon my plea.

3. I understand the charge(s) which has/have been placed against me and to which I am changing my plea. My lawyer has explained to me the elements of the crime(s), and any defenses I may have as well as the maximum penalty for the crime(s) to which I am pleading guilty or no contest, which is _____ __15 YRS FSP_____.

4. I understand that the guideline recommendations (will) (will not) be applied to my sentence.

5. I understand that, depending upon the nature of the offense(s) to which I am changing my plea, and/or upon the nature of any prior convictions, I may NOT be eligible for certain credits which shorten the length of the sentence imposed. The credits to which I may NOT be entitled include, but are not limited to, control release date (CRD) credits, and/or award(s) of gain time while I am in prison. I further understand that I may serve more time on my sentence than I would if I were not convicted of offense(s) of a nature such as these.

6. I understand that, if the court accepts my plea, I am hereby giving up (waiving) my right to a public jury trial, the right to require the State to prove the charge(s) against me beyond a reasonable doubt, and the right to see and hear the witnesses against me and to have my lawyer question them. I am also waiving the right to employ any defenses which I may have, the right to subpoena and the right to present witnesses, or other evidence, and the right to testify or remain silent, as I choose. I am waiving the right to have a jury decide whether I am guilty or not guilty.

7. I further understand that, by pleading guilty or no contest, I am hereby waiving my right to appeal the facts of the case. My lawyer has explained to me the meaning of an appeal. I further understand that I have thirty (30) days from this date to appeal the court's sentence and that, if I cannot afford to hire a lawyer to represent me for the purposes of an appeal, one will be appointed for me.

8. I do not require the State to tell the court the facts upon which the charge or charges are based before the court accepts my change of plea.

9. I am entering this plea because I believe it is in my best interest to do so, and it is what I wish to do of my own free will. No one has pressured me or forced me to enter this plea against my will. No one has promised me anything to entice me to change my plea to "guilty" or "no contest"; however, there has been an understanding that my sentence will consist of __18.6 MOS FLORIDA_ __SATE PRISON___ADJUDICATION_____ __SENTENCE TO RUN CONCURRENT WITH ANY SENTENCE SERVED IN DELAWARE__ __AND SENTENCE MAY BE SERVED IN DELAWARE ( DEF. AWAITS EXTRADITION )__

Page 2 Change of Plea Form ___ Case Number(s) _____ O1- 1390 9 CFAN 0

10. If I am to be placed on probation or community control, I will pay $50.00 per month towards court costs in the amount of $ _____ as ordered by this Court commencing with the first day of probation or community control until paid in full.

11. I agree to restitution in the amount of $ _____. If the amount of restitution is not decided at this time, I hereby waive any right to notice which I may have before such restitution may be imposed. I also waive any right to attend any hearing for such purposes.

12. My attorney has reviewed with me all statutory costs being assessed by the Court, including all mandatory and discretionary costs. My attorney has further advised me that I have a right to have the amount of each discretionary cost and certain mandatory costs individually announced in open court. I hereby waive my right to such individual announcement. I agree to pay all fines and costs, including the fines and costs checked on the attached sheets.

13. I further agree that there will be lien(s) placed against me and/or my real property for any unpaid fines, Public Defenders' fees, costs of prosecution, and court costs.

14. I hereby waive any right I may have to a Pre-Sentence Investigation (PSI), so that I may proceed directly to sentencing.

15. If I am not a citizen of the United States of America, I understand that this criminal proceeding could cause me to be deported to the country of my origin.

16. If I have ever been convicted of or pled to a sexually violent offense, I understand that I may later be subject to a civil commitment proceeding for sexually violent predators.

17. My education consists of ____ years of school. At this time, I am not under the influence of any alcoholic beverage, or other drug or medicine, nor am I suffering from any mental or emotional problems which affect my understanding of this plea form.

18. I have read every word of this written plea form. All blank spaces have been filled in and there are no blank spaces upon my accepting and signing this plea form. I have discussed, with my lawyer, the contents of the plea form, and I understand this written plea form fully. My lawyer has answered any questions which I have had.

19. I am satisfied with my lawyer's advice and help concerning my decision to change my plea, and in all matters pertaining to the above-referenced case(s).

SWORN TO, SIGNED, AND FILED IN OPEN COURT, in the presence of the presiding judge and defense counsel of record, this 28 day of September 2001.

x _____
Defendant

I hereby certify that I am counsel for the above-named Defendant in the above-referenced case(s), that I have explained to my client the elements, evidence, defenses, and rights related to the charge(s) against him/ her. I have further reviewed with my client all statutory fines and costs being assessed against him/her, including all mandatory and discretionary costs. I believe that my client understands the contents and the meaning of this plea form, his/her rights, and the consequences of his/her change of plea, and that he/she is entering this plea freely, voluntarily, and knowingly.

_____
Counsel for Defendant

I hereby find that the above-named Defendant did, on this date, freely, voluntarily, and knowingly change his/her plea in the above-referenced case(s).

_____
Presiding Judge

CtCr116(a,B) (Rev. 12/00)          ~ 80 ~          CrtCrim/wd2/D9/1/23/01

TO: District Attorney General: Office
    55 The Green
    Dover Delaware

FR: Donald R Cochran # 166499

RE  Extradiction To Delaware /
    Speedy Trial Request

OCTOBER 4, 2001

Dear D.A.G,

I have been advised that I have a detainer being
lodge against me for: Assault, Burglary, Poss. Deadly Weapon,
False Imp., Criminal Mis., by Delaware at Kent County.

This letter is to request your office to be brought
back to Delaware for the charges I'm being detained for. I
also will like to exercise my right for a speedy trial. I
would like to be picked up.

THANK YOU
DONALD COCHRAN

C:



- 81 -

TO: DISTRICT ATTORNEY General's OFFICE
55 THe Green
Dover Delaware

FR: Donald R. Cochran # 166499

RE: 2ND REQUEST EXTRADICTION/
SPEEDY TRIAL REQUEST

DEAR D.A.G.                            JANUARY 1, 2002

THis is my 2ND LETTER BEING FILED TO YOUR OFFICE
ASKING TO BE BROUGHT BACK TO DELAWARE, FOR TRIAL ON THE
PENDING CHARGES. I AM ONCE AGAIN REQUESTING FOR A
SPEEDY TRIAL I AM BEING DETAINED AT HARDEE CORRECTION
INSTITUTE IN FLORIDA.
    ON OR ABOUT, September 28, 2001 A JUDGEMENT WAS
ENTERED (UNDER A PLEA AGREEMENT), BY THE SIXTH
JUDICIAL CIRCUIT COURT OF FLORIDA. I ASK THAT THE
ARRANGMENTS BE MADE FOR my TRANSFER BACK TO DELAWARE.
I WOULD LIKE A SPEEDY TRIAL FOR THE CHARGES PENDING.

                            THANK YOU
                            DONALD Cochran

C:

A-4

- 82 -

TO: DISTRICT ATTORNEY Generals OFFICE
55 THE GREEN
DOVER DELAWARE

FR: DONALD R COCHRAN  # 166499

RE: 3RD REQUEST EXTRADICTION/
SPEEDY TRIAL REQUEST

DEAR D.A.G.                    MAY 12, 2002

    I AM WRITING A 3RD TIME TO YOUR OFFICE
ADVISING YOU THAT I HAVE BEEN AWAITING TO BE
PICKED UP FOR THE Charges in (SMYRNA/DOVER) of
THE ASSAULT, I.E. AND NO ONE HAS MADE ANY EFFORT
OF BRINGING ME BACK TO DELAWARE TO STAND TRIAL
FOR THEM.

    I REQUEST A SPEEDY TRIAL, FOR THE Charges
THAT FACE ME.

                        THANK YOU
                        DONALD Cochran

C:

A-5


- 83 -

**INMATE REQUEST**

DEPARTMENT OF CORRECTIONS

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _HARDIE WORK C.F.w_

| TO: (Check One) | ☐ Warden | ☐ Asst. Warden | CLASSIFICATION ☒ Classification ☐ Security 2 5 2002 | ☐ Medical ☐ Dental | ☒ Other m R S ↘ STATION |
|---|---|---|---|---|---|

| FROM: | Inmate Name DonALD CochRAN | DC Number 016699 | Quarters B-1-109L | Job Assignment FOOD SERVICE | Date 7-23-02 |
|---|---|---|---|---|---|

## REQUEST

I have a detainer on me from the state of
Delaware. And would to file for Detainer
Interstate Compact. I wrote to The WARDEN
asking For This. It was Received on July 2 02
& He said He would Forward a copy for sentence
specialist for handling. Haven't heard anything
Back me. Since, said so write to you And ask
you to get the paper work Done. Please let
me Know something BACK soon. This time
I-as suppose Expel suppose to BUL concurrent
with any time I get sentenced there. Thank you
                                          DonAND CochRAN

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview. All
informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE                    DATE RECEIVED: _____

○ apologia for the delay.
○ called Tallahasses to verity your eligibility to file I.A.D.
▽ they Referred me to care delaware.
○ Must received a Reply back soon then I will
keep a copy of your Request & will advise you
☑ the outcome.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied,

you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): _____ | Date: 8/8/02 |
|---|---|

Distribution:  White  -Returned to Inmate    Pink  -Retained by official responding, or if the response is to an
               Canary -Returned to Inmate           informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

EX-7

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    1
                         ( as of  12/11/2003 )
```

State of Delaware v.  DONALD R COCHRAN                     DOB: 04/21/1961
State's Atty: MARIE O GRAHAM , Esq.          AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.           RICK


Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0102010757 | IK02010397w | PDWDCF | RPG | 02/03/2003 |
| 002 | 0102010757 | IK02010398w | ASSAULT 1ST | RPG | 02/03/2003 |
| 003 | 0102010757 | IK02010399w | BURGLARY 1ST | RPG | 02/03/2003 |
| 004 | 0102010757 | IK02010400w | UNLAW IMPR 1ST | NOLP | 02/03/2003 |
| 005 | 0102010757 | IK02010401w | CRIM MISC <1000 | NOLP | 02/03/2003 |
| 006 | 0102010757 | IK02010402W | NONC W/CON BOND | NOLP | 02/03/2003 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 01/10/2002 | CASE ACCEPTED IN SUPERIOR COURT. | |
| 2 | 01/10/2002 | CASE CONSOLIDATED WITH 0102015219 | |
| 3 | 01/10/2002 | RULE 9 WARRANT ISSUED. | |
| 4 | 10/28/2002 | RULE 9 WARRANT RETURNED, BAIL SET AT SECURED BAIL-HELD        33,000.00 100% DEF. WAS ARRAIGNED. CCR: 11/12/02 AT 9:00 A.M. | FREUD ANDREA MAYBEE |
| 5 | 10/28/2002 | ARRAIGNMENT CALENDAR - DEFENDANT WAIVED READING; ENTERED PLEA OF NOT GUILTY; JURY TRIAL DEMANDED. RULE 9 WARRANT RETURNED. CCR: 11/12/02 AT 9:00 A.M. | FREUD ANDREA MAYBEE |
| 6 | 11/12/2002 | CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW 12/11, TRIAL 12/16/02 | VAUGHN JAMES T. JR. |
| 7 | 11/25/2002 | SUBPOENA(S) ISSUED. | |
| 8 | 12/11/2002 | FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL & FCR 12/16/02 | RIDGELY HENRY DUPONT |
| 9 | 12/16/2002 | TRIAL CALENDAR-CONTINUED 2/3, FCR 1/29/03. DEFENSE REQUEST. DEFENSE ATTY. IN TRIAL. | RIDGELY HENRY DUPONT |
| 10 | 01/15/2003 | SUBPOENA(S) ISSUED. | |
| 11 | 01/29/2003 | | WITHAM WILLIAM L. JR. |

A-7

IN THE MATTER OF:
State v. Donald Cochran
Super. Ct. No.:
IK02-01-0397 thru 0399


AFFIDAVIT OF:
Carole Richardson

State of Delaware    )
                     )S.S.:
County of Kent       )


    I, Carole Richardson, being duly sworn depose and say:


    1. I am the affiant herein and make this affidavit in support of
my son Donald Cochran's claims of the ineffective assistance of legal
counsel, etc..

    2. Acting on behalf of my son Donald I called Joseph M. Bernstein
(lawyer) and questioned him about extradition matters and he told me
that he had handled over 200 cases of extradition waivers like those
of my son's. I told him more about my son's case. He said that he'd
look into it andget back with me on it, sayin that it sounded like we
had a good chance to beat this.

    3. Taking Mr. Bernstein at his word, I hired him and sent him the
money to get statrted.

    4. Mr. Bernstein spoke with Donald and told him that the motion
that Donald's jail friend had done had to have a few things changed,
but that he would do it.

    5. That's when things started. He failed us as a lawyer. My son
asked Mr. Bernstein when he was going to file that motion. I called
Mr. Bernstein many times(3 to 5 times a week) to ask him about when
he was going to file the motion. He told me soon, but had one excuse
after another each time we spoke.

    6. On the day of trial he still had not filed the motion; hr told
us both that he would file it aftertrial. He had me so upset that
day - telling my son that he had to take a plea, and if he didn't
they would burn him for taking up their time, the Court's and the
Prosecutor's time - that he was going to get 50 years.

    7. Bernstein was going back and forth trying to scare my son into
the plea; he even tried to get me to send my son a scarey message to
take the plea and told me to tell him that he would get 7 to 9 years
if he did, and time for being in Florida.


                                  1

                          A-11 -89-

8. I was never so upset. I could feel the pain my son was going through - trusting a lawyer who lied to us and was not following the instructions that we were giving, or the law, and giving us untrue legal advice.

9. Mr. Bernstein took advantage of me and promised that he would file that motion and didn't, That is what I hired him to specifically do for my son - not scare him into a plea bargain.

10. My son asked the judge during the day of trial if Bernstein could file the motion and the judge said that it had to be done before the trial, which means that Bernstein lied to us and violated my son's right to motion to dismiss the case for the State failing to extradite and trial him within 180 days as the law says.

11. These facts are true and correct as I recollect.

Subscribed and sworn to this ___8___ day of ___October___ ,2004.

_____          _____
Notary Public                     Carole Richardson

2   A-11

4

1   Mr. Cochran operating under some degree of --

2           MR. BERNSTEIN:  Your Honor, the basis for

3   the Robinson plea is this:  Mr. Cochran, beyond

4   recalling kicking in the door to the residence, has

5   no recollection of the events that occurred after

6   that.  He was in a highly intoxicated state and also

7   had been using drugs that day.

8           There was some -- the reasoning -- there

9   was a reason, a reason he went into the house.  The

10  reason he went into the house was he had a long-term

11  relationship with Mrs. Naylor's daughter.  He was

12  walking by the residence, saw the daughter's truck

13  parked outside.  He wanted to -- some things he

14  wanted to discuss with her.  The victim in this case

15  was not -- was a totally unintended victim.  She

16  happened to be there.

17          Mr. Cochran had some issues with the

18  victim's daughter, and those are things we will get

19  into more detail about at sentencing, but for

20  present purposes Mr. Cochran does not have a

21  recollection beyond going into the house.  To put it

22  in his words, he snapped.  We have no reason -- I

23  have looked at the pictures.  Mr. Cochran has had an

A-12                    SHEILA A. DOUGHERTY
                       Official Court Reporter
                              91

1    opportunity to look at them. I don't believe there

2    really is any dispute that the victim here suffered

3    these injuries, the way she suffered them, and at

4    whose hand. The victim knows Mr. Cochran, has known

5    him for a while. It is not a question of a stranger

6    on stranger here. So we believe there is a factual

7    basis for the plea.

8              THE COURT: Okay.

9              MR. BERNSTEIN: May we continue with the

10   colloquy if the Court will have Mr. Cochran sworn?

11             THE COURT: Before I do that I want to

12   take a one minute recess, and I will be right back.

13             MR. GAREY: I wanted to say it wasn't the

14   victim's daughter, it was a friend of the victim's

15   son.

16             THE COURT: All right. One minute recess.

17   Be right back.

18             (A brief recess was taken.)

19             MR. BERNSTEIN: One correction, Your

20   Honor. I misspoke when I said the dispute that

21   Mr. Cochran had was with Miss Naylor's daughter. It

22   was with her son. I wanted to clear that up. Is

23   that right?

```
 1              THE COURT:  All right.  Thank you,

 2   Mr. Bernstein.

 3              I will ask Mr. Cochran to come forward to

 4   the podium and be sworn in.  Any objections to

 5   swearing on the Bible, Mr. Cochran?

 6              THE DEFENDANT:  No, sir.

 7              THE COURT:  All right.  Please swear him.

 8                        *  *  *  *  *

 9                    DONALD R. COCHRAN

10                        *  *  *  *  *

11              the defendant herein, being duly sworn,

12              was examined and testified as follows:

13   BY THE COURT:

14       Q.  All right, Mr. Cochran, I have some

15   questions which I need to have answered under oath.

16   That is the purpose of your being sworn in.

17       A.  Yes, sir.

18       Q.  You heard the statements of your attorney,

19   Mr. Bernstein, as well as the statements of the

20   prosecution.  I want to ask you:  Did you hear

21   everything that was said?

22       A.  Yes, sir.

23       Q.  Was everything said true and correct?
```

A-14

1      A.    No, sir.

2      Q.    What I am asking you, everything that the

3  attorneys, that is, Mr. Bernstein stated.

4      A.    He didn't get all the facts right, sir.  I

5  been two years.  This will be -- I am fighting for

6  my life here, and he didn't state some facts right

7  that should be stated right, and the reason why I

8  just didn't go in, and I don't remember what

9  happened to her, but he didn't state all the facts

10  right.

11     Q.    Are you saying that Mr. Bernstein did not

12  state all the facts that you thought he should have

13  stated?

14     A.    Yes, sir.  He was basically right, but he

15  doesn't have the facts right.  It wasn't

16  Mrs. Naylor's daughter, it was the woman I had been

17  seeing for ten years was sleeping around with

18  someone I called a friend, Tom Naylor, and I had

19  been drinking heavy and on drugs, and was going to

20  get more drugs, and they had lied to me.  Tom Naylor

21  had lied to me.  He was a friend and said he didn't

22  know who she was seeing, and I was getting some more

23  drugs and happened to see the truck at her -- his

$A-15$

SHEILA A. DOUGHERTY
Official Court Reporter
-94-



1    house, and I snapped from there, and all I remember

2    was kicking the door in.  I don't remember the

3    events that happened inside.  I had a blackout.  And

4    that's the facts.

5         Q.   Okay.  Most of what you said seems to me

6    to not be totally contrary to what your attorney

7    stated.  Do you -- but do you want a moment to talk

8    with your attorney again?

9         A.   No, sir.  He just said that it was the

10   victim's daughter and it wasn't the victim's

11   daughter.

12              THE COURT:  That is the only inaccuracy?

13              MR. BERNSTEIN:  I just corrected that.

14              THE COURT:  I understand, Mr. Bernstein.

15   BY THE COURT:

16        Q.   That was the only inaccuracy that you

17   recall; correct?

18        A.   Yes, sir.

19        Q.   Did not Mr. Bernstein make a correction to

20   that?

21        A.   She said it was his son -- he said it was

22   her son, but it was the woman I had been seeing,

23   about ten years, and Mrs. Naylor's son.

$A$-16

1    Court, but who pleads guilty before trial.  You

2    waive these rights.  Do you understand that?

3        A.   Yes.

4        Q.   Okay.  These rights are outlined for you

5    in paragraphs one through seven.  Do you see that?

6        A.   Yes.

7        Q.   On the form?

8        A.   Yes, sir.

9        Q.   Okay.  Is it your intention to waive these

10   rights by pleading guilty right now?

11       A.   Yes, sir.

12       Q.   Okay.  And did you fill out the rest of

13   the form correctly?

14       A.   Yes, sir, we did.

15       Q.   Okay.  Now, this form, as I mentioned

16   before -- we will get it straight now -- indicates

17   you will be pleading no contest or under State

18   versus Robinson to one count of burglary in the

19   first degree, which carries a maximum statutory

20   penalty of up to 20 years, plus a fine of up to

21   $2,300.

22            THE COURT:  I think -- isn't that at the

23   discretion of the Court, Mr. Garey?  Isn't the fine

A-17

 1   at the discretion of the Court?

 2              MR. GAREY:  Yes, Your Honor.

 3              MR. BERNSTEIN:  I believe so.

 4   BY THE COURT:

 5        Q.   Under burglary first.  Okay.  Then under

 6   assault first we have a potential maximum penalty to

 7   you of up to ten years imprisonment, and a fine at

 8   the discretion of the Court, as well as a 20-year

 9   potential incarceration for possession of a deadly

10   weapon during the commission of a felony.  So

11   altogether when you add up the total maximum

12   penalties you are facing, you are facing a potential

13   incarceration of up to 50 years in jail at Level 5,

14   plus fines determined at the discretion of the Court

15   according to law.  Do you understand that?

16        A.   Yes.

17        Q.   Okay.  Do you also understand because of

18   the nature of the offenses that you are going to be

19   entering this plea today, that you are also facing a

20   minimum mandatory penalty of up to four years

21   imprisonment.  Do you understand that?

22        A.   Yes, sir.

23        Q.   Okay.  Having said all that, and despite




 1   that, is it your intention to plead guilty today?

 2        A.    Yes.

 3        Q.    Pursuant to the Robinson plea?

 4        A.    Yes, sir.

 5        Q.    A Robinson plea; is that correct?

 6        A.    Yes.

 7        Q.    Has anyone forced or threatened you to

 8   enter this plea today?

 9        A.    Yes.  No, sir.

10        Q.    Are you in fact for purposes -- let me

11   explain something to you.  I should have explained

12   this to you earlier.  When I asked you whether you

13   were going to plead guilty, I am saying that because

14   for purposes of the plea colloquy that we are going

15   to treat this plea just as if you are pleading

16   guilty, where all the elements of the crime are

17   being admitted, even though you are going to be

18   pleading no contest or a plea pursuant to State

19   versus Robinson.  Do you understand that?

20        A.    Yes.

21        Q.    Okay.  And when I say "guilty," that is

22   what I am referring to.

23        A.    Yes, sir.

A-19

SHEILA A. DOUGHERTY
Official Court Reporter
-98-

1      Q.   Okay.  All right.  So no one has forced or

2   threatened you to enter this plea today; is that

3   correct?

4      A.   No, sir.

5      Q.   Are you in fact guilty of this plea?

6      A.   Yes.

7      Q.   I am sorry.  These crimes?

8      A.   Yes.

9      Q.   Turning next to the Truth in Sentencing

10  Guilty Plea Form -- I am sorry.  We just went over

11  that, but I did not ask you this.  Did you sign this

12  form in your own handwriting?

13     A.   Yes, sir.

14     Q.   Okay.  Now, referring to the plea

15  agreement, the plea agreement which has been

16  reviewed by counsel today, and discussed with you as

17  well, does this plea agreement reflect everything

18  that you have agreed to do?

19     A.   Yes.

20     Q.   Did you sign the form?

21     A.   Yes.

22     Q.   Thank you.  Have you had enough time to

23  talk to your attorney about this?



SHEILA A. DOUGHERTY
Official Court Reporter
-99-

1          A.    Yes.

2          Q.    Thank you.  Do you believe your attorney

3    has fully advised you of your rights pertaining to

4    your plea?

5          A.    Yes.

6          Q.    And has he otherwise represented you in

7    this case to your satisfaction?

8          A.    Yes.

9          Q.    Thank you.

10              THE COURT:  All right.  Mr. Bernstein, is

11   there any reason why the Court should not accept

12   this plea?

13              MR. BERNSTEIN:  No.  There are a couple

14   other things I wanted to put on the record.

15              One of the things that I looked into when

16   I got into this case was potential speedy trial

17   claim on Mr. Cochran's part because of the fact that

18   he was brought back on a detainer from Florida.  I

19   looked into that and in fact had prepared a written

20   motion for -- on speedy trial grounds, had this case

21   gone to trial.  For the record, I am just going to

22   file that motion with the Court.

23              I explained to Mr. Cochran that because he

A-21

SHEILA A. DOUGHERTY
Official Court Reporter

1    is entering a guilty plea he will not be able to

2    raise that in the future or now.  I also told

3    Mr. Cochran that, and Mr. Cochran has given this

4    matter quite a bit of thought.  These are very

5    serious charges obviously.  And I explained to

6    Mr. Cochran that once the Court accepts this plea he

7    can't come back tomorrow and say, "I want to take it

8    back."

9         As I said, I say that because I know

10   Mr. Cochran has given this matter a lot of thought

11   and he ultimately decided that this plea was in his

12   best interest in the long run, and that is why he is

13   standing here today, but I want to make sure that

14   those things, the fact that there was a potential

15   speedy trial motion, he is aware of that, and he

16   knows he is giving that up as part of this plea

17   agreement, and it is on the record, and he

18   understands that.

19              THE COURT:  All right.  Thank you,

20   Mr. Bernstein.

21              Mr. Bernstein is quite accurate,

22   Mr. Cochran.  If that motion is going to be filed,

23   and you may file the motion if you wish, but despite

A. 22

1   that if you are going to enter your plea today, and

2   the Court is going to treat your plea as a guilty

3   plea, which it can do so under the law, you are

4   going to make that matter moot and that matter will

5   not be successful at this point and because you are

6   facing some pretty serious time because of these

7   charges.  Do you have something else you want to

8   say?

9            THE DEFENDANT:  No.  I just wanted to

10  question, if I would have filed that speedy trial

11  motion, the violation of due process, would you have

12  had that heard before I went to court, or what?

13  They said I would have went to trial today

14  regardless if I had filed that, and there was some

15  issue with it because the State of Delaware knew

16  where I was, and they -- a judge in Florida told me

17  they was coming to get me, and I tried everything to

18  get up here.  But Mr. Garey wants to give me a lot

19  of time, and they knew I was there and had a plea

20  agreement to be extradited here, and you know, I

21  just -- he said if I didn't take the plea today,

22  that the motion for the speedy trial would be heard

23  after the trial, and I don't know, I just wanted

A-23

SHEILA A. DOUGHERTY
Official Court Reporter
- 162 -

1   that on the record.

2          I don't know why he wanted to put that on

3   the record if it didn't mean anything, so but I took

4   the plea.  I just would like that question answered

5   in front.  I have had a judge tell me some things

6   that the prosecutors and attorneys have told me

7   different, so I don't know, you know, what is up.  I

8   am fighting for my life on this motion, on this

9   matter.

10          MR. BERNSTEIN:  Your Honor, the reason I

11  mentioned that is because there is an argument that

12  can be made that -- however, taking all things into

13  consideration, Mr. Cochran decided to enter this

14  plea.  I simply wanted to put on the record so

15  Mr. Cochran understands that there is no question at

16  all that by pleading guilty he won't be able to

17  pursue that, at least with respect to these charges.

18          THE COURT:  Has a speedy trial motion been

19  filed yet?

20          MR. BERNSTEIN:  It has not been filed.  It

21  is in my folder.

22          THE COURT:  All right.

23          MR. BERNSTEIN:  I am just going to file it

A.24

20

1   as a matter of record.

2          THE COURT: All right. I understand.

3          I will say this to Mr. Cochran. Had this

4   motion been filed prior to this plea being taken,

5   and of course it should be filed prior to this

6   matter being set, being present for trial, prior to

7   the trial date, excuse me, and the trial date was

8   scheduled for today.

9          MR. BERNSTEIN: I didn't have all the

10  paperwork to back it up.

11         THE COURT: I understand. All I am

12  saying, I am only reciting all this, because if it

13  had been filed the Court would have had to decide it

14  first before it accepted your plea. However, you

15  have chosen at this point to enter the plea the way

16  you did.

17         THE DEFENDANT: Yes, sir. The reason for

18  that is because I was told that the motion would

19  have been filed and I would have went to trial

20  today, and I wouldn't have had the motion heard, and

21  I asked him about it being heard before they took me

22  to trial, and he said I would go to trial today.

23         I believe that there was some -- now he is

A.25

SHEILA A. DOUGHERTY
Official Court Reporter

1   saying that there was some argument that could be
2   brought about the violation of a due process, and I
3   was -- all I wanted was just to be fair with this
4   all, you know, and now they are bringing this up and
5   if he had told me that I might have -- I had nothing
6   to lose to have the motion heard for the speedy
7   trial because it violated my 6th Amendment right,
8   and the charges should be dropped under that. And I
9   had no, you know, they said if I didn't take, if I
10  didn't -- if I put the motion in for the speedy
11  trial argument that I would have to go to trial
12  today.

13          And now you are saying that that is not
14  true, so I don't know. I am not a lawyer. I been
15  trying for two years to get this taken care of, sir,
16  and I just want the fairest and the right way, you
17  know, where I have a 6th Amendment right that was
18  violated, and now he wants to put that on the
19  record, that just shows that there might have been
20  something that could have been done about it.

21          MR. BERNSTEIN: Your Honor, just to
22  clarify, I told Mr. Cochran that his motion would be
23  heard on the merits before the trial. However, he

1   could not plead guilty and have the motion heard.

2              THE DEFENDANT:  I wasn't going to do that.

3   I was going to see what happened with the speedy

4   trial motion and then see.

5              MR. BERNSTEIN:  There wouldn't be any plea

6   agreement; is that correct, Mr. Garey?

7              MR. GAREY:  That's correct, Your Honor.

8              THE COURT:  That makes sense, obviously.

9   If you had a pending motion for dismissal because of

10  the violation of what you view to be a violation of

11  your Constitutional rights from the fact that you

12  did not have a speedy trial, that would have had to

13  have been decided first before the Court could

14  accept a plea; but it was not filed, so the Court

15  could accept the plea.

16             Now, if you want to think about that for a

17  moment I will give you a chance to talk with your

18  attorney, but I assume you weighed all the pros and

19  cons of doing this and not doing that -- hear me out

20  at this time -- and that is why you are proposing

21  the plea which the Court is prepared to accept at

22  this time.  But if it is your intention to move

23  forward with your motion for speedy trial, then I

A-27

23

1   will not accept this plea.  You have to make up your

2   mind what you want to do.

3             THE DEFENDANT:  Right.  Well, I think I am

4   entitled to an answer.  If the motion is heard for

5   the speedy trial first, before I go to trial, and

6   then you decide on that, it is either dismissed or

7   not dismissed, and then you proceed to a trial, or

8   is there a plea?

9             MR. GAREY:  Your Honor, I have something

10  to say.

11            MR. BERNSTEIN:  I gave this to Mr. Garey

12  Friday.

13            THE DEFENDANT:  I am saying apparently

14  there is some argument to it.

15            MR. GAREY:  The State is prepared to

16  extend the plea that we extended to Mr. Cochran.

17  However, if the plea is not accepted, and we hear

18  motions, there will not be a plea agreement.  We

19  will be going to trial.  There is no Constitutional

20  right to a plea by solution.  So that is --

21            THE COURT:  And you will be going to trial

22  on all charges; correct?

23            MR. GAREY:  That is correct.

A-28

1                  THE COURT:  Okay.

2                  THE DEFENDANT:  Well, just go ahead with

3      this.

4                  THE COURT:  Do you want to take a moment

5      to talk to your attorney?  I can break.

6                  THE DEFENDANT:  No.  It is all right.  I

7      will take -- I will take the Robinson.

8                  THE COURT:  All right.  So you are

9      prepared to go forward?

10                 THE DEFENDANT:  Yes, sir.

11                 THE COURT:  Okay.  All right.  So you have

12     had enough time to talk with your attorney; is that

13     correct?

14                 THE DEFENDANT:  Yes, sir.

15                 THE COURT:  Okay.  And Mr. Bernstein has

16     stood up and made that presentation.

17                 Other than that, Mr. Bernstein, is there

18     any other reason why this Court should not go

19     forward with the plea?

20                 MR. BERNSTEIN:  No.  I just wanted to make

21     sure the Court was aware of those facts and that

22     Mr. Cochran was aware that he had a right to pursue

23     one or the other, but not both.

1          THE COURT:  Okay.  I think we pretty much
2   fleshed that out and made that pretty clear, is my
3   understanding.
4               Mr. Cochran does understand that; correct?
5               THE DEFENDANT:  Yes, sir. ·
6               THE COURT:  Okay.  Thank you, Mr. Cochran.
7   Thank you, Mr. Bernstein.
8               Just a minute.  We are not quite done yet.
9               Mr. Garey, is there any other reason why
10  you see -- a reason why this Court should not accept
11  this plea?
12              MR. GAREY:  No, Your Honor.
13              THE COURT:  Okay.  All right.  The Court,
14  having heard the presentations by the attorneys and
15  having gone through the plea colloquy with the
16  defendant, and having taken some time to explain
17  both the nature of what the Robinson plea is all
18  about and having explained that to him, the Court is
19  satisfied that there is sufficient proof to
20  establish that the prosecution could present a prima
21  facie case before the Court, and there is a basis in
22  fact for the plea, and there is also a basis for
23  Mr. Cochran to enter the Robinson plea as well.

A-30

SHEILA A. DOUGHERTY
Official Court Reporter

26

1        Therefore, the Court will accept the plea

2   as submitted, and in accordance with the

3   recommendation submitted to the Court by counsel I

4   will order a presentence investigation be conducted

5   by our ISO office at this time.        :

6        What date are we going to have for the

7   sentencing?

8        THE CLERK:  April 17.

9        THE COURT:  April 17.  Now, let me also

10  just take a moment to explain, Mr. Cochran, what the

11  sentencing will be all about.

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  At that time your attorney,

14  Mr. Bernstein, may appear on your behalf, and so the

15  State through Mr. Garey.  I will receive from a

16  presentence officer, who is an officer of this

17  Court, he will conduct an investigation about who

18  you are, your background.  He will explain what he

19  finds about the nature of the offenses for which you

20  are pleading, entering your plea about, and he will

21  also solicit information from any victims about

22  restitution potentially, and also you will have an

23  opportunity, if you wish, to submit any letters of

SHEILA A. DOUGHERTY
Official Court Reporter

1    recommendation or any letters of mitigation you want
2    to submit through your attorney, and I will have
3    that in a package. That report will be submitted to
4    me, and it will make a recommendation to me. Your
5    attorney will be allowed to see it. He will not be
6    allowed to see what is specifically being
7    recommended for me to sentence you to.

8            Now, I may choose not to accept that
9    report. I will also hear from both your attorney
10   and the State at a sentencing hearing, and you will
11   be allowed to also talk to me as well, and have
12   anybody present as well, and at that time I will
13   then make a determination of what your sentence
14   ought to be. Okay?

15           THE DEFENDANT: Yes, sir.
16           THE COURT: What is the date?
17           THE CLERK: April 17.
18           THE COURT: April 17. Okay.
19           MR. BERNSTEIN: Do we have a time frame?
20           THE COURT: Usually nine o'clock.
21           MR. BERNSTEIN: All right..
22           THE COURT: I am sure, Mr. Bernstein, if
23   you are going to be a little delayed, just let us

A-32                    SHEILA A. DOUGHERTY
                      Official Court Reporter

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER,
a Facility of and for and on behalf of, the
Division of Alcoholism, Drug Abuse and
Mental Health, Department of Health and
Social Services, State of Delaware,
                    Petitioner

v.

DONALD COCHRAN

                    Respondent

CONFIDENTIAL INFORMATION
For professional use by authorized
persons only -- not to be duplicated
or released to others.

**AFFIDAVIT**

I, **Jiro R. Shimono, ACSW,** first duly sworn in accordance with law declares
as follows:

1. I am the **Director** of the Delaware Psychiatric Center, the Petitioner
in the above captioned matter; and

2. The facts alleged in the foregoing Complaint are true and correct to
the best of my knowledge and belief.

**HOSPITAL OFFICIAL**

SWORN TO AND SUBSCRIBED before me this 14th day of **June,** 1999.

**NOTARY PUBLIC**

My Commission expires on ___10/19/01___

A-33

~112~

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a Facility of  :
and for and on behalf of, the Division of          :          C.A. No.
Alcoholism, Drug Abuse and Mental Health, the  :
Department of Health and Social Services,        :
State of Delaware,                                         :
                                    Petitioner,            :
                                                                   :
              v.                                                  :
                                                                   :
DONALD COCHRAN,                                  :
                                    Respondent.         :

CONFIDENTIAL INFORMATION
For professional use by authorized
persons only -- not to be duplicated
or released to others.

## COMPLAINT

1.    Respondent was provisionally admitted as an involuntary mental patient in the
said Hospital upon the certificate of a Psychiatrist.  *See attached for date of admission.*

2.    Respondent was examined by the Hospital's examining Psychiatrist and certified
by him/her to be a mentally ill person in need of observation and treatment in a mental
hospital.  *See attached for date of examination.*

3.    Petitioner reasonably and in good faith believes that respondent is a mentally ill
person and should be continued as a patient in said Hospital pursuant to 16 Del. C. Chapter 50.

4.    Attached is the Certificate for Involuntary Admission, incorporating all the pertinent
information needed to comply with 16 Del. C. Chapter 50.

5.    Respondent has been advised of his/her rights under 16 Del. C. Chapter 50.

WHEREFORE, Petitioner prays that the Court enters an Order scheduling a hearing on this issue
of whether or not the Respondent's confinement is based upon probable cause, and such further Orders as
shall be deemed right and proper by the Court.

June 14, 1999
Date

Kathryn L. Bunyille, Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for Petitioner

A-34

-113-

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DELAWARE PSYCHIATRIC CENTER, a | : | |
| Facility of and for and on behalf of, | : | |
| The Division of Alcoholism, Drug Abuse and | : | |
| Mental Health, the Department of Health and | : | |
| Social Services, State of Delaware, | : | **C.A. No.** |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD COCHRAN, | : | |
| Respondent. | : | |

## **NOTICE OF HEARING**

You, the respondent, are to appear before the Superior Court on **Wednesday JUNE 23, 1999 at 8:30 a.m.** for a Mental Hearing. Please report to the Delaware Psychiatric Center Jane E. Mitchell Building, 1901 N. DuPont Highway, New Castle, DE 19720, for this hearing. If you have any questions, please talk to your Court appointed attorney who will contact you during the week prior to the above-scheduled hearing. Your spouse, other nearest relative or person of close relationship will also receive a copy of this notice.

_____
DEPUTY ATTORNEY GENERAL

June 14, 1999
DATE

A-35

-114-

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a Facility of :
and for and on behalf of, the Division of          :
Alcoholism, Drug Abuse and Mental Health, the  :
Department of Health and Social Services, State    :    C.A. No.
of Delaware,                                       :
                                                   :
                    Petitioner                     :
                                                   :
        v.                                         :
                                                   :
DONALD COCHRAN,                                    :
                    Respondent                     :

CONFIDENTIAL INFORMATION
For professional use by authorized
persons only - - not to be duplicated
or released to others.

### ORDER SETTING DATE FOR PROBABLE CAUSE HEARING

AND NOW, TO-WIT, this        day of                   , 1999, the Petition in this

cause having been presented to the Court and maturely considered, it is hereby

ORDERED THAT:

1.      A hearing to determine whether probable cause exists for Respondent's confinement as a

patient at the Delaware Psychiatric Center shall be held on the **23RD Day of JUNE, 1999** at 8:30 in the

forenoon;

2.      Unless notice of this hearing, and copies of the Petition and of this Order as proposed,

have already been supplied to Respondent, Respondent's Counsel and the spouse, nearest relative or other

person in close relationship who would best represent the Respondent's interest, Counsel for Petitioner

shall supply such notice and copies of the Petition and this Order to each of them no later than the third

day before the date of the hearing;

3. Martin C. Meltzer, Esquire  is appointed as attorney to represent the Respondent in the

probable cause hearing and in any other hearings scheduled by the Court in the above-captioned case.

_____
JUDGE

A-3 6
-115-

DISCHARGE SUMMARY                                        PAGE 4
COCHRAN, DONALD
HOSPITAL #45012

<u>RELEASE NOTE AND AFTERCARE PLAN:</u>    Patient was discharged direct to 27
Tilbert Circle, Dover, Delaware; 424-1164.  He was referred to probation on 6/21/99;
contact person is Dave Benson.    He was also referred to Pathways on 6/20/99.
Anticipated problems are that patient may return to using alcohol or drugs, may encounter
legal difficulties and may encounter family problems.

Reviewed by:

Nishita Mehta, M.D.

David Springer, M.D.

CONFIDENTIAL INFORMATION
for professional use by authorized
persons only -- not to be duplicated
or released to others.

Dict. 06/18/99
Typed 06/30/99
NM/gaf

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE,  )
                    )
        v.          )    Crim. A. No.  IK02-01-0397 thru 0399
                    )
                    )    ID. No.
DONALD COCHRAN,     )
        Defendant.  )
                    )

## AFFIDAVIT OF DONALD COCHRAN

I, Donald Cochran, swear that the facts contained in this affi-
davit are true and correct as I believe them to be, and support my
claims of the ineffective assistance of counsel and other violations
of the Constitutions.

1. After my arrival to the Delaware Correctional Center October
24, 2002 my Mother, Mrs. Carole Richardson, talked with Attorney
Joseph Berstein about my case here. She hired Mr. Berstein based on
his telling her that he was an expert on extradition issues and the
best of trial lawyers.

2. Mr. Berstein came to the Delaware Correctional Center  to talk
with me approximately November, 2002. We talked about my case and
what he could do for me based upon the pretrial motion to dismiss
because of violations of my Speedy Trial rights.

3. On the visit(above mentioned) Mr. Berstein took a Motion to
Dismiss from me, which some inmate at the Law Library helped me do.
I do not have legal skills and have to rely on the other inmates to
help do my legal work for me. Left to my own abilities I am not
able to draft motions, etc.. After talking with the different guys
in the law library they feel that I had some violations done to me
in my case by the prosecutor and defense lawyer, Mr. Berstein[Mr.
Bernstein].

4. Mr. Bernstein drafted his own motion from the facts he took
from the motion the inmate did for me. I talked with him at the Kent
County Courthouse at a case review where he showed me his motion in
rough draft. He also told me that he hadn't been able to talk with
the prosecutor, John Garey, but that he would make Mr. Garey sweat
when he shows him the mtion to dismiss for failure to indict in a
timely manner, failure to extradict timely, and failure to bring me
to trial within a year.

A -38

5. Mr. Bernstein then went on to say that there had been no plea offer made but that in his 20 years of practicing law he believed that I would receive no more than 7 to 9 years. he assured me that he would mail the motion off so it would be filed before my trial date, which was in February of 2003.

6. I again talked with Mr. Bernstaein on the date trial had been scheduled and he said he wanted me to plead guilty in open plea to three of the five charges. I asked him about filing the motion to dismiss and he said that he wasn't going to file it because if he did and we lost trial I would get 50 years.

7. I told him that I did not want to plead guilty but wanted the motion filed. He left, came back, and told me that he could get me a Robinson Plea and credit for the time I served in Florida waiting to be extradicted to Delaware. I told him that I was not interested and wanted him to file the motion. He said it was the wrong thing to do, that I would be wasting the Court's time. We kept arguing about filing the motion; he refused and said that even if we filed it that day it would not be heard until after the trial - that they were up stairs picking the jury as we spoke.

8. The Corrections Officers came in the room and said they were waiting for us to come upstairs. He asked them to give him a few minutes, and pulled out the plea agreement offer and said they were not offering more than 18 years on a Robinson Plea and that he'd get me 7 to 9 with the rest on probation.

9. So I caved in and signed the plea against my better judgment. After the judge accepted the State's plea Mr. Bernstein stood up and said that for the record he wanted to file the motion for dismissal. That is when I started questioning the court about it. He talked me out of filing it when he knew it had merit.

10. The rest is in the transcripts. I didn't want to take a plea but felt that I had no choice sine[since] my lawyer wasn't acting in my best interest.

11. The facts are true and correct as I believe and remember.

Subscribed and sworn to this 28 day of September, 2004.

_____
Notary Public

_____
Donald Cochran

A-38

2

- 118-

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | : |
| | : |
| v. | : |
| | : I.D. No. 0102010757 |
| | : |
| DONALD R. COCHRAN, | : |
| Defendant. | : |
| | : |

## RESPONSE OF JOSEPH M. BERNSTEIN TO DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF

In accordance with the Court's Order in the above matter, the undersigned (hereinafter "Counsel") hereby responds to the allegations set forth in the Defendant's Motion for Post-Conviction Relief as follows:

1. **Failure to file a timely pre-trial motion:** The defendant alleges that Counsel was ineffective because Counsel failed to file a motion to dismiss the charges based on violations of the defendant's constitutional right to a speedy trial and violations of the Interstate Agreement on Detainers (11 *Del.C.* §2542). Such a Motion was, in fact filed with the Court. (Exhibit "A"). On the day of trial, the State tendered a plea offer to the defendant (which he ultimately accepted) which required that he withdraw the motion to dismiss. In other words, if the defendant wanted to pursue the motion to dismiss, the plea offer would be withdrawn and the case would proceed to trial if the motion to dismiss, was denied. Counsel advised the defendant of the above facts and the defendant agreed to enter a guilty plea knowing the court would not make any ruling on the motion to dismiss. (Exhibit "B," Tr., pp. 16-23).[1]

---

[1] Exhibit "B" is an excerpt from the defendant's plea colloquy.



2. **Failure to investigate competency issues:** Counsel did not investigate the possibility of

raising a "mental illness" defense to the charges. Counsel also did not consider the possibility the

defendant was not "competent" to assist with his defense or to enter a guilty plea. A "Robinson

Plea" was accepted by the State and the Court because the defendant claimed to have no specific

memory of the incident due to drug and alcohol intoxication. (Exhibit "B," Tr., pp.4-6).

*Joyph MB*

JOSEPH M. BERNSTEIN

SWORN TO AND SUBSCRIBED before me this $\underline{4}^{th}$ day of April, 2006.

*Sharond Berwager*

Notary Public

Notary Public, State of Delaware
Sharon E. Berwager
My commission expires on __6·6·07__





# STATE OF DELAWARE
### DEPARTMENT OF JUSTICE

### CARL C. DANBERG
**Attorney General**



**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT  COUNTY**
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

**PLEASE REPLY TO:**

KENT COUNTY

May 5, 2006

The Honorable William L. Witham, Jr.
Judge
Kent County Superior Court
Kent County Courthouse
38 The Green
Dover, Delaware 19901

RE:   State v. Donald Cochran
      ID No. 0102010757

Dear Judge Witham:

Please accept the following as the State's response to the
Petitioner's Motion for Post-Conviction Relief filed pursuant to
Superior Court Criminal Rule 61.

The Petitioner has raised the following grounds for relief:
violation of Delaware Uniform Agreement on Detainers, ineffective
assistance of counsel, failure to hold an evidentiary hearing to
determine competency, and lack of mitigating evidence presented at
sentencing.   These will be addressed in order.

### Violation of Delaware Uniform Agreement on Detainers

The Petitioner alleges that the State of Delaware failed to
comply with the 180 day requirement of the Delaware Uniform
Agreement on Detainers, 11 *Del. C.* § § 2540-2550. This ground does



~ 121~

not merit relief for two reasons. First, the defendant was brought to trial within the 180 day time limit. Second, the defendant waived this right when he accepted a plea.

Pursuant to 11 *Del. C.* § 2542, "the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court... written notice of the place of imprisonment and the request for final disposition to be made of the indictment, information or complaint..." Furthermore, the prisoners request to be transferred to the State of Delaware must be accompanied by a certificate from the official who has custody of the prisoner detailing the term of commitment in that jurisdiction, the amount of time served, the amount of time remaining to be served, any good time earned as well as information about parole eligibility. Even though the petitioner alleges that he sent three such requests on October 4, 2001, January 1, 2002 and May 12, 2002 respectively, the State contends that none of those letters met the strict requirements of the statute. All three letters were sent to the Attorney General's Office. However, none of them were sent to the Court (according to the Court's docket), two of the letters did not indicate where the petitioner was held, and none of the letters were accompanied by the appropriate certification from the Florida prison. The State contends that the appropriate paperwork was not received by the Attorney General's Office and the Court until August 28, 2002 when the petitioner waived extradition. Therefore, the 180 days did not begin to run until August 28, 2002. See *State v. Farrow*, 2005 Del. Super. LEXIS 199 citing *Isenhower v. State*, 516 A.2d 482 (Table) and *Beebe v. State* 346 A.2d 169 (Del. 1975). The defendant accepted a guilty plea on February 3, 2003 which is within the 180 day requirement.

The petitioner's argument also fails because he accepted a guilty plea thereby waiving any violations. A defendant is bound by his answers on a guilty plea form unless proven otherwise by clear and convincing evidence. *Blanchfield v. State*, 1994 WL 590536 (Del. 1994). On the Truth and Sentencing Guilty Plea Form, the petitioner indicated that he understood that by pleading guilty he would not have a trial thus giving up many Constitutional rights, including the right to a speedy trial. (See Exhibit 'A'). Furthermore, the Court inquired in the plea colloquy about whether the petitioner understood that he could either pursue the Motion to Dismiss or accept the plea. After much discussion, the petitioner elected to accept the plea (See Exhibit 'B', Tr. pp. 17-25).

## Ineffective Assistance of Counsel

The petitioner alleges that his counsel was ineffective by failing to explore petitioner's mental state and for counsel's failure to file the Motion to Dismiss. This ground does not merit relief. To be successful, the petitioner must show that Mr.



Bernstein's representation fell below "an objective standard of reasonableness". *Strickland v. Washington*, 466 U.S. 668, 668 (1984). The petitioner must show that Mr. Bernstein's deficiencies were prejudicial and that the outcome would have been different but for his errors. *Strickland*, 466 U.S. at 694. Furthermore, the Delaware Supreme Court has consistently held that the petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. E.g., *Outten v. State*, Del. Sup., 720 A.2d 547, 552 (1998); *Righter v. State*, Del. Sup., 704 A.2d 262, 263 (1997).

As counsel points out in his response to Petitioner's motion, the Robinson plea was accepted by the defendant because he alleged that he did not have a memory of the events which led to the charges. In a discussion with the Court, the petitioner admitted that he was under the influence of drugs and alcohol at the time of the incident and that as a result he does not remember what happened once he kicked in the door. (See Exhibit 'C', Tr. pp. 7-8). Defense counsel points out in his response that he did not explore raising "mental illness" as a defense or that he was not competent to accept the plea. The petitioner does not allege any specific facts which show that this failure was in any way prejudicial and that the outcome would have been different if these issues were explored.

The petitioner also alleges that the defense counsel's failure to file the motion to dismiss prior to the day of trial was ineffective. The State contends that even if the motion was filed that the ultimate result would have been the same since the petitioner's right to a speedy trial was not violated. Furthermore, the defendant waived that right when he accepted the plea. Therefore, the State contends that the defense counsel's assistance was not ineffective.

### Failure to Hold an Evidentiary Hearing to Determine Competency

The third ground for relief raised by the Petitioner alleges that he was not competent at the time he accepted the plea. According to the petitioner, because of a mental illness, he was incapable of making rational decisions. The State contends that this allegation is not supported by the record. The petitioner completed both the guilty plea form and the Truth and Sentencing Guilty Plea Form. The petitioner was engaged in a lengthy discussion with the Court concerning his options with respect to the Motion to Dismiss and the plea agreement. The petitioner asked pertinent and probative questions to the Court and was able to correct a factual mistake provided to the Court by the defense counsel. Since the record is devoid of any facts to support the petitioners claim, this allegation should be dismissed.

### Lack of Mitigating Evidence



The Petitioner's last ground for relief states that there was a lack of mitigating evidence presented at sentencing and that if mitigating evidence was presented, he may have received a lighter sentence. At the time of sentencing, every defendant is afforded an opportunity to address the Court to present any information that may assist the Court in determining a sentence. Therefore the petitioner had the opportunity to provide this information at sentencing. The Petitioner has made only a conclusory argument.

Since the petitioner's arguments are without merit, the State respectful requests that this Rule 61 motion be dismissed.

Respectfully submitted,

SUSAN SCHMIDHAUSER
Deputy Attorney General

SS:md

cc:     Prothonotary
        Joseph M. Bernstein, Esq.
        Donald Cochran

~ 124 ~

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR ___Kent___ COUNTY

**STATE OF DELAWARE**      )      ID: 0102010757

**v.** Donald Cochran      )

               )     CRA: _____

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth __4-21-61__       Last grade in school completed __12th__

Have you ever been a patient in a mental hospital?     ☒ Yes ☐ No
Are you under the influence of alcohol or drugs at this time?     ☐ Yes ☒ No
Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement?     ☒ Yes ☐ No
Have you been promised anything that is not stated in your written plea agreement?     ☐ Yes ☒ No
Has your attorney, the State, or anyone threatened or forced you to enter this plea?     ☐ Yes ☒ No

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
(1) **to be presumed innocent** until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
(2) to a **speedy and public trial**;
(3) to **trial by jury**;
(4) to **hear and question the witnesses** against you;
(5) to **present evidence** in your defense;
(6) to **testify** or not testify yourself; and,
(7) to **appeal** to a higher court?     ☒ Yes ☐ No

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---------|-------------------|---|---------------|
| | Incarceration | Amount of Fine (range if applicable) | |
| Burg I | 20 yrs | 2,300 | 2 yr mm / 2-5 L-5 |
| Assault II | 10 yrs | '' | up to 30 mos |
| PDW DCF | 20 yrs | '' | 2 yr mm / 2-5 yrs 4-5 |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:** Incarceration: __50__    Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year?     ☒ Yes ☐ No
Is there a **minimum mandatory penalty**?     ☒ Yes ☐ No
If so, what is it? __4 yrs__
Is there a **mandatory revocation of driver's license or privileges** for this offense or as a result of your plea?     ☐ Yes ☒ No
If so, what is the **length of revocation**? _____ years
Has anyone promised you what your sentence will be?     ☐ Yes ☒ No
Were you on **probation or parole** at the time of this offense? (A guilty plea may constitute a violation.)     ☒ Yes ☐ No
Do you understand that a guilty plea to a felony will cause you to **lose your right to vote, to be a juror, to hold public office**, and other civil rights?     ☒ Yes ☐ No
Have you been advised that this is an offense which results in the loss of the right to **own or possess a deadly weapon**?     ☒ Yes ☐ No
Have you been advised that this is an offense which requires registration as a **sex offender**?     ☐ Yes ☒ No
Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea?     ☒ Yes ☐ No
Have you read and understood all the information contained in this form?     ☒ Yes ☐ No

_Joseph M B_____     _2-3-03_     X _Donald Coch_____

    Defense Counsel        Date            Defendant

Print name: __Joseph Bernstein #780__       Print name: __Donald Cochran.__

EXHIBIT A

1   is entering a guilty plea he will not be able to

2   raise that in the future or now.  I also told

3   Mr. Cochran that, and Mr. Cochran has given this

4   matter quite a bit of thought.  These are very

5   serious charges obviously.  And I explained to

6   Mr. Cochran that once the Court accepts this plea he

7   can't come back tomorrow and say, "I want to take it

8   back."

9           As I said, I say that because I know

10  Mr. Cochran has given this matter a lot of thought

11  and he ultimately decided that this plea was in his

12  best interest in the long run, and that is why he is

13  standing here today, but I want to make sure that

14  those things, the fact that there was a potential

15  speedy trial motion, he is aware of that, and he

16  knows he is giving that up as part of this plea

17  agreement, and it is on the record, and he

18  understands that.

19          THE COURT:  All right.  Thank you,

20  Mr. Bernstein.

21          Mr. Bernstein is quite accurate,

22  Mr. Cochran.  If that motion is going to be filed,

23  and you may file the motion if you wish, but despite

EXHIBIT B





1   that if you are going to enter your plea today, and

2   the Court is going to treat your plea as a guilty

3   plea, which it can do so under the law, you are

4   going to make that matter moot and that matter will

5   not be successful at this point and because you are

6   facing some pretty serious time because of these

7   charges.  Do you have something else you want to

8   say?

9          THE DEFENDANT:  No.  I just wanted to

10  question, if I would have filed that speedy trial

11  motion, the violation of due process, would you have

12  had that heard before I went to court, or what?

13  They said I would have went to trial today

14  regardless if I had filed that, and there was some

15  issue with it because the State of Delaware knew

16  where I was, and they -- a judge in Florida told me

17  they was coming to get me, and I tried everything to

18  get up here.  But Mr. Garey wants to give me a lot

19  of time, and they knew I was there and had a plea

20  agreement to be extradited here, and you know, I

21  just -- he said if I didn't take the plea today,

22  that the motion for the speedy trial would be heard

23  after the trial, and I don't know, I just wanted



SHEILA A. DOUGHERTY
Official Court Reporter



1    that on the record.

2         I don't know why he wanted to put that on

3    the record if it didn't mean anything, so but I took

4    the plea.  I just would like that question answered

5    in front.  I have had a judge tell me some things

6    that the prosecutors and attorneys have told me

7    different, so I don't know, you know, what is up.  I

8    am fighting for my life on this motion, on this

9    matter.

10        MR. BERNSTEIN:  Your Honor, the reason I

11   mentioned that is because there is an argument that

12   can be made that -- however, taking all things into

13   consideration, Mr. Cochran decided to enter this

14   plea.  I simply wanted to put on the record so

15   Mr. Cochran understands that there is no question at

16   all that by pleading guilty he won't be able to

17   pursue that, at least with respect to these charges.

18        THE COURT:  Has a speedy trial motion been

19   filed yet?

20        MR. BERNSTEIN:  It has not been filed.  It

21   is in my folder.

22        THE COURT:  All right.

23        MR. BERNSTEIN:  I am just going to file it



1    as a matter of record.

2              THE COURT:  All right.  I understand.

3              I will say this to Mr. Cochran.  Had this

4    motion been filed prior to this plea being taken,

5    and of course it should be filed prior to this

6    matter being set, being present for trial, prior to

7    the trial date, excuse me, and the trial date was

8    scheduled for today.

9              MR. BERNSTEIN:  I didn't have all the

10   paperwork to back it up.

11             THE COURT:  I understand.  All I am

12   saying, I am only reciting all this, because if it

13   had been filed the Court would have had to decide it

14   first before it accepted your plea.  However, you

15   have chosen at this point to enter the plea the way

16   you did.

17             THE DEFENDANT:  Yes, sir.  The reason for

18   that is because I was told that the motion would

19   have been filed and I would have went to trial

20   today, and I wouldn't have had the motion heard, and

21   I asked him about it being heard before they took me

22   to trial, and he said I would go to trial today.

23             I believe that there was some -- now he is




1   saying that there was some argument that could be
2   brought about the violation of a due process, and I
3   was -- all I wanted was just to be fair with this
4   all, you know, and now they are bringing this up and
5   if he had told me that I might have .-- I had nothing
6   to lose to have the motion heard for the speedy
7   trial because it violated my 6th Amendment right,
8   and the charges should be dropped under that.  And I
9   had no, you know, they said if I didn't take, if I
10  didn't -- if I put the motion in for the speedy
11  trial argument that I would have to go to trial
12  today.

13          And now you are saying that that is not
14  true, so I don't know.  I am not a lawyer.  I been
15  trying for two years to get this taken care of, sir,
16  and I just want the fairest and the right way, you
17  know, where I have a 6th Amendment right that was
18  violated, and now he wants to put that on the
19  record, that just shows that there might have been
20  something that could have been done about it.

21          MR. BERNSTEIN:  Your Honor, just to
22  clarify, I told Mr. Cochran that his motion would be
23  heard on the merits before the trial.  However, he




SHEILA A. DOUGHERTY
Official Court Reporter

1    could not plead guilty and have the motion heard.

2             THE DEFENDANT:  I wasn't going to do that.

3    I was going to see what happened with the speedy

4    trial motion and then see.

5             MR. BERNSTEIN:  There wouldn't be any plea

6    agreement; is that correct, Mr. Garey?

7             MR. GAREY:  That's correct, Your Honor.

8             THE COURT:  That makes sense, obviously.

9    If you had a pending motion for dismissal because of

10   the violation of what you view to be a violation of

11   your Constitutional rights from the fact that you

12   did not have a speedy trial, that would have had to

13   have been decided first before the Court could

14   accept a plea; but it was not filed, so the Court

15   could accept the plea.

16            Now, if you want to think about that for a

17   moment I will give you a chance to talk with your

18   attorney, but I assume you weighed all the pros and

19   cons of doing this and not doing that -- hear me out

20   at this time -- and that is why you are proposing

21   the plea which the Court is prepared to accept at

22   this time.  But if it is your intention to move

23   forward with your motion for speedy trial, then I





SHEILA A. DOUGHERTY
Official Court Reporter
131.

```
 1   will not accept this plea.  You have to make up your
 2   mind what you want to do.
 3              THE DEFENDANT:  Right.  Well, I think I am
 4   entitled to an answer.  If the motion is heard for
 5   the speedy trial first, before I go to trial, and
 6   then you decide on that, it is either dismissed or
 7   not dismissed, and then you proceed to a trial, or
 8   is there a plea?
 9              MR. GAREY:  Your Honor, I have something
10   to say.
11              MR. BERNSTEIN:  I gave this to Mr. Garey
12   Friday.
13              THE DEFENDANT:  I am saying apparently
14   there is some argument to it.
15              MR. GAREY:  The State is prepared to
16   extend the plea that we extended to Mr. Cochran.
17   However, if the plea is not accepted, and we hear
18   motions, there will not be a plea agreement.  We
19   will be going to trial.  There is no Constitutional
20   right to a plea by solution.  So that is --
21              THE COURT:  And you will be going to trial
22   on all charges; correct?
23              MR. GAREY:  That is correct.
```




1                    THE COURT:  Okay.

2                    THE DEFENDANT:  Well, just go ahead with

3    this.

4                    THE COURT:  Do you want to take a moment

5    to talk to your attorney?  I can break.

6                    THE DEFENDANT:  No.  It is all right.  I

7    will take -- I will take the Robinson.

8                    THE COURT:  All right.  So you are

9    prepared to go forward?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Okay.  All right.  So you have

12   had enough time to talk with your attorney; is that

13   correct?

14                   THE DEFENDANT:  Yes, sir.

15                   THE COURT:  Okay.  And Mr. Bernstein has

16   stood up and made that presentation.

17                   Other than that, Mr. Bernstein, is there

18   any other reason why this Court should not go

19   forward with the plea?

20                   MR. BERNSTEIN:  No.  I just wanted to make

21   sure the Court was aware of those facts and that

22   Mr. Cochran was aware that he had a right to pursue

23   one or the other, but not both.




SHEILA A. DOUGHERTY
Official Court Reporter

1        THE COURT:  Okay.  I think we pretty much
2   fleshed that out and made that pretty clear, is my
3   understanding.

4        Mr. Cochran does understand that; correct?
5        THE DEFENDANT:  Yes, sir. ·

6        THE COURT:  Okay.  Thank you, Mr. Cochran.
7   Thank you, Mr. Bernstein.

8        Just a minute.  We are not quite done yet.
9        Mr. Garey, is there any other reason why
10   you see -- a reason why this Court should not accept
11   this plea?

12        MR. GAREY:  No, Your Honor.

13        THE COURT:  Okay.  All right.  The Court,
14   having heard the presentations by the attorneys and
15   having gone through the plea colloquy with the
16   defendant, and having taken some time to explain
17   both the nature of what the Robinson plea is all
18   about and having explained that to him, the Court is
19   satisfied that there is sufficient proof to
20   establish that the prosecution could present a prima
21   facie case before the Court, and there is a basis in
22   fact for the plea, and there is also a basis for
23   Mr. Cochran to enter the Robinson plea as well.




 1        A.    No, sir.

 2        Q.    What I am asking you, everything that the

 3   attorneys, that is, Mr. Bernstein stated.

 4        A.    He didn't get all the facts right, sir.  I

 5   been two years.  This will be -- I am fighting for

 6   my life here, and he didn't state some facts right

 7   that should be stated right, and the reason why I

 8   just didn't go in, and I don't remember what

 9   happened to her, but he didn't state all the facts

10   right.

11        Q.    Are you saying that Mr. Bernstein did not

12   state all the facts that you thought he should have

13   stated?

14        A.    Yes, sir.  He was basically right, but he

15   doesn't have the facts right.  It wasn't

16   Mrs. Naylor's daughter, it was the woman I had been

17   seeing for ten years was sleeping around with

18   someone I called a friend, Tom Naylor, and I had

19   been drinking heavy and on drugs, and was going to

20   get more drugs, and they had lied to me.  Tom Naylor

21   had lied to me.  He was a friend and said he didn't

22   know who she was seeing, and I was getting some more

23   drugs and happened to see the truck at her -- his

EXHIBIT C




SHEILA A. DOUGHERTY
Official Court Reporter

1   house, and I snapped from there, and all I remember

2   was kicking the door in. I don't remember the

3   events that happened inside. I had a blackout. And

4   that's the facts.

5       Q.   Okay. Most of what you said seems to me

6   to not be totally contrary to what your attorney

7   stated. Do you -- but do you want a moment to talk

8   with your attorney again?

9       A.   No, sir. He just said that it was the

10  victim's daughter and it wasn't the victim's

11  daughter.

12              THE COURT:  That is the only inaccuracy?

13              MR. BERNSTEIN:  I just corrected that.

14              THE COURT:  I understand, Mr. Bernstein.

15  BY THE COURT:

16      Q.   That was the only inaccuracy that you

17  recall; correct?

18      A.   Yes, sir.

19      Q.   Did not Mr. Bernstein make a correction to

20  that?

21      A.   She said it was his son -- he said it was

22  her son, but it was the woman I had been seeing,

23  about ten years, and Mrs. Naylor's son.


SHEILA A. DOUGHERTY
Official Court Reporter


IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

RECEIVED AND
FILED

DONALD R. COCHRAN          | CR. A. NOS.        IK03-01-0397 thru
     Defendant              |                              0399

     V.                     |                    KENT COUNTY
                            |                    PROTHONOTARY

STATE OF DELAWARE           | I. D. NO#          0102010757
     Plaintiff              |


## MOTION TO RESPOND TO ATTORNEY'S AND STATES ANSWER TO DEFENDANTS RULE 61

Pursuant to Post Conviction Relief Rule 61 the Defendant Replies to Attorney and STATES answer to Rule 61 complaint. In support he offers the following:

1. Bernstein fails to answer all claims made by defendant. Defendant will address the issues that were answered by Bernstein. Bernstein fails to answer. why he failed to investigate and prepare to file a timely complete Pre Trial motion. Which in fact, the reason Bernstein was hired, was to complete this duty. And why defendant's mother hired Bernstein. (see defendants brief ex) A-11 which explains how and why Bernstein was hired. Bernsteins failure to investigate defendents claims. explains his incomplete motion to Dismiss. Which lacks exhibits to back up the claims in the motion. Bernsteins motion is dated January 31. 2003. Three days before defendants Trial date. This is a useless motion. Bernstein had ample time to investigate, and prepare a complete motion, to be filed in a timely fashion. In fact Bernstein. states that he in fact. had prepared a motion to Dismiss. had this case gone to trial. That one of the things that he looked into when he got into this case was a potential claim on Defendants behalf. And that he had a motion prepared for Defendants case. (see ex) A-3

A-105

1

Bernstein has no prepared motion for Dismissal for defendants cases. After stating that in fact he had prepared a motion to Dismiss Bernstein later admits that he did not have all the paperwork to back up the motion (see ex) A-7 , which explains why there are no exhibits attached to his Motion (see ex) B-1 . and proves that Bernstein never looked into the speedy Trial and extradition violations or investigated anything to have a motion prepared. Bernstein leads one to believe that he already had a motion all prepared. Bernstein slaps a incomplete Motion together just 3 days before defendants trial date His Motion is Dated January 31. 2003 (see ex) B-1 . Bernstein was clearly unprepared. and should have filed a Rule 12(b) for a extension to prepare a complete motion which would have protected defendants Rights to have his PreTrial motion heard. The Judge even states that this Motion should have been filed prior to defendant's trial date. (see ex) A-7 . Bernstein also states in open Court that there was a potential Speedy Trial Claim. That Statement is in Plea Transcripts (see ex) A-4 . After making that statement Bernstein is ineffective and prejudice the defendant and his case for allowing or even letting defendant consider any other option before first exhausting defendants Right to a standard PreTrial Motion. Having made that statement Bernstein is admitting that there is significant defense strategy. Which means Bernstein had a obligation to investigate this plausible line of defense. failure to do so put defendant in a do or die situation. that defendant may not been in if the PreTrial motion to Dismiss had been filed in a timely fashion, before defendants Trial Date. Bernstein has a strategy. but it's not a strategy for the defendant Bernstein's strategy is to cover up his failures and unprofessional handling of defendants case which was to coerce defendant into taking a Plea Offer which would let him off the hook of failing to defend the defendant. Bernstein coerces defendant into a Plea offer by using faulty legal advice, mistruths, promises and threats. When defendant is asked if he was forced or threaten into entering this plea. Defendant says yes (see x) A-1. (also see highlighted ex) A-2

A-106

2

- 138 -

In The Plea Agreement Transcripts there is a lot of confusion on behalf of defendant. this confusion is a result of the faulty advice Bernstein gives the defendant on The Motion being heard. The confusion on the advice Bernstein gave the defendant erupts when Bernstein all of sudden wants to file the Pre Trial Motion after a Plea Offer was accepted by The Court after that point defendant floods the Court with questions due to the faulty legal advice Bernstein gave the defendant. Defendant is confused of Bernstein tactics, of now wanting to file The Motion. which this move on Bernsteins part. is just a strategy to pull the wool over defendants eyes and a attempt to cover up his failures in this case. For all the confusion to above statements (see ex). A-3 thru A-10. Bernstein had advised defendant that he was going to trial that day. which was in fact defendants trial date. and regardless of whether or not the Pre Trial Motion was filed. the defendant was going to trial that day and the Pre trial Motion would not have been heard until after the Trial. The defendant tells the Court that this is what Bernstein advises him of and that if defendant didn't take Plea Offer The Motion would also not be heard until after trial. defendant clearly states he doesn't know what to do. For these statements (see ex) A-5 and A-8 . Based on Bernstein's faulty advice to defendant on this issue you can see where defendant states to the Court he should be entitled to a answer on how the issue should really be handled (see ex). A-10 This clearly shows defendant is confused. and doesn't know what to do or what's going on due to faulty legal advice. If that's not enough Bernstein than makes a statement. which is in favor of the States case, which he get's the state to take the plea offer off the table. due to the fact that defendant is pushing the issue of the Motion to dismiss being heard. Bernstein states to John Garey, the states prosecutor, that there wouldn't be any plea offer (see ex) A-9 . Which John Garey agrees to. Bernstein offering advice to the State which the state agreed to, hindered the defense, and limited the options for the defendant. and is clearly not in the best interest of defendants case.

A-107

3

This suggestion made by Bernstein is clearly against the ethics of a criminal defense lawyer. This advice from Bernstein, allows the Court, to use Bernsteins advice, as leverage to pressure the defendant into keeping the plea offer, or face a trial and alot of level 5 time. Defendant makes statements in the Plea Transcripts that proves that he didn't want to Plea. You can see defendant states and now they are bringing all this up, and if he had told me that, I might have then there's — — the — — are defendants words of, not took the Plea. The words of not took the plea just happen to be left out of defendants statement for some reason. (see ex) A-8 _____ Than Bernstein states that defendant can't plead guilty and have the Motion heard. Than defendant states that he was not going to do that. Which means he wasn't going to take a Plea Offer. Defendant wanted to see what happen with the Speedy Trial Motion and then go from there. (see ex) A-9 _____, which defendant had a right to do. In those 2 statements made by defendant shows that he didn't want to Plea he wanted to have his PreTrial Motion heard. Bernstein failed defendant with faulty legal advice, and failed to file a timely PreTrial motion. These failures on Bernstein's part pressured defendant into a Plea offer and into a do or die situation that defendant should not have been in. Where defendant enters guilty plea upon counsel's advice, voluntariness of plea depends on whether advice was within range of competence demanded of attorneys in criminal cases. Hill v. Lockhart U.S.C.A. Const. Amend. 6. Bernstein failed the defendant in the way he handle defendants case. which violates defendant's right to effective counsel guarnteed under 6th amendment. Strickland v. Washington(4o. U.S. 668 104 S. Ct. 2052 1984). Defendant put's his fate, his trust and his life into Bernstein's hands and believed in Bernstein to fulfill his obligation to defendant and to give defendant adequate advice and representation that's for, and in the best interest of the defendant. Bernstein failures in defendants case prejudice the defendant in so many ways which cost the defendant, with a sentence that may have been different or at least gave the defendant a chance

4                                    A-108

for a better outcome of his case. If only Bernstein would have put defendants Best interest first and if Bernstein would have handle this case in a professional manner. The outcome had a significant chance for a better outcome.

2.) To the claim that Bernstein failed to investigate mental health issues: Bernstein answers defendants claim by admitting that he in fact did not investigate the possibility of raising a mental illness defense to these charges. Admitting that, he failed to investigate this plausible line of defense clearly proves that Bernstein was ineffective to the defendant. and that he prejudice the defendant and the outcome of defendant's case. Defendant clearly shows that he was admitted to Delaware Psychiatrict Center By and thru states own psychiatrist who believes defendant to be a mental ill person who is incapable of making reasonable or rational decisions for hisself (see mental RECORD ex) A-11 thru A-14. Defendant clearly shows that there is evidence that shows defendant has some mental issues. which in fact. Bernstein could have used this evidence to raise such a defense for the defendant. This evidence should have been investigated in the interest of Justice and in the best interest to the defendant. Bernstein was well advised of defendants admittance to the Delaware psychiatrict center. due to mental issues over emotional problems from Relationship with his girlfriend and extensive drug and alcohol use. And that these issues are the factors that caused defendant to be charged with these offenses. Bernstein deprived the defendant of another option for a significant defense strategy. This evidence of defendants mental issue problem are mitigating factors. By The Court not having this mitigating evidence to consider, prejudice the defendant at a chance to at least have a better outcome to his case, The Court acknowledged the defendants lack of mens rea due to his blackout and the inability to Remember. which was caused from the emtional trauma of seeing girlfriends Pam Hawkins truck parked in front of Tom Naylors house.

5

A-109

This emtional trauma which was caused from defendants girlfriend Pom Hawkins. cheating on defendant with Tom Naylor someone defendant deemed a friend. These charges were crimes comitted over passion. Which caused the defendant to "blackout" and not Remember what happen. Bernstein's failure to investigate and produce evidence of Reports and Records deprived the defendant the bonefit of advising the Court of defendants state of mind at the times before, during and after the crimes, nor at the sentencing phase. This evidence could have been utilized to support on affirmative or teresis table Impulse defense and should have been presented and considered as mitigating factors for a chance of a better outcome to the defendants sentence. HARRIS V. STATE Del. Supr, 40 A 2d 500, 502 (1979), Bernstein corcea defendant into a plea Offer which was a strategy he used to keep defendant from having the PreTrial Motion To Dismiss filed and heard. One Tactic Bernstein used to do this was by telling defendant that with mental issues which was a factor in causing defendant to Blackout he could get defendant a Robinson Plea. which is a admission of no guilt. Defendant caved to the pressure and kept with the Plea Offer which was a Robinson Plea. Rule 11 pleas require the defendant be compent of knowing and voluntary waiver before they can be legally binding, and it can be argued that the prosecutor and the Court took advantage of the defendant who was said to be incapeble of making reasonable or rational decisions in matters of serious rous. STATEV. Knox Del. Supr. A. 2d (Feb. 26 2003) aff'd. Del. Supr. 826 A. 2d 298 (2003). When a Robinson Plea was accepted the defendant had a right to have his mental condition considered to determine if defendant had the requisite state of mind for knowledge or Intent. Robinson V. STATE Del. Supr 600 A 2d 356, 360 (1991). It was never determined if defendant had the present sufficient competency to enter into the Robinson Plea.

A - 110

Once the Court acknowledged the defendants lack of mens Rea due to his Blackout, and that a Robinson Plea was being offered. Bernstein should have ask for a evidenTiary hearing. These issues should have been investigated more to determine defendants state of mind. The mental condition of a defendant is to be considered in any criminal case. HARRIS V. STATE Del. 549R. 410 A2d 500, 502 (1979), U.S. V. Kauffman 109 F 3d 186 (3rd Cir 1997). This never happen in defendants case. In defendant's 61. Brief, defendant clearly shows that there is evidence of some mental issues, which were factor in this case. Bernstein's failure to investigate these issues or advise the Court of these claims which are mitigating factors. Clearly preindice the defendant and the outcome of his case. The Court should have had these mitigating factors as evidence in considering the defendants sentence. Bernstein's failures in defendants case Rob the defendant of many chances for a better outcome of his case. Which means Bernstein prejudice the defendant and prejudice the outcome of defendants case.

Defendant Replies to STATES answer to defendant's Rule 61 Complaint In support defendant offers the Following:

1. The defendant would like to state, that the state did not answer all defendant's claims. Defendant will address what the State has answered to: The STATE contends that there's no merit to defendant's claim that the STATE failed to comply with the 180 day Requirement of the Extradition agreement on Detainer's. Defendant argues that the state failed to comply with the 180 day time period required to extradite defendant back to Delaware There fore there is merit to defendant's claim.

$A-111$

7

Defendant was first advised that Delaware had put a warrant out
for him on these charges on August. 23 2001 (see warrant ex) A-15.
Also see Pinellas County Justice Information sheet that confirms there
was a warrant out of Smyrna Delaware to hold defendant for pickup
(see ex) A-16. Defendant was asked to sign and waive extradition
to these charges five days after being held on the warrant that
was issued on defendant out of Delaware. Defendant did sign
and waive extradition to these charges on the warrant issued
out of Delaware on August 28, 2001. See Pinellas County Case
Progress Docket Sheet where it states Defendant invocation
Constitutional Rights (see ex) A-17. Also see defendants signed
extradition which the date defendant waived extradition was on
August 28, 2001 (see date see ex) A-18. Also see defendants
Florida's Plea Agreement Form which Florida specifically set up
for defendant to take so defendant could be extradited back to
Delaware within the 180 day time period required. It clearly states
defendant awaits extradition (see ex) A-19. After defendant
waived extradition he than writes three letters to Delaware's
attorney's General's Office asking to be extradited back to Delaware
for trial (see ex) A-20 thru A-22 These three letters wrote to Attorney's
General's Office are the proper authorities in this case And
are the authorities that issued warrant's for the defendant. In
Isenhower V. STATE OF Delaware 516 A. 2d 482 appellant did not
make any request for disposition of Delaware detainers until he
wrote a letter to New Castle County sheriff office which asked
the Sheriff to forward a copy of the letter to the proper
authorities involved as a demand action letter as to the quick
and speedy trial section of the U.S. Consititation. Defendant
would like to state that in the above case the letter that appellant sent
was not to the appropriate prosecuting office or Court And the
letter did not meet the strict requirement's of the statue. But the
letter was accepted as the request for disposition for the detainer
Delaware had on the appellant.

A-112

8

- 144 -

The Three letters defendant wrote were to the appropriate office and these letters are a demand action letter as to the quick and speedy trial section of the U.S. Constitution. The state acknowledge these letters and should have acted on them. The State's failure to act, caused a unnecessary delay to bring defendant to trial which violated his Right to a speedy trial. Especially when there's nothing preventing the state from bringing defendant back to stand trial. Defendant was brought back to Delaware 14 months after he waived extradition. In the event that on action on the indictment information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided on the Extradition Law of Detainer's hereof the appropriate court of the jurisdiction where the indictment information or complaint has been pending shall enter an order dismissing the same with prejudice and detainer based thereon shall cease to be of any force or effect. FEX V. Michigan 507 U.S. 43 113 S.Ct. 1085. After the 180 day time period required to extradite defendant back to Delaware was tolled. The detainer ceased to be of any force or effect which rendered the indictment invalid. And Delaware then loss jurisdiction to proceed. If the 180 days from the defendant's invocation of waiving extradition is allowed to strecth pass that into 200 or even 400 some plus days as was done in this case it defeats the purpose of extradition. Fex. V. Michigan. The state's failure to, evtradite caused a unnecessary delay which prejudice the defendant by keeping the defendant in lock down while in Florida prison Because defandant was awaiting extradition to another state which added anxiety which caused more stress on defendant's mental condition and caused the defendant's defense limited time to prepare for this case. Defendant's speedy Trial Right's were designed to protect a defendant's interest from these Three factors happening to him. see Middlebrook V. STATE of Delaware 802 A2d 268. Also during the unnecessary delay defendant lost a witness that could helped put this case in a very different light.

A-113

9

- 145 -

While prejudice is a factor for consideration. the U.S. Supreme Court has held that a showing of prejudice is not essential in the balancing process of weighing the consitutional right to a speedy trial. It's regarded that none of the four factors [length of delay Reason for delay, defendant's asseration of his right and prejudice to the defandant] are either a necessary or sufficient condition of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But because we are dealing with a fundamental right of the accused. this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution. STATE OF Delaware V. Budd Metal Company INC. 447 A. 2d 1186. Barker V. Wingo 407 U.S. 514. 533. 92 S.Ct. 2182, 2193. 33 L. Ed. 2d 101 (1972) Moore V. Arizona 414 U.S. 25, 26 94 S.Ct. 188, 189. 38 L. Ed. 2d 183 (1973) nor is prejudice in the traditional sense required for the Superior Court to exercise the broader discretion under Rule 48(b) State V. Fisher Del. Super 269 A2d 244. 246 (1970) aff'd Del. Supr. 285 A. 2d 417 418 (1971) The Court may in its discretion dismiss an indictment if there is "unnecessary delay" in bringing the defendant to trial STATE of Del. V. Fisher V. Goldsberry 269 A 2d. 244 There was an unnecessary delay in bringing defendant to trial. This unnecessary delay is attributable to the state by failing to extradite defendant back to Delaware in a timely fashion which violated defendant's right to a speedy trial. This unnecessary delay warrant's the indictment to be dismissed. And the untimely extradition of the defendant back to Delaware warrant's the right to dismiss these charges especially when the prosecutor was actually aware of the request and fails to act. This policy has been recognized by the United States Supreme Court in FEX V. Michigan 507 U.S. 43 50-51 (1993). In failing to act and bring

A-114

10

defendant back to Delaware within the 180 day time peroid required by Law the state Loss Jurisdiction to proceed or to offer ony plea to defendant. Only burden on prisoner under uniform agreement on detainers is to ask prison offical who has custody over him to prepare and send forms to jurisdiction from which detainer is lodged against prisoner 11. Del. C 2542(a) Beebe V. State of Delaware 346. A. 2d 169. also it state's in the Beebe V. State of Delaware That In Pittman V. State Del. Supr. 301 A 2d 509(1973) this Court held that strict compliance with the U.A.D. may not be required in a proper factual setting if it appears that a prisoner has taken diligent and reasonable efforts to invoke the time requirements. but is prevented from full compliance because of the failure of public officals. Defendant proves and shows that he waived extradition on August 28. 2001 and made many efforts to be extradited back to Delaware to have a speedy trial. Delaware failed to comply and bring defendant back in a timely fashion. which caused a unnecessary delay which prejudice defendant in this case. Defendant's Right to a speedy trial was violated long before Delaware failed in extraditing defendant in a timely fashion.

2. To respond to STATE's answer of Defendant's Rule b1 claim of ineffective assistance of Counsel. Defendant would like to state that in a effort not to bore the Court or rehash over arguments. Defendant ask the Court to see defendants Rule b1 brief argument of ineffective Assistance of Counsel (see Rule b1 brief pages) 11 to 16 . also defendant would like to state that Bernstein nor the prosecuting attorney's are not licensed psychiatrist and their opinion on defendant's competency warrant no merit and should not be considered when making a decision on whether defendant was competent or not. Their opinion on defendant's competency is disclaiming the State's own licensed psychiatrist who believed defendant to be a "mentall ill" person who suffered from a disease and he was unable to make resonable rational (see mental Records ex.) A-11 thru A-14.

11

$A-115$

decisions this is concrete evidence (see defendant's Rule 61 brief ex.) (A-8 thru A-10) A-34, which explains the confusion in the Plea Agreement Transcript's on defendant's behalf. Defendant was never rendered competent as to be able to understand the rational as well as the factual understanding of the proceedings that's required to enter into the Robinson Plea. These issues are mitigating factors that Bernstein was to apprise the Court of but failed to Harris v State Del. Supra 410 A 2d 500 502 (1979) United States v. Kauffman 109 F 3d 186 (3rd Cir. 1997). Bernsteins failures and unprofessional handling of defendant's case fell way below an objective standard of reasonableness and prejudice the defendant to a chance of a better outcome to his case. With respect to prejudice prong of ineffective assistance claim based on failure of counsel to request competency hearing, defendant need only demonstrate reasonable probability that he was incompetent. Sufficient to undermine confidence in the outcome U.S.C.A. Const. Amend. 6. Defendant proves he was observed to be a mentally ill person with concrete evidence of this claim by the mental records (see ev) _____ With this concrete evidence the outcome of defendant's case would have been different.

3. To respond to states answer of defendants Rule 61 claim of failure to hold evidentiary hearing on competency. The state contends there's no record to support this claim. Defendant states that when the State's prosecutor John Garey was preparing to put a case against the defendant John Garey interviewed the parties involed in this case. When John Garey interviewed Pam Hawkins. She told John Garey everything she knew about defendant. She told about defendants drug and alcohol problems along with defendant's mental problems She said defendant was a sick and crazy person who was admitted to the Delaware Psychistrict Center because defendant was crazy. John Garey knew everything about defendant and under Maryland v. Brady 373 United States 83 (1963) John Garey was to disclose expulotory evidence. But Garev failed to. John Garey was

A-116

a officer of the Court, and in the Interest of Justice he's to seek Justice. Defendant adviced Bernstein of his mental problems and his stay at the Delaware Psychiatrict Center upon their first meeting. Bernstein was ineffective for not investigating this claim and for not requesting an evidentiary hearing on competency or advising the Court of this information. This information on competency is on Record with Probation and parole which defendant's own probation officer Dave Benson was one who helped put Defendant in the Delaware Psychiatrict Center. Defendant also adviced Pre Sentence Investigator Jim Sheaperd of his mental problems and his stay of the Delaware Psychiatrict Center which he acknowledged but left great details of this claim out, to the Court. In Pate V. Robinson 383 U.S. 375 86 S.Ct. 836 it states in this case that it concedes that the conviction of an accused person while he is legally incompetent violates due process Bishop V. United States 350 U.S. 961 76 S.Ct. 440 100 L.Ed. 835 (1956) and the State procedures must be adequate to protect this Right. also the constitutional violation alleged is failure to make an inquiry. In the more usual case the simple claim that a defendant was convicted while incompetent during the trial. there is of course no proof of a constitutional violation until that incompetence is established in appropriate proceedings. John Gorey. the States own probation officer Dave Benson who helped put defendant in the Delaware Psychiatrict Center, Bernstein, Pre Sentence Investigator Jim Sheaperd were aware and adviced of defendant's mental problems. So there is ample record of defendants mental problems. Defendant provides concrete evidence that he was declared incompetent By the States own psychiatrist who believes defendant to be a "mentally ill" person (see ex) A-11 thru A-14 Being declared a "mentally ill" person by the state's psychiatrist would Render the defendant to be legally incompetent. without a competency hearing to prove otherwise, would render the Robinson Plea invalid. Defendant was taken advantage of and his Right to due process of the Law was violated. which prejudice the defendant of a better chance for a different outcome to his case.

13

A-117

4. To Respond to States answer of Defendant Rule 61 claim of Lack of mitigating Evidence. Defendant would like to state the following that under Rules of the law defendant has the Right to have all mitigating evidence present at sentencing. Also the Rules say that the judge is to personally ask the defendant if he wishes to speak on his behalf and the judge is to personally ask the defendant if he has any mitigating evidence to present. The judge never ask the defendant if he had any mitigating evidence to present. For the judge to personally ask the defendant if he has any mitigating evidence to present at sentencing ensures the defendant the Right and benefit to present mitigating evidence so the Court can consider this evidence to help in sentencing the defendant. This prevents a Miscarriage of Justice when a defendant's lawyer, prosecution, or the Pre Sentence Investigator fail to apprise the Court of such mitigating evidence. Which was what happen in defendant's case. There was no mitigating evidence considered in defendant's case. There is mitigating evidence stating that the defendant was declared a mentally ill person by the State's own psychiatrist (see ex) A-11 thru 14. This would make the defendant legally incompetent until proven otherwise. This evidence should have got the same consideration that the aggravating factors received in this case. It's a miscarriage of Justice that defendant was prevented to present any mitigating evidence. And for defendant's lawyer, prosecution and the Pre Sentence Investigator Jim Shepperd who were all aware and advised of defendant's mental problem to fail in advising the Court of this evidence. Bernstein told defendant that he would present this evidence and ask the Court if it had received the letters that were written for defendant on his behalf and to ask the Court to let witnesses to speak on defendant's behalf. Bernstein fails the the defendant again. by not performing this duty. Failing to have any mitigating evidence at sentencing prejudice the defendant by showing this in a different light which would have shown and proved that there was a mitigating side to this case that would have gave the defendant a better chance for a better outcome to his case. Also there was a Pre Sentence Investigation ordered in this case. From here on referred to as P.S.I

A-118

The P.S.I. plays a critical role in the judges determination of an appropriate sentence. Which is to include vital information on defendant which may be any circumstances affecting defendant's behavior that may be helpful in sentencing defendant. A probations officers conclusions regarding the defendant's offense level and criminal history ony factors that may warrant departure along with other information. and before imposing a sentence the Court must give the defendant and defense counsel an opportunity to comment on the P.S.I. If the defendant alleges that the P.S.I contains any factual inaccuracies the Court may hold an evidentiary hearing allowing the defendant to introduce evidence related to the alleged factual inaccuracy. Defendant argued in his Rule 61 Brief that he never had a chance to review his P.S.I Report. This claim was never addressed by Bernstein or the State, Defendant has only received some information which was some 2½ years after being sentence on his P.S.I. Report. Defendant alleges that there is some factual inaccuracies in the P.S.I report and that Mr. Jim Sherperd did a poor an unprofessional job on defendant's report. Jim Sherperd failed to do a thorough investigation which caused prejudice to the defendant Jim Sherperd failed to provide the Court with defendant's mental records that declare defendant to be a mentally ill person by state's own psychiatrist (see exhibit110A14 Mr. Sherperd job is to show all sides to this case. had he done this and had he interviewed defendant. Probation Officer Dave Benson who helped put defendant in Delaware Psychiatric Center he would of had conceale mitigating evidence to put in the defendant's P.S.I report that would have shown this case in a different light. In _Moore V. State_ in Moore's P.S.I Report the state deliberately hid information from Moore. before sentencing, Moore never knew of this information Moore never got to see this information or rebut it This information was used against Moore to enhance his sentence. Moore V. State of Delaware 2005 WL 3027680 (Del Supr.)

A-119

In defendant's case he never got to review his P.S.I report so before sentencing defendant never knew what was in or what was left out of the P.S.I report. Defendant never got a chance to rebut the mitigating evidence that was left out of the P.SI report which this evidence was never considered upon sentencing the defendant. Before a judge finally Reaches a decision as to sentencing he must have an open mind at least to the extent of "Receiving all information boring on the question of mitigation". Osburn V. State Del. Supr. 224 A.2d 52 (1966) also see Siple V. State. Del Supr. 701 A.2d 79 (1997) Super. Ct. Crim Rules Rule 32. In defendants case judge never had a open mind and never question the fact that there was no mitigating evidence presented in this Case. This Court has recognized that a sentence based on material misapprehension of fact and which places the matter in a "dramatically different light" is constitutionally defective Bailey V. State Del. Supr. 459 A.2d 531 (1983). It will not uphold such a sentence when imposed on the basis of demonstrably false information lacking a minimal indicium of of Reliability Moyes V. STATE Del. Supr 604 A.2d 839 (1992)


5. The defendant would like to state and put on the record that the state fails to answer all defendant's Rule 61 claims.

1. State fails to answer untimely Indictment claim
2. State fails to answer loss of Jurisdiction claim,
3. State fails to answer defendant's claim in the Lack of mitigating Evidence claim that Jim Sherperd fails to do a thorough P.S.I investigation on defendant and he leaves out important concrete evidence which is a factual inaccuracy of the Report.

A-120

Defendant ask this Honorable Court to Grant defendant an evidentiary hearing upon all issues's and any other Relief this Court deems defendant is entitled in this proceeding.

Date: May 20, 2006

Respectfully. Submitted
Donald R. Cochran

DonalD R. Cochran
    O. C. C.
1181 Paddock Road
Smyrna, Delaware
    1977

A-121

(7

1   that, is it your intention to plead guilty today?

2        A.   Yes.

3        Q.   Pursuant to the Robinson plea?

4        A.   Yes, sir.

5        Q.   A Robinson plea; is that correct?

6        A.   Yes.

7        Q.   Has anyone forced or threatened you to

8   enter this plea today?

9        A.   Yes.  No, sir.

10       Q.   Are you in fact for purposes -- let me

11  explain something to you.  I should have explained

12  this to you earlier.  When I asked you whether you

13  were going to plead guilty, I am saying that because

14  for purposes of the plea colloquy that we are going

15  to treat this plea just as if you are pleading

16  guilty, where all the elements of the crime are

17  being admitted, even though you are going to be

18  pleading no contest or a plea pursuant to State

19  versus Robinson.  Do you understand that?

20       A.   Yes.

21       Q.   Okay.  And when I say "guilty," that is

22  what I am referring to.

23       A.   Yes, sir.

A-1                    SHEILA A. DOUGHERTY          A-122
                   Official Court Reporter
                        -154-

1      Q.    Okay.  All right.  So no one has forced or

2    threatened you to enter this plea today; is that

3    correct?

4        A.    No, sir.

5        Q.    Are you in fact guilty of this plea?

6        A.    Yes.

7        Q.    I am sorry.  These crimes?

8        A.    Yes.

9        Q.    Turning next to the Truth in Sentencing

10   Guilty Plea Form -- I am sorry.  We just went over

11   that, but I did not ask you this.  Did you sign this

12   form in your own handwriting?

13       A.    Yes, sir.

14       Q.    Okay.  Now, referring to the plea

15   agreement, the plea agreement which has been

16   reviewed by counsel today, and discussed with you as

17   well, does this plea agreement reflect everything

18   that you have agreed to do?

19       A.    Yes.

20       Q.    Did you sign the form?

21       A.    Yes.

22       Q.    Thank you.  Have you had enough time to

23   talk to your attorney about this?

A-2                      SHEILA A. DOUGHERTY              A-123
                      Official Court Reporter

1        A.   Yes.

2        Q.   Thank you.  Do you believe your attorney

3   has fully advised you of your rights pertaining to

4   your plea?

5        A.   Yes.

6        Q.   And has he otherwise represented you in

7   this case to your satisfaction?

8        A.   Yes.

9        Q.   Thank you.

10            THE COURT:  All right.  Mr. Bernstein, is

11   there any reason why the Court should not accept

12   this plea?

13            MR. BERNSTEIN:  No.  There are a couple

14   other things I wanted to put on the record.

15            One of the things that I looked into when

16   I got into this case was potential speedy trial

17   claim on Mr. Cochran's part because of the fact that

18   he was brought back on a detainer from Florida.  I

19   looked into that and in fact had prepared a written

20   motion for -- on speedy trial grounds, had this case

21   gone to trial.  For the record, I am just going to

22   file that motion with the Court.

23            I explained to Mr. Cochran that because he


A-3

SHEILA A. DOUGHERTY
Official Court Reporter

A-124

- 156 -

1   is entering a guilty plea he will not be able to

2   raise that in the future or now.  I also told

3   Mr. Cochran that, and Mr. Cochran has given this

4   matter quite a bit of thought.  These are very

5   serious charges obviously.  And I explained to

6   Mr. Cochran that once the Court accepts this plea he

7   can't come back tomorrow and say, "I want to take it

8   back."

9           As I said, I say that because I know

10  Mr. Cochran has given this matter a lot of thought

11  and he ultimately decided that this plea was in his

12  best interest in the long run, and that is why he is

13  standing here today, but I want to make sure that

14  those things, the fact that there was a potential

15  speedy trial motion, he is aware of that, and he

16  knows he is giving that up as part of this plea

17  agreement, and it is on the record, and he

18  understands that.

19           THE COURT:  All right.  Thank you,

20  Mr. Bernstein.

21           Mr. Bernstein is quite accurate,

22  Mr. Cochran.  If that motion is going to be filed,

23  and you may file the motion if you wish, but despite

A-4                    SHEILA A. DOUGHERTY          A-125
                  Official Court Reporter

1   that if you are going to enter your plea today, and

2   the Court is going to treat your plea as a guilty

3   plea, which it can do so under the law, you are

4   going to make that matter moot and that matter will

5   not be successful at this point and because you are

6   facing some pretty serious time because of these

7   charges.  Do you have something else you want to

8   say?

9           THE DEFENDANT:  No.  I just wanted to

10  question, if I would have filed that speedy trial

11  motion, the violation of due process, would you have

12  had that heard before I went to court, or what?

13  They said I would have went to trial today

14  regardless if I had filed that, and there was some

15  issue with it because the State of Delaware knew

16  where I was, and they -- a judge in Florida told me

17  they was coming to get me, and I tried everything to

18  get up here.  But Mr. Garey wants to give me a lot

19  of time, and they knew I was there and had a plea

20  agreement to be extradited here, and you know, I

21  just -- he said if I didn't take the plea today,

22  that the motion for the speedy trial would be heard

23  after the trial, and I don't know, I just wanted

A-5                         SHEILA A. DOUGHERTY          A-126
                          Official Court Reporter

1   that on the record.

2          I don't know why he wanted to put that on

3   the record if it didn't mean anything, so but I took

4   the plea.  I just would like that question answered

5   in front.  I have had a judge tell me some things

6   that the prosecutors and attorneys have told me

7   different, so I don't know, you know, what is up.  I

8   am fighting for my life on this motion, on this

9   matter.

10         MR. BERNSTEIN:  Your Honor, the reason I

11  mentioned that is because there is an argument that

12  can be made that -- however, taking all things into

13  consideration, Mr. Cochran decided to enter this

14  plea.  I simply wanted to put on the record so

15  Mr. Cochran understands that there is no question at

16  all that by pleading guilty he won't be able to

17  pursue that, at least with respect to these charges.

18         THE COURT:  Has a speedy trial motion been

19  filed yet?

20         MR. BERNSTEIN:  It has not been filed.  It

21  is in my folder.

22         THE COURT:  All right.

23         MR. BERNSTEIN:  I am just going to file it

A-6                    SHEILA A. DOUGHERTY        A-127
                    Official Court Reporter
                       - 159 -

1  as a matter of record.

2        THE COURT: All right. I understand.

3        I will say this to Mr. Cochran. Had this

4  motion been filed prior to this plea being taken,

5  and of course it should be filed prior to this

6  matter being set, being present for trial, prior to

7  the trial date, excuse me, and the trial date was

8  scheduled for today.

9        MR. BERNSTEIN: I didn't have all the

10  paperwork to back it up.

11        THE COURT: I understand. All I am

12  saying, I am only reciting all this, because if it

13  had been filed the Court would have had to decide it

14  first before it accepted your plea. However, you

15  have chosen at this point to enter the plea the way

16  you did.

17        THE DEFENDANT: Yes, sir. The reason for

18  that is because I was told that the motion would

19  have been filed and I would have went to trial

20  today, and I wouldn't have had the motion heard, and

21  I asked him about it being heard before they took me

22  to trial, and he said I would go to trial today.

23        I believe that there was some -- now he is

A-7                    SHEILA A. DOUGHERTY
                       Official Court Reporter

1  saying that there was some argument that could be
2  brought about the violation of a due process, and I
3  was -- all I wanted was just to be fair with this
4  all, you know, and now they are bringing this up and
5  if he had told me that I might have -- I had nothing
6  to lose to have the motion heard for the speedy
7  trial because it violated my 6th Amendment right,
8  and the charges should be dropped under that.  And I
9  had no, you know, they said if I didn't take, if I
10 didn't -- if I put the motion in for the speedy
11 trial argument that I would have to go to trial
12 today.

13        And now you are saying that that is not
14 true, so I don't know.  I am not a lawyer.  I been
15 trying for two years to get this taken care of, sir,
16 and I just want the fairest and the right way, you
17 know, where I have a 6th Amendment right that was
18 violated, and now he wants to put that on the
19 record, that just shows that there might have been
20 something that could have been done about it.

21        MR. BERNSTEIN:  Your Honor, just to
22 clarify, I told Mr. Cochran that his motion would be
23 heard on the merits before the trial.  However, he

A-8

1  could not plead guilty and have the motion heard.

2           THE DEFENDANT:  I wasn't going to do that.

3  I was going to see what happened with the speedy

4  trial motion and then see.

5           MR. BERNSTEIN:  There wouldn't be any plea

6  agreement; is that correct, Mr. Garey?

7           MR. GAREY:  That's correct, Your Honor.

8           THE COURT:  That makes sense, obviously.

9  If you had a pending motion for dismissal because of

10  the violation of what you view to be a violation of

11  your Constitutional rights from the fact that you

12  did not have a speedy trial, that would have had to

13  have been decided first before the Court could

14  accept a plea; but it was not filed, so the Court

15  could accept the plea.

16           Now, if you want to think about that for a

17  moment I will give you a chance to talk with your

18  attorney, but I assume you weighed all the pros and

19  cons of doing this and not doing that -- hear me out

20  at this time -- and that is why you are proposing

21  the plea which the Court is prepared to accept at

22  this time.  But if it is your intention to move

23  forward with your motion for speedy trial, then I

A-9                    SHEILA A. DOUGHERTY              A-130
                      Official Court Reporter
                            -162-

```
1   will not accept this plea.  You have to make up your
2   mind what you want to do.
3               THE DEFENDANT:  Right.  Well, I think I am
4   entitled to an answer.  If the motion is heard for
5   the speedy trial first, before I go to trial, and
6   then you decide on that, it is either dismissed or
7   not dismissed, and then you proceed to a trial, or
8   is there a plea?
9               MR. GAREY:  Your Honor, I have something
10  to say.
11              MR. BERNSTEIN:  I gave this to Mr. Garey
12  Friday.
13              THE DEFENDANT:  I am saying apparently
14  there is some argument to it.
15              MR. GAREY:  The State is prepared to
16  extend the plea that we extended to Mr. Cochran.
17  However, if the plea is not accepted, and we hear
18  motions, there will not be a plea agreement.  We
19  will be going to trial.  There is no Constitutional
20  right to a plea by solution.  So that is --
21              THE COURT:  And you will be going to trial
22  on all charges; correct?
23              MR. GAREY:  That is correct.
```

A-10                       SHEILA A. DOUGHERTY          A-131
                    Official Court Reporter
                          - 163 -

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

DELAWARE PSYCHIATRIC CENTER, a Facility of :
and for and on behalf of, the Division of                  :          C.A. No.
Alcoholism, Drug Abuse and Mental Health, the      :
Department of Health and Social Services,              :
State of Delaware,                                                :
                    Petitioner,                          :
                                    :
     v.                                                          :
                                      :
DONALD COCHRAN,                                          :
                    Respondent.                       :

### COMPLAINT

1.  Respondent was provisionally admitted as an involuntary mental patient in the said Hospital upon the certificate of a Psychiatrist.  *See attached for date of admission.*

2.  Respondent was examined by the Hospital's examining Psychiatrist and certified by him/her to be a mentally ill person in need of observation and treatment in a mental hospital.  *See attached for date of examination.*

3.  Petitioner reasonably and in good faith believes that respondent is a mentally ill person and should be continued as a patient in said Hospital pursuant to 16 Del. C. Chapter 50.

4.  Attached is the Certificate for Involuntary Admission, incorporating all the pertinent information needed to comply with 16 Del. C. Chapter 50.

5.  Respondent has been advised of his/her rights under 16 Del. C. Chapter 50.

WHEREFORE, Petitioner prays that the Court enters an Order scheduling a hearing on this issue of whether or not the Respondent's confinement is based upon probable cause, and such further Orders as shall be deemed right and proper by the Court.

June 14, 1999
Date

Kathryn L. Bunville, Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Petitioner

A-14

#9-135

Misdemeanor ☐  Ordinance ☐  Non-Criminal ☐  Warrant ☑  Traffic ☐   SSN # 121 14813 515

arge ASSAULT / BURG / IMP / CRIMIS    Report No. 01-54369    Court Case No. AB 1987 9 CFANO

Defendant's Name (Last, First, Middle) COCHRAN, DONALD R    DOB 4/21/61    Sex M    Race W    Ht. 600    Wt. 200    Hair BRO    Eyes BLU    Skin MED

as CRAWFORD, RICK A    Driver's License No.    State —    Scars, Tattoos, Unique Physical Features INDAR - RIGHT ARM

cal Address (Street, City, State)    Zip Code    Telephone    Place of Birth DEL    Citizenship US

manent Address (Street, City, State) TRANSIENT    Zip Code    Telephone    Employed by/School UN EMP

apon Seized ☐ Yes ☐ No ☐    Type    Indication of Drug Influence Y N/UNK ☐ ☐ ☐    Indication of Mental Health Issues Y N UNK ☐ ☐ ☐    Indication of Alcohol Influence Y N UNK ☐ ☐ ☐

Defendant's Name (Last, First, Middle)    N/A    DOB    Sex    Race    In Custody Yes ☐ No ☐ Felony ☐ Misd. ☐

Defendant's Name (Last, First, Middle)    DOB    Sex    Race    In Custody Yes ☐ No ☐ Felony ☐ Misd. ☐

e undersigned swears that he has reasonable grounds to believe that the above named defendant on the 23 day of AUG , 2007

approximately 1011 a.m./p.m. at CENTRO AV / BCH DR , in Pinellas County did:

HAVE A WARRANT OUT OF SMYRNA PD, DELAWARE
FOR ASSAULT, BURGLARY, POSS WEAPON, FALSE IMP, CRIMIS
ISSUED ON 2/13/07
# 5801000125
NO BOND

her traffic citations    Contrary to Florida Statute/Ordinance 901.32

REST DATE 8/23/07    Time 1011    a.m. p.m. Aggravating/Mitigating Factors

cking Officer 3200    Amount of Bond NONE    Bond Out Date    Time    a.m. p.m.

tim Notified of Advisory Y N    Injuries to Victim Y N    Medical Treatment to Victim Y N

ild abuse/neglect referral made to DCF    Y N

rsuant to F.S. 92.525 and under penalties of perjury, I declare that I have read the foregoing cument and that the facts stated in it are true.

| REQUEST FOR INVESTIGATIVE COSTS | | | | |
|---|---|---|---|---|
| DATE | OFFICER | HOURS | X PAY RATE | OR COST |
| | | | | |
| | | | | |
| | | | | |

clarant M. KOVACSEN    Agency SPPD / 1646469    OTHER - Describe    Continuation sheet Y N

inted Name    SPN    TOTAL $

## NOTICE TO APPEAR ONLY

MISDEMEANOR - You MUST appear at the Criminal Justice Center, Courtroom 17, Third Floor, 14250 49th Street North, Clearwater, Florida, on the _____ day of _____ at _____ a.m. p.m.

ORDINANCE VIOLATION - You MUST comply with EITHER A or B:
A. Comply with the Waiver Information on the reverse side of this form and pay a fine in the amount of $ _____ for a Category _____ offense within twenty (20) calendar days of this Notice.

B. Appear at the Criminal Justice Center, 14250 49th Street, Courtroom 17, Third Floor, Clearwater, Florida, on the _____ day of _____, at _____ a.m. p.m.

NON-CRIMINAL VIOLATION - You MUST pay a fine in the amount of $ _____ within ten (10) calendar days, or comply with the non-criminal violation nformation on the bottom of the reverse side of this form.

REE TO APPEAR AT THE TIME AND PLACE DESIGNATED ABOVE TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT OULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, OR PAY THE FINE REQUIRED BY THE DATES SET OUT ON S FORM, THAT I MAY BE HELD IN CONTEMPT OF COURT AND THAT A WARRANT FOR MY ARREST WILL BE ISSUED. I HEREBY CERTIFY BY MY SIGNATURE THE OW LISTED ADDRESS IS MY CORRECT ADDRESS.

A-736

Defendant's Signature    (Street, City, State, Zip Code)    Date of Receipt of Notice

Copies to:    White - Court    Green - Jail    Goldenrod - Defendant
r59 (Revised 11/99)    Blue - State Attorney    Pink - Police Dept    WD2/CoCr1-2(59A,b,c,d)12/21/99

A-15

```
      PINELLAS COUNTY JUSTICE INFORMATION SYSTEM - COMPLETED CALR MINUTES-WM
ORI: .        OPRID:      PSWRD:        ACS: DISPLAY /SYSTEM SECURITY DATA
ENTER: CDI: CRC DATE: 082401 CALENDAR: ADV COURT ROOM:      START TIME: 1330
       SPN: 02267967 CASE: CRCAB19879CFANO      PANEL: 1  PNTR: D089 PRINT: N
DEA @ COCHRAN,DONALD RICHARD        / 02267967 CUST: JAMX
PDA                            ADA
SAT                            ADDED SAT NME:
ADDED AD OR PD - COC:      NAME: .
AB-19879CFANO (01) ( ) SP01054369 DOA: 082301 D/JAIL      1      $0
01: FUG DE-SMYRNA PD:ASSAULT/BURG/IMP/CRI MIS;FTA  ( ) JAMX      $0


ALL COUNTS ARE DISPLAYED
**** MINUTES ****
_ 005 COMPLAINT/ADVISORY FUG DE-SMYRNA PD:ASSAULT/BURG/IMP/CR
_ 008 PROBABLE CAUSE FOUND
_ 011 BOND REMAIN
_ 014 HOLD FOR PICKUP


ALL MINUTES ARE DISPLAYED
PF3-PREV CASE PF4-NEXT CASE                        NEXT FCT:
```

$A-137$





General | Court | Official Records | Property | Other Records | eBusiness



**Consolidated Justice Information System**
*Pinellas County, Florida*

Adult Criminal - Case Progress Docket - Fct K

Link Icon Explanation

| Pinellas Case | | | Uniform Case | Entitlement | | | Date Filed | Current Location |
|---|---|---|---|---|---|---|---|---|
| CRC0113909CFANO | | | 522001CF013909 | STATE VS COCHRAN,D | | | 08/24/01 | CCR |
| Type | Apr | Cal | Final Disposition | Comp | Division | ESI | | Home Location |
| | | | | | C | | | CCR |

| Name | SPN | COC |
|---|---|---|
| COCHRAN,DONALD R | 02267967 | DEFENDANT A |

41 docket entries · New Search 🔍 📖 📕 🎏 🗃 🔍 🗃 📥 🏠 🖍 🖃

| Date | Docket Entry Text | Defendant | Verify |
|---|---|---|---|
| 09/10/02 | LETTER - DEFT TO CLERK RE: COPIES | A | F |
| 08/13/02 | REQUEST: FOR DOCUMENTS - PRO SE | A | F |
| 10/24/01 | DEFT'S. COPY OF - ORDER & JUDGMENT OF RESTITUTION-RETURNED | A | F |
| 10/15/01 | ORDER & JDMT OF RESTITUTION $ 20.00 OR 11633/2395-001 | A | F |
| 10/11/01 | NOTICE RETURNED NOT SERVED | A | F |
| 10/04/01 | NOTICE OF PRE-TRIAL - 111901 COURTROOM: C AT 08:30 | A | F |
| 10/03/01 | JUDGMENT FOR COST $ 484 OR 11614/2410-001 | A | F |
| 10/01/01 | WITNESS SUBPOENA RETURNED (3) | A | F |
| 10/01/01 | PRE-TRIAL HRG SET: 111901/0830 AM -C- | A | N |
| 09/28/01 | NOTICE RETURNED SERVED | A | F |
| 09/28/01 | RESTITUTION AS A LIEN P.C.S.O | A | F |
| 09/28/01 | RESTITUTION ORDERED $ 20 P.C.S.O | A | F |
| 09/28/01 | INVESTIGATIVE COSTS ASSESSED $ 36/SP | A | N |
| 09/28/01 | CRIM JUST EDUC/TRAIN FD ASSESSED $ 2.00 | A | N |
| 09/28/01 | COURT FACILITIES COURT COSTS $ 150 | A | N |
| 09/28/01 | PAY FINE $ 256 | A | N |
| 09/28/01 | SENTENCED TO JAIL TIME: 18.6M/DO CTS 36D | A | F |
| 09/28/01 | JUDGEMENT & SENTENCE: OR 11614/2185-004 | A | F |
| 09/28/01 | SENTENCED UNDER GUIDELINES | A | F |
| 09/28/01 | CHANGED PLEA TO NOLO CONTENDERE | A | F |
| 09/24/01 | PRAECIPE FOR WITNESS SUBPOENA (3) | A | F |
| 09/24/01 | DEMAND NOTICE INTENTION TO CLAIM ALIBI | A | F |
| 09/24/01 | ANSWER TO DEMAND FOR DISCOVERY | A | F |
| 09/20/01 | NOTICE OF HEARING: 092801/1100 AM | A | F |
| 09/20/01 | DEMAND FOR ADVERSARY PRELIMINARY HEARING & | A | F |
| 09/19/01 | NOTICE OF ARRAIGNMENT - 100101 COURTROOM: C AT 01:30 | A | F |
| 09/17/01 | NOTICE OF INTENT TO SEEK RESTITUTION | A | F |
| 09/17/01 | INFORMATION FILED: (1CT) ROBBERY | A | F |
| 08/31/01 | BOND HEARING - NO CHANGE | A | N |
| 08/31/01 | MOTION WITHDRAWN D/MTN TO MODIFY BOND | A | N |
| 08/28/01 | PUBLIC DEFENDER FINANCIAL AFFIDAVIT | A | F |
| 08/28/01 | DEFT INVOCATION CONSTITUTIONAL RIGHTS | A | F |
| 08/24/01 | REQUEST FOR INV. COST $ 36/SP | A | F |
| 08/24/01 | WRITTEN PLEA NOT GUILTY-PUBLIC DEFENDER | A | N |

*A-13*

*A-17* EX-2

# IN THE CIRCUIT COURT
# FOR PINELLAS COUNTY, FLORIDA

CASE #    CRCAB19879CFANO

$\partial\partial 67967$

# WAIVER OF EXTRADITION

I,    DONALD RICHARD COCHRAN    being advised of my rights under the Statutes of Florida of the issuance and service of a warrant of extradition, and being further advised of my constitutional rights to obtain a writ of habeas corpus,

And being personally charged with having committed the crime of:
POSS.OF DEADLY WEAPON DURING COMMISSION OF FELONY, ASSAULT, BURGLARY

In the State of    DELAWARE    , I do hereby and without reservation and in view of my legal rights in extradition proceedings as heretofore explained to me before this Honorable Court, waive any and all such legal rights and do further by my signature hereto affixed, consent to this Waiver of Extradition and further consent to be returned to the State of   DELAWARE    , there to stand trial on the charges alleged.

In further witness of my voluntary and unconditional consent, I do further state that my signature below affixed was so signed in the presence of this Honorable Court without any threats, promises, duress, or agreements whatsoever and with full knowledge of my rights as stated above.

Signed in the presence of:

CIRCUIT JUDGE, PINELLAS COUNTY, FLORIDA

Sign this _28th_ day of _AUGUST_

A.D., 2001, at Clearwater, Florida

Witness by: _DET. M. Gardner_

THE ABOVE NAMED RESPONDENT, HAVING
WAIVED HIS RIGHT OF EXTRADITION, IS
HEREBY REMANDED WITHOUT BOND PENDING
ARRIVAL OF THE DEMANDING STATE.

$A-139$

$A-18$

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR PINELLAS COUNTY
CRIMINAL DIVISION

STATE OF FLORIDA

Plaintiff                    Case Number(s) ___01 - 13909CFAND-C___

v.

___DONALD COCHRAN___

aka _____

Defendant

## CHANGE OF PLEA FORM

1. I, ___DONALD COCHRAN___, Defendant herein, do hereby withdraw my plea of not guilty and enter a plea of (guilty) (nolo contendere  no contest) to the charge(s) of ___ROBBERY (STRONG ARM)___ _____ in the above-referenced case(s).

2. I understand that the plea of "not guilty" denies my guilt; a plea of "guilty" admits my guilt; and, a plea of "nolo contendere" or "no contest" means that, while I do not admit guilt, I will not contest the evidence against me. I understand that, if the court accepts my change of plea, I give up (waive) my right to a jury trial, and that I will be sentenced as a felony offender, based upon my plea.

3. I understand the charge(s) which has/have been placed against me and to which I am changing my plea. My lawyer has explained to me the elements of the crime(s), and any defenses I may have as well as the maximum penalty for the crime(s) to which I am pleading guilty or no contest, which is _____ ___15 YRS FSP___ _____.

4. I understand that the guideline recommendations (will)  (will not) be applied to my sentence.

5. I understand that, depending upon the nature of the offense(s) to which I am changing my plea, and/or upon the nature of any prior convictions, I may NOT be eligible for certain credits which shorten the length of the sentence imposed. The credits to which I may NOT be entitled include, but are not limited to, control release date (CRD) credits, and/or award(s) of gain time while I am in prison. I further understand that I may serve more time on my sentence than I would if I were not convicted of offense(s) of a nature such as these.

6. I understand that, if the court accepts my plea, I am hereby giving up (waiving) my right to a public jury trial, the right to require the State to prove the charge(s) against me beyond a reasonable doubt, and the right to see and hear the witnesses against me and to have my lawyer question them. I am also waiving the right to employ any defenses which I may have, the right to subpoena and the right to present witnesses, or other evidence, and the right to testify or remain silent, as I choose. I am waiving the right to have a jury decide whether I am guilty or not guilty.

7. I further understand that, by pleading guilty or no contest, I am hereby waiving my right to appeal the facts of the case. My lawyer has explained to me the meaning of an appeal. I further understand that I have thirty (30) days from this date to appeal the court's sentence and that, if I cannot afford to hire a lawyer to represent me for the purposes of an appeal, one will be appointed for me.

8. I do not require the State to tell the court the facts upon which the charge or charges are based before the court accepts my change of plea.

9. I am entering this plea because I believe it is in my best interest to do so, and it is what I wish to do of my own free will. No one has pressured me or forced me to enter this plea against my will. No one has promised me anything to entice me to change my plea to "guilty" or "no contest"; however, there has been an understanding that my sentence will consist of ___18.6 MOS FLORIDA___ ___STATE PRISON - ADJUDICATION___

___SENTENCE TO RUN CONCURRENTLY WITH ANY SENTENCE SERVED IN DELAWARE___

___AND SENTENCE MAY BE SERVED IN DELAWARE (DEF. AWAITS EXTRADITION)___

CtCrl16(A,b) (Rev. 12/00) ___A - 19   POSTS & COSTS @ L/ERVE___

Page 2 Change of Plea Form ____ Case Number(s) _____ O1- 1390*CFAND

10. If I am to be placed on probation or community control, I will pay $50.00 per month towards court costs in the amount of $ _____ as ordered by this Court commencing with the first day of probation or community control until paid in full.

11. I agree to restitution in the amount of $ _____. If the amount of restitution is not decided at this time, I hereby waive any right to notice which I may have before such restitution may be imposed. I also waive any right to attend any hearing for such purposes.

12. My attorney has reviewed with me all statutory costs being assessed by the Court, including all mandatory and discretionary costs. My attorney has further advised me that I have a right to have the amount of each discretionary cost and certain mandatory costs individually announced in open court. I hereby waive my right to such individual announcement. I agree to pay all fines and costs, including the fines and costs checked on the attached sheets.

13. I further agree that there will be lien(s) placed against me and/or my real property for any unpaid fines, Public Defenders' fees, costs of prosecution, and court costs.

14. I hereby waive any right I may have to a Pre-Sentence Investigation (PSI), so that I may proceed directly to sentencing.

15. If I am not a citizen of the United States of America, I understand that this criminal proceeding could cause me to be deported to the country of my origin.

16. If I have ever been convicted of or pled to a sexually violent offense, I understand that I may later be subject to a civil commitment proceeding for sexually violent predators.

17. My education consists of ____ years of school. At this time, I am not under the influence of any alcoholic beverage, or other drug or medicine, nor am I suffering from any mental or emotional problems which affect my understanding of this plea form.

18. I have read every word of this written plea form. All blank spaces have been filled in and there are no blank spaces upon my accepting and signing this plea form. I have discussed, with my lawyer, the contents of the plea form, and I understand this written plea form fully. My lawyer has answered any questions which I have had.

19. I am satisfied with my lawyer's advice and help concerning my decision to change my plea, and in all matters pertaining to the above-referenced case(s).

SWORN TO, SIGNED, AND FILED IN OPEN COURT, in the presence of the presiding judge and defense counsel of record, this 28 day of ___ September _____ , 2001 .

x _____
Defendant

I hereby certify that I am counsel for the above-named Defendant in the above-referenced case(s), that I have explained to my client the elements, evidence, defenses, and rights related to the charge(s) against him/ her. I have further reviewed with my client all statutory fines and costs being assessed against him/her, including all mandatory and discretionary costs. I believe that my client understands the contents and the meaning of this plea form, his/her rights, and the consequences of his/her change of plea, and that he/she is entering this plea freely, voluntarily, and knowingly.

_____
Counsel for Defendant

I hereby find that the above-named Defendant did, on this date, freely, voluntarily, and knowingly change his/her plea in the above-referenced case(s).

_____
Presiding Judge

A-19

CtCr116(a.B) (Rev. 12/00)

TO: District Attorney Generals Office
55 The Green
Dover Delaware

FR: Donald R Cochran #166499

RE EXTRADICTION TO Delaware /
SPEEDy Trial Request

OCTOBER 4, 2001

Dear D. A. G,

I Have Been Advised That I Have A Detainer Being Lodge Against me For: Assault, Buglary, Poss Deady Weapon, False Imp. Criminal mis, By Delaware at Kent County.

This Letter is to Request Your Office to Be Brought Back to Delaware For The Charges I'm Being Detained For. I Also will Like To Exercise my Right For A Speedy Trial. I would like To Be Picked up.

Thank You
Donald Cochran

C:

A-142

A-20



EX-3

TO: DISTRICT ATTORNEY General's OFFICE
   55TH Green
   Dover Delaware

FR: Donald R. Cochran # 166499

RE: 2ND REQUEST EXTRADICTION/
   SPEEDY TRIAL REQUEST

JANUARY 1, 2002

DEAR D. A. G.

THIS is my 2ND LETTER BEING FILED TO YOUR OFFICE
ASKING TO BE BROUGHT BACK TO DELAWARE, FOR TRIAL ON THE
PENDING CHARGES, I AM ONCE AGAIN REQUESTING FOR A
SPEEDY TRIAL. I AM BEING DETAINED AT HARDEE CORRECTION
INSTITUTE IN FLORIDA.
   ON OR ABOUT, SEPTEMBER 28, 2001 A JUDGEMENT WAS
ENTERED (UNDER A PLEA AGREEMENT). BY THE SIXTH
JUDICIAL CIRCUIT COURT OF FLORIDA. I ASK THAT THE
ARRANGMENTS BE MADE FOR MY TRANSFER BACK TO DELAWARE.
I WOULD LIKE A SPEEDY TRIAL FOR THE CHARGES PENDING.

                    THANK YOU
                    DONALD COCHRAN

C:

A-143

A-21



EX-4

TO :
55 THE GREEN
DOVER DELAWARE

FR: DONALD R COCHRAN  # 164499

RE: 3RD REQUEST EXTRADICTION /
SPEEDY TRIAL REQUEST


DEAR D. A. G.                              MAY 15, 2002

    I AM WRITING A 3RD TIME TO YOUR OFFICE
ADVISING YOU THAT I HAVE BEEN AWAITING TO BE
PICKED UP FOR THE Charges in (Smyrna/Dover) of
THE ASSAULT, I.E. AND NO ONE HAS MADE ANY EFFORT
OF Bringing ME BACK TO DELAWARE TO STAND TRIAL
FOR THEM.

    I REQUEST A SPEEDY TRIAL FOR THE Charges
THAT FACE ME.


                        Thank You
                        DONALD Cochran

C:


                                        A - 144

A. 22



EX-6

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | : |
| | : |
| | : |
| v. | : Case No. 0102010757 |
| | : |
| DONALD R. COCHRAN, | : |
| Defendant. | : |

### MOTION TO DISMISS

The above named defendant hereby moves the Court, pursuant to Superior Court Criminal Rule 48(b), 11 *Del.C.* §2542, the 6ᵗʰ Amendment, U.S. Constitution, and Del. Const, Art. I, Sect 7, to dismiss the charges in the above captioned matters on the ground that the defendant's right to a speedy trial has been abridged. In support of this Motion, it is represented as follows:

1. On August 31, 2001, the defendant was arrested in Pinellas County, Florida on a charge of robbery. Following his arrest, the State of Delaware filed fugitive warrants against the defendant under the Uniform Criminal Extradition Law. The defendant waived extradition on August 28, 2001. (Ex. No. 1).

2. On September 28, 2001, the defendant was sentenced to serve 18.5 months in jail on the Florida robbery charge. (Ex. No. 2).

3. On October 4, 2001, the defendant sent a letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 3).

4. On January 1, 2002, the defendant sent another letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 4).

$A - 145$

$B-1$



$\sim 177$

5. On January 3, 2002, the defendant was informed that the State of Delaware had filed a detainer against him. (Ex. 5).

6. On May 12, 2002, the defendant sent a third letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 6).

7. On July 23, 2002, the defendant requested the Florida Corrections officials for assistance in disposing of the Delaware Detainer. (Ex. 7).

8. On August 28, 2002, the defendant signed the forms under the Interstate Agreement on Detainers (11 *Del. C.* §2542) ("IAD")for his return to Delaware. (Ex. 8).

9. The defendant was returned to Delaware on October 24, 2002.

## Argument

The defendants three separate letter requests to the Delaware Department of Justice should be deemed to have triggered the State's obligation under §2542 of the IAD to bring the defendant to trial within 180 of the request. *See, Pittman v. State*, 301 A.2d 509, 513 (1973). The defendant's repeated assertion of his speedy trial rights, combined with the delay of over one year in returning him to Delaware, amount to a violation of defendant's State and federal constitutional right to a speedy trial.

*Joseph M Bernstein*

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
Attorney for Defendant

Dated: January 31, 2003

$\beta - 1$

$A - 146$



$-178-$

## Certificate of Service

I, Donald, R Cochran, hereby certify that I have served a true and correct cop(ies) of the attached: a Response to the State's and attorney's answer to defendents Rule 61 Claims upon the following parties/person (s):

TO: Kent County Prothonotary    TO: _____

38 The Green    _____

Dover, Delaware    _____

19901    _____

_____    _____

TO: John William D.A.G.    TO: _____

Delaware Department of Justice    _____

102 W. Water Street    _____

Dover, Delaware    _____

19904-6750    _____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this 20th day of May _____, 2006

Date: May 20th 2006

Donald Cochran

D.D.C

1181 Paddock Road

Smyrna, Delaware

19977

A-149

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| | ) | IK02-01-0397-R1 |
| | ) | IK02-01-0398-R1 |
| **DONALD R. COCHRAN,** | ) | IK02-01-0399-R1 |
| | ) | |
| Defendant. | ) | |
| ID No. 0102010757 | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61

Susan G. Schmidhauser, Esquire, Deputy Attorney General, Dover, Delaware, for the State of Delaware.

Donald R. Cochran, *pro se.*

FREUD, Commissioner
December 7, 2006

The defendant, Donald R. Cochran ("Cochran") entered a *Robinson*[1] guilty plea on February 3, 2003 to one count of Assault in the First Degree, 11 *Del. C.*

---

[1] *Robinson v. State*, 291 A2d. 279 (Del. 1972) (permitting the acceptance by the trial court of a guilty plea in the absence of an admission of guilt).

A-6

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

§ 613; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447. Cochran was facing trial on the above charges along with one count of Unlawful Imprisonment in the First Degree, one count of Criminal Mischief and one count of Non-Compliance with a Condition of a Bond. The charges involved a brutal assault of an innocent elderly female victim while Cochran was under the influence of alcohol and drugs. Following a Pre-sentence office investigation, Cochran was sentenced on June 16, 2003 to a total of thirty-two years of incarceration, suspended after serving eighteen years for various levels of probation. Had Cochran gone to trial and been convicted as charged, he would have faced over fifty years of incarceration. Cochran filed a *pro se* appeal to the State Supreme Court, which was dismissed as untimely.[2] Cochran next filed a motion for reduction of his sentence in which he argued he should have received credit for time served in the State of Florida while awaiting extradition to Delaware. This Court denied this motion.[3] Cochran appealed and the State Supreme Court affirmed this Court's ruling.[4]

Now Cochran has filed a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 in which he raises four grounds for relief including

---

[2] *Cochran v. State*, 2003 Del. LEXIS 569.

[3] *State v. Cochran*, Del. Super. ID 0102010757, Ridgely, P.J. (Dec. 17, 2003)( ORDER).

[4] *Cochran v. State*, 2005 Del. LEXIS 501.

2

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

ineffective assistance of counsel.

## I. FACTS

The facts were set forth at Cochran's plea:

> MR. GAREY: Had the matter proceeded to trial, Your Honor, the State would have presented the testimony of Mary Naylor. Ms. Naylor would have testified that on the Monday evening, February 12, 2001, she was at her residence in Smyrna, Delaware, Kent County; that approximately 8:00 p.m., actually 8:15 to 8:30 in the evening, after dark, she was assaulted in her residence by the defendant, Donald Cochran. That he broke in, unannounced, struck her repeatedly about the head, and struck her also with a beer bottle. State would have presented photographs of the crime scene which would have corroborated the testimony of Mrs. Naylor, and I believe that the evidence would have been sufficient to obtain a conviction.
>
> THE COURT: All right. And was Mr. Cochran operating under some degree of - -
>
> MR. BERNSTEIN: Your Honor, the basis for the Robinson plea is this: Mr. Cochran, beyond recalling kicking in the door to the residence, has no recollection of the events that occurred after that. He was in a highly intoxicated state and also had been using drugs that day.
>
> There was some – the reasoning – there was a reason, a reason he went into the house. The reason he went into the house was he had a long-term relationship with Mrs.

3

*A-7*

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

Naylor's daughter. He was walking by the residence, saw the daughter's truck parked outside. He wanted to – some things he wanted to discuss with her. The victim in this case was not – was a totally unintended victim. She happened to be there.

Mr. Cochran had some issues with the victim's daughter, and those are things we will get into more detail about at sentencing, but for present purposes Mr. Cochran does not have a recollection beyond going into the house. To put it in his words, he snapped. We have no reason – I have looked at the pictures. Mr. Cochran has had an opportunity to look at them. I don't believe there really is any dispute that the victim here suffered these injuries, the way she suffered them, and at whose hand. The victim knows Mr. Cochran, has known him for a while. It is not a question of a stranger on stranger here. So we believe there is a factual basis for the plea.

THE COURT:    Okay.

MR. BERNSTEIN:    May we continue with the colloquy if the Court will have Mr. Cochran sworn?

THE COURT:    Before I do that I want to take a one minute recess, and I will be right back.

MR. GAREY:    I wanted to say it wasn't the victim's daughter, it was a friend of the victim's son.

THE COURT:    All right. One minute recess. Be right back.

4

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

(A brief recess was taken.)

MR. BERNSTEIN:     One correction, Your Honor. I misspoke when I said the dispute that Mr. Cochran had was with Miss Naylor's daughter. It was with her son. I wanted to clear that up. Is that right?

THE COURT:     All right. Thank you, Mr. Bernstein. I will ask Mr. Cochran to come forward to the podium and be sworn in.     Any objections to swearing on the Bible, Mr. Cochran?

THE DEFENDANT:     No, Sir.

THE COURT:     All right. Please swear him.
\* \* \* \* \*

DONALD R. COCHRAN

\* \* \* \* \*

the defendant herein, being duly sworn, was examined and testified as follows:

BY THE COURT:
Q.     All right, Mr. Cochran, I have some questions which I need to have answered under oath. That is the purpose of your being sworn in.

A.     Yes, sir.

Q.     You heard the statements of your attorney, Mr.

5

- 182 -

*A-8*

**State v. Donald R. Cochran**
**ID No. 0102010757**
December 7, 2006

Bernstein, as well as the statements of the prosecution. I want to ask you: Did you hear everything that was said?

A.    Yes, sir.

Q.    Was everything said true and correct?

A.    No, sir.

Q.    What I am asking you, everything that the attorneys, that is, Mr. Bernstein stated.

A.    He didn't get all the facts right, sir. I been two years. This will be -- I am fighting for my life here, and he didn't state some facts right that should be stated right, and the reason why I just didn't go in, and I don't remember what happened to her, but he didn't state all the facts right.

Q.    Are you saying that Mr. Bernstein did not state all the facts that you thought he should have stated?

A.    Yes, sir. He was basically right, but he doesn't have the facts right. It wasn't Mrs. Naylor's daughter, it was the woman I had been seeing for ten years was sleeping around with someone I called a friend, Tom Naylor, and I had been drinking heavy and on drugs, and was going to get more drugs, and they had lied to me. Tom Naylor had lied to me. He was a friend and said he didn't know who she was seeing, and I was getting some more drugs and happened to see the truck at her - - his house, and I snapped from there, and all I remember was kicking the door in. I don't remember the events that happened inside. I had a blackout. And that's the facts.

6

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

> Ground Three: Failure to hold evidentiary hearing to
> determine competency due to mental records and reports
> on Petitioner's mental state, and with Petitioner being
> offered a Robinson Plea, a [*sic*] evidentiary hearing
> should have been heard to determine Petitioner's mental
> state of mind.

> Ground Four: Lack of mitigating evidence. Petitioner
> had a right to have all mitigating evidence that is favorable
> heard to show that there was a mitigating side to this case
> that was overlooked and this mitigating evidence should
> have got the same consideration  that the aggravating
> factors received in this case.

## PROCEDURAL CONSIDERATIONS

Under Delaware law this Court must first determine whether Cochran has met

the procedural requirements of Superior Court Criminal Rule 61(i) before it may

consider the merits of his postconviction relief claim.[6]  This is Cochran's first

motion for postconviction relief and it was filed within three years of his conviction

becoming final, so the requirements of Rule 61(i): (1)  requiring filing within three

years and (2)  requiring that all grounds for relief be presented in the initial Rule 61

motion, are met.  None of Cochran's claims were raised at the plea, sentencing or

on direct appeal, therefore, they are barred by Rule 61(i)(3), absent a demonstration

of cause for the default and prejudice.  Arguably, each of Cochran's  grounds for

relief are based on ineffective assistance of counsel.  Rule 61(i)(3) does not bar

---

[6] *Bailey v. State,* 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554
(Del. 1990).

−184−

*A - 10*

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

Q.   Okay.  Most of what you said seem to me to not be totally contrary to what your attorney stated.  Do you - - but do you want a moment to talk with your attorney again?

A.   No, sir.  He just said that it was the victim's daughter and it wasn't the victim's daughter.

THE COURT:   That is the only inaccuracy?

MR. BERNSTEIN:   I just corrected that.

THE COURT:   I understand, Mr. Bernstein.

BY THE COURT:
Q.   That was the only inaccuracy that you recall; correct?

A.   Yes, sir.

Q.   Did not Mr. Bernstein make a correction to that?

A.   She said it was his son - - he said it was her son, but it was the woman I had been seeing, about ten years, and Mrs. Naylor's son.

Q.   So he was - - when Mr. Bernstein corrected himself, he was then correct; is that right?

A.   Yes, sir.

Q.   Okay.  All right.  Other than that everything that was stated is correct; is that correct?

7

- 183 -

*A-9*

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

standard is highly demanding.[11] *Strickland* mandates that when viewing counsel's representation, this Court must endeavor to eliminate the distorting effects of hindsight.[12]

Following a complete review of the record in this matter, it is abundantly clear that Cochran has failed to allege any facts whatsoever sufficient to substantiate his claim that his attorney was ineffective. I find Defense counsel's Affidavit and the record more credible than Cochran's self-serving accusations. Cochran was facing trial on many serious charges and risked being sentenced to a substantial period of minimum mandatory jail time. Cochran's counsel was able to negotiate a Plea Bargain with the State which resulted in only ten years minimum mandatory incarceration. Cochran and his attorney discussed the case prior to the entry of the plea. The Plea Agreement was clearly advantageous to Cochran. Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Cochran entered his guilty plea he stated on his Truth-In-Sentencing Guilty Plea Form ("Guilty Plea Form") that he was satisfied with defense counsel's performance.[13] He is bound by his statements unless he presents clear and convincing evidence to the contrary.[14] Consequently, Cochran has failed to establish that his counsel's representation was ineffective under the *Strickland*

---

[11] *Flamer*, 585 A.2d at 754.

[12] *Strickland*, 466 U.S. at 689.

[13] *State v. Cochran*, Del. Super. ID 0102010757 (Feb. 3, 2003), tr. at 16.

[14] *Blanchfield*, 1994 Del. LEXIS 314; *Mapp v. State*, 1994 Del. LEXIS 94 (citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

11

*A-11*

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

test.

Even assuming *arguendo* that counsel's representation of Cochran was somehow deficient, Cochran must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[15] Cochran attempts to circumvent this requirement by in part claiming a jurisdictional defect. However, as outlined below, he clearly fails.

In his first ground for relief, Cochran claims that the State of Delaware failed to comply with the 180 day requirement of the Delaware Uniform Agreement on Detainers.[16] The file, however, shows that Cochran was brought to trial within the 180 day time limit. Additionally, Cochran waived this right when he accepted a plea.

Pursuant to 11 *Del. C.* § 2542, "the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of imprisonment and the request for final disposition to be made of the indictment, information or complaint . . ." Furthermore, the prisoner's request to be transferred to the State of Delaware must be accompanied by a certificate from the official who has custody of the prisoner detailing the term of commitment in that jurisdiction, the amount of time served, the amount of time remaining to be served, any good time earned as well as information about parole eligibility. Despite the

---

[15] *Larson*, 1995 Del. LEXIS 238; *Younger*, 580 A.2d at 556.

[16] 11 *Del. C.* § § 2540-2550.

12

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

fact that Cochran claims that he sent three such requests (October 4, 2001, January 1, 2002 and May 12, 2002), it is clear that none of those letters met the strict requirements of the statute. All three letters were sent to the Attorney General's Office, *not* to the Court. Two of the letters did not indicate where Cochran was held and none of the letters were accompanied by the appropriate certification from the Florida prison. The appropriate paperwork was not received by the Attorney General's Office and the Court until August 28, 2002 when Cochran waived extradition.[17] Cochran accepted a guilty plea on February 3, 2003 which is within the 180 day requirement.

Cochran's argument also fails because he accepted a guilty plea thereby waiving any violations. A defendant is bound by his answers on a guilty plea form unless proven otherwise by clear and convincing evidence.[18] On the Truth-In-Sentencing Guilty Plea Form, Cochran indicated that he understood that by pleading guilty he would not have a trial thus giving up many Constitutional rights, including the right to a speedy trial.[19] Furthermore, the Court inquired in the plea colloquy as to whether Cochran understood that he could either pursue the Motion to Dismiss or accept the plea. After much discussion, Cochran elected to accept the plea.[20]

Cochran's second claim is that his counsel was ineffective by failing to

---

[17] See *State v. Farrow*, 2005 Del. Super. LEXIS 199 citing *Isenhower v. State*, 516 A.2d 482 (Table) and *Beebe v. State*, 346 A.2d 169 (Del. 1975).

[18] *Blanchfield v. State*, 1994 Del. LEXIS 314.

[19] *State v. Cochran*, Del. Super., ID 0102010757 (Feb. 3, 2003), tr. at 10-12.

[20] *State v. Cochran*, Del. Super., ID 0102010757 (Feb. 3, 2003), tr. at 17-25.

A-12

13

-186-

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

explore Cochran's mental state and for counsel's failure to file the Motion to Dismiss. As Cochran's former counsel points out in his Affidavit in response to Cochran's motion, the *Robinson* plea was accepted by Cochran because he alleged he did not have a memory of the events which led to the charges. As set forth in the Facts above, during Cochran's discussion with the Court, he admitted that he was under the influence of drugs and alcohol at the time of the incident and that as a result he does not remember what happened once he kicked in the door.[21] Defense counsel points out in his Affidavit that he did not explore raising "mental illness" as a defense or that Cochran was not competent to accept the plea. Cochran does not allege any specific facts which show that this failure was in any way prejudicial and that the outcome would have been different if these issues were explored.

Cochran also alleges that Defense counsel's failure to file the motion to dismiss prior to the day of trial was ineffective. However, counsel did file the motion and Cochran explicitly waived his right by choosing to enter the guilty plea. Clearly, under these circumstances, Cochran's counsel was not ineffective.

Cochran's third ground for relief alleges that he was not competent at the time he accepted the plea. According to Cochran, because of mental illness, he was incapable of making rational decisions. It is clear, however, that this allegation is not supported by the record. Cochran completed *both* the Plea Agreement and the Truth-In-Sentencing Guilty Plea form. Cochran engaged in a lengthy discussion with the Court concerning his options with respect to the Motion to Dismiss and the Plea

---

[21] *State v. Cochran*, Del. Super., ID No. 0102010757 (Feb. 3, 2003) tr. at 7-8.

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

Agreement. Cochran asked pertinent and probative questions to the Court. As noted above in Facts, he was able to correct a factual mistake provided by Defense counsel. Since the record is devoid of any facts to support this claim, Cochran's allegation is meritless.

Cochran's fourth and final ground for relief states that there was a lack of mitigating evidence presented at sentencing and that if mitigating evidence was presented, he may have received a lighter sentence. At the time of sentencing, every defendant is afforded an opportunity to address the Court to present any information that may assist the Court in determining a sentence. Cochran had the opportunity to provide this information at sentencing and in fact, apologized for the crime. Cochran has made only a conclusory argument that the alleged mitigating factors would have had any influence with the Court. Cochran brutally beat an elderly woman in a drunken rage for no reason. Clearly his sentence was appropriate.

To the extent, if any, that Cochran alleges his plea was involuntary, the record clearly contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary the Court looks to the plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[22] At the Guilty Plea hearing, the Court asked Cochran whether he understood the nature of the charges, the consequences of his pleading guilty and whether he was voluntarily pleading guilty. The Court asked Cochran if he

---

[22]    *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

*A-13*

*State v. Donald R. Cochran*
**ID No.   0102010757**
December 7, 2006

understood he would waive his constitutional rights if he pled guilty, if he understood each of the constitutional rights listed on the Guilty Plea Form and whether he gave truthful answers to all the questions on the form. The Court asked Cochran if he had discussed the guilty plea and its consequences fully with his attorney. The Court asked Cochran if he was entering the *Robinson* plea of his own free will because there was in fact sufficient evidence to prove his guilt. The Court asked Cochran if he was satisfied with his counsel's representation. Cochran answered each of these questions clearly and affirmatively.[23]

Furthermore, prior to entering his guilty plea, Cochran filled out a Guilty Plea Form. Cochran indicated, when he signed the form, that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Cochran is bound by the statements he made on the signed Guilty Plea Form unless he proves otherwise by clear and convincing evidence.[24] I confidently find that Cochran entered his guilty plea knowingly and voluntarily and waived his right to a speedy trial.

In conclusion, I find that Cochran's counsel represented him in a competent and effective manner and that Cochran has failed to clearly demonstrate any prejudice stemming from the representation. I also find that Cochran's guilty plea

---

[23] *State v. Cochran*, Del. Super., ID No. 0102010757 (Feb. 3, 2003) tr. at 10-16.

[24] *Hickman v. State*, 1994 Del. LEXIS 320; *Smith v. State*, 1990 Del. LEXIS 1. *See also Sullivan v. State*, 636 A.2d 931, 938 (Del. 1994) (ruling the fact that defendant filled out Truth-In-Sentencing Guilty Plea Form in defendant's own handwriting supported the Superior Court's conclusion that defendant's decision to plead guilty was knowing and voluntary).

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | IK02-01-0397-R1 |
| v. | ) | IK02-01-0398-R1 |
| | ) | IK02-01-0399-R1 |
| **DONALD R. COCHRAN,** | ) | |
| ID No. 0102010757 | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On this 22nd day of January, 2007, upon consideration of the Defendant's Motion for Postconviction Relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

(1)    The defendant Donald R. Cochran ("Cochran") entered a *Robinson* guilty plea on February 3, 2003 to one count of Assault in the First Degree, 11 *Del. C.* § 613; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447. Cochran was facing trial on the above charges along with one count of Unlawful Imprisonment in the First Degree, one count of Criminal Mischief and one count of Non-Compliance with a Condition of a Bond. The charges involved a brutal assault of an innocent elderly female victim while Cochran was under the influence of alcohol and drugs. Following a Presentence Office investigation, Cochran was sentenced on June 16, 2003 to a total of thirty-two years of incarceration, suspended after serving eighteen years for various levels of probation. Had Cochran gone to trial and been convicted as charged, he would have faced over fifty years of incarceration. Cochran filed a *pro se* appeal to the State

*EX. A.*

Supreme Court, which was dismissed as untimely.[1]  Cochran next filed a motion for reduction of his sentence in which he agreed he should have received credit for time served in the State of Florida while waiting extradition to Delaware.  This Court denied this motion.[2]  Cochran appealed and the State Supreme Court affirmed this Court's ruling.[3]

(2)    Now Cochran has filed a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 in which he raises four grounds for relief including ineffective assistance of counsel.

(3)    The matter was referred to the Court Commissioner for findings of fact and recommendation pursuant to 10 *Del. C.* § 512(b) and Superior Court Civil Rule 132.  The Commissioner has filed a Report and Recommendation recommending that the Court deny defendant's motion for postconviction relief.  No objections to the Report have been filed.

**NOW, THEREFORE**, after careful and *de novo* review of the record in this action, and for the reasons stated in the Commissioner's Report and Recommendation dated December 7, 2006,

**IT IS ORDERED** that the thoughtful and well-reasoned Commissioner's Report and Recommendation is adopted by the Court and defendant's Motion for

---

[1] *Cochran v. State* (1st).

[2] *State v. Cochran*, Dec. 17, 2003, Ridgely, P.J. ( Docket Item #33).

[3] *Cochran v. State* (2nd).

2

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

was entered knowingly and voluntarily. Consequently, I recommend that the Court
*deny* Cochran's Motion for Postconviction Relief as procedurally barred.

Commissioner Andrea M. Freud

AMF/ds

oc:   Prothonotary
cc:   Hon. William L. Witham, Jr.
      Joseph M. Bernstein, Esq.
      Notebook

$A$-14

*State v. Donald R. Cochran*
**ID No. 0102010757**
January 22, 2007

Postconviction Relief is *denied* as procedurally barred.

Resident Judge

WLW/dmh

oc:    Prothonotary

xc:    Hon. Andrea M. Freud
       Susan Schmidhauser, Esquire
       Joseph M. Bernstein, Esquire
       Mr. Donald R. Cochran, DCC
       Order Distribution (w/Report & Recommendation)
       File

3

In The Superior Court Of The State Of Delaware
In And For Kent County

State of Delaware,

    Plaintiff,

v.

Donald R. Cochran,

    Defendant.

Id. No.: 0192010757

RECEIVED AND FILED
06 DEC 27 PM 3:00
KENT COUNTY PROTHONOTARY

## Motion For Correction Of An Illegal Sentence.

Comes now, Defendant Pro Se in presenting this Motion for Correction of an Illegal sentence pursuant to Rule 35(a) Super. Ct. Cr. R. to be heard at the Court's earliest convenience, and in support thereof the following Cause is shown:

1. Defendant was Convicted by entering a "Robinson Plea," before the Hon. J. W. L. Witham.

2. Defendant was sentenced by this Honorable Court on June 16, 2003 before Honorable J. D. Ridgely.

-191-

3. The offenses and length of sentences are:

(a) <u>Burglary 1st Degr:</u> 20 yrs. Level5 susp. after 6 yrs. for various levels of probation.

(b) <u>Assault 1st Deg.;</u> 10 yrs. Level 5

(c) <u>P.D.W.D.C.F.</u>: 2 yrs. Level 5

4. The following Grounds with Supporting facts and excerpts of Law are:

<u>Ground One:</u> The Court violated Ex Post Facto Clause of the United States Constitution Amendment Article I § 10 cl.1, when it imposed the Amended versions of the criminal offenses and guidelines at sentencing.

<u>Supporting Facts:</u> The Court made an error at sentencing when imposing the Amended version of P.D.W.D.C.F. that charged on July 15, 2001 to make any sentence Mandatory without any possible good time Statutory or earned, the next error made was the Burglary 1st Degree as Amended by House Bill No. 210 where the charge became a Class B felony as it was originally a Class C prior to enactment.

— 2 —

These changes were not procedural but structural changes in the way that left the Defendant to be held to a different Law than when the crime was committed as stated by Law which ultimately left him to severe sentencing increases, especially on the Burglary 1st Degree charge. The original Class C classification not only had different guidelines but the Statutory Maximum was only 10 yrs. (Ex. A)

Excerpts of Law: "Prohibition against ex post facto laws applies only to retroactive penal statutes that disadvantage a defendant." (See Brice V. State Del. Supr. (2003) 815 A.2d 314, 13 quoting U.S.C.A. Const. Art. 1 § 10 cl. 1 and Constitutional Law - 197 Keys Most Cited Cases.)

" When the guidelines are amended after the defendant commits a criminal offense, but before he is sentenced, and the amendment provision calls for a more severe penalty than the original one, those guidelines in effect at the time of the offense was committed

— 3 —

govern the imposition of sentence." (See <u>U.S. v. Keller</u> 2nd Cir. (1995) 58 F.3d 884). (Ex. A)


<u>Ground Two</u>: <u>Apprendi</u> violation arose when the Court's sentence exceeded the Statutory maximum on the Burglary 1st Degree charge. (See <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466, 120 S.Ct. 2348)

<u>Supporting Facts</u>: On February 13, 2001 an arrest warrant was issued for Donald R. Cochran where finally on June 16, 2003 Defendant received a 20 year Level 5 suspended after 6 yrs. for various levels of probation sentence outside the Maximum of 10 years for Burglary 1st Degree at the time the offense was committed as a Class C felony. (Ex. A)

<u>Excerpts of Law</u>: "The U.S. Supreme Court held in <u>Apprendi</u> that a criminal defendant's constitutional rights are violated when his prescribed Statutory maximum penalties are increased by any fact, other than a prior conviction, ..." (see <u>U.S. v. Vasquez</u> 3rd Cir. (2001) 271 F.3d 93, 96 —

— 4 —

— 191 —

quoting _Apprendi_ at 490, 120 S.Ct. 2348), The Delaware Supreme Court will remand as it did in the _Webb_ Court, ( _Webb v. State_ Del. Supr. (2001) 788 A.2d 529 - 2001 WL 1586877). (Ex. A),

Ground Three: Sentence is Unconstitutionally imposed where Counsel was Ineffective to recognize an Ex Post Facto Violation and _Apprendi_ violation.

Supporting Facts: On June 16, 2003, Defendant was Sentenced under the New Statutes for P.D.W.D.C.F. that was put in effect on July 19, 2001 and the Burglary 1st Degree that went into effect when House Bill Nor. 210 was passed in 2002. The Sentence Imposed is clearly unconstitutional.

Excerpts of Law: Applying the first prong of the _Strickland_ test: Counsel was unprofessionally inaccurate in His performance by failing to notice 2 Constitutional errors that were imposed upon Defendant at sentencing which are Grounds One and Two of this Motion. Applying the second prong of the _Strickland_ test: The Sentence

— 5 —

-195-

must now be vacated due to it is still prejudicing the Defendant. (see <u>Strickland v. Washington</u> 466 U.S. 668, 678).

As to Counsel's failure to research the law and Defendant's case. (see <u>Groseclose v. Bell</u> 6th Cir. (1997) 130 F.3d 1161 — "Counsel's failure to interview witnesses, conduct any legal research, or obtain and review any records was ineffective assistance."). (Exs. A, B, and C)


<u>Relief Requested</u>: The Court impose a new sentence with appointment of new counsel or release Movant due to the magnitude of the Constitutional Violations.

Dated: 12-19-06

Respectfully Submitted,
Donald R. Cochran
Donald R. Cochran
# 201992
1181 Paddock Road
Smyrna, DE 19977

— 6 —

Westlaw.

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.)
**Unpublished Disposition**

(Cite as: 788 A.2d 529, 2001 WL 1586877 (Del.Supr.))

(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')

Supreme Court of Delaware.
William J. WEBB, Jr., Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
No. 589, 2000.

Submitted Oct. 26, 2001.
Decided Dec. 7, 2001.
Reargument Denied Jan. 30, 2002.

Court Below--Superior Court of the State of
Delaware, in and for New Castle County, Cr.A.
Nos.    99-08-0767    99-08-0768    99-08-2482
VN97-03-0286-01.

Before VEASEY, Chief Justice, WALSH and
HOLLAND, Justices.

### ORDER
**\*\*1** This 7th day of December 2001, upon
consideration of the briefs on appeal and the record
below, it appears to the Court that:

(1) The defendant-appellant, William J. Webb,
filed this appeal from the November 27, 2000 order
of the Superior Court denying his second motion for
postconviction relief pursuant to Superior Court
Criminal Rule 61. We find no merit to the appeal.
Accordingly, we AFFIRM. Because of an error in
Webb's sentence for burglary, however, we
REMAND to the Superior Court for the limited
purpose of correcting Webb's sentencing order.

(2) In this appeal, Webb claims that the Superior
Court abused its discretion by dismissing his second
motion for postconviction relief as procedurally
barred. Specifically, Webb claims that, because the

Superior Court incorrectly stated that he had not
asserted a claim of coercion in his first motion for
postconviction relief and because the prosecutor's
breach of the plea agreement violated his
constitutional rights, the procedural bars should not
apply. [FN1] Webb also claims that the Superior
Court abused its discretion by denying his motion
for transcripts of the plea colloquy and sentencing
hearings.

> FN1. Super. Ct.Crim. R. 61(i)(2), (4) and
> (5).

(3) In March 2000, Webb pleaded guilty to
Burglary in the First Degree, Assault in the First
Degree and Endangering the Welfare of a Child. He
also admitted to violating the terms of a previously
imposed period of probation. On the burglary
conviction, Webb was sentenced to 12 years
incarceration at Level V, to be suspended after 5
years for decreasing levels of probation. [FN2] On
the assault conviction, he was sentenced to 30
months incarceration at Level V, to be suspended
after 24 months for decreasing levels of probation.
On the endangering conviction, he was sentenced to
12 months incarceration at Level V, to be
suspended for probation. On the violation of
probation, Webb was sentenced to 3 years
incarceration at Level V. Webb did not file a direct
appeal of his convictions or sentences. He did,
however, file two postconviction motions, the
second of which he now appeals to this Court.

> FN2. Laudably, the State points out that
> Webb should not have been sentenced to
> more than 10 years incarceration at Level
> V on the burglary conviction. 11 Del. C. §§
> 826, 4205(b)(3).

(4) When reviewing a motion under Rule 61, a
court must first determine that the motion satisfies
the procedural requirements of the rule before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EX. A

788 A.2d 529 (Table)                                                                    Page 2

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.)
**Unpublished Disposition**

**(Cite as: 788 A.2d 529, 2001 WL 1586877 (Del.Supr.))**

addressing any substantive issues. [FN3] Contrary to Webb's allegation, the Superior Court did not dismiss his motion on the ground that he had failed to assert a claim of coercion in his previous motion. Rather, the Superior Court correctly held that, to the extent Webb had asserted claims in his previous motion for postconviction relief that were re-asserted in his present motion and to the extent Webb asserted claims in his present motion that had not been asserted previously, all such claims were procedurally barred. [FN4]

> FN3. *Bailey v. State*, Del.Supr., 588 A.2d 1121, 1127 (1991).

> FN4. Super. Ct.Crim. R. 61(i)(2) and (4).

(5) Webb next claims that the prosecutor breached the plea agreement by recommending 28, rather than 20, years of Level V imprisonment at the sentencing hearing. [FN5] Webb alleges that this breach constituted a violation of his constitutional rights and rendered the procedural bars inapplicable. Webb is incorrect that the prosecutor's alleged breach of the plea agreement excuses his procedural default. [FN6] Even if the prosecutor did recommend a sentence in excess of what was agreed to, there was no prejudice to Webb since the total amount of the Level V sentence imposed by the Superior Court was less than 20 years.

> FN5. The plea agreement contains the following language: "State agrees not to recommend more than 20 years L[evel] V."

> FN6. Super. Ct.Crim. R. 61(i)(2), (4) and (5).

**2 (6) Webb's final claim that the Superior Court abused its discretion by denying his request for transcripts is also unavailing. It was within the discretion of the Superior Court to determine whether transcripts were needed in order to rule on Webb's motion for postconviction relief. [FN7] There was no error or abuse of discretion on the part of the Superior Court in determining that it was able to rule on the motion without the transcripts.

FN7. Super. Ct.Crim. R. 61(d)(3).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. This matter is REMANDED to the Superior Court for correction of Webb's sentence for Burglary in the First Degree from 12 years incarceration at Level V to 10 years incarceration at Level V. Jurisdiction is not retained.

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



SPONSOR: Rep. Smith & Rep. Van Sant &
Rep. Wagner & Rep. DiPinto & Rep.
B. Ennis & Sen. Vaughn & Sen.
Sorenson; Reps. Spence, Lee,
Buckworth, Carey, D. Ennis, Ewing,
Fallon, Hudson, Lavelle, Lofink,
Maier, Oberle, Quillen, Reynolds,
Ulbrich, Valihura, George, Gilligan,
Hall-Long, Houghton, Keeley,
Mulrooney, Plant, Williams; Sens.
McDowell, Blevins, Henry, Marshall,
Peterson, Sokola, Venables, Still,
Simpson, Cloutier

## HOUSE OF REPRESENTATIVES

### 142nd GENERAL ASSEMBLY

### HOUSE BILL NO. 210

AN ACT TO AMEND TITLES 10, 11, 16 AND 21 OF THE DELAWARE CODE RELATING TO CERTAIN CRIMES.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

1    Section 1. Amend § 613 of Title 11 of the Delaware Code by striking the phrase "class C felony" as it appears

2    variously in the catchline and in Subsection (c) of said Section, and by inserting in lieu thereof the phrase "class B

3    felony".

4    Section 2. Amend § 632 of Title 11 of the Delaware Code by striking the phrase "class C felony" as it appears

5    variously in the catchline and last sentence of said Section, and by inserting in lieu thereof the phrase "class B felony".

6    Section 3. Amend § 635 of Title 11 of the Delaware Code by striking the phrase "class B felony" as it appears

7    variously in the catchline and body of said statute, and by inserting in lieu thereof the phrase "class A felony", and by

8    striking the last sentence of said Section.

9    Section 4. Amend § 825 of Title 11 of the Delaware Code by redesignating the existing text of said Section as

10   Subsection "(a)", and by adding new Subsections "(b)" and "(c)" to said Section, to read as follows:

11       "(b)    Notwithstanding any provision of this Section or Code to the contrary, any person convicted of Burglary

12          in the Second Degree shall receive a minimum sentence of:

13          (1)  one (1) year at Level V; or

Page 1 of 9

HR : JFB : DLR
1341420176



14              (2) three (3) years at Level V, if the conviction is for an offense that was committed within five (5)

15                 years of the date of a previous conviction for burglary first or second degree or any offense set forth

16                 under the laws of the United States, any other state or any territory of the United States which is the

17                 same as or equivalent to such offenses, or if the conviction is for an offense that was committed

18                 within five (5) years of the date of termination of all periods of incarceration or confinement

19                 imposed pursuant to a previous conviction for burglary first or second degree conviction or for any

20                 offense set forth under the laws of the United States, any other state or any territory of the United

21                 States which is the same as or equivalent to such offenses.".

22            Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

23            Title.

24         (c)   The sentencing provisions of this subsection apply to attempted burglary in the second degree as well as

25            burglary in the second degree.".

26         Section 5. Amend § 826 of Title 11 of the Delaware Code by redesignating the existing text of said Section as

27 Subsection "(a)", and by adding new Subsections "(b)" and "(c)" to said Section, to read as follows:

28         "(b)   Notwithstanding any provision of this Section or Code to the contrary, any person convicted of Burglary

29            in the First Degree shall receive a minimum sentence of:

30            (1) two (2) years at Level V; or

31            (2) four (4) years at Level V, if the conviction is for an offense that was committed within five (5)

32                 years of the date of a previous conviction for burglary first or second degree or any offense set forth

33                 under the laws of the United States, any other state or any territory of the United States which is the

34                 same as or equivalent to such offenses, or if the conviction is for an offense that was committed

35                 within five (5) years of the date of termination of all periods of incarceration or confinement

36                 imposed pursuant to a previous conviction for burglary first or second degree conviction or for any

37                 offense set forth under the laws of the United States, any other state or any territory of the United

38                 States which is the same as or equivalent to such offenses.

39            Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

40            Title.".

HR : JFB : DLR
1341420176

41   (c)   The sentencing provisions of this subsection apply to attempted burglary in the first degree as well as

42         burglary in the first degree.".

43         Section 6. Amend § 832(b) of Title 11 of the Delaware Code by striking said subsection in its entirety, and by

44   substituting in lieu thereof the following:

45   "(b)   Notwithstanding any provisions of this Section or Code to the contrary, any person convicted of robbery

46         in the first degree shall receive a minimum sentence of:

47         (1)  three (3) years at Level V; or

48         (2)  five (5) years at Level V, if the conviction is for an offense that was committed within ten (10)

49               years of the date of a previous conviction for robbery in the first degree or any offense set forth

50               under the laws of the United States, any other state or any territory of the United States which is the

51               same as or equivalent to such offense, or if the conviction is for an offense that was committed

52               within ten (10) years of the date of termination of all periods of incarceration or confinement

53               imposed pursuant to a previous conviction for robbery in the first degree or for any offense set forth

54               under the laws of the United States, any other state or any territory of the United States which is the

55               same as or equivalent to such offense, whichever is the later date.".

56         Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

57   Title.

58         Section 7. Amend § 1448(e) of Title 11 of the Delaware Code by striking said subsection in its entirety, and by

59   substituting in lieu thereof the following:

60   "(e)   Notwithstanding any provision of this Section or Code to the contrary, any person who is a prohibited

61         person as described in this Section and who knowingly possesses, purchases, owns, or controls a firearm

62         or destructive weapon while so prohibited shall receive a minimum sentence of:

63         (1)  one (1) year at Level V;

64         (2)  three (3) years at Level V, if the person does so within ten (10) years of the date of conviction for

65               any violent felony or the date of termination of all periods of incarceration or confinement imposed

66               pursuant to said conviction, whichever is the later date; or

67         (3)  five (5) years at Level V, if the person has been convicted on two or more separate occasions of any

68               violent felony.

Page 3 of 9

HR : JFB : DLR
1341420176

69        Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this Title.

70        For the purposes of this subsection, "violent felony" means any felony so designated by § 4201(c) of this Title,

71        or any offense set forth under the laws of the United States, any other state or any territory of the United States

72        which is the same as or equivalent to any of the offenses designated as a violent felony by § 4201(c) of this

73        Title.".

74        Section 8. Amend § 4201(c) of Title 11 of the Delaware Code by inserting between the phrases "1447A

75        Possession of a Firearm During the Commission of a Felony" and "1455 Engaging in a Firearms Transaction on Behalf of

76        Another (Subsequent Offense)" the following:

77            "1448(e) Possession of a Deadly Weapon by Persons Prohibited (Firearm or Destructive Weapon Purchased,

78        Owned, Possessed or Controlled by a Violent Felon).".

79        Section 9. Amend § 4205(b)(2) of Title 11 of the Delaware Code by striking the phrase "20 years" as it appears

80        therein, and by substituting in lieu thereof the phrase "25 years".

81        Section 10. Amend § 4205(b)(3) of Title 11 of the Delaware Code by striking the phrase "10 years" as it appears

82        therein, and by substituting in lieu thereof the phrase "15 years".

83        Section 11. Amend § 6712(b) of Title 11 of the Delaware Code by adding a new paragraph "(3)" thereto, to read

84        as follows:

85            "(3)    Burglary in the Second Degree, as set forth in § 825 of Title 11, but only if the defendant has not

86                previously been convicted of Burglary in the Second Degree or Burglary in the First Degree, as

87                set forth in § 826 of Title 11.".

88        Section 12. Amend Subsections (d), (e) and (h) of § 6712 of Title 11 of the Delaware Code by striking the phrase

89        "§ 4205 of this Title" as it appears variously therein, and by substituting in lieu thereof the phrase "§ 825, § 826 or § 4205

90        of this Title".

91        Section 13. Amend Subparagraphs (a)(1)a., (a)(2)a., (a)(4)a.,(a)(5)a., (a)(6)a., (a)(7)a., and (a)(9)a. of § 4753A

92        of Title 16 of the Delaware Code by striking the phrase "3 years" as it appears variously therein, and by substituting in

93        lieu thereof the phrase "2 years".

94        Section 14. Amend Subparagraphs (a)(1) b., (a)(2) b., (a)(4) b., (a)(5) b., (a)(6) b., (a)(7) b., and (a)(9) b. of §

95        4753A of Title 16 of the Delaware Code by striking the phrase "5 years" as it appears variously therein, and by

96        substituting in lieu thereof the phrase "4 years".

HR : JFB : DLR
1341420176

97      Section 15. Amend Subparagraphs (a)(1) c., (a)(2) c., (a)(4) c., (a)(5) c., (a)(6) c., (a)(7) c., and (a)(9) c. of §

98      4753A of Title 16 of the Delaware Code by striking the phrase "15 years" as it appears variously therein, and by

99      substituting in lieu thereof the phrase "8 years".

100     Section 16. Amend § 4753A(a)(2) of Title 16 of the Delaware Code by striking the phrase "5 grams" as it

101     appears therein, and by substituting in lieu thereof the phrase "10 grams".

102     Section 17. Amend § 4753A(a)(2) a. of Title 16 of the Delaware Code by striking the phrase "5 grams" as it

103     appears therein, and by substituting in lieu thereof the phrase "10 grams".

104     Section 18. Amend § 4763(a) of Title 16 of the Delaware Code by striking said subsection in its entirety, and by

105     substituting in lieu thereof the following:

106         "(a)    *Previous convictions.* – In any case in which a defendant has previously been convicted of any offense set

107             forth in §§ 4751, 4752, 4753A or 4761 of this Title, or of any offense set forth under the laws of the

108             United States, any other state or any territory of the United States which is the same as or equivalent to

109             any of such offenses, the penalties set forth in §§ 4751 – 4761 of this Title shall be increased as follows:".

110     Section 19. Amend § 4763(a)(1) of Title 16 of the Delaware Code by striking the phrase "Subject to paragraph

111     (3) of this subsection," as it appears in the first sentence of said paragraph.

112     Section 20. Amend § 4763(a)(2) of Title 16 of the Delaware Code by striking the phrase "Subject to paragraph

113     (3)" as it appears in the first sentence of said paragraph.

114     Section 21. Amend § 4763(a)(1) of Title 16 of the Delaware Code by striking subparagraphs c. and d. of said

115     paragraph in their entirety, and by substituting in lieu thereof the following:

116         "c.  § 4751 (excepting heroin or any mixture containing heroin) or § 4752, five (5) years.

117         d.  § 4751 (heroin or any mixture containing heroin), ten (10) years.

118     Section 22. Amend § 4763(a)(2) of Title 16 of the Delaware Code by striking Subparagraphs a. and b. of said

119     paragraph in their entirety, and by substituting in lieu thereof the following:

120         "a.    § 4751 (excepting heroin or any mixture containing heroin) or § 4752, 3 years.

121         b.    § 4751 (heroin or any mixture containing heroin), 5 years.".

122     Section 23. Amend § 4763(a)(3) of the Delaware Code by striking said paragraph in its entirety.

123     Section 24. Amend § 4763 of Title 16 of the Delaware Code by adding a new Subsection "(d)" thereto, to read as

124     follows:

Page 5 of 9

HR : JFB : DLR
1341420176

125       "(d)   *Substance abuse treatment* – Notwithstanding any provision of this Section, Title or Code to the contrary,

126           the Department of Correction shall have the authority and discretion during the last 180 days of any Level

127           V sentence imposed pursuant to this Chapter to place the defendant at Level IV.".

128       Section 25. Amend § 921(2) a. of Title 10 of the Delaware Code by inserting between the phrases "unlawful

129 sexual intercourse in the first degree," and "kidnapping in the first degree" as they appear therein the following:

130       "assault in the first degree, robbery in the first degree,".

131       Section 26. Amend § 921(2) b. of Title 10 of the Delaware Code by striking the phrase "robbery in the first or

132 second" as it appears therein, and by substituting in lieu thereof the phrase "robbery in the second degree".

133       Section 27. Amend § 1009(e) of Title 10 of the Delaware Code by adding a new Subsection "(k)" thereto, to read

134 as follows:

135       "(k)   Subject to the provisions governing amenability pursuant to § 1010 of this Title, the Court shall commit a

136           delinquent child to the custody of the Department of Services for Children, Youth and Their Families if

137           the child who has been adjudicated delinquent by this Court of one (1) or more offenses which would

138           constitute either Possession of a Firearm During the Commission of a Felony or Robbery First Degree

139           (where such offense involves either the display of a deadly weapon or the infliction of serious physical

140           injury upon any person who was not a participant in the crime) were the child charged as an adult under

141           the laws of this State. Such child is declared a child in need of mandated institutional treatment, and this

142           Court shall commit the child so designated to the Department of Services for Children, Youth and Their

143           Families for at least a twelve (12) month period of institutional confinement.".

144       Section 28. Amend § 1010(a)(1) by inserting between the phrases "rape in the second degree" and "or

145 kidnapping in the first degree" as they appear therein the following:

146       ", assault in the first degree, robbery in the first degree".

147       Section 29. Amend § 4205 of Title 21 of the Delaware Code by creating a new Subsection "(c)" thereto to

148 provide as follows:

149       "(c)   (1)   For offenses under this Title, except those which involve injury or death caused to another person

150           by the person's driving or operation of the vehicle or which involve a driving under the influence-

151           related conviction or offense as defined in § 4177B(e)(1) a. –d., the terms of imprisonment

HR : JFB : DLR
1341420176

152                defined in this Title may be served at Supervision Accountability Level IV as defined in

153                § 4204(c)(4) of Title 11.

154        (2)    For offenses under this Title which involve injury caused to another person by the person's

155                driving or operation of the vehicle or a driving under the influence-related conviction or offense

156                as defined in §4177B(e)(1)a.–d., any term of imprisonment defined in this Title shall be served at

157                Supervision Accountability Level V as defined in §4204(c)(5) of Title 11 or at Supervision

158                Accountability Level IV as defined in §4204(c)(4) of Title 11 provided that such Level IV

159                placement must be served in a Department of Correction facility which requires full-time

160                residence at the facility and that the person may not be outside the confines of that facility

161                without armed supervision.

162        (3)    For offenses under this Title which involve death caused to another person by the person's

163                driving or operation of the vehicle any term of imprisonment defined in this Title shall be served

164                at Supervision Accountability Level V as defined in § 4204(c)(5) of Title 11.".

165        Section 30. Amend § 2756(a) of Title 21 of the Delaware Code by striking the phrase "from a violation of § 4177

166 of this Title or a local ordinance substantially conforming thereto," and by inserting in lieu thereof the following:

167        "from a prior or previous driving under the influence-related conviction or offense as defined in § 4177B(e)(1)a.

168 –d. of this Title,".

169        Section 31. Amend § 2756(b) of Title 21 of the Delaware Code by striking the second sentence thereto in its

170 entirety and by inserting in lieu thereof the following:

171        "In addition, for any offense under this Section, if the suspension or revocation resulted from a violation

172 of any criminal statute pertaining to injury or death caused to another person by the person's driving or operation

173 of a vehicle or a driving under the influence-related conviction or offense as defined in § 4177B(e)(1) a. -d. of

174 this Title, the minimum fine shall be $2,000 and shall not be subject to suspension and the minimum period of

175 imprisonment shall not be subject to suspension but shall, notwithstanding any provision of this Section or Title

176 to the contrary, be served subject to the provisions of § 4205(c)(2) of this Title.".

177        Section 32. Amend § 2810 of Title 21 of the Delaware Code by striking the sentence "The periods of

178 imprisonment required under this Section shall not be subject to suspension." as it appears therein, and by substituting in

179 lieu thereof the following:

HR : JFB : DLR
1341420176

180          "The periods of imprisonment required under this Section shall not be subject to suspension and if the

181          judgment of the Court prohibiting the operation of a motor vehicle was based in whole or in part upon a

182          conviction of the person for a prior or previous driving under the influence-related conviction or offense as

183          defined in § 4177B(e)(1) a. –d., or in whole or in part upon a conviction under any criminal statute pertaining to

184          injury or death caused to another person by the person's driving or operation of a vehicle, the period of

185          imprisonment shall, notwithstanding any provision of this Section or Title to the contrary, be served subject to

186          the provisions of § 4205(c)(2) of this Title."..

## SYNOPSIS

This Act will ensure that Delaware's prison space is reserved for violent offenders. The penalties currently available to punish offenders convicted of certain violent crimes are inadequate to protect society from them, and are insufficient to deter others from committing similar crimes. The prison space necessary to accommodate this toughening of our sentencing practices will be created by reallocating prison beds currently devoted to certain drug and motor vehicle offenders. Adoption of this Act is recommend by Delaware's Sentencing Accountability Commission (SENTAC).

The changes to Delaware's criminal sentences are summarized below:

| CRIME | CURRENT SENTENCE | NEW  SENTENCE |
|---|---|---|
| Murder Second Degree | 10 year minimum and 20 year maximum prison sentence | 15 year minimum prison sentence and maximum sentence of life imprisonment |
| Manslaughter | No minimum prison sentence and 10 year maximum prison sentence | 2 year minimum and 20 year maximum prison sentence |
| Assault First Degree | No minimum prison sentence and 10 year maximum prison sentence | 2 year minimum and 20 year maximum prison sentence |
| Robbery First Degree (1st offense) | Minimum 2 year prison sentence | Minimum 3 year prison sentence |
| Robbery First Degree (2nd offense) | Minimum 4 year prison sentence | Minimum 5 year prison sentence |
| Burglary First Degree | No minimum prison sentence | Minimum 2 year prison sentence |
| Burglary First Degree( 2nd offense) | No minimum prison sentence | Minimum 4 year prison sentence |
| Burglary Second Degree (1st offense | No minimum prison sentence | Minimum 1 year prison sentence |
| Burglary Second Degree (2nd offense | No minimum prison sentence | Minimum 3 year prison sentence |
| Possession of a Firearm By a Person Prohibited (by a prior violent felony conviction) | 1 year minimum prison sentence | 3 year minimum prison sentence if violent felony conviction within the preceding 10 years |
| All Class B felonies | 20 year maximum prison sentence | 25 year maximum prison sentence |
| All Class C felonies | 10 year maximum prison sentence | 15 year maximum prison sentence |
| Trafficking in Illegal Drugs: First Weight Level | 3 year mandatory minimum prison sentence | 2 year mandatory minimum prison sentence (excepting heroin) |
| Trafficking in Illegal | 5 year mandatory minimum prison | 4 year mandatory minimum prison |

Page 8 of 9

HR : JFB : DLR
1341420176

- 206 -

| CRIME | CURRENT SENTENCE | NEW SENTENCE |
|---|---|---|
| Drugs: Second Weight Level | sentence | sentence (excepting heroin) |
| Trafficking in Illegal Drugs: Third Weight Level | 15 year mandatory minimum prison sentence | 8 year mandatory minimum prison sentence (excepting heroin) |
| Manufacture/ Delivery/Possession with Intent to Deliver Illegal Drugs (Second Offense) | 15 year mandatory minimum prison sentence | 3 year mandatory minimum prison sentence for all drugs except heroin; 5 year mandatory minimum prison sentence for heroin |
| Manufacture/ Delivery/Possession with Intent to Deliver Illegal Drugs (with prior drug offense) | 3 year mandatory minimum prison sentence for all drugs except narcotics; 5 year mandatory minimum prison sentence for narcotics | 3 year mandatory minimum prison sentence for all drugs except heroin; 5 year mandatory minimum prison sentence for heroin |

In addition to the changes set forth above, the Act will also increase the minimum weight of cocaine necessary to establish the crime of Trafficking in Cocaine from 5 grams to 10 grams. In order to facilitate substance abuse treatment for those offenders most likely to need it, the Department of Correction is authorized to house any defendant serving a prison sentence for any drug offense at Level IV during the last 180 days of any such sentence.

The Department of Correction will also be authorized to house defendants convicted of most Title 21 traffic offenses at Level IV. Defendants in Title 21 cases involving injury or intoxication who are sentenced to Level V will be housed at either Level V or the Violation of Probation Center, at the discretion of the Department. Defendants in motor vehicle cases involving death who are sentenced to incarceration will continue to be housed at Level V.

The Act will combat the alarming rise in the number of armed robberies and violent assaults committed by juveniles by transferring original jurisdiction over the crimes of Robbery First Degree and Assault First Degree from the Family Court to the Superior Court. By doing so, the Act provides the Superior Court with discretion to either retain jurisdiction over such cases, thereby substantially increasing the range of available penalties, or to transfer the case back to the Family Court for prosecution. In order to provide a meaningful deterrent to the commission of armed violent crimes by juveniles, the Act also establishes a one (1) year mandatory commitment to the custody of the Department for Children, Youth and Their Families for any juvenile adjudicated delinquent in the Family Court for acts constituting the felonies of Possession of a Firearm During the Commission of a Felony or Robbery in the First Degree (where either a deadly weapon is displayed or serious physical injury is caused to the victim).

Page 9 of 9

Westlaw.



▷

DELAWARE CODE ANNOTATED
TITLE 11. CRIMES AND CRIMINAL PROCEDURE
PART I. DELAWARE CRIMINAL CODE
CHAPTER 5. SPECIFIC OFFENSES
SUBCHAPTER III. OFFENSES INVOLVING PROPERTY
*SUBPART B. CRIMINAL TRESPASS AND BURGLARY*
         **§  826  Burglary in the first degree; class C felony.**

(a) A person is guilty of burglary in the first degree when the person knowingly
enters or remains unlawfully in a dwelling at night with intent to commit a crime
therein, and when, in effecting entry or when in the dwelling or in immediate
flight therefrom, the person or another participant in the crime:

    (1) Is armed with explosives or a deadly weapon; or

    (2) Causes physical injury to any person who is not a participant in the crime.

Burglary in the first degree is a class C felony, except where the person who
suffers physical injury is a person 62 years of age or older in which case any
violation of this section shall be a class B felony.

(b) Notwithstanding any provision of this section or Code to the contrary, any
person convicted of burglary in the first degree shall receive a minimum sentence
of:

    (1) Two years at Level V; or

    (2) Four years at Level V, if the conviction is for an offense that was
    committed within 5 years of the date of a previous conviction for burglary
    first or second degree or if the conviction is for an offense that was
    committed within five (5) years of the date of termination of all periods of
    incarceration or confinement imposed pursuant to a previous conviction for
    burglary first or second degree conviction.

    Any sentence imposed pursuant to this subsection shall not be subject to the
    provisions of §  4215 of this title.

(c) The sentencing provisions of subsection (b) of this section apply to attempted
burglary in the first degree as well as burglary in the first degree.

(11 Del. C. 1953, §  826; 58 Del. Laws, c. 497, §  1; 67 Del. Laws, c. 130, §  8;
70 Del. Laws, c. 186, §  1; 73 Del. Laws, c. 126, §  8; 74 Del. Laws, c. 106, §  5;
74 Del. Laws, c. 345, §  5.)

                <General Materials (GM) - References, Annotations, or Tables>

NOTES, REFERENCES, AND ANNOTATIONS          Ex. C

          ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Effect of amendments.** -- 74 Del. Laws, c. 106, effective June 30, 2003, added (b) and (c).

74 Del. Laws, c. 345, effective July 12, 2004, deleted "or any offense set forth under the laws of the United States, any other state or any territory of the United States which is the same as or equivalent to such offenses" following the first appearance of "second degree" and deleted "or for any offense set forth under the laws of the United States, any other state or any territory of the United States which is the same as or equivalent to such offenses" following "second degree conviction" in the first paragraph of (b)(2).

**Lesser included offense.** -- Criminal trespass in the first degree, under § 823 of this title, is a lesser included offense of burglary under this section. Gates v. State, 424 A.2d 18 (Del. 1980).

**Where the State failed to introduce into evidence the official time of sunrise on the date of the burglary,** the State did not carry its burden of proving the "at night" element of first degree burglary. Blankenship v. State, 447 A.2d 428 (Del. 1982).

**Proof of possession of deadly weapon.** -- To establish the element of possession of a deadly weapon, the State does not need to prove that an unrecovered gun was capable of firing a projectile as required by 11 Del. C. § 222(10). O'Neil v. State, 691 A.2d 50 (Del. 1997).

There was sufficient evidence to support defendant's conviction for possession of a firearm during the commission of a felony in violation of 11 Del. C. § 1447A, and for burglary in the first degree, where the record revealed that the defendant burst into an apartment, demanded a gun from the occupant, who gave defendant a locked safe box containing the gun, where in immediate flight after leaving the apartment, defendant smashed the safe box and obtained the gun; the court indicated that where the weapon was acquired during the "immediate flight" from the burglary, which included the time during which defendant was actively fleeing the scene, the evidence was sufficient to support a finding of possession. Redding v. State, 832 A.2d 1252 (Del. 2003).

**Untimely postconviction motion.** -- Where defendant did not appeal convictions or sentences for unlawful sexual intercourse, burglary, and robbery to the state Supreme Court and where defendant's motion for postconviction relief was filed more than three years after sentencing, the motion was procedurally barred by Super. Ct. Crim. R. 61(i)(1) because defendant did not allege a newly recognized right. State v. Akins, -- A.2d -- (Del. Super. Ct. Feb. 26, 2003).

**11 Del.C. § 826,** DE ST TI 11 § **826**

Current through the First Regular Session of the 143rd General Assembly 75 Del. Laws, Ch. 222 (2005)

Delaware Code Annotated. Copyright © 2005 by the State of Delaware.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Certificate of Service

I, Donald Cochran, hereby certify that I have served a true and correct cop(ies) of the attached: Motion For Correction of an Illegal Sentence upon the following parties/person (s):

TO: Kent County Prothonotary     TO: _____
38 The Green     _____
Dover Delaware     _____
1990 l     _____
_____     _____

TO: John William D.A.G.     TO: _____
Delaware Department of Justice     _____
102 W. Water Street     _____
Dover, Delaware     _____
19904-6750     _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this 19 day of December , 2006
Donald Cochran #201992
D.D.C.
1181 Paddock Road
Smyrna, Delaware
19977

- 211 -

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | : |
| | :      I.D. No. 0102010757 |
| v. | : |
| | : |
| DONALD R. COCHRAN, | : |
| SBI No. 00201992 | : |

## ORDER

The Defendant, Donald Cochran, has filed a Motion for Correction of an Illegal Sentence pursuant to Rule 35 of the Superior Court. This Court has carefully reviewed the submissions and finds as follows:

The Defendant pled guilty to Burglary in the First Degree which he committed on February 12, 2001. The victim of his crime was 62 years of age or older. Mr. Cochran was sentenced to 20 years at Level 5, suspended after 6 years, followed by 9 months at Level 4 Work Release, followed by 1 year at Level 3, followed by 1 year at Level 2. In addition, he also pled guilty to Assault in the First Degree and was sentenced to 10 years at Level 5. He further pled guilty to Possession of a Deadly Weapon During Commission of a Felony and was sentenced to 2 years at Level 5.

Prior to July 9, 2001, it was a class C felony to commit burglary involving a victim 62 years of age or older. On July 9, 2001, 11 *Del. C.* § 826 (Burglary 1st Degree) was amended by deleting the phrase "class C felony" as it appeared therein and by inserting in lieu thereof the phrase "class C felony, except where the person who suffers physical injury is a person 62 years of age or older in which case any violation of this section shall be a class B felony".[1] Therefore, when Mr. Cochran committed his offense, on February 12, 2001, he committed a class C felony and not a class B felony.

Title 11 *Del. C.* § 4205 (sentence for felonies) was amended on July 30, 2003 to

---

[1] 73 Laws 2001, ch. 126, § 8, eff. July 9, 2001.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | I.D. No. 0102010757 |
| v. | : | |
| | : | |
| DONALD R. COCHRAN, | : | |
| SBI No. 00201992 | : | |

## ORDER

The Defendant, Donald Cochran, has filed a Motion for Correction of an Illegal Sentence pursuant to Rule 35 of the Superior Court. This Court has carefully reviewed the submissions and finds as follows:

The Defendant pled guilty to Burglary in the First Degree which he committed on February 12, 2001. The victim of his crime was 62 years of age or older. Mr. Cochran was sentenced to 20 years at Level 5, suspended after 6 years, followed by 9 months at Level 4 Work Release, followed by 1 year at Level 3, followed by 1 year at Level 2. In addition, he also pled guilty to Assault in the First Degree and was sentenced to 10 years at Level 5. He further pled guilty to Possession of a Deadly Weapon During Commission of a Felony and was sentenced to 2 years at Level 5.

Prior to July 9, 2001, it was a class C felony to commit burglary involving a victim 62 years of age or older. On July 9, 2001, 11 *Del. C.* § 826 (Burglary 1st Degree) was amended by deleting the phrase "class C felony" as it appeared therein and by inserting in lieu thereof the phrase "class C felony, except where the person who suffers physical injury is a person 62 years of age or older in which case any violation of this section shall be a class B felony".[1]  Therefore, when Mr. Cochran committed his offense, on February 12, 2001, he committed a class C felony and not a class B felony.

Title 11 *Del. C.* § 4205 (sentence for felonies) was amended on July 30, 2003 to

---

[1]73 Laws 2001, ch. 126, § 8, eff. July 9, 2001.

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONALD R. COCHRAN, | § | |
| **DEFENDANT-BELOW,** | § | **APPEAL NO. : 49, 2007** |
| **APPELLANT,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **STATE OF DELAWARE,** | § | |
| **PLAINTIFF-BELOW,** | § | |
| **APPELLEE.** | § | |

---

## ON APPEAL FROM THE ORDER OF SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

---

This is Appellant's Opening Brief.

Dated: March 1, 2007

Respectfully,
Donald Cochran

#201992
1181 Paddock Road
Smyrna, DE 19977

# TABLE OF CONTENTS

**DESCRIPTION**                                                                                    **PAGE NO.**

Table of Contents ................................................................................................ i

Table of Citation/Authorities ........................................................................... iii

Nature and Stage of Proceedings ...................................................................... vi

Summary of the Arguments ............................................................................... vii

Statement of Facts ............................................................................................ ix

Arguments:

I.      SPEEDY TRIAL/LACK OF JURISDICTION—FAILURE TO COMPLY WITH
        I.A.D. AGREEMENT/UNTIMELY INDICTMENT. ..................................... 1

II.     INEFFECTIVE ASSISTANCE OF COUNSEL. ......................................... 3

III.    FAILURE TO HOLD EVIDENTIARY HEARING TO DETERMINE
        COMPETENCY. ................................................................................. 8

IV.     LACK OF MITIGATING EVIDENCE. ................................................... 10

V.      FAILURE OF COUNSEL TO ANSWER ALLEGATIONS AND STATE'S
        FEBRUARY 8, 2007 LETTER TO THE INFERIOR COURT CONCERNING
        MITIGATING FACTORS, REQUIRES REVERSAL OF THE INFERIOR
        COURT'S DECISION TO DENY POST-CONVICTION RELIEF ON THE
        GROUND THERE WAS LACK OF MITIGATING EVIDENCE. ................ 16

VI.     PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY,
        AND UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S
        FAILURE TO NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE
        BEFORE PLEA NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY
        LEGAL ADVICE TO DEFENDANT AND COURT AS TO THE SENTENCING
        GUIDELINES AND MAXIMUM SENTENCE THAT THE COURT WAS
        AUTHORIZED TO IMPOSE INVALIDATES APPELLANT'S PLEA AND
        CONVICTION—REQUIRING THIS APPELLATE COURT TO REVERSE THE
        INFERIOR COURT'S DECISION TO DENY POST-CONVICTION RELIEF
        AND REMAND FOR FURTHER PROCEEDINGS. ................................... 18

VII.    VIOLATION OF DUE PROCESS, ABUSE OF DISCRETION, AND CLEAR
        ERROR WHERE THE INFERIOR COURT MADE A PROFESSIONAL ERROR
        TO BASE ITS DECISION SOLELY ON THE COMMISSIONER'S REPORT AND
        RECOMMENDATION WITHOUT APPLYING ITS OWN FACTFINDING AND
        LEGAL CONCLUSIONS REQUIRES REVERSAL AND REMAND NOW THAT
        A PROCEDURAL DEFECT HAS SURFACED. ...................................... 20

**Description**                                                                    **Page No.**

**CONCLUSION** ............................................................................................ 21

**ORDER BEING APPEALED** (Dated 1/22/07 and signed by Hon. J. W. L. Witham) ............. Ex.A

# TABLE OF CITATIONS / AUTHORITIES

**CASES**                                                                      **PAGE NO(S).**

Brewer v. Aiken  7th Cir. (1991) 935 F.3d 850,855 ……………………………………………………  6

Burnett v. Hargett  10th Cir. (1999) 174 F.3d 1128 …………………………………………………  5

Dusky v. U.S.  (1960) 362 U.S. 402 …………………………………………………………………  8

Emerson v. Gramley  7th Cir. (1996) 91 F.3d 898, 906 ……………………………………………  6

Godinez v. Moran  (1993) 113 S.Ct. 2680, 2688 ……………………………………………………  8

Hall v. Washington  7th Cir. (1997) 106 F.3d 742 …………………………………………………  3

Harris v. State  Del.Supr. (1979) 410 A.2d 500, 502 ………………………………………………  6,8

Hill v. Lockhart  (1985) 474 U.S. 52 …………………………………………………………………  5

Hill v. Lockhart  8th Cir. (1989) 877F.2d 698 ……………………………………………………  5

Howard v. State  Del.Supr. (1983) 458 A.2d 1184-85 ………………………………………………  5

Jermyn v. Horn  3rd Cir. (2001) 266 F.3d 257,310-11 ……………………………………………  16

Kansas v. Hendricks  (1997) 521 U.S. 346 …………………………………………………………  8,9

Kubat v. Thieret  7th Cir. (1989) 867 F.2d 351,369 ………………………………………………  7

MacDonald v. State  Del.Supr. (2001) 778 A.2d 1064 ………………………………………………  5

Maryland v. Brady  (1963) 373 U.S. 83 ……………………………………………………………  6,10

McCarthy v. U.S.  (1969) 394 U.S. 459,465 …………………………………………………………  18,20

McCoy v. Wainwright  11th Cir. (1986) 804 F.2d 1196 ……………………………………………  5

Middlebrook v. State  Del.Supr. (2002) 802 A.2d 268,273 …………………………………………  2,3

Monroe v. State  Del.Supr. (2005) ___ A.2d ____ (2005WL3027680) ………………………………  11

Outten v. Kearney  3rd Cir. (2006) 464 F.3d 401,419-21 at [14] …………………………………  16

Patterson v. State  Del.Supr. (1996) 684 A.2d 1234,1239 …………………………………………  18,20

Pennsylvania v. Ritchie  (1987) 480 U.S. 39, 57 ……………………………………………………  10

Pierson v. State  Del.Supr. (1973) 311 A.2d 854, app. after rem. 338 A.2d 571 ………………………  2

Robinson v. State  Del.Supr. (1991) 600 A.2d 356, 360 ……………………………………………  4,13

**CASES**                                                                                       **PAGE NO(S).**

Shockley v. State  Del.Supr. (1989) 565 A.2d 1373 .................................................... 16,18,20

Somerville v. State  Del.Supr. (1997) 703 A.2d 629 ..................................................... 4

State v. Knox  Del.Super. (Feb. 26, 2003) ___ A.2d ___, aff'd Del.Supr. (2003) 826 A.2d 298 ...  4,8

State v. Pruitt  Del.Supr. (2002) 805 A.2d 177 ............................................................. 2

State v. Pryer  Del.Supr. (Oct. 11,2001) ___ A.2d ___ ................................................. 5

State v. Woolford  Del.Super. (2002) ___ A.2d ___ (2002WL1343827) ............................. 18,19

Strickland v. Washington  (1984) 404 U.S. 668,689-95 ................................................... 6,7,16

Upshaw v. Singletary  11th Cir. (1995) 76 F.3d 576 ...................................................... 3

U.S. v. Browning  10th Cir. (1995) 61 F.3d 752,753 .....................................................18,19,20

U.S. v. ex.rel. Hollerman  N.D. Ill (1986) 652 F.Supp. 82 ............................................... 3

U.S. v. Gigot  10th Cir. (1998) 147 F.3d 1193 ............................................................. 18,19

U.S. v. Guerra  5th Cir. (1996) 94 F.3d 989, 995 ......................................................... 18,19

U.S. v. Kauffman  3rd Cir. (1997) 109 F.3d 186 .......................................................... 6,8,10

U.S. v. Marion  (1971) 404 U.S. 307,320 ................................................................... 2,3

U.S. v. Scott  5th Cir. (1981) 625 F.2d 623 ................................................................ 5

U.S. v. Timmerick (1979) 441 U.S. 780 ...................................................................... 5

U.S. v. Williams  3rd Cir. (1980) 615 F.2d 585 ............................................................ 3

U.S. v. Yekeler  3rd Cir. (1995) 62 F.3d 544,550 ......................................................... 10

Washington v. Texas  (1967) 388 U.S. 14,18-19 ........................................................... 10

Webb v. State  Del.Supr. (2005) ___ A.2d ___ (App. No. 183, 2005) ............................... 20

Weeks v. State  Del.Supr. (1995) 653 A.2d 266,270 ..................................................... 8

Wells v. State  Del.Supr. (1978) 396 A.2d 161 ............................................................ 18,19

Wright v. State  Del.Supr. (1979) 405 A.2d 685 .......................................................... 20

**FEDERAL CONSTITUTIONAL AUTHORITIES**                      **PAGE NO(S).**

I.A.D. ACT — "Interstate Agreement on Detainers Act" ………………………………………    1

SPEEDY TRIAL ACT ………………………………………………………………………    1

VI AMENDMENT U.S.C.A. — "Sixth Amendment" …………………………………… 1,2,6,10,17

XIV AMENDMENT U.S.C.A. — "Fourteenth Amendment" ……………………………………  2,10


**FEDERAL RULES**

Rule 11 Fed.R.of Crim.Proc. …………………………………………………………...8,18,20


**STATE CONSTITUTION**

DEL.CONST.ART. I § 7 ……………………………………………………………………    1,2


**STATE STATUTES**

11 DEL.C. § 2542 …………………………………………………………………………..    1,2

11 DEL.C. § 4331 (d) ……………………………………………………………………..    11


**STATE RULES**

Rule 11 (d) Super.Ct.Cr.R. ……………………………………………………………    5

Rule 48 Super.Ct.Cr.R. …………………………………………………………………..    2

Rule 61 & 61 (d) Super.Ct.Cr.R. ………………………………………………………...    20

## NATURE AND STAGE OF THE PROCEEDINGS

On February 12, 2001, an arrest warrant was issued for Appellant.

On August 28, 2001, Appellant waived extradition; the first time! (State refused to call Florida back).

On January 10, 2002, Appellant was indicted.

On August 28, 2002, Appellant waived extradition; the second time.

On February 3, 2003, Appellant took a Robinson plea.

An untimely appeal was filed and dismissed. (Cochran v. State, 2003 Del. Lexis 569).

A Motion for Reduction of Sentence was filed and denied by Hon.J. Ridgely on December 17, 2003. A timely appeal was taken and affirmed. (Cochran v. State, 2005 Del. Lexis 501).

On February 6, 2006, a timely Motion for Post-Conviction Relief was filed and denied on January 22, 2007.

A timely appeal was taken and this is Appellant's Opening Brief.

## SUMMARY OF THE ARGUMENTS

I.  SPEEDY TRIAL/LACK OF JURISDICTION—FAILURE TO COMPLY WITH I.A.D.
AGREEMENT/UNTIMELY INDICTMENT.

II.  INEFFECTIVE ASSISTANCE OF COUNSEL

III.  FAILURE TO HOLD EVIDENTIARY HEARING TO DETERMINE COMPETENCY.

IV.  LACK OF MITIGATING EVIDENCE.

V.  FAILURE OF COUNSEL TO ANSWER ALLEGATIONS AND STATE'S FEBRUARY 8,
2007 LETTER TO THE INFERIOR COURT CONCERNING MITIGATING FACTORS,
REQUIRES REVERSAL OF THE INFERIOR COURT'S DECISION TO DENY POST-
CONVICTION RELIEF ON THE GROUND THERE WAS LACK OF MITIGATING
EVIDENCE.

VI.  PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY, AND
UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S FAILURE TO
NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE BEFORE PLEA
NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY LEGAL ADVICE TO
DEFENDANT AND COURT AS TO THE SENTENCING GUIDELINES AND
MAXIMUM SENTENCE THAT THE COURT WAS AUTHORIZED TO IMPOSE
INVALIDATES APPELLANT'S PLEA AND CONVICTION—REQUIRING THIS
APPELLATE COURT TO REVERSE THE INFERIOR COURT'S DECISION TO DENY
POST-CONVICTION RELIEF AND REMAND FOR FURTHER PROCEEDINGS.

VII.  VIOLATION OF DUE PROCESS, ABUSE OF DISCRETION, AND CLEAR ERROR
WHERE THE INFERIOR COURT MADE A PROFESSIONAL ERROR TO BASE ITS
DECISION SOLELY ON THE COMMISSIONER'S REPORT AND
RECOMMENDATION WITHOUT APPLYING ITS OWN FACTFINDING AND LEGAL

CONCLUSIONS REQUIRES REVERSAL AND REMAND NOW THAT A

PROCEDURAL DEFECT HAS SURFACED.

## STATEMENT OF FACTS

On February 12, 2001, an incident was called into police that the alleged victim (Mrs. Naylor) stated that Appellant was responsible for kicking in her front door and some type of assault happened. Upon the recollection of Appellant, he has no memory past the point where he kicked in the front door of Mrs. Naylor's house looking for her son for him to answer why he was cheating with Appellant's girlfriend behind his back. The rest is a matter of record.

**I.   SPEEDY TRIAL/ LACK OF JURISDICTION— FAILURE TO COMPLY WITH I.A.D. AGREEMENT/ UNTIMELY INDICTMENT.**

**ARGUMENT:**

Under the clearly established Law on the Insterstate Agreement On Detainers Act, Petitioner contends that his rights were violated and the jurisdiction of the inferior Court was lost. It states under extradition that once extradition has been signed , the state where the charges are pending than has jurisdiction of 180 days to bring defendant to that jurisdiction and have trial commenced on the charges pending. Failure to comply with the 180 day trial clause of the Insterstate Agreement on Detainers Act and failure to commence trial within the 365 day stipulation of the Speedy Trial Act both statutes and constitution call for dismissal under the circumstances; 11 Del.C. § 2542, Sixth Amendment U.S.C.A., and Del.Const.Art. I § 7. This jurisdiction and the inferior Court was first alerted and notified of petitioner's willingness and availability to be brought back to this jurisdiction on the day that petitioner signed and waived extradition on August 28, 2001,(A-45). Also given notice in a  Plea Agreement from Florida, (A-46 thru -49). Delaware further had knowledge of petitioner's availability to be brought back to this jurisdiction when Florida again made it clear in their plea agreement that petitioner's sentence would and could run concurrent with any sentence imposed by Delaware officials; again clearly stating petitioner awaits extradition. During a period between October 4, 2001 thru May 12, 2002, petitioner wrote Delaware three letters, (A-48 thru -50), asking to be brought back to Delaware for his right to a speedy trial. In another attempt, petitioner contacted Florida officials asking for their help to be brought back to Delaware. Florida officials said they tried to contact Delaware about this matter, but Delaware officials never bothered to answer them back, (A-51). This shows and proves petitioner made many efforts to be brought back to Delaware for his right to a speedy trial. There was ample notification and efforts made for petitioner to be brought back to Delaware. Delaware ignored and failed to bring petitioner back to this jurisdiction in time for his right to a speedy trial. By bringing petitioner back to this jurisdiction on October 24, 2002, 14 months after petitioner first signed extradition; Delaware violated petitioner's right to Due Process and violated the Law secured by the I.A.D. Act which, in turn, violated

- 1 -

223 -

The Speedy Trial Act. Where under the Law warrants these charges to be dismissed. This is the Law of this State and all other states and is the petitioner's right under the laws of the Fourteenth Amendment.

For any court to proceed, it must have jurisdiction to do so. Even though a court of law may have jurisdiction at the beginning of the proceedings. Jurisdiction may also be lost during its proceedings for violating the rights of a defendant. At the point where jurisdiction is lost, any proceedings after that point are invalid! Petitioner was charged with these offenses on February 12, 2001; petitioner was not indicted on these charges until January 10, 2002, (A-52), 11 months after being charged with these offenses. An indictment is to be handed down by the Grand Jury within 2 terms and the case is to be tried within 1 year. (See Middlebrook v. State Del.Supr. (2002) 802 A.2d 268, 273). "Our Supreme Court has stated that a 75-day delay following an arrest without either a preliminary hearing or indictment violates one's rights." (See Pierson v. State Del.Supr. (1973) 311 A.2d 854, app. after rem., 338 A.2d 571). Dismissal is required where such a delay is attributable to the State; Super.Ct.Cr.R. Rule 48. (See State v. Pruitt Del.Supr. (2002) 805 A.2d 177). The delay of over more than [1] one year before trying the case after petitioner first initially waived his right to be extradited to this jurisdiction for the purpose of disposing of the outstanding charges violates petitioner's speedy trial rights and warrants dismissal under the provisions of the statutes and constitutions; 11 Del.C. § 2542, Sixth Amendment U.S.C.A., Del.Const.Art. I § 7. (Middlebrook at 273,275—citing U.S. v. Marion (1971) 404 U.S. 307, 320).

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL.

### ARGUMENT:

Counsel for petitioner was clearly ineffective when we look at the totality of the circumstances. Counsel, Joe Bernstein had an obligation to file Pretrial Motions to dismiss for violations of Extradition Laws and Speedy Trial.(See U.S. v. Williams 3rd Cir. (1980) 615 F.2d 585; (Also U.S. ex. rel. Hollerman N.D.Ill. (1986) 652 F.Supp. 82—Post Strickland v. Washington); (Also Middlebrook citing Marion). Had counsel filed standard pretrial motions, he would have discovered records and reports by State's own physician on my admittance to Delaware Psychiatric Center, which shows and states petitioner's mental state is questionable, (A-53 thru -55). Counsel had been advised about petitioner's mental problems, but again counsel ignored and failed to investigate this information; or advise the Court of this matter which is a mitigating factor. Failure to investigate and present defense and mitigating circumstances regarding a defendant's mental state, constitutes ineffective assistance of counsel and calls for an evidentiary hearing. (See Upshaw v. Singletary 11th Cir. (1995) 76 F.3d 576); (Also Hall v. Washington 7th Cir. (1997) 106 F.3d 742). Counsel, Bernstein was hired because he claimed he was an expert on extradition laws. In a certified affidavit from petitioner's mother Carole Richardson who hired Bernstein will explain how and why Bernstein was hired; (A-56 & -57). In a certified affidavit from petitioner, Donald R. Cochran; it touches on the events that took place when Bernstein took petitioners case. How Bernstein drafted a Motion for dismissal from a motion he took from petitioner. Bernstein promised to file that Motion for Dismassal, but never did. Instead, he talks petitioner out of filing that Motion for Dismissal; and coerced petitioner into taking plea by making promises that never happened and by saying that by wasting the Court's time, (A-84 & -85), would only make the prosecutor and judge angry giving petitioner 50 years. Bernstein and petitioner argued over this matter for a while. Bernstein said he would get petitioner a Robinson Plea because of mental problems and as mentioned in transcripts where petitioner states he blacked out, (A-58 & -62), and Bernstein said that petitioner would get 7 to 9 yrs. L. 5 no more; the rest

would be probation. This didn't happen in this case. From evidence according to the State's own

psychiatrist, (A-53 thru -55), it states that petitioner was not capable to make reasonable/rational decisions

for himself and thus he was not able to make a knowing and voluntary waiver of his rights to go to trial

and alternatively; plead guilty. (See Knox supra); (Also Somerville v. State Del.Supr. (1997) 703 A.2d

629). The plea was entered as a result of promises and a threat of getting 50 yrs. if petitioner didn't take

the plea. As soon as the judge accepted the plea agreement, Bernstein stood up and said to the Court that

he had a Motion for Dismissal that he wanted to file for the record, (A-67). Petitioner right away tells the

Court that petitioner has been asking Bernstein to file that motion all morning; that is not in the

transcripts, but it should be on the audio tape of plea colloquy hearings. In the transcripts of the plea

agreement, you can see there is confusion on the part of the petitioner and petitioner asked the judge

questions about the Motion for Dismissal. The judge asks Bernstein where the Motion for Dismissal was

and Bernstein states that the motion was in his briefcase and that he didn't file it because he didn't have

the paperwork to back it up. This clearly shows and proves that Bernstein failed to investigate and failed

to obtain important information that would prove petitioner's case and violation of petitioner's rights, (A-

71). Bernstein knew that the motion was valid and should have been filed. His effort to have it put on

record was to cover his improprieties. Also in the plea agreement transcripts, the confusion and questions

from petitioner continue when prosecutor, John Garey stands up and says that petitioner can have Motion

for Dismissal heard, but thereafter there would be no plea agreement, and that he would proceed with

trial. Then the judge said yes and that it would be a trial on all the charges and then said to petitioner to

weigh his pros and cons, (A-74). That added more pressure to petitioner and seemed to prove what

Bernstein said about getting the Court mad and wasting their time; and that petitioner would get 50 yrs.

It's clear Bernstein didn't prepare for any proceedings, let alone a trial. So petitioner being clearly

confused, he had to stay with the Robinson plea. In a Robinson plea, a defendant has the right to have his

mental condition considered to determine if he had the requisite state of mind for knowledge or intent.

(See Robinson v. State Del.Supr. (1991) 600 A.2d 356, 360). In the interests of justice and the law, once

there was a question about a pretrial motion under clearly established law; the judge knows that a

- 4 -

~226~

defendant has a right to all pretrial motions and a right to counsel who will investigate and come to court prepared with all evidence—records/reports to back up a defendant's claim. The judge shouldn't have allowed Bernstein to file the Motion for Dismissal knowing Bernstein stated he didn't have the paperwork to back it up. He should have ordered a continuance and gave Bernstein a chance to get paperwork ready or offered petitioner a chance at counsel who would be prepared with evidence and information of petitioner's claim of violations of his rights. Petitioner had the right to prove his claims. At his right to all pretrial motions, this should have been done in the interests of justice. In essence, counsel forced petitioner to take plea by failing to investigate, file discovery, filing Motion for Dismissal, asking for evidentiary hearing, putting on an affirmative defense, or otherwise consider a trial strategy and prepare for trial; counsel's conduct fell below the norm of professionalism warranting an evidentiary hearing/withdrawal of the plea agreement. (See State v. Pryer Del.Supr. (Oct. 11, 2001) ___ A.2d ___); (Also Howard v. State Del.Supr. (1983) 458 A.2d 1184-85—quoting Super.Ct.Cr.R. Rule 11(d)); (Also Hill v. Lockhart 8th Cir. (1989) 877 F.2d 698-— cert. granted (1985) 474 U.S. 52). A conviction on a guilty plea that is entered solely as a result of faulty legal advice is a miscarriage of justice. (See U.S. v. Scott 5th Cir. (1981) 625 F.2d 623). This tendering by petitioner that petitioner would not have pleaded guilty had counsel not lied to and pressured petitioner distinguishes the case from Timmerick and relieves petitioner of the rule set forth therein. (See Id. citing U.S. v. Timmerick (1979) 441 U.S. 780). Counsel would have known of the psychiatrist reports/records and petitioner's stay at the Delaware Psychiatric Center, if counsel conducted discover. He could have used this information to present an affirmative defense based on an irresistible impulse or at least investigate the possible defense. Such failure falls below the professional norm and has obviously prejudiced the petitioner in that, petitioner was forced and tricked into a plea agreement. (See MacDonald v. State Del.Supr. (2001) 778 A.2d 1064); (Also McCoy v. Wainwright 11th Cir. (1986) 804 F.2d 1196); (Also Burnett v. Hargett 10th Cir. (1999) 174 F.3d 1128). At the time of petitioner's court proceedings, Bernstein was involved in the Thomas Capano murder trial where he let the petitioner's case fall through the legal cracks of the law via lack of dedication. By failing to do absolutely nothing that would benefit his client, the petitioner in the interests of justice or the law.

Counsel failed to produce exculpatory evidence in violation of Maryland v. Brady (1963) 373 U.S. 83.
Under Brady, counsel must disclose exculpatory evidence. At sentencing, counsel failed to advise or
address the Court with any mitigating factors or failed to bring up the letters that were written, (A-52), on
the petitioner's behalf. He also failed to have witnesses subpoenaed to speak on behalf of petitioner.
There were no mitigating factors brought before the Court on behalf of the petitioner—such as, his mental
concerns. Only aggravating factors were brought up at sentencing in what looks like was an
overzealousness to prosecute. Had these mitigating factors been brought to the Court's attention and had
they been given some consideration like the consideration given to the aggravating factors. The petitioner
may have gotten a more lenient sentence. But, no such mitigating factors exist within the record due to
counsel's failure to pursue them. There is ample case authority stating that a prosecutor is to seek justice
and not merely convictions. This didn't happen in petitioner's case. Surely, Counselor Joe Bernstein was
ineffective under our precedent case authority. (See Harris at 502); (Also Kauffman supra.). When
petitioner's counsel failed to investigate all material information and failed to file pretrial motions with all
paperwork to support the motions in a timely fashion clearly prejudiced the petitioner in this case. Had
petitioner's counsel investigated all material information and had the paperwork to back up pretrial
motions and had the motion been filed in a timely fashion; it would have made a favorable difference in
petitioner's case. Even the judge states in plea transcripts that pretrial motions should be filed before trial,
(A-71). To prevail on the claim of ineffective assistance of counsel, petitioner must demonstrate that
counsel's representation fell below an objective standard of reasonableness and that a reasonable
probability exists, but for counsel's substandard performance, the judge would have concluded that the
balance of aggravating and mitigating circumstances did not warrant the sentence received due to all
mitigating factors. (Strickland 404 U.S. at 695); (Also Brewer v. Aiken 7th Cir. (1991) 935 F.2d 850,
855). Counsel's performance standard envisions a wide range of permissible actions for the attorney in
question and it normally requires us to defer to an attorney's choice of strategy. (Strickland 466 U.S. at
689); (Emerson 91 F.3d at 906). Never the less where counsel's errors are such that he was not
functioning as counsel guaranteed the defendant by the Sixth Amendment U.S.C.A., (Strickland 466 U.S.

at 687); his performance is deficient for these purposes. In the context of a sentencing phase where

defendant faced a 50 year prison sentence, it is particularly important that counsel not be allowed to shirk

his responsibilities. Thus while we defer to legitimate strategic decision-making from the perspective of

strategic competence. I hold that defense counsel must make a significant effort, based on reasonable

investigation and logical argument that's favorable to the defendant's case before a court of law and to

focus on mitigating factors that would change the outcome of the proceedings. (See Kubat v. Thieret 7th

Cir. (1989) 867 F.2d 351, 369).

## III.    FAILURE TO HOLD EVIDENTIARY HEARING TO DETERMINE
## COMPETENCY.

### ARGUMENT:

Prior to the offenses petitioner was charged with, petitioner was placed in the Delaware Psychiatric Center upon request made by petitioner's mother and probation officers. After the initial evaluation and observation of petitioner, the State's own psychiatrist admitted the petitioner with the determination that the petitioner suffered from a mental disease/disorder that made petitioner a danger to himself and others along with being incapable of making rational and/or reasonable decisions in matters of grave importance, (A-53 thru -55). The mental condition of defendant is to be considered in any criminal case. (Harris at 502); (also Kauffman at 186). Had counsel for petitioner investigated these claims that were told to him by petitioner, he would have discovered the information and evidence that there was the possibility that petitioner lacked mens rea and/or actus rea to be held criminally liable. Rule 11 pleas require the competent of knowing and voluntary waiver before they can be legally binding, and it can be argued that the prosecutor and the court took advantage of the petitioner who was said to be incapable of making reasonable or rational decisions in matters of seriousness. (See State v. Knox Del.Super. (Feb. 26, 2003) ___ A.2d ___, aff'd Del.Supr. (2003) 826 A.2d 298). It was never determined whether petitioner had the sufficient competency to enter into the plea agreement since such requires one to have a rational, as well as, a factual understanding of the proceedings. (See Weeks v. State Del.Supr. (1995) 653 A.2d 266, 270— citing Godinez v. Moran (1993) 113 S.Ct. 2680, 2688— quoting Dusky v. U.S. (1960) 362 U.S. 402). This is very important since the State's own psychiatrist was the last person to speak of petitioner's state of mind and clearly stated that petitioner could not make rational and/or reasonable decisions with respect to hospitalization and treatment even, (A-54). In fact, according to the reports, it was very possible to have put on an affirmative defense of irresistible impulse. (See Kansas v. Hendricks (1997) 521 U.S. 346). The evidence of the lack of mens rea and/or actus rea is in the

plea colloquy transcripts, wherein it was explained to the Court that the petitioner had an emotional trauma over his girlfriend cheating on petitioner with someone petitioner deemed a friend. Petitioner kicked in the door and had a blackout after that, (A-62). Petitioner has clearly demonstrated what the Hendricks Court considers a standard of the lack of volitional control. The facts are via State psychiatrist reports on file that stated that petitioner was a danger to himself and others. Basically that this type of behavior was likely to continue unless treatment was accepted by petitioner. This was a conditional requirement in order to be released from the Delaware Psychiatric Center, (A-83). Petitioner's probation officer, Dave Benson was advised of the petitioner's conditions of release; and was to see to it that petitioner complied with the conditions, (A-83). Dave Benson found himself to be under investigation and was suspended. Petitioner had started working on treatment, but after being passed around to different probation officers who didn't have petitioner's file, along with no knowledge of petitioner's case. Petitioner soon fell back into his old ways and wasn't complying with the conditions set forth upon petitioner's release from Delaware Psychiatric Center, which, in turn, led to the events the State's psychiatrist said would happen. That petitioner would continue to have behavioral problems if he didn't comply with treatment, (A-83). Even the charge of Burglary cannot be supported since it requires breaking and entering with intent to commit a felony. The plea colloquy transcripts clearly state that petitioner had a blackout, (A-62). Statements were made by Mrs. Naylor to the presentence investigator that she knew petitioner did not intentionally cause her harm, and that she was not concerned for her safety. Also, it is stated in the transcripts that petitioner had no recollection after the door being kicked in because petitioner snapped, (A-58). In any plea agreement, the petitioner has the right to have his mental condition considered to determine if petitioner had the requisite state of mine for knowledge or intent. In the interests of justice, the Court should have had knowledge of all the above factors, statements, and records/reports. Petitioner's counsel failed to provide any evidence to the Court in support of petitioner's claims of all above stated factors. It is in the interests of justice, petitioner had the right to have had an evidentiary hearing to determine petitioner's mental state and on all of the above factors.

## IV.    LACK OF MITIGATING EVIDENCE.

### ARGUMENT:

There is ample case authority stating that a prosecutor to seek justice and not merely convictions. And that all mitigating evidence is to be considered and presented at the sentencing phase of the proceedings. The mental condition of a defendant is to be considered in any criminal case. (Id.) ;(Id.). Petitioner argues that prosecutor and petitioner's counsel failed to produce exculpatory in violation of Brady. Under Brady, counsel must disclose exculpatory evidence to prosecution and that evidence is material to either guilt or not guilt. In order to establish a Brady violation, a defendant must first demonstrate that counselor had requested information within its actual or constructive possession. (See U.S. v. Yekeler 3rd Cir. (1995) 62 F.3d 544, 550). The undisclosed evidence must be material, and evidence is material only if there is a reasonable probability that had the evidence been disclosed to the Court, the results of the sentencing proceedings would have been different due to all the mitigating factors. (See Pennsylvania v. Ritchie (1987) 480 U.S. 39, 57). The Sixth Amendment applicable to the states through the Fourteenth Amendment provides the accused in a criminal prosecution the right to offer of any favorable witness and to have compulsory process for obtaining witnesses in his favor. (See Washington v. Texas (1967) 388 U.S. 14, 18-19). In order to establish a violation of the Sixth Amendment's right to compulsory process, defendant must demonstrate that he was deprived of the opportunity to present evidence in his favor; and that the excluded testimony would have been material and favorable to his defense/sentence. Petitioner claims that clearly there were mitigating factors and evidence that were never investigated or brought up to the Court's attention. Petitioner had a right to have the mitigating evidence present and to be considered. Had petitioner's counsel investigated and advised the court of said evidence; this evidence, if presented and given the same thought and consideration as the Aggravating factors were, the petitioner's case and sentence would have been case in a dramatically different light. In the interests of justice, the sentence imposed on petitioner might have been more lenient.

- 10 -

A presentence investigation was ordered for petitioner at the plea agreement hearing. A presentence investigation should include information about the history and the characteristics of the defendant which include prior criminal records, a victim impact statement, all in accordance with 11 Del.C. § 4331(d). (See Moore v. State Del.Supr. (2005) ___ A.2d ___ 2005WL3027680). Petitioner was never given an opportunity to review the presentence investigation report. Petitioner's counsel never disclosed any information to petitioner about the presentence report and petitioner was never given an opportunity to comment on the report in open Court. In Moore, information in the presentence report that was never intended for Moore to see was used as evidence that the Court relied on when imposing sentence. Thus, Moore should have been given the opportunity to address this information that was kept from him before being sentenced. In the instant case, Petitioner claims that in the presentence report, there were important mitigating evidence/factors that were left out of the report that the Court never got to see. Therefore, the Court wasn't able to consider these important mitigating evidence/factors upon sentencing the petitioner. Petitioner's counsel should have set aside the time and made a point to review the presentence report with petitioner. Fundamental fairness would entitle petitioner an opportunity to make the Court aware of the mitigating evidence that was left out of the report at sentencing. Petitioner claims he was prejudiced by Mr. Shepherd's presentence investigation how Moore was prejudiced by the Court where the Court relied on the information that was never intended for Moore to see as evidence in which the Court based part of Moore's sentence on upon sentencing Moore. Petitioner was prejudiced when Mr. Shepherd who conducted the presentence investigation touched on a mitigating factor of petitioner's mental state, but Mr. Shepherd failed to investigate petitioner's mental problems thoroughly. Petitioner made Mr. Shepherd aware of petitioner's mental claims in the interview conducted. Mr. Shepherd failed to investigate these claims which are mitigating evidence/factors that are favorable to the petitioner. If he investigated thoroughly, he would have had records and reports of petitioner's mental troubles. Failing to include all of the mitigating evidence favorable to petitioner, deprived the petitioner an opportunity for the court to view this information and use it as evidence which should have been considered upon imposing sentence. In an attempt not to drag/rehash arguments out; the record is clear that the presentence

investigation report was never disclosed to petitioner, yet it was used by the Court, (A-58 thru -78).

Petitioner was interviewed by Mr. Shepherd at the Delaware Correctional Center for the purpose of

making a presentence report to be used at sentencing. In the interview, we went over the history and

events of the case that led up to the night petitioner was charged with these offenses. The investigator was

aware of the case through other interviews. Petitioner told the investigator everything he knew. In this

case, petitioner had mental problems. Problems in part over relationship with girlfriend (Pam Hawkins),

along with petitioner using alcohol and drugs heavily. Petitioner snapped and suffered a blackout from the

trauma of seeing his girlfriend's truck parked in front of his friend's house. During the blackout,

petitioner hurt Mrs. Naylor, but petitioner has no recollection of what petitioner did during the trauma he

felt overcame his rationale for thinking. Petitioner told the investigator that is was a crime of passion. The

other factors as told to the investigator were that petitioner was committed to the Delaware Psychiatric

Center; his father was violent toward himself, mother, brother and sister. They were beat very bad. This

started petitioner's problems, where he would use alcohol and drugs to escape. Petitioner told the

investigator the he has never hurt anyone before, and that it was eating him up for what he did. The

investigator noted petitioner was remorseful and stated he would further investigate petitioner's case; also

talk to other people, and not to worry that he wasn't going with the State's recommendation, also that the

petitioner would not be an old man when he got out of prison when released. He also stated that the

State's recommendation was one more severe than one for a murder case. Recently, petitioner found out

some of what was put into the presentence report, and petitioner feels that the investigator intentionally

left out the mitigating evidence/factors. Even further, the investigator did not talk to all involved parties.

Just prior to being charged with these offenses, petitioner was taken into custody by request of

petitioner's mother and the help of petitioner's probation officer to the Delaware Psychiatric Center over

concerns of his mental condition. After the initial 72-hour observation, the State's psychiatrist admitted

petitioner. In the records and reports, the State's psychiatrist states clearly that petitioner suffered from

mental illness which made petitioner incapable of making reasonable or rational decisions for himself. A

motion for a hearing to see if petitioner was competent was ordered, (A-53 thru -55 and A-79 thru

-82). Petitioner's counsel told petitioner that he would advise the Court of petitioner's mental

problems and the stay at the Delaware Psychiatric Center; with the problems stemming from

alcohol/drugs, along with relationship problems with girlfriend cheating on him with a friend.

Petitioner's counsel failed him when he told petitioner he was going to tell the Court that this

criminal conduct was caused out of passion due to petitioner's girlfriend cheating on him with a

friend. Petitioner's counsel never advised the Court of these mitigating factors or any mitigating

factors for that matter, which in turn, deprived petitioner of his right to have all mitigating

evidence presented at sentencing. In what may have been an overzealousness to prosecute;

prosecution team makes it look like petitioner entered to rob and hurt Mrs. Naylor for no reason

at all. In the plea agreement transcripts, it states clearly that petitioner had a blackout after seeing

his girlfriend's truck parked in front of his friend's house, and since petitioner has no recollection

of the facts after that point, (A-58 thru -62), he was offered a Robinson plea. Upon that

agreement, the petitioner had the right to have his mental condition considered to determine if he

had the requisite state of mind for knowledge or intent. (See Robinson at 360). In the mental

response to petitioner's mental problems, Mr. Shephard states petitioner was committed to the

Delaware Psychiatric Center for a 72-hour observation which was the result of petitioner

becoming more depressed over his relationship with his girlfriend which led to excessive

drinking. Upon his release, petitioner was told to seek substance-abuse counseling. Petitioner

claims that had Mr. Shephard thoroughly investigated petitioner's claims of mental problems, his

stay at the Delaware Psychiatric Center; he would found records and reports from the State's own

psychiatrist stating petitioner suffered from a mental illness which made petitioner incapable of

making reasonable or rational decisions for himself and petitioner was a danger to himself and

others. A motion that was ordered from the State's psychiatrist; ordering that a hearing to see if

petitioner was competent, (A-53 thru -55 and A-79 thru -82), where petitioner was not told to

seek substance abuse counseling. Petitioner was ordered to as a condition of petitioner's release.

- 13 -

State's psychiatrist states that if petitioner doesn't comply with conditions of release, petitioner

would continue to have behavioral problems and continuous problems with the Law, (A-83).

Petitioner was prejudiced by not having all the mitigating evidence investigated thoroughly and

all this information kept from Mr. Shephard's report. Mr. Shephard's report is for the Court to see

and view while considering said information upon sentencing a defendant. This mitigating

evidence is favorable to the petitioner's case and it should have been given the same

consideration and thought that the aggravating factors got for determining petitioner's sentence.

Mr. Shephard states in the evaluation that an argument could be made that given the nature of

petitioner's addiction to alcohol and drugs, the petitioner's treatment needs might mitigate to

some degree the need for punishment; but he feels that a mitigating need for treatment is not valid

in this case. When he stated that an argument could be made for a mitigating need for treatment,

but felt that wasn't a valid argument. Mr. Shephard should have at least investigated and put all of

the information in his report; so at least, the Court could have viewed all the information and

made its own decision. Since there was some information that was left out of the report. Had the

information been put in the report and put together with petitioner's alcohol/drug problems

coupled with the relationship problems; the Court could have then seen that all this evidence was

a factor in this case. All this mitigating evidence would make the argument a very favorable and

valid one for the petitioner. Mr. Shephard may not think it's a valid argument, but the State's

psychiatrist would not agree! He didn't leave out any aggravating evidence for the Court to

consider. However, he didn't talk to all of the parties involved in the case, being Pam Hawkins

and Tom Naylor. These parties could have shed some light on petitioner's mental state. Also,

petitioner's father was never interviewed, which would have proved that petitioner along with his

family were violently abused. This abuse led to the alcohol/drug abuse. Another factor was that

three different judges were involved with this particular case, and it is not clear who handled all

of the character letters written on petitioner's character, which showed that he was loved along

with having problems. These letters along with any mitigating evidence/factors were never

- 14 -

~236~

presented or considered at all in this case. Mr. Shephard should have included all this information

in his report so it could have been used as evidence for the Court to at least consider that there

was a mitigating side to this case. Had the mitigating evidence got the same consideration that the

aggravating evidence received, it would put the case in a dramatically different light. Petitioner

asked the inferior Court to consider the evidence that was intentionally left out to enhance

petitioner's sentence/prejudice petitioner; failure of the Court to do so requires the minimum, a

remand for resentencing with the max being petitioner granted full post conviction relief.

## V.    FAILURE OF COUNSEL TO ANSWER ALLEGATIONS AND STATE'S FEBRUARY 8, 2007 LETTER TO THE INFERIOR COURT CONCERNING MITIGATING FACTORS, REQUIRES REVERSAL OF THE INFERIOR COURT'S DECISION TO DENY POST-CONVICTION RELIEF ON THE GROUND THERE WAS LACK OF MITIGATING EVIDENCE.

### STANDARD AND SCOPE OF REVIEW:

In reviewing denial of postconviction relief, appellate court's standard of review is abuse of discretion and its task is to carefully review record to determine whether competent evidence supports trial court's findings of fact and that its conclusions of law are not erroneous. (See Shockley v. State Del. Supr. (1989) 565 A.2d 1373). Limited scope of trial counsel's investigation in preparation for capital sentencing hearing prejudiced murder defendant, for purposes of ineffective assistance claim, inasmuch as there was substantial evidence in mitigation, including evidence of child abuse, that counsel failed to present, and, although some evidence of abuse was introduced to jury despite defense counsel's contrary intentions, jury was not provided with comprehensive understanding of defendant's abusive relationship with his family. (See Outten v. Kearney 3rd Cir. (2006) 464 F.3d 401, 419-21 at [14] citing Strickland, also Jermyn v. Horn 3rd Cir. (2001) 266 F.3d 257, 310-11— internal footnote and citations omitted.)

### ARGUMENT:

Once counsel failed to answer the allegations of lack of mitigating evidence that was clearly presented to the inferior Court, the Commissioner and Judge Witham as a matter of Law were to find a ruling in favor of Appellant; that Counsel's and Presentence Investigator's failure to interview and put on the record any mitigating evidence/factors renders the entire proceedings fundamentally unfair/prejudicial to Appellant. In Appellant's case, there were substantial mitigating evidence/factors to be introduced at sentencing that led to the chain of events causing the accidental injuries to Mrs. Naylor who was protecting her son. To prevail on this claim and to have this Court remand for further proceedings, Appellant has established below that there was a report and records from the Delaware Psychiatric Center, alleged abuse by father, the relationship with Appellant and his girlfriend, the relationship with Mrs. Naylor, the relationship with Tom Naylor, the character letters weren't introduced/put on the record, and Probation Officer Mr. Shephard's failure to make sure Appellant was complying with the conditions of release from the Delaware Psychiatric Center which was His need for substance abuse treatment.(Outten at 419-21). To show that the outcome of the proceedings would have been

**VI.    PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY, AND UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S FAILURE TO NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE BEFORE PLEA NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY LEGAL ADVISE TO DEFENDANT AND COURT AS TO THE SENTENCING GUIDELINES AND MAXIMUM SENTENCE THAT THE COURT WAS AUTHORIZED TO IMPOSE INVALIDATES APPELLANT'S PLEA AND CONVICTION—REQUIRING THIS APPELLATE COURT TO REVERSE THE INFERIOR COURT'S DECISION TO DENY POST-CONVICTION RELIEF AND REMAND FOR FURTHER PROCEEDINGS.**

## STANDARD AND SCOPE OF REVIEW:

Consequences of guilty plea with respect sentencing that defendant must have knowledge of for his guilty plea to satisfy due process are maximum prison term and fine for offense(s) charged. Defendant's plea of guilty and resulting waiver of his Sixth Amendment right to jury trial was made unintelligently and was therefore invalid, where district court informed defendant before he pleaded guilty to one of two charges that he faced maximum sentence of 60 years in prison if convicted on both charges where he in faced 30 year max sentence and there was nothing in record to suggest that defense counsel ever gave defendant the correct information about max sentence. (See U.S. Guerra 5th Cir. (1996) 94 F.3d 989,995). Same. (See U.S. v. Gigot 10th Cir. (1998) 147 F.3d 1193). Same. (See State of Delaware v. Louis Woolford ___ A.2d ___ (Del.Super.) 2002WL1343827). Same (See Wells v. State Del.Supr. (1978) 396 A.2d 161). Rule 11 of the Federal Rules of Criminal Procedure "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." (See McCarthy v. U.S. (1969) 394 U.S. 459, 465). Whether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary, is a question of law reviewed *de novo*. (See U.S. v. Browning 10th Cir. (1995) 61 F.3d 752, 753). "The Delaware Supreme Court has stated that where there is a serious procedural defect in the plea process or where it clearly appears that the defendant did not knowingly consent to the plea agreement, a sufficient basis exists for withdrawal of the plea regardless of whether there is a basis for a claim of factual innocence or whether there is prejudice to the State." (See Patterson v. State Del.Supr. (1996) 684 A.2d 1234, 1239). In reviewing denial of postconviction relief, appellate court's standard of review is abuse of discretion and its task is to carefully review record to determine whether competent evidence supports trial court's findings of fact and that its conclusions of law are not erroneous. (Id).

## ARGUMENT:

It is now clear on the record and the T.I.S. Form, (A-93), as filled out by Counsel for Appellant

that the plea was unconstitutionally entered; also the Honorable Judge Witham has put on the record that

an "plain error" occurred at sentencing without mitigating the ultimate effect that the error has on the

Appellant's conviction where it is now clear that there was a procedural defect that has made the plea

entered into—invalid and in violation of Appellant's Constitutional guarantees to plead guilty to charges,

the plea must be entered into intelligently, knowingly, and voluntarily. (Id. at 465); As to the procedural

defect. (Id. at 1239). It is clearly established case law in Delaware and the record here that the charges

Appellant has pled guilty to were not punishable by any court of law, and now the plea must be set aside. (Id. at 995); Same. (Id.); Same. (Id.); Same. (Id.).

Therefore, by Law this Court is to remand to the inferior Court to address the error and review the inferior court's remedy for said error *de novo.* (Id.).

## VII.  VIOLATION OF DUE PROCESS, ABUSE OF DISCRETION, AND CLEAR ERROR WHERE THE INFERIOR COURT MADE A PROFESSIONAL ERROR TO BASE ITS DECISION SOLELY ON THE COMMISSIONER'S REPORT AND RECOMMENDATION WITHOUT APPLYING ITS OWN FACTFINDING AND LEGAL CONCLUSIONS REQUIRES REVERSAL AND REMAND NOW THAT A PROCEDURAL DEFECT HAS SURFACED.

### STANDARD AND SCOPE OF REVIEW:

In reviewing denial of postconviction relief, appellate court's standard of review is abuse of discretion and its task is to carefully review record to determine whether competent evidence supports trial court's findings of fact and that its conclusions of law are not erroneous. (Id.). Where there are several errors, a reviewing court must cumulative effect to determine whether there was plain error. (See Wright v. State Del.Supr. (1979) 405 A.2d 685). Rule 11 of the Federal Rules of Criminal Procedure "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." (See McCarthy v. U.S. (1969) 394 U.S. 459, 465). Whether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary, is a question of law reviewed *de novo*. (See U.S. v. Browning 10th Cir. (1995) 61 F.3d 752, 753). "The Delaware Supreme Court has stated that where there is a serious procedural defect in the plea process or where it clearly appears that the defendant did not knowingly consent to the plea agreement, a sufficient basis exists for withdrawal of the plea regardless of whether there is a basis for a claim of factual innocence or whether there is prejudice to the State." (See Patterson v. State Del.Supr. (1996) 684 A.2d 1234, 1239). The Scope of Review is Rule 61 (d) Super.Ct.Cr.R. which the Delaware Supreme Court will remand for a variance of said Rule. (See Webb v. State Del.Supr. ___ A.2d ___ (Appeal No. 183,2005).

### ARGUMENT:

Once Judge Witham made the decision to base the Order being appealed before this Court in the instant matter solely on the decision of Commissioner Freud without making His own factfinding and legal conclusions; He violated the spirit of Rule 61(d). By this variance of the Rule, the decision being appealed was erroneously decided/denied and the legal precepts used for the order were in violation of constitutional standards. This has now become clear that the T.I.S. form, (A-93), has misinformation concerning the charges and their correct maximum terms and sentencing guidelines which should have been remedied by setting aside the plea agreement to mitigate the errors.

Therefore, the inferior Court's decision to deny postconviction relief must be reversed and remanded with this Court reviewing the remedy *de novo*.

## CONCLUSION

For the Arguments, Facts, and Legal Authorities respectfully submitted before this Honorable Court, the inferior Court's decision must be reversed as a matter of Law and remanded for further proceedings with this Court retaining jurisdiction and reviewing *de novo*.

Therefore, Appellant, Donald R. Cochran respectfully requests this Honorable Court to reverse the Superior Court's decision to deny Post-Conviction Relief Appellant is entitled to.

Dated: _March. 1, 2007_

Respectfully Submitted,

*Donald Cochran*

**Donald R. Cochran**
**#201992 / D/EF19T**
**1181 Paddock Road**
**Smyrna, DE  19977**

**IN THE SUPREME COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| **DONALD R. COCHRAN**, | ) |
| | ) |
| Defendant-Below, | ) |
| Appellant | ) |
| | ) |
| v. | ) |
| | ) |
| **STATE OF DELAWARE**, | ) |
| | ) |
| Plaintiff-Below, | ) |
| Appellee | ) |

No. 49, 2007

**MOTION TO AFFIRM**

Pursuant to Rule 25(a), the State of Delaware moves to affirm the judgment of the Superior Court on the grounds that it is manifest on the face of the opening brief that the appeal is without merit for the following reasons:

1. The grand jury indicted Donald Cochran in January 2002, charging him with first degree burglary, first degree assault, and several related offenses. On February 3, 2003, Cochran entered a *Robinson* plea to charges of possession of a deadly weapon during the commission of a felony, first degree assault, and first degree burglary. (Ex. D & E). After his June 16, 2003 sentencing, Cochran filed an untimely direct appeal. *Cochran v. State*, 2003 WL 22701632 (Del.) (Ex. G).

2. On February 21, 2006, Cochran moved for post-conviction relief in the Superior Court, alleging four grounds: (a) speedy trial violation; (b) ineffective assistance of counsel; (c) no evidentiary hearing to determine competency; and (d) failure to present and consider mitigating evidence. (Ex. C). The Superior Court held that Cochran's claims were barred by Criminal Rule

61(i)(3), since they were not previously asserted and Cochran had shown no cause or prejudice sufficient to excuse this procedural default.  Moreover, Cochran had not demonstrated any ineffective assistance of counsel.  (Ex. A & B).

3.  Cochran first argues that he was entitled to dismissal of the charges because the State had not complied with the Interstate Agreement on Detainers (IAD).  But as Superior Court found, Cochran's attempts to invoke the IAD were deficient, and given those deficiencies, Cochran had no IAD claim.  (Ex. B at 12-13 & n.17).  That conclusion was correct in light of the terms of Del. Code Ann. tit. 11, §2542(b) and (g).  *See Fex v. Michigan*, 507 U.S. 43 (1993).

4.  In turn, Cochran urges that defense counsel was ineffective.  But Superior Court properly rejected that claim. Cochran failed to allege (and then substantiate the allegation) that but for counsel's supposed deficiency, he would not have entered a *Robinson* plea and would have proceeded to trial.  *See Hill v. Lockhart*, 474 U.S. 52 (1985).  Given that shortcoming in Cochran's case, there was no basis for relief.

5.  Cochran also complains that the Superior Court judge failed to order a competency examination and hearing.  There was, however, no *bona fide* doubt about Cochran's competency.  The facts which to Cochran warranted an inquiry are in fact of little probative value.  At most, Cochran argued that because of a 1999 admission to Delaware Psychiatric Center because of alcohol and cocaine abuse (A54) and his intoxication at the time of the offense, the court should have questioned his competency to plead

guilty in 2003. Under the circumstances, however, no further inquiry was needed. *See Weeks v. State*, 653 A.2d 266, 270 (Del. 1995); *State v. Dryden*, 673 P.2d 809, 812 (Idaho App. 1983); *Edwards v. State*, 796 So.2d 1040, 1042-43 (Miss. App. 2001); *People v. Clickner*, 512 N.Y.S.2d 572, 573 (N.Y. App. Div. 1987).

6. Cochran also believes that at sentencing, the presentence report did not fully explicate what he calls the "mitigating evidence." But Superior Court had more than enough facts to form a picture of the crime and of Cochran -- defense counsel and Cochran talked at length about Cochran's relationship difficulties which led to the offense and his substance abuse. (Ex. J at 2-7). Cochran has not shown what additional evidence should have been presented or how it would have affected his ultimate sentence.

7. In light of the foregoing, Cochran has not established that Superior Court was wrong when it held his three substantive claims to be procedurally barred under Rule 61(i)(3) and that counsel was not ineffective.

8. Cochran, in argument 6, writes that his plea was defective because he was given incorrect information about the maximum sentence. In a related claim, Cochran complains that counsel was ineffective in giving him incorrect information about his sentencing exposure. Those two claims were not presented to the Superior Court, and review at this stage is foreclosed. Supr. Ct. R. 8.

9. Cochran points out, in argument 5, that defense counsel did not, in his affidavit filed under Rule 61(g)(2), address one

of Cochran's claims.  From that, Cochran argues that he should
have been granted relief on that claim.  The shortcoming of
defense counsel in that regard, however, does not translate into
a windfall for Cochran:  the court has "the discretion to address
the merits of an even unopposed motion for [post-conviction
relief], if only to prevent a miscarriage of justice and to avoid
undoing a conviction that was lawfully obtained."  *Guardarrama v.
State*, 2006 WL 2950494, order at ¶19 (Del. Oct. 17, 2006) (Ex.
K).  And contrary to Cochran's final argument, the Superior Court
judge's review of the Commissioner's report and recommendation
was entirely consistent with Title 10, §512(b)(1) and Criminal
Rule 62(a)(4).

    10.  The judgment of the Superior Court should accordingly
be affirmed.

John Williams
Deputy Attorney General
Department of Justice
102 West Water Street
Dover, DE 19904-6750
(302) 739-4211 (ext. 263)
I.D. # 365

March 9, 2007

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

STATE OF DELAWARE,    )
                            )
                            )     IK02-01-0397-R1
       v.                 )     IK02-01-0398-R1
                            )     IK02-01-0399-R1
**DONALD R. COCHRAN,**    )
ID No. 0102010757        )
                            )
      Defendant.       )

*(stamp, right margin:)* 07 JAN 22 PH 4: 21   KENT COUNTY PROTHONOTARY   RECEIVED AND FILED

## ORDER

On this 22nd day of January, 2007, upon consideration of the Defendant's Motion for Postconviction Relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

(1)    The defendant Donald R. Cochran ("Cochran") entered a *Robinson* guilty plea on February 3, 2003 to one count of Assault in the First Degree, 11 *Del. C.* § 613; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447. Cochran was facing trial on the above charges along with one count of Unlawful Imprisonment in the First Degree, one count of Criminal Mischief and one count of Non-Compliance with a Condition of a Bond. The charges involved a brutal assault of an innocent elderly female victim while Cochran was under the influence of alcohol and drugs. Following a Presentence Office investigation, Cochran was sentenced on June 16, 2003 to a total of thirty-two years of incarceration, suspended after serving eighteen years for various levels of probation. Had Cochran gone to trial and been convicted as charged, he would have faced over fifty years of incarceration. Cochran filed a *pro se* appeal to the State

Exhibit A



*State v. Donald R. Cochran*
**ID No. 0102010757**
January 22, 2007

Supreme Court, which was dismissed as untimely.[1]  Cochran next filed a motion for reduction of his sentence in which he agreed he should have received credit for time served in the State of Florida while waiting extradition to Delaware.  This Court denied this motion.[2]  Cochran appealed and the State Supreme Court affirmed this Court's ruling.[3]

(2)  Now Cochran has filed a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 in which he raises four grounds for relief including ineffective assistance of counsel.

(3)  The matter was referred to the Court Commissioner for findings of fact and recommendation pursuant to 10 *Del. C.* § 512(b) and Superior Court Civil Rule 132.  The Commissioner has filed a Report and Recommendation recommending that the Court deny defendant's motion for postconviction relief.  No objections to the Report have been filed.

**NOW, THEREFORE,** after careful and *de novo* review of the record in this action, and for the reasons stated in the Commissioner's Report and Recommendation dated December 7, 2006,

**IT IS ORDERED** that the thoughtful and well-reasoned Commissioner's Report and Recommendation is adopted by the Court and defendant's Motion for

---

[1] *Cochran v. State* (1ˢᵗ).

[2] *State v. Cochran,* Dec. 17, 2003, Ridgely, P.J. ( Docket Item #33).

[3] *Cochran v. State* (2ⁿᵈ).

2

*State v. Donald R. Cochran*
**ID No. 0102010757**
January 22, 2007

Postconviction Relief is *denied* as procedurally barred.

_____
Resident Judge

WLW/dmh
oc:   Prothonotary
xc:   Hon. Andrea M. Freud
       Susan Schmidhauser, Esquire
       Joseph M. Bernstein, Esquire
       Mr. Donald R. Cochran, DCC
       Order Distribution (w/Report & Recommendation)
       File

3

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| STATE OF DELAWARE, | ) | |
|---|---|---|
| | ) | |
| | ) | IK02-01-0397-R1 |
| | ) | IK02-01-0398-R1 |
| DONALD R. COCHRAN, | ) | IK02-01-0399-R1 |
| | ) | |
| Defendant. | ) | |
| ID No. 0102010757 | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Susan G. Schmidhauser, Esquire, Deputy Attorney General, Dover, Delaware, for the State of Delaware.

Donald R. Cochran, *pro se.*

FREUD, Commissioner
December 7, 2006

The defendant, Donald R. Cochran ("Cochran") entered a *Robinson*[1] guilty

plea on February 3, 2003 to one count of Assault in the First Degree, 11 *Del. C.*

---

[1] *Robinson v. State*, 291 A2d. 279 (Del. 1972) (permitting the acceptance by the trial court of a guilty plea in the absence of an admission of guilt).

Exhibit B

55/ mr

-251-

**State v. Donald R. Cochran**
**ID No. 0102010757**
December 7, 2006

§ 613; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447. Cochran was facing trial on the above charges along with one count of Unlawful Imprisonment in the First Degree, one count of Criminal Mischief and one count of Non-Compliance with a Condition of a Bond. The charges involved a brutal assault of an innocent elderly female victim while Cochran was under the influence of alcohol and drugs. Following a Pre-sentence office investigation, Cochran was sentenced on June 16, 2003 to a total of thirty-two years of incarceration, suspended after serving eighteen years for various levels of probation. Had Cochran gone to trial and been convicted as charged, he would have faced over fifty years of incarceration. Cochran filed a *pro se* appeal to the State Supreme Court, which was dismissed as untimely.[2] Cochran next filed a motion for reduction of his sentence in which he argued he should have received credit for time served in the State of Florida while awaiting extradition to Delaware. This Court denied this motion.[3] Cochran appealed and the State Supreme Court affirmed this Court's ruling.[4]

Now Cochran has filed a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 in which he raises four grounds for relief including

---

[2] *Cochran v. State*, 2003 Del. LEXIS 569.

[3] *State v. Cochran*, Del. Super. ID 0102010757, Ridgely, P.J. (Dec. 17, 2003)( ORDER).

[4] *Cochran v. State*, 2005 Del. LEXIS 501.

2

***State v. Donald R. Cochran***
**ID No. 0102010757**
December 7, 2006

ineffective assistance of counsel.

## I. FACTS

The facts were set forth at Cochran's plea:

> MR. GAREY: Had the matter proceeded to trial, Your Honor, the State would have presented the testimony of Mary Naylor. Ms. Naylor would have testified that on the Monday evening, February 12, 2001, she was at her residence in Smyrna, Delaware, Kent County; that approximately 8:00 p.m., actually 8:15 to 8:30 in the evening, after dark, she was assaulted in her residence by the defendant, Donald Cochran. That he broke in, unannounced, struck her repeatedly about the head, and struck her also with a beer bottle. State would have presented photographs of the crime scene which would have corroborated the testimony of Mrs. Naylor, and I believe that the evidence would have been sufficient to obtain a conviction.

> THE COURT: All right. And was Mr. Cochran operating under some degree of --

> MR. BERNSTEIN: Your Honor, the basis for the Robinson plea is this: Mr. Cochran, beyond recalling kicking in the door to the residence, has no recollection of the events that occurred after that. He was in a highly intoxicated state and also had been using drugs that day.

> There was some -- the reasoning -- there was a reason, a reason he went into the house. The reason he went into the house was he had a long-term relationship with Mrs.

3

*State v. Donald R. Cochran*
ID No. 0102010757
December 7, 2006

Naylor's daughter. He was walking by the residence, saw the daughter's truck parked outside. He wanted to – some things he wanted to discuss with her. The victim in this case was not – was a totally unintended victim. She happened to be there.

Mr. Cochran had some issues with the victim's daughter, and those are things we will get into more detail about at sentencing, but for present purposes Mr. Cochran does not have a recollection beyond going into the house. To put it in his words, he snapped. We have no reason – I have looked at the pictures. Mr. Cochran has had an opportunity to look at them. I don't believe there really is any dispute that the victim here suffered these injuries, the way she suffered them, and at whose hand. The victim knows Mr. Cochran, has known him for a while. It is not a question of a stranger on stranger here. So we believe there is a factual basis for the plea.

THE COURT:   Okay.

MR. BERNSTEIN:   May we continue with the colloquy if the Court will have Mr. Cochran sworn?

THE COURT:   Before I do that I want to take a one minute recess, and I will be right back.

MR. GAREY:   I wanted to say it wasn't the victim's daughter, it was a friend of the victim's son.

THE COURT:   All right. One minute recess. Be right back.

4

- 254 -

**State v. Donald R. Cochran**
**ID No. 0102010757**
December 7, 2006

(A brief recess was taken.)

MR. BERNSTEIN:    One correction, Your Honor. I misspoke when I said the dispute that Mr. Cochran had was with Miss Naylor's daughter. It was with her son. I wanted to clear that up. Is that right?

THE COURT:    All right. Thank you, Mr. Bernstein. I will ask Mr. Cochran to come forward to the podium and be sworn in.    Any objections to swearing on the Bible, Mr. Cochran?

THE DEFENDANT:    No, Sir.

THE COURT:    All right. Please swear him.
\* \* \* \* \*

DONALD R. COCHRAN

\* \* \* \* \*

the defendant herein, being duly sworn, was examined and testified as follows:

BY THE COURT:
Q.    All right, Mr. Cochran, I have some questions which I need to have answered under oath. That is the purpose of your being sworn in.

A.    Yes, sir.

Q.    You heard the statements of your attorney, Mr.

5

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

Bernstein, as well as the statements of the prosecution. I want to ask you: Did you hear everything that was said?

A.   Yes, sir.

Q.   Was everything said true and correct?

A.   No, sir.

Q.   What I am asking you, everything that the attorneys, that is, Mr. Bernstein stated.

A.   He didn't get all the facts right, sir. I been two years. This will be — I am fighting for my life here, and he didn't state some facts right that should be stated right, and the reason why I just didn't go in, and I don't remember what happened to her, but he didn't state all the facts right.

Q.   Are you saying that Mr. Bernstein did not state all the facts that you thought he should have stated?

A.   Yes, sir. He was basically right, but he doesn't have the facts right. It wasn't Mrs. Naylor's daughter, it was the woman I had been seeing for ten years was sleeping around with someone I called a friend, Tom Naylor, and I had been drinking heavy and on drugs, and was going to get more drugs, and they had lied to me. Tom Naylor had lied to me. He was a friend and said he didn't know who she was seeing, and I was getting some more drugs and happened to see the truck at her - - his house, and I snapped from there, and all I remember was kicking the door in. I don't remember the events that happened inside. I had a blackout. And that's the facts.

6

*State v. Donald R. Cochran*
ID No. 0102010757
December 7, 2006

Q.    Okay. Most of what you said seem to me to not be
totally contrary to what your attorney stated. Do you - -
but do you want a moment to talk with your attorney
again?

A.    No, sir.  He just said that it was the victim's
daughter and it wasn't the victim's daughter.

THE COURT:    That is the only inaccuracy?

MR. BERNSTEIN:    I just corrected that.

THE COURT:    I understand, Mr. Bernstein.

BY THE COURT:
Q.    That was the only inaccuracy that you recall; correct?

A.    Yes, sir.

Q.    Did not Mr. Bernstein make a correction to that?

A.    She said it was his son - - he said it was her son,
but it was the woman I had been seeing, about ten years,
and Mrs. Naylor's son.

Q.    So he was - - when Mr. Bernstein corrected himself, he
was then correct; is that right?

A.    Yes, sir.

Q.    Okay. All right. Other than that everything that was
stated is correct; is that correct?

7

C                    C

*State v. Donald R. Cochran*
ID No. 0102010757
December 7, 2006

A.    Yes, sir.

Q.    I am sorry about using the word so many times.

A.    Well, I am sorry. I am fighting - - I just wanted to get this straight because, you know.

Q.    All right. I understand. All right. Do you understand you have a right to speedy trial with the assistance of a lawyer, and you waive these rights by - - you give up these rights by pleading guilty today. Do you understand that?

A.    Yes, sir.[5]

## II. COCHRAN'S CONTENTIONS

In his motion, Cochran raises four grounds for relief:

> Ground One: Violation of Speedy Trial/IAD Agreement, Lack of Jurisdiction, Untimely Indictment. State failed to indict Petitioner in a timely fashion, failed to pick up and bring Petitioner back to this jurisdiction within the 180 day clause of the extraditions laws, which violated his speedy trials right, and jurisdiction was lost.

> Ground Two:    Ineffective Assistance of Counsel. Petitioner's counsel failed to investigate any important information, failed to prepare important information for and file pre trial [*sic*] motion in a timely fashion. He failed in preparing in any way for Petitioner's case, any way it's looked at counsel was ineffective.

---

[5] *State v. Cochran*, Del. Super. ID 0102010757 (Feb. 3, 2003), tr. at 3 - 9.

8

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

> Ground Three: Failure to hold evidentiary hearing to
> determine competency due to mental records and reports
> on Petitioner's mental state, and with Petitioner being
> offered a Robinson Plea, a [*sic*] evidentiary hearing
> should have been heard to determine Petitioner's mental
> state of mind.

> Ground Four: Lack of mitigating evidence. Petitioner
> had a right to have all mitigating evidence that is favorable
> heard to show that there was a mitigating side to this case
> that was overlooked and this mitigating evidence should
> have got the same consideration that the aggravating
> factors received in this case.

## PROCEDURAL CONSIDERATIONS

Under Delaware law this Court must first determine whether Cochran has met

the procedural requirements of Superior Court Criminal Rule 61(i) before it may

consider the merits of his postconviction relief claim.[6] This is Cochran's first

motion for postconviction relief and it was filed within three years of his conviction

becoming final, so the requirements of Rule 61(i): (1) requiring filing within three

years and (2) requiring that all grounds for relief be presented in the initial Rule 61

motion, are met. None of Cochran's claims were raised at the plea, sentencing or

on direct appeal, therefore, they are barred by Rule 61(i)(3), absent a demonstration

of cause for the default and prejudice. Arguably, each of Cochran's grounds for

relief are based on ineffective assistance of counsel. Rule 61(i)(3) does not bar

---

[6] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554
(Del. 1990).

C                    C

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

relief as to Cochran's claims at this point should he demonstrate that his counsel was ineffective and that he was prejudiced by counsel's actions.

To prevail on his claim of ineffective assistance of counsel, Cochran must meet the two prong test of *Strickland v. Washington*.[7] In the context of a guilty plea challenge, *Strickland* requires that a defendant show:    (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial and that the result of a trial would have been his acquittal.[8]    In addition, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[9] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[10] This

---

[7]  466 U.S. 668 (1984) ("*Strickland*"); *Larson v. State*, 1995 Del. LEXIS 238; *Albury v. State*, 551 A.2d 53 (Del. 1988); *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992).

[8]  *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985); *Strickland*, 466 U.S. at 688, 694; *Accord Larson*, 1995 Del. LEXIS 238, at *3-4; *Blanchfield v. State*, 1994 Del. LEXIS 314; *Skinner*, 607 A.2d at 1172; *Albury*, 551 A.2d at 58.

[9]  *Younger*, 580 A.2d at 556; *Skinner v. State*, 1994 Del. LEXIS 84.

[10]  *Albury*, 551 A.2d at 59 (citing *Strickland*, 466 U.S. 689); *see also Larson*, 1995 Del. LEXIS 238; *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

10

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

standard is highly demanding.[11]  *Strickland* mandates that when viewing counsel's representation, this Court must endeavor to eliminate the distorting effects of hindsight.[12]

Following a complete review of the record in this matter, it is abundantly clear that Cochran has failed to allege any facts whatsoever sufficient to substantiate his claim that his attorney was ineffective.  I find Defense counsel's Affidavit and the record more credible than Cochran's self-serving accusations.  Cochran was facing trial on many serious charges and risked being sentenced to a substantial period of minimum mandatory jail time.  Cochran's counsel was able to negotiate a Plea Bargain with the State which resulted in only ten years minimum mandatory ificarceration.  Cochran and his attorney discussed the case prior to the entry of the plea.  The Plea Agreement was clearly advantageous to Cochran.  Counsel's representation was certainly well within the range required by *Strickland*. Additionally, when Cochran entered his guilty plea he stated on his Truth-In-Sentencing Guilty Plea Form  ("Guilty Plea Form") that he was satisfied with defense counsel's performance.[13]  He is bound by his statements unless he presents clear and convincing evidence to the contrary.[14]  Consequently, Cochran has failed to establish that his counsel's representation was ineffective under the *Strickland*

---

[11]  *Flamer*, 585 A.2d at 754.

[12]  *Strickland*, 466 U.S. at 689.

[13]  *State v. Cochran*, Del. Super. ID 0102010757 (Feb. 3, 2003), tr. at 16.

[14]  *Blanchfield*, 1994 Del. LEXIS 314; *Mapp v. State*, 1994 Del. LEXIS 94 (citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

11

***State v. Donald R. Cochran***
**ID No. 0102010757**
December 7, 2006

test.

Even assuming *arguendo* that counsel's representation of Cochran was somehow deficient, Cochran must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[15] Cochran attempts to circumvent this requirement by in part claiming a jurisdictional defect. However, as outlined below, he clearly fails.

In his first ground for relief, Cochran claims that the State of Delaware failed to comply with the 180 day requirement of the Delaware Uniform Agreement on Detainers.[16] The file, however, shows that Cochran was brought to trial within the 180 day time limit. Additionally, Cochran waived this right when he accepted a plea.

Pursuant to 11 *Del. C.* § 2542, "the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of imprisonment and the request for final disposition to be made of the indictment, information or complaint . . ." Furthermore, the prisoner's request to be transferred to the State of Delaware must be accompanied by a certificate from the official who has custody of the prisoner detailing the term of commitment in that jurisdiction, the amount of time served, the amount of time remaining to be served, any good time earned as well as information about parole eligibility. Despite the

---

[15] *Larson*, 1995 Del. LEXIS 238; *Younger*, 580 A.2d at 556.

[16] 11 *Del. C.* § § 2540-2550.

12

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

test.

Even assuming *arguendo* that counsel's representation of Cochran was somehow deficient, Cochran must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[15] Cochran attempts to circumvent this requirement by in part claiming a jurisdictional defect. However, as outlined below, he clearly fails.

In his first ground for relief, Cochran claims that the State of Delaware failed to comply with the 180 day requirement of the Delaware Uniform Agreement on Detainers.[16] The file, however, shows that Cochran was brought to trial within the 180 day time limit. Additionally, Cochran waived this right when he accepted a plea.

Pursuant to 11 *Del. C.* § 2542, "the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of imprisonment and the request for final disposition to be made of the indictment, information or complaint . . ." Furthermore, the prisoner's request to be transferred to the State of Delaware must be accompanied by a certificate from the official who has custody of the prisoner detailing the term of commitment in that jurisdiction, the amount of time served, the amount of time remaining to be served, any good time earned as well as information about parole eligibility. Despite the

---

[15] *Larson*, 1995 Del. LEXIS 238; *Younger*, 580 A.2d at 556.

[16] 11 *Del. C.* § § 2540-2550.

12

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

fact that Cochran claims that he sent three such requests (October 4, 2001, January 1, 2002 and May 12, 2002), it is clear that none of those letters met the strict requirements of the statute. All three letters were sent to the Attorney General's Office, *not* to the Court. Two of the letters did not indicate where Cochran was held and none of the letters were accompanied by the appropriate certification from the Florida prison. The appropriate paperwork was not received by the Attorney General's Office and the Court until August 28, 2002 when Cochran waived extradition.[17] Cochran accepted a guilty plea on February 3, 2003 which is within the 180 day requirement.

Cochran's argument also fails because he accepted a guilty plea thereby waiving any violations. A defendant is bound by his answers on a guilty plea form unless proven otherwise by clear and convincing evidence.[18] On the Truth-In-Sentencing Guilty Plea Form, Cochran indicated that he understood that by pleading guilty he would not have a trial thus giving up many Constitutional rights, including the right to a speedy trial.[19] Furthermore, the Court inquired in the plea colloquy as to whether Cochran understood that he could either pursue the Motion to Dismiss or accept the plea. After much discussion, Cochran elected to accept the plea.[20]

Cochran's second claim is that his counsel was ineffective by failing to

---

[17] See *State v. Farrow*, 2005 Del. Super. LEXIS 199 citing *Isenhower v. State*, 516 A.2d 482 (Table) and *Beebe v. State*, 346 A.2d 169 (Del. 1975).

[18] *Blanchfield v. State*, 1994 Del. LEXIS 314.

[19] *State v. Cochran*, Del. Super., ID 0102010757 (Feb. 3, 2003), tr. at 10-12.

[20] *State v. Cochran*, Del. Super., ID 0102010757 (Feb. 3, 2003), tr. at 17-25.

13

*State v. Donald R. Cochran*
**ID No. 0102010757**
December 7, 2006

understood he would waive his constitutional rights if he pled guilty, if he understood each of the constitutional rights listed on the Guilty Plea Form and whether he gave truthful answers to all the questions on the form. The Court asked Cochran if he had discussed the guilty plea and its consequences fully with his attorney. The Court asked Cochran if he was entering the *Robinson* plea of his own free will because there was in fact sufficient evidence to prove his guilt. The Court asked Cochran if he was satisfied with his counsel's representation. Cochran answered each of these questions clearly and affirmatively.[23]

Furthermore, prior to entering his guilty plea, Cochran filled out a Guilty Plea Form. Cochran indicated, when he signed the form, that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Cochran is bound by the statements he made on the signed Guilty Plea Form unless he proves otherwise by clear and convincing evidence.[24] I confidently find that Cochran entered his guilty plea knowingly and voluntarily and waived his right to a speedy trial.

In conclusion, I find that Cochran's counsel represented him in a competent and effective manner and that Cochran has failed to clearly demonstrate any prejudice stemming from the representation. I also find that Cochran's guilty plea

---

[23] *State v. Cochran,* Del. Super., ID No. 0102010757 (Feb. 3, 2003) tr. at 10-16.

[24] *Hickman v. State,* 1994 Del. LEXIS 320; *Smith v. State,* 1990 Del. LEXIS 1. *See also Sullivan v. State,* 636 A.2d 931, 938 (Del. 1994) (ruling the fact that defendant filled out Truth-In-Sentencing Guilty Plea Form in defendant's own handwriting supported the Superior Court's conclusion that defendant's decision to plead guilty was knowing and voluntary).

16

*State v. Donald R. Cochran*
ID No. 0102010757
December 7, 2006

was entered knowingly and voluntarily. Consequently, I recommend that the Court

*deny* Cochran's Motion for Postconviction Relief as procedurally barred.

Commissioner Andrea M. Freud

AMF/ds

oc:   Prothonotary
cc:   Hon. William L. Witham, Jr.
      Joseph M. Bernstein, Esq.
      Notebook

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR __KENT__ COUNTY

STATE OF DELAWARE )
V. )
)
<u>Donald R. Cochran</u> )
Name of Movant on Indictment )
)
<u>Donald R. Cochran</u> )
Correct Full Name of Movant )

No. __0102010757__
(to be supplied by Prothonotary)

IK02-01-0399 wR1 Burg 1st (F)
02-01-0398w R1 ASH 1st (F)
02-01-0397 wR1 PDWDCF(F)

## MOTION FOR POSTCONVICTION RELIEF

$E \times hibit \quad C$



## MOTION

1.  County in which you were convicted __Kent__

2.  Judge who imposed sentence __Dupont, Ridgely__

3.  Date sentence was imposed __June 16, 2003__

4.  Offense(s) for which you were sentenced and length of sentence (s):
    __First degree burglary 20 years Level 5 suspended after 6 years for decreasing__
    __levels of probation. first degree assault - 10 years Level 5. P.D.W.D.C.F.__
    __2 years level 5__

5.  Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?     Yes ( )     No ( X )
    If your answer is "yes," give the following information:
    Name and location of court(s) which imposed the other sentence(s):

    _____

    _____

    Date sentence(s) imposed: _____

    Length of sentence(s) _____

6.  What was the basis for the judgment(s) of conviction? (Check one)
    Plea of guilty ( )
    Plea of guilty without admission of guilt ("Robinson plea") ( X )
    Plea of nolo contendere ( )
    Verdict of jury ( )
    Finding of judge (non-jury trial) ( )

7.  Judge who accepted plea or presided at trial __William L. Witham, JR.__

8.  Did you take the witness stand and testify? (Check one)
    No trial ( X )     Yes ( )     No ( )

9.  Did you appeal from the judgment of conviction? Yes ( X )   No ( )
    If your answer is "yes," give the following information:

    Case number of appeal __356, 2003__

    Date of court's final order or opinion __November 12, 2003__

1

10.    Other than a direct appeal from the judgment(s) of conviction, have you filed any other
motion(s) or petition(s) seeking relief from the judgment(s) in state or federal court?
Yes (X) No ( )        How many? ( 2 )
If your answer is "yes," give the following information as to each:

Nature of proceeding(s) _Sentence modification_

Grounds raised _extraordinary circumstances, and the_
_Judge took hisself off the case because he knew the parties_
_involed. But later he come back and denied my last_
_sentence modification_

Was there an evidentiary hearing? _no_

Case number of proceeding(s) _156, 2005_

Date(s) of court's final order(s) or opinion(s) _denied, December 8, 2005_

Did you appeal the result(s)? _yes_

11.    Give the name of each attorney who represented you at the following stages of the
proceedings relating to the judgment(s) under attack in this motion:

At plea of guilty or trial _Joseph M. Bernstein_

On appeal _Pro Se_

In any postconviction proceeding _Pro Se_

12.    State every ground on which you claim that your rights were violated. If you fail to set forth
all grounds in this motion, you may be barred from raising additional grounds at a later date. You
must state facts in support of the ground(s) which you claim. For your information, the following
is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here):
double jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea;
uninformed waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right
to confront witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel;
suppression of favorable evidence; unfulfilled plea agreement.

2

✱ Ground four on reverse side

Ground one: Violation of Speedy Trial/IAD Agreement, Lack of Jurisdiction, Untimely Indictment
Supporting facts (state the facts briefly without citing cases):
State failed to indict Petitioner in a timely fashion, failed to pick up and bring Petitioner back to this jurisdiction within the 180 day clause of the extraditions Laws, which violated his speedy trials Right, and jurisdiction was lost.

Ground two: Ineffective assistance of Counsel

Supporting facts (state the facts briefly without citing cases):
Petitioner's counsel failed to investigate any important information, failed to prepare important information for and file Pre Trial Motion in a timely fashion. He failed in preparing in any way for Petitioner's case, anyway its looked at counsel was ineffective.

Ground three: Failure to hold evidentiary hearing to determine competency
Supporting facts (state the facts briefly without citing cases):
due to mental records and reports on Petitioner's mental state, and with Petitioner being offered a Robinson Plea, a evidentiary hearing should have been heard to determine Petitioner's mental state of mind.

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, and give your reason(s) for not doing so: Petitioners direct appeal was denied.

Wherefore, movant asks that the court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of attorney (if any)

I declare the truth of the above under penalty of perjury.

2-16-06
_____
Date Signed

Donald R. Cochran
_____
Signature of Movant
(Notarization not required)

3

-271-

Ground four: lack of mitigating evidence Petitioner had a right to have all mitigating evidence that is favorable heard to show that there was a mitigating side to this case that was overlooked. And this mitigating evidence should have got the same consideration that the aggravating factors received in this case.

Superior Court of the State of Delaware, _KENT_ County

# PLEA AGREEMENT

State of Delaware v. _DONALD R. COCHRAN_

Case No(s): _0102 010757_ Cr.A.#s: _02-01-0397_ _Tru 0402_
_0102015219  0102010_
_0102015219_

☐ Title 11 HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:** _ROBINSON_

| Count | Cr.A.# | Charge | [LIO if applicable] |
|-------|--------|--------|---------------------|
| _1_ | _02-01-0399_ | _Burglary 1_ | |
| _2_ | _02-01-0398_ | _assault - 1st_ | |
| _3_ | _02-01-0397_ | _PDW DCF_ | |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☒ all remaining charges on this indictment:

| Count | Cr.A# | Charge |
|-------|-------|--------|
| | | |
| | | |
| | | |

**Sentence Recommendation/Agreement:** ☒ PSI    ☐ Immediate Sentencing

_____
_____

**State and Defendant agree to the following:**
☒ Restitution: _____
☒ No _____    contact w/ _MARY NAYLOR, TOM NAYLOR_
☒ Other Conditions: _or PAM HAWKINS_
_- State agrees A is not eligible under 11 Del C 4214(a)_
_be sentenced as Habitual Offender,_
_- at Sentencing, 9 State will recommend no more_
_than 18 years @ Level 5_

DAG: _JOHN R GAREY_    DEF. COUNSEL: _Joseph Bernstein_
PRINT NAME    PRINT NAME

_John R Harey_    _Joseph M B___
SIGNATURE    SIGNATURE

DEFENDANT: _Donald Coch___
Date _020303_

**Exhibit D**

XC: Attorney for Defendant, Defendant
Attorney General, Attorney General Worksheet

Page _1_ of _1_

- 273 -

03/08/2007 THU 13:16 FAX

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR _Kent_ COUNTY

STATE OF DELAWARE      )    ID: 0102010757

v. _Donald Cochran_      )    CRA: _____

)

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth _4-21-61_        Last grade in school completed _12th_

| | | |
|---|---|---|
| Have you ever been a patient in a mental hospital? | ☒ Yes | ☐ No |
| Are you under the influence of alcohol or drugs at this time? | ☐ Yes | ☒ No |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | ☒ Yes | ☐ No |
| Have you been promised anything that is not stated in your written plea agreement? | ☐ Yes | ☒ No |
| Has your attorney, the State, or anyone threatened or forced you to enter this plea? | ☐ Yes | ☒ No |

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
  (1) to be presumed innocent until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
  (2) to a speedy and public trial;
  (3) to trial by jury;
  (4) to hear and question the witnesses against you;
  (5) to present evidence in your defense;
  (6) to testify or not testify yourself; and,
  (7) to appeal to a higher court?      ☒ Yes   ☐ No

| OFFENSE | STATUTORY PENALTY Incarceration | Amount of Fine: (range if applicable) | TIS GUIDELINE |
|---|---|---|---|
| Burg I | 20 yrs | 2,300 | 2yr mm / 2-5 L/5 |
| Assault II | 10 yrs | '' | up to 30 mos |
| PDW DCF | 20 yrs | '' | 2-yr min / 2-3 yrs 4-5 |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:** Incarceration: _50_ Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

| | | |
|---|---|---|
| Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year? | ☒ Yes | ☐ No |
| Is there a minimum mandatory penalty? | ☒ Yes | ☐ No |
| If so, what is it? _4 yrs_ | | |
| Is there a mandatory revocation of driver's license or privileges for this offense or as a result of your plea? | ☐ Yes | ☒ No |
| If so, what is the length of revocation? _____ years | | |
| Has anyone promised you what your sentence will be? | ☐ Yes | ☒ No |
| Were you on probation or parole at the time of this offense? (A guilty plea may constitute a violation.) | ☒ Yes | ☐ No |
| Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be a juror, to hold public office, and other civil rights? | ☒ Yes | ☐ No |
| Have you been advised that this is an offense which results in the loss of the right to own or possess a deadly weapon? | ☒ Yes | ☐ No |
| Have you been advised that this is an offense which requires registration as a sex offender? | ☐ Yes | ☒ No |
| Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea? | ☒ Yes | ☐ No |
| Have you read and understood all the information contained in this form? | ☒ Yes | ☐ No |

_Joseph M B____    _2-3-03_    X _Donald Coch___
Defense Counsel      Date      Defendant

Print name: _Joseph Bernstein #780_    **Exhibit E** Print name: _Donald Cochran._

Copies: Superior Court, Attorney General, Attorney for Defendant, Defendant      Document No.: 02-03-10-00-05-01 (Rev. 03/08/00)

Westlaw.

846 A.2d 237                                                                Page 1

846 A.2d 237, 2003 WL 22701632 (Del.Supr.)
(Cite as: 846 A.2d 237)

**H**
Cochran v. StateDel.Supr.,2003.(The decision of
the Court is referenced in the Atlantic Reporter in a
'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
**Donald R. COCHRAN**, Defendant
Below-Appellant,
v.
**STATE of Delaware**, Plaintiff Below-Appellee.
No. 356, 2003.

Submitted Oct. 2, 2003.
Decided Nov. 12, 2003.

**Background:** In a criminal prosecution, the
Superior Court, Kent County, entered a sentencing
order. Defendant appealed.

**Holding:** The Supreme Court, E. Norman Veasey,
C.J., held that defendant's allegation that his filing
of notice of appeal from sentencing order was
delayed for ten days because Department of
Correction failed to supply him with paper and pen
did not excuse the untimely filing of the notice of
appeal.

Appeal dismissed.
West Headnotes
**Criminal Law 110 🔗1081(5)**

110 Criminal Law
   110XXIV Review
      110XXIV(F) Proceedings; Generally
         110k1081 Notice of Appeal
            110k1081(4) Time of Giving
               110k1081(5) k. Effect of Delay.
Most Cited Cases
Inmate's allegation that his filing of notice of appeal
from sentencing order was delayed for ten days
because Department of Correction failed to supply
him with paper and pen did not excuse inmate from
requirement of filing notice of appeal within 30
days after entry of sentencing order. Sup.Ct.Rules,

Rule 6(a).

Court Below-Superior Court of the State of
Delaware, in and for Kent County, Cr. A. Nos.
IK02-01-0397 thru 0399.

Before VEASEY, Chief Justice, HOLLAND and
JACOBS, Justices.

*ORDER*

**\*1** This 12th day of November 2003, it appears to
the Court that:

**\*1** (1) On July 18, 2003, the Court received the
appellant's notice of appeal from the Superior
Court's June 16, 2003 sentencing order. Pursuant to
Supreme Court Rule 6, a timely notice of appeal
should have been filed on or before July 16, 2003.

**\*1** (2) On July 18, 2003, the Clerk issued a notice
pursuant to Supreme Court Rule 29(b) directing the
appellant to show cause why the appeal should not
be dismissed as untimely filed. The appellant filed
his response to the notice to show cause on July 28,
2003. The Clerk then directed the State to file an
answer to which the appellant subsequently filed a
reply. The appellant states that the Department of
Correction failed to supply him with paper and pen
quickly enough for him to file a timely notice of
appeal. While the appellant states that his notice of
appeal was delayed for 10 days because he did not
have pen and paper, he does not explain why he was
not able to file his notice of appeal within the
30-day appeal period.[FN1]

> FN1. Supr. Ct. R. 6(a) (A notice of appeal
> must be filed within 30 days after entry
> upon the docket of the judgment or order
> being appealed.)

**\*1** (3) Time is a jurisdictional requirement.[FN2] A

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit F

~275~

846 A.2d 237                                                             Page 2

846 A.2d 237, 2003 WL 22701632 (Del.Supr.)
(Cite as: **846 A.2d 237**)

notice of appeal must be received by the Office of
the Clerk of this Court within the applicable time
period in order to be effective.[FN3]  Unless the
appellant can demonstrate that the failure to file a
timely notice of appeal is attributable to
court-related personnel, his appeal can not be
considered.[FN4]

> FN2. *Carr v. State,* 554 A.2d 778, 779
> (Del.1989).
>
> FN3. Supr. Ct.. R. 10(a).
>
> FN4. *Bey v. State,* 402 A.2d 362, 363
> (Del.1979).

*1 (4) There is nothing in the record that reflects
that the appellant's failure to file a timely notice of
appeal in this case is attributable to court-related
personnel. Consequently, this case does not fall
within the exception to the general rule that
mandates the timely filing of a notice of appeal.
Thus, the Court concludes that the within appeal
must be dismissed.

*1 NOW, THEREFORE, IT IS ORDERED,
pursuant to Supreme Court Rules 6(a) and 29(b),
that the within appeal is DISMISSED.

Del.Supr.,2003.
Cochran v. State
846 A.2d 237, 2003 WL 22701632 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

888 A.2d 231                                                                                          Page 1

888 A.2d 231, 2005 WL 3357633 (Del.Supr.)
(Cite as: 888 A.2d 231)

**H**
Briefs and Other Related Documents
Cochran v. State,Del.Supr.,2005.(The decision of
the Court is referenced in the Atlantic Reporter in a
'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
**Donald R. COCHRAN**, Defendant
Below-Appellant,
v.
**STATE of Delaware**, Plaintiff Below-Appellee.
**No. 156,2005.**

Submitted Oct. 7, 2005.
Decided Dec. 8, 2005.

**Background:** Following pleas to burglary, assault,
and possession of a deadly weapon during
commission of a felony, defendant filed second
motion for sentence modification. The Superior
Court, Kent County, denied motion. Defendant
appealed.

**Holding:** The Supreme Court held that any trial
court error was not prejudicial, given that motion
was untimely and improperly repetitive.

Affirmed.
West Headnotes
**[1] Criminal Law 110 ⟜1166(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1166 Preliminary Proceedings
                110k1166(1) k. In General. Most Cited
Cases
Even if trial court judge should have disqualified
himself from ruling on defendant's second motion
for sentence modification, such error was not
prejudicial, where defendant's motion was untimely
and improperly repetitive. Superior Court Criminal

Rule 35(b).

**[2] Criminal Law 110 ⟜1177**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1177 k. Sentence and Judgment and
Proceedings After Judgment. Most Cited Cases
Even if trial court judge should have excused
untimeliness of defendant's second motion for
sentence modification on the ground of-
extraordinary circumstances due to defendant's "
mental illness," such error was not prejudicial,
where defendant's motion was improperly
repetitive. Superior Court Criminal Rule 35(b).

Court Below-Superior Court of the State of
Delaware in and for Kent County, Cr. ID No.
0102010757. -

Before STEELE, Chief Justice, BERGER and
JACOBS, Justices.

*ORDER*

**\*1** This 8th day of December 2005, upon
consideration of the briefs on appeal and the record
below, it appears to the Court that:

**\*1** (1) The defendant-appellant, Donald R. Cochran,
filed an appeal from the Superior Court's April 4,
2005 order denying his second motion for sentence
modification pursuant to Superior Court Criminal
Rule 35(b). We find no merit to the appeal.
Accordingly, we AFFIRM.

**\*1** (2) In February 2003, Cochran entered Robinson
pleas [FN1] to Burglary in the First Degree, Assault
in the First Degree, and Possession of a Deadly
Weapon During the Commission of a Felony. On
the burglary conviction, he was sentenced to 20
years incarceration at Level V, to be suspended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit G

888 A.2d 231

888 A.2d 231, 2005 WL 3357633 (Del.Supr.)
(Cite as: 888 A.2d 231)

after 6 years for decreasing levels of probation. He was sentenced to 10 years incarceration at Level V and 2 years incarceration at Level V on the assault and weapons convictions, respectively. This Court dismissed Cochran's direct appeal as untimely.[FN2]

FN1. Super. Ct.Crim. R. 11(b).

FN2. *Cochran v. State*, Del.Supr., No. 356, 2003, Veasey, C.J. (Nov. 12, 2003).

*1 (3) In this appeal, Cochran claims that: a) the Superior Court judge who denied his motion should have disqualified himself; and b) the Superior Court judge should have excused the untimeliness of the motion on the ground of extraordinary circumstances due to Cochran's "mental illness."

*1 (4) A judge should disqualify himself in a proceeding in which the judge's impartiality "might reasonably be questioned." [FN3] This rule includes instances where "[t]he judge has a personal bias or prejudice concerning a party...." [FN4]

FN3. Del. Judges' Code of Judic. Cond., Canon 3C (1); *Stevenson v. State*, 782 A.2d 249, 255-58 (Del.2001).

FN4. Del. Judges' Code of Judic. Cond., Canon 3C(1)(a).

*1 (5) The Superior Court docket sheet in this case reflects that the Superior Court judge who denied Cochran's second motion for sentence modification presided over Cochran's initial case review. Two other Superior Court judges presided over Cochran's final case review and the entry of Cochran's Robinson pleas, respectively. The original judge then granted Cochran's request for a continuance of the sentencing date. After Cochran's sentencing was continued for a second time, the docket sheet notes that the sentencing should not be handled by the original judge because of a "possible conflict." Cochran's sentencing hearing was presided over by another Superior Court judge, who also denied Cochran's first motion for sentence modification. While Cochran contends that his

counsel told him that the original judge had a personal relationship with the victim's family, there is nothing in the record to support that contention.

*1 [1] (6) We find Cochran's first claim to be without merit. Even assuming that the Superior Court judge should have disqualified himself from ruling on Cochran's second motion for sentence modification,[FN5] the outcome would have been the same if another Superior Court judge had decided it, since there is no question that Cochran's motion was not only untimely, but repetitive. [FN6]

FN5. We note that Cochran's second motion for sentence modification was decided approximately two years after the judge's last involvement with Cochran's case.

FN6. Super. Ct.Crim. R. 35(b).

*1 [2] (7) Cochran's second claim also is unavailing. Even assuming that Cochran's "mental illness" would have excused his untimely motion, the Superior Court was, nevertheless, compelled to deny the motion as repetitive.[FN7]

FN7. Id.

*2 NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2005.
Cochran v. State
888 A.2d 231, 2005 WL 3357633 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2397177 (Appellate Brief) State's Answering Brief (Aug. 17, 2005) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ORIGINAL

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) C.A. No. 02-01-0397 |
| | ) through 0399 |
| | ) |
| vs. | ) |
| | ) |
| DONALD R. COCHRAN, | ) Appeal No. 356, 2003 |
| I.D. No. 0102010757 | ) |
| | ) Guilty Plea |
| Defendant. | ) February 3, 2003 |

\* \* \* \* \*

BEFORE:  HON. WILLIAM L. WITHAM, JR., JUDGE

\* \* \* \* \*

APPEARANCES:

        JOHN R. GAREY, ESQUIRE
        Deputy Attorney General
        on behalf of the State of Delaware.


        JOSEPH M. BERNSTEIN, ESQUIRE
        on behalf of the Defendant.



        TRANSCRIPT OF GUILTY PLEA

        Monday, February 3, 2003


        SHEILA A. DOUGHERTY
        Official Court Reporter

Exhibit H

2

1                                        Courtroom No. 7
                                         February 3, 2003

2    PRESENT:  As noted.

3                    *  *  *  *  *

4              MR. GAREY:  Your Honor, this is the matter

5    of State of Delaware versus Donald R. Cochran.  The

6    matter was scheduled for trial and final case review

7    today.  The State and defense have reached an

8    agreement which we believe will resolve the matter

9    without a trial.

10             It is my understanding Mr. Cochran will be

11   entering a plea of -- a Robinson plea to three

12   felony charges:  Count 1, burglary in the first

13   degree, 02-01-0399; Count 2, assault in the first

14   degree, 02-01-0398; and Count 3, possession of a

15   deadly weapon during the commission of a felony,

16   02-01-0397.  We are requesting the Court order a

17   presentence investigation.

18             The State concurs that the defendant is

19   not eligible to be sentenced under 4214 and we will

20   not be seeking same.  Likewise, at the time of

21   sentencing the State will not recommend a Level 5

22   sentence in excess of 18 years.

23             THE COURT:  All right.  This is going to

3

1  be a Robinson plea?

2           MR. GAREY: Yes, Your Honor.

3           MR. BERNSTEIN: That's correct.

4           THE COURT: What is the offer of proof?

5           MR. BERNSTEIN: Your Honor, can the State

6  make a proffer at this point?

7           THE COURT: Yes.

8           MR. GAREY: Had the matter proceeded to

9  trial, Your Honor, the State would have presented

10 the testimony of Mary Naylor. Ms. Naylor would have

11 testified that on the Monday evening, February 12,

12 2001, she was at her residence in Smyrna, Delaware,

13 Kent County; that approximately 8:00 p.m., actually

14 8:15 to 8:30 in the evening, after dark, she was

15 assaulted in her residence by the defendant, Donald

16 Cochran. That he broke in, unannounced, struck her

17 repeatedly about the head, and struck her also with

18 a beer bottle. State would have presented

19 photographs of the crime scene which would have

20 corroborated the testimony of Mrs. Naylor, and I

21 believe that the evidence would have been sufficient

22 to obtain a conviction.

23           THE COURT: All right. And was

4

1  | Mr. Cochran operating under some degree of --

2  |         MR. BERNSTEIN: Your Honor, the basis for

3  | the Robinson plea is this: Mr. Cochran, beyond

4  | recalling kicking in the door to the residence, has

5  | no recollection of the events that occurred after

6  | that. He was in a highly intoxicated state and also

7  | had been using drugs that day.

8  |         There was some -- the reasoning -- there

9  | was a reason, a reason he went into the house. The

10 | reason he went into the house was he had a long-term

11 | relationship with Mrs. Naylor's daughter. He was

12 | walking by the residence, saw the daughter's truck

13 | parked outside. He wanted to -- some things he

14 | wanted to discuss with her. The victim in this case

15 | was not -- was a totally unintended victim. She

16 | happened to be there.

17 |         Mr. Cochran had some issues with the

18 | victim's daughter, and those are things we will get

19 | into more detail about at sentencing, but for

20 | present purposes Mr. Cochran does not have a

21 | recollection beyond going into the house. To put it

22 | in his words, he snapped. We have no reason -- I

23 | have looked at the pictures. Mr. Cochran has had an

5

1   opportunity to look at them.  I don't believe there

2   really is any dispute that the victim here suffered

3   these injuries, the way she suffered them, and at

4   whose hand.  The victim knows Mr. Cochran, has known

5   him for a while.  It is not a question of a stranger

6   on stranger here.  So we believe there is a factual

7   basis for the plea.

8               THE COURT:  Okay.

9               MR. BERNSTEIN:  May we continue with the

10   colloquy if the Court will have Mr. Cochran sworn?

11               THE COURT:  Before I do that I want to

12   take a one minute recess, and I will be right back.

13               MR. GAREY:  I wanted to say it wasn't the

14   victim's daughter, it was a friend of the victim's

15   son.

16               THE COURT:  All right.  One minute recess.

17   Be right back.

18               (A brief recess was taken.)

19               MR. BERNSTEIN:  One correction, Your

20   Honor.  I misspoke when I said the dispute that

21   Mr. Cochran had was with Miss Naylor's daughter.  It

22   was with her son.  I wanted to clear that up.  Is

23   that right?

6

```
 1              THE COURT:  All right.  Thank you,
 2    Mr. Bernstein.
 3              I will ask Mr. Cochran to come forward to
 4    the podium and be sworn in.  Any objections to
 5    swearing on the Bible, Mr. Cochran?
 6              THE DEFENDANT:  No, sir.
 7              THE COURT:  All right.  Please swear him.
 8                        *  *  *  *  *
 9                   DONALD R. COCHRAN
10                        *  *  *  *  *
11              the defendant herein, being duly sworn,
12              was examined and testified as follows:
13    BY THE COURT:
14         Q.  All right, Mr. Cochran, I have some
15    questions which I need to have answered under oath.
16    That is the purpose of your being sworn in.
17         A.  Yes, sir.
18         Q.  You heard the statements of your attorney,
19    Mr. Bernstein, as well as the statements of the
20    prosecution.  I want to ask you:  Did you hear
21    everything that was said?
22         A.  Yes, sir.
23         Q.  Was everything said true and correct?
```

7

1        A.    No, sir.

2        Q.    What I am asking you, everything that the

3    attorneys, that is, Mr. Bernstein stated.

4        A.    He didn't get all the facts right, sir.  I

5    been two years.  This will be -- I am fighting for

6    my life here, and he didn't state some facts right

7    that should be stated right, and the reason why I

8    just didn't go in, and I don't remember what

9    happened to her, but he didn't state all the facts

10   right.

11       Q.    Are you saying that Mr. Bernstein did not

12   state all the facts that you thought he should have

13   stated?

14       A.    Yes, sir.  He was basically right, but he

15   doesn't have the facts right.  It wasn't

16   Mrs. Naylor's daughter, it was the woman I had been

17   seeing for ten years was sleeping around with

18   someone I called a friend, Tom Naylor, and I had

19   been drinking heavy and on drugs, and was going to

20   get more drugs, and they had lied to me.  Tom Naylor

21   had lied to me.  He was a friend and said he didn't

22   know who she was seeing, and I was getting some more

23   drugs and happened to see the truck at her -- his

8

1    house, and I snapped from there, and all I remember

2    was kicking the door in.  I don't remember the

3    events that happened inside.  I had a blackout.  And

4    that's the facts.

5         Q.   Okay.  Most of what you said seems to me

6    to not be totally contrary to what your attorney

7    stated.  Do you -- but do you want a moment to talk

8    with your attorney again?

9         A.   No, sir.  He just said that it was the

10   victim's daughter and it wasn't the victim's

11   daughter.

12             THE COURT:  That is the only inaccuracy?

13             MR. BERNSTEIN:  I just corrected that.

14             THE COURT:  I understand, Mr. Bernstein.

15   BY THE COURT:

16        Q.   That was the only inaccuracy that you

17   recall; correct?

18        A.   Yes, sir.

19        Q.   Did not Mr. Bernstein make a correction to

20   that?

21        A.   She said it was his son -- he said it was

22   her son, but it was the woman I had been seeing,

23   about ten years, and Mrs. Naylor's son.

11

1   Mr. Cochran, there are a number of yes and no blocks

2   on the right-hand side of the page.  These yes and

3   no blocks correspond to questions asked of you on

4   the left-hand side of the page.  Did you fill this

5   form out yourself, or did you have your attorney

6   fill it out for you by your authorization?

7         A.   Both of us filled it out, yes, sir.

8         Q.   You both filled it together?

9              MR. BERNSTEIN:  I wrote the answers and

10  read him the questions.

11  BY THE COURT:

12        Q.   Okay.  All right.  So you carefully read

13  the questions with your attorney, and if you didn't

14  understand them he explained it to you; is that

15  correct?

16        A.   Yes.

17        Q.   Okay.  And then thereafter you checked off

18  each block correctly?

19        A.   Yes.

20        Q.   Okay.  Did you also read and understand or

21  have your attorney explain to you the very important

22  rights that you have, which are Constitutional

23  rights that every defendant has who comes before the

12

1   Court, but who pleads guilty before trial.  You

2   waive these rights.  Do you understand that?

3       A.    Yes.

4       Q.    Okay.  These rights are outlined for you

5   in paragraphs one through seven.  Do you see that?

6       A.    Yes.

7       Q.    On the form?

8       A.    Yes, sir.

9       Q.    Okay.  Is it your intention to waive these

10  rights by pleading guilty right now?

11      A.    Yes, sir.

12      Q.    Okay.  And did you fill out the rest of

13  the form correctly?

14      A.    Yes, sir, we did.

15      Q.    Okay.  Now, this form, as I mentioned

16  before -- we will get it straight now -- indicates

17  you will be pleading no contest or under State

18  versus Robinson to one count of burglary in the

19  first degree, which carries a maximum statutory

20  penalty of up to 20 years, plus a fine of up to

21  $2,300.

22            THE COURT:  I think -- isn't that at the

23  discretion of the Court, Mr. Garey?  Isn't the fine

13

1    at the discretion of the Court?

2              MR. GAREY:  Yes, Your Honor.

3              MR. BERNSTEIN:  I believe so.

4    BY THE COURT:

5         Q.    Under burglary first.  Okay.  Then under

6    assault first we have a potential maximum penalty to

7    you of up to ten years imprisonment, and a fine at

8    the discretion of the Court, as well as a 20-year

9    potential incarceration for possession of a deadly

10   weapon during the commission of a felony.  So

11   altogether when you add up the total maximum

12   penalties you are facing, you are facing a potential

13   incarceration of up to 50 years in jail at Level 5,

14   plus fines determined at the discretion of the Court

15   according to law.  Do you understand that?

16        A.    Yes.

17        Q.    Okay.  Do you also understand because of

18   the nature of the offenses that you are going to be

19   entering this plea today, that you are also facing a

20   minimum mandatory penalty of up to four years

21   imprisonment.  Do you understand that?

22        A.    Yes, sir.

23        Q.    Okay.  Having said all that, and despite

14

1    that, is it your intention to plead guilty today?

2        A.    Yes.

3        Q.    Pursuant to the Robinson plea?

4        A.    Yes, sir.

5        Q.    A Robinson plea; is that correct?

6        A.    Yes.

7        Q.    Has anyone forced or threatened you to

8    enter this plea today?

9        A.    Yes.  No, sir.

10       Q.    Are you in fact for purposes -- let me

11   explain something to you.  I should have explained

12   this to you earlier.  When I asked you whether you

13   were going to plead guilty, I am saying that because

14   for purposes of the plea colloquy that we are going

15   to treat this plea just as if you are pleading

16   guilty, where all the elements of the crime are

17   being admitted, even though you are going to be

18   pleading no contest or a plea pursuant to State

19   versus Robinson.  Do you understand that?

20       A.    Yes.

21       Q.    Okay.  And when I say "guilty," that is

22   what I am referring to.

23       A.    Yes, sir.

15

1        Q.    Okay.   All right.   So no one has forced or
2    threatened you to enter this plea today; is that
3    correct?
4        A.    No, sir.
5        Q.    Are you in fact guilty of this plea?
6        A.    Yes.
7        Q.    I am sorry.   These crimes?
8        A.    Yes.
9        Q.    Turning next to the Truth in Sentencing
10   Guilty Plea Form -- I am sorry.   We just went over
11   that, but I did not ask you this.   Did you sign this
12   form in your own handwriting?
13       A.    Yes, sir.
14       Q.    Okay.   Now, referring to the plea
15   agreement, the plea agreement which has been
16   reviewed by counsel today, and discussed with you as
17   well, does this plea agreement reflect everything
18   that you have agreed to do?
19       A.    Yes.
20       Q.    Did you sign the form?
21       A.    Yes.
22       Q.    Thank you.   Have you had enough time to
23   talk to your attorney about this?

16

1      A.    Yes.

2      Q.    Thank you.  Do you believe your attorney

3   has fully advised you of your rights pertaining to

4   your plea?

5      A.    Yes.

6      Q.    And has he otherwise represented you in

7   this case to your satisfaction?

8      A.    Yes.

9      Q.    Thank you.

10         THE COURT:  All right.  Mr. Bernstein, is

11   there any reason why the Court should not accept

12   this plea?

13         MR. BERNSTEIN:  No.  There are a couple

14   other things I wanted to put on the record.

15         One of the things that I looked into when

16   I got into this case was potential speedy trial

17   claim on Mr. Cochran's part because of the fact that

18   he was brought back on a detainer from Florida.  I

19   looked into that and in fact had prepared a written

20   motion for -- on speedy trial grounds, had this case

21   gone to trial.  For the record, I am just going to

22   file that motion with the Court.

23         I explained to Mr. Cochran that because he

17

1   is entering a guilty plea he will not be able to

2   raise that in the future or now.  I also told

3   Mr. Cochran that, and Mr. Cochran has given this

4   matter quite a bit of thought.  These are very

5   serious charges obviously.  And I explained to

6   Mr. Cochran that once the Court accepts this plea he

7   can't come back tomorrow and say, "I want to take it

8   back."

9           As I said, I say that because I know

10  Mr. Cochran has given this matter a lot of thought

11  and he ultimately decided that this plea was in his

12  best interest in the long run, and that is why he is

13  standing here today, but I want to make sure that

14  those things, the fact that there was a potential

15  speedy trial motion, he is aware of that, and he

16  knows he is giving that up as part of this plea

17  agreement, and it is on the record, and he

18  understands that.

19           THE COURT:  All right.  Thank you,

20  Mr. Bernstein.

21           Mr. Bernstein is quite accurate,

22  Mr. Cochran.  If that motion is going to be filed,

23  and you may file the motion if you wish, but despite

 1   that if you are going to enter your plea today, and
 2   the Court is going to treat your plea as a guilty
 3   plea, which it can do so under the law, you are
 4   going to make that matter moot and that matter will
 5   not be successful at this point and because you are
 6   facing some pretty serious time because of these
 7   charges.  Do you have something else you want to
 8   say?

 9            THE DEFENDANT:  No.  I just wanted to
10   question, if I would have filed that speedy trial
11   motion, the violation of due process, would you have
12   had that heard before I went to court, or what?
13   They said I would have went to trial today
14   regardless if I had filed that, and there was some
15   issue with it because the State of Delaware knew
16   where I was, and they -- a judge in Florida told me
17   they was coming to get me, and I tried everything to
18   get up here.  But Mr. Garey wants to give me a lot
19   of time, and they knew I was there and had a plea
20   agreement to be extradited here, and you know, I
21   just -- he said if I didn't take the plea today,
22   that the motion for the speedy trial would be heard
23   after the trial, and I don't know, I just wanted

19

1  that on the record.

2        I don't know why he wanted to put that on

3  the record if it didn't mean anything, so but I took

4  the plea.  I just would like that question answered

5  in front.  I have had a judge tell me some things

6  that the prosecutors and attorneys have told me

7  different, so I don't know, you know, what is up.  I

8  am fighting for my life on this motion, on this

9  matter.

10       MR. BERNSTEIN:  Your Honor, the reason I

11  mentioned that is because there is an argument that

12  can be made that -- however, taking all things into

13  consideration, Mr. Cochran decided to enter this

14  plea.  I simply wanted to put on the record so

15  Mr. Cochran understands that there is no question at

16  all that by pleading guilty he won't be able to

17  pursue that, at least with respect to these charges.

18       THE COURT:  Has a speedy trial motion been

19  filed yet?

20       MR. BERNSTEIN:  It has not been filed.  It

21  is in my folder.

22       THE COURT:  All right.

23       MR. BERNSTEIN:  I am just going to file it

20

1 | as a matter of record.

2 |        THE COURT:  All right.  I understand.

3 |        I will say this to Mr. Cochran.  Had this

4 | motion been filed prior to this plea being taken,

5 | and of course it should be filed prior to this

6 | matter being set, being present for trial, prior to

7 | the trial date, excuse me, and the trial date was

8 | scheduled for today.

9 |        MR. BERNSTEIN:  I didn't have all the

10 | paperwork to back it up.

11 |        THE COURT:  I understand.  All I am

12 | saying, I am only reciting all this, because if it

13 | had been filed the Court would have had to decide it

14 | first before it accepted your plea.  However, you

15 | have chosen at this point to enter the plea the way

16 | you did.

17 |        THE DEFENDANT:  Yes, sir.  The reason for

18 | that is because I was told that the motion would

19 | have been filed and I would have went to trial

20 | today, and I wouldn't have had the motion heard, and

21 | I asked him about it being heard before they took me

22 | to trial, and he said I would go to trial today.

23 |        I believe that there was some -- now he is

21

1    saying that there was some argument that could be

2    brought about the violation of a due process, and I

3    was -- all I wanted was just to be fair with this

4    all, you know, and now they are bringing this up and

5    if he had told me that I might have -- I had nothing

6    to lose to have the motion heard for the speedy

7    trial because it violated my 6th Amendment right,

8    and the charges should be dropped under that.  And I

9    had no, you know, they said if I didn't take, if I

10   didn't -- if I put the motion in for the speedy

11   trial argument that I would have to go to trial

12   today.

13         And now you are saying that that is not

14   true, so I don't know.  I am not a lawyer.  I been

15   trying for two years to get this taken care of, sir,

16   and I just want the fairest and the right way, you

17   know, where I have a 6th Amendment right that was

18   violated, and now he wants to put that on the

19   record, that just shows that there might have been

20   something that could have been done about it.

21         MR. BERNSTEIN:  Your Honor, just to

22   clarify, I told Mr. Cochran that his motion would be

23   heard on the merits before the trial.  However, he

22

1    could not plead guilty and have the motion heard.

2         THE DEFENDANT:  I wasn't going to do that.

3    I was going to see what happened with the speedy

4    trial motion and then see.

5         MR. BERNSTEIN:  There wouldn't be any plea

6    agreement; is that correct, Mr. Garey?

7         MR. GAREY:  That's correct, Your Honor.

8         THE COURT:  That makes sense, obviously.

9    If you had a pending motion for dismissal because of

10   the violation of what you view to be a violation of

11   your Constitutional rights from the fact that you

12   did not have a speedy trial, that would have had to

13   have been decided first before the Court could

14   accept a plea; but it was not filed, so the Court

15   could accept the plea.

16        Now, if you want to think about that for a

17   moment I will give you a chance to talk with your

18   attorney, but I assume you weighed all the pros and

19   cons of doing this and not doing that -- hear me out

20   at this time -- and that is why you are proposing

21   the plea which the Court is prepared to accept at

22   this time.  But if it is your intention to move

23   forward with your motion for speedy trial, then I

23

1    will not accept this plea.  You have to make up your

2    mind what you want to do.

3                THE DEFENDANT:  Right.  Well, I think I am

4    entitled to an answer.  If the motion is heard for

5    the speedy trial first, before I go to trial, and

6    then you decide on that, it is either dismissed or

7    not dismissed, and then you proceed to a trial, or

8    is there a plea?

9                MR. GAREY:  Your Honor, I have something

10   to say.

11               MR. BERNSTEIN:  I gave this to Mr. Garey

12   Friday.

13               THE DEFENDANT:  I am saying apparently

14   there is some argument to it.

15               MR. GAREY:  The State is prepared to

16   extend the plea that we extended to Mr. Cochran.

17   However, if the plea is not accepted, and we hear

18   motions, there will not be a plea agreement.  We

19   will be going to trial.  There is no Constitutional

20   right to a plea by solution.  So that is --

21               THE COURT:  And you will be going to trial

22   on all charges; correct?

23               MR. GAREY:  That is correct.

24

1           THE COURT:  Okay.

2           THE DEFENDANT:  Well, just go ahead with

3  this.

4           THE COURT:  Do you want to take a moment

5  to talk to your attorney?  I can break.

6           THE DEFENDANT:  No.  It is all right.  I

7  will take -- I will take the Robinson.

8           THE COURT:  All right.  So you are

9  prepared to go forward?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  All right.  So you have

12  had enough time to talk with your attorney; is that

13  correct?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  And Mr. Bernstein has

16  stood up and made that presentation.

17          Other than that, Mr. Bernstein, is there

18  any other reason why this Court should not go

19  forward with the plea?

20          MR. BERNSTEIN:  No.  I just wanted to make

21  sure the Court was aware of those facts and that

22  Mr. Cochran was aware that he had a right to pursue

23  one or the other, but not both.

25

1          THE COURT:   Okay.   I think we pretty much
2    fleshed that out and made that pretty clear, is my
3    understanding.

4          Mr. Cochran does understand that; correct?
5          THE DEFENDANT:   Yes, sir.
6          THE COURT:   Okay.   Thank you, Mr. Cochran.
7    Thank you, Mr. Bernstein.

8          Just a minute.   We are not quite done yet.
9          Mr. Garey, is there any other reason why
10   you see -- a reason why this Court should not accept
11   this plea?

12         MR. GAREY:   No, Your Honor.
13         THE COURT:   Okay.   All right.   The Court,
14   having heard the presentations by the attorneys and
15   having gone through the plea colloquy with the
16   defendant, and having taken some time to explain
17   both the nature of what the Robinson plea is all
18   about and having explained that to him, the Court is
19   satisfied that there is sufficient proof to
20   establish that the prosecution could present a prima
21   facie case before the Court, and there is a basis in
22   fact for the plea, and there is also a basis for
23   Mr. Cochran to enter the Robinson plea as well.

26

1       Therefore, the Court will accept the plea

2  as submitted, and in accordance with the

3  recommendation submitted to the Court by counsel I

4  will order a presentence investigation be conducted

5  by our ISO office at this time.

6       What date are we going to have for the

7  sentencing?

8       THE CLERK:  April 17.

9       THE COURT:  April 17.  Now, let me also

10  just take a moment to explain, Mr. Cochran, what the

11  sentencing will be all about.

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  At that time your attorney,

14  Mr. Bernstein, may appear on your behalf, and so the

15  State through Mr. Garey.  I will receive from a

16  presentence officer, who is an officer of this

17  Court, he will conduct an investigation about who

18  you are, your background.  He will explain what he

19  finds about the nature of the offenses for which you

20  are pleading, entering your plea about, and he will

21  also solicit information from any victims about

22  restitution potentially, and also you will have an

23  opportunity, if you wish, to submit any letters of

27

1   recommendation or any letters of mitigation you want

2   to submit through your attorney, and I will have

3   that in a package.  That report will be submitted to

4   me, and it will make a recommendation to me.  Your

5   attorney will be allowed to see it.  He will not be

6   allowed to see what is specifically being

7   recommended for me to sentence you to.

8           Now, I may choose not to accept that

9   report.  I will also hear from both your attorney

10  and the State at a sentencing hearing, and you will

11  be allowed to also talk to me as well, and have

12  anybody present as well, and at that time I will

13  then make a determination of what your sentence

14  ought to be.  Okay?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  What is the date?

17          THE CLERK:  April 17.

18          THE COURT:  April 17.  Okay.

19          MR. BERNSTEIN:  Do we have a time frame?

20          THE COURT:  Usually nine o'clock.

21          MR. BERNSTEIN:  All right.

22          THE COURT:  I am sure, Mr. Bernstein, if

23  you are going to be a little delayed, just let us

28

1    know in advance.

2             MR. BERNSTEIN:  No.  I have my calendar

3    here and that is a good date.

4             THE COURT:  Okay.  All right.  Is that it?

5             THE BAILIFF:  That is it, Your Honor.

6             THE COURT:  That is all.  Thank you very

7    much.

8                      * * * * *

9             (Whereupon the proceedings were

10   concluded.)

11                     * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

29

```
 1                    CERTIFICATE OF REPORTER

 2

 3              I, Sheila Dougherty, RMR and Official

 4    Court Reporter of the Superior Court, State of

 5    Delaware, do hereby certify that the foregoing is an

 6    accurate transcript of the testimony adduced and

 7    proceedings had, as reported by me, in the Superior

 8    Court of the State of Delaware, in and for Kent

 9    County, in the case therein stated, as the same

10    remains of record in the office of the Prothonotary

11    of Kent County, at Dover, Delaware.

12              WITNESS my hand this  29th  day of

13    September         , A.D., 2003.

14

15

16

17

18

19                              Sheila A. Dougherty
20                              Official Court Reporter

21

22

23
```

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE          :
         :
v.                    :
         : I.D. No. 0102010757
         :
DONALD R. COCHRAN,          :
Defendant.          :
         :

### Affidavit

### ~~RESPONSE~~ OF JOSEPH M. BERNSTEIN TO DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF

In accordance with the Court's Order in the above matter, the undersigned (hereinafter "Counsel") hereby responds to the allegations set forth in the Defendant's Motion for Post-Conviction Relief as follows:

1. **Failure to file a timely pre-trial motion:** The defendant alleges that Counsel was ineffective because Counsel failed to file a motion to dismiss the charges based on violations of the defendant's constitutional right to a speedy trial and violations of the Interstate Agreement on Detainers (11 *Del.C.* §2542). Such a Motion was, in fact filed with the Court. (Exhibit "A"). On the day of trial, the State tendered a plea offer to the defendant (which he ultimately accepted) which required that he withdraw the motion to dismiss. In other words, if the defendant wanted to pursue the motion to dismiss, the plea offer would be withdrawn and the case would proceed to trial if the motion to dismiss, was denied. Counsel advised the defendant of the above facts and the defendant agreed to enter a guilty plea knowing the court would not make any ruling on the motion to dismiss. (Exhibit "B," Tr., pp. 16-23).[1]

---

[1] Exhibit "B" is an excerpt from the defendant's plea colloquy.

$E \times h i b i t \quad I$



- 308 -

2. **Failure to investigate competency issues:** Counsel did not investigate the possibility of raising a "mental illness" defense to the charges. Counsel also did not consider the possibility the defendant was not "competent" to assist with his defense or to enter a guilty plea. A "Robinson Plea" was accepted by the State and the Court because the defendant claimed to have no specific memory of the incident due to drug and alcohol intoxication. (Exhibit "B," Tr., pp.4-6).


*Joseph M B*

JOSEPH M. BERNSTEIN

SWORN TO AND SUBSCRIBED before me this 4th day of April, 2006.

*Sharon E. Berwager*
Notary Public

**Notary Public, State of Delaware**
**Sharon E. Berwager**
My commission expires on 6·6·07

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE,                      :
                                        :
                                        :
v.                                      : Case No.  0102010757
                                        :
DONALD R. COCHRAN,                      :
         Defendant.                     :

### NOTICE OF MOTION

TO: JOHN R. GAREY, ESQUIRE
    Department of Justice
    102 W. Water Street
    Dover, DE 19904

         PLEASE TAKE NOTICE that the attached Motion to Dismiss will be presented to the Court

at the earliest convenience of the Court and counsel.


                                   *Joseph M Bernstein*

                                   JOSEPH M. BERNSTEIN (#780)
                                   800 N. King Street - Suite 302
                                   Wilmington, DE 19801
                                   302-656-9850
                                   Attorney for Defendant


Dated: January 31, 2003

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | |
| | : | |
| v. | : | Case No. 0102010757 |
| | : | |
| DONALD R. COCHRAN, | : | |
| Defendant. | : | |

## MOTION TO DISMISS

The above named defendant hereby moves the Court, pursuant to Superior Court Criminal Rule 48(b), 11 *Del.C.* §2542, the 6th Amendment, U.S. Constitution, and Del. Const, Art. I, Sect 7, to dismiss the charges in the above captioned matters on the ground that the defendant's right to a speedy trial has been abridged. In support of this Motion, it is represented as follows:

1. On August 31, 2001, the defendant was arrested in Pinellas County, Florida on a charge of robbery. Following his arrest, the State of Delaware filed fugitive warrants against the defendant under the Uniform Criminal Extradition Law. The defendant waived extradition on August 28, 2001. (Ex. No. 1).

2. On September 28, 2001, the defendant was sentenced to serve 18.5 months in jail on the Florida robbery charge. (Ex. No. 2).

3. On October 4, 2001, the defendant sent a letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 3).

4. On January 1, 2002, the defendant sent another letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 4).

5. On January 3, 2002, the defendant was informed that the State of Delaware had filed a detainer against him. (Ex. 5).

6. On May 12, 2002, the defendant sent a third letter to the Attorney General's Office requesting that he be returned to Delaware and asserting his right to a speedy trial. (Ex. 6).

7. On July 23, 2002, the defendant requested the Florida Corrections officials for assistance in disposing of the Delaware Detainer. (Ex. 7).

8. On August 28, 2002, the defendant signed the forms under the Interstate Agreement on Detainers (11 *Del.C.* §2542) ("IAD")for his return to Delaware. (Ex. 8).

9. The defendant was returned to Delaware on October 24, 2002.

### Argument

The defendants three separate letter requests to the Delaware Department of Justice should be deemed to have triggered the State's obligation under §2542 of the IAD to bring the defendant to trial within 180 of the request. *See, Pittman v. State*, 301 A.2d 509, 513 (1973). The defendant's repeated assertion of his speedy trial rights, combined with the delay of over one year in returning him to Delaware, amount to a violation of defendant's State and federal constitutional right to a speedy trial.

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
Attorney for Defendant

Dated: January 31, 2003

## CERTIFICATE OF SERVICE

The Law Office of Joseph M. Bernstein hereby certifies that on ___1-31-03___, two

copies of the attached __Motion__ were served by __By Fax__ on the

following:

John R. Garey, Esquire
Department of Justice
102 W. Water Street
Dover, DE 19904

Joseph M. Bernstein
_____
JOSEPH M. BERNSTEIN

4

1   Mr. Cochran operating under some degree of --

2           MR. BERNSTEIN:  Your Honor, the basis for

3   the Robinson plea is this:  Mr. Cochran, beyond

4   recalling kicking in the door to the residence, has

5   no recollection of the events that occurred after

6   that.  He was in a highly intoxicated state and also

7   had been using drugs that day.

8           There was some -- the reasoning -- there

9   was a reason, a reason he went into the house.  The

10  reason he went into the house was he had a long-term

11  relationship with Mrs. Naylor's daughter.  He was

12  walking by the residence, saw the daughter's truck

13  parked outside.  He wanted to -- some things he

14  wanted to discuss with her.  The victim in this case

15  was not -- was a totally unintended victim.  She

16  happened to be there.

17          Mr. Cochran had some issues with the

18  victim's daughter, and those are things we will get

19  into more detail about at sentencing, but for

20  present purposes Mr. Cochran does not have a

21  recollection beyond going into the house.  To put it

22  in his words, he snapped.  We have no reason -- I

23  have looked at the pictures.  Mr. Cochran has had an

5

1   opportunity to look at them. I don't believe there

2   really is any dispute that the victim here suffered

3   these injuries, the way she suffered them, and at

4   whose hand. The victim knows Mr. Cochran, has known

5   him for a while. It is not a question of a stranger

6   on stranger here. So we believe there is a factual

7   basis for the plea.

8           THE COURT: Okay.

9           MR. BERNSTEIN: May we continue with the

10  colloquy if the Court will have Mr. Cochran sworn?

11          THE COURT: Before I do that I want to

12  take a one minute recess, and I will be right back.

13          MR. GAREY: I wanted to say it wasn't the

14  victim's daughter, it was a friend of the victim's

15  son.

16          THE COURT: All right, One minute recess.

17  Be right back.

18          (A brief recess was taken.)

19          MR. BERNSTEIN: One correction, Your

20  Honor. I misspoke when I said the dispute that

21  Mr. Cochran had was with Miss Naylor's daughter. It

22  was with her son. I wanted to clear that up. Is

23  that right?

03/05/2007 THU 13:50 FAX                                               @024/051

6

```
 1              THE COURT:  All right.  Thank you,

 2   Mr. Bernstein.

 3              I will ask Mr. Cochran to come forward to

 4   the podium and be sworn in.  Any objections to

 5   swearing on the Bible, Mr. Cochran?

 6              THE DEFENDANT:  No, sir.

 7              THE COURT:  All right.  Please swear him.

 8                      *  *  *  *  *

 9                   DONALD R. COCHRAN

10                      *  *  *  *  *

11              the defendant herein, being duly sworn,

12              was examined and testified as follows:

13   BY THE COURT:

14      Q.   All right, Mr. Cochran, I have some

15   questions which I need to have answered under oath.

16   That is the purpose of your being sworn in.

17      A.   Yes, sir.

18      Q.   You heard the statements of your attorney,

19   Mr. Bernstein, as well as the statements of the

20   prosecution.  I want to ask you:  Did you hear

21   everything that was said?

22      A.   Yes, sir.

23      Q.   Was everything said true and correct?
```

7

1        A.    No, sir.

2        Q.    What I am asking you, everything that the

3    attorneys, that is, Mr. Bernstein stated.

4        A.    He didn't get all the facts right, sir.    I

5    been two years.  This will be -- I am fighting for

6    my life here, and he didn't state some facts right

7    that should be stated right, and the reason why I

8    just didn't go in, and I don't remember what

9    happened to her, but he didn't state all the facts

10   right.

11       Q.    Are you saying that Mr. Bernstein did not

12   state all the facts that you thought he should have

13   stated?

14       A.    Yes, sir.  He was basically right, but he

15   doesn't have the facts right.  It wasn't

16   Mrs. Naylor's daughter, it was the woman I had been

17   seeing for ten years was sleeping around with

18   someone I called a friend, Tom Naylor, and I had

19   been drinking heavy and on drugs, and was going to

20   get more drugs, and they had lied to me.  Tom Naylor

21   had lied to me.  He was a friend and said he didn't

22   know who she was seeing, and I was getting some more

23   drugs and happened to see the truck at her -- his

16

1        A.    Yes.

2        Q.    Thank you.  Do you believe your attorney

3    has fully advised you of your rights pertaining to

4    your plea?

5        A.    Yes.

6        Q.    And has he otherwise represented you in

7    this case to your satisfaction?

8        A.    Yes.

9        Q.    Thank you.

10            THE COURT:  All right.  Mr. Bernstein, is

11    there any reason why the Court should not accept

12    this plea?

13            MR. BERNSTEIN:  No.  There are a couple

14    other things I wanted to put on the record.

15            One of the things that I looked into when

16    I got into this case was potential speedy trial

17    claim on Mr. Cochran's part because of the fact that

18    he was brought back on a detainer from Florida.  I

19    looked into that and in fact had prepared a written

20    motion for -- on speedy trial grounds, had this case

21    gone to trial.  For the record, I am just going to

22    file that motion with the Court.

23            I explained to Mr. Cochran that because he

17

1   is entering a guilty plea he will not be able to

2   raise that in the future or now.  I also told

3   Mr. Cochran that, and Mr. Cochran has given this

4   matter quite a bit of thought.  These are very

5   serious charges obviously.  And I explained to

6   Mr. Cochran that once the Court accepts this plea he

7   can't come back tomorrow and say, "I want to take it

8   back."

9           As I said, I say that because I know

10  Mr. Cochran has given this matter a lot of thought

11  and he ultimately decided that this plea was in his

12  best interest in the long run, and that is why he is

13  standing here today, but I want to make sure that

14  those things, the fact that there was a potential

15  speedy trial motion, he is aware of that, and he

16  knows he is giving that up as part of this plea

17  agreement, and it is on the record, and he

18  understands that.

19          THE COURT:  All right.  Thank you,

20  Mr. Bernstein.

21          Mr. Bernstein is quite accurate,

22  Mr. Cochran.  If that motion is going to be filed,

23  and you may file the motion if you wish, but despite

18

1    that if you are going to enter your plea today, and

2    the Court is going to treat your plea as a guilty

3    plea, which it can do so under the law, you are

4    going to make that matter moot and that matter will

5    not be successful at this point and because you are

6    facing some pretty serious time because of these

7    charges.  Do you have something else you want to

8    say?

9              THE DEFENDANT:  No.  I just wanted to

10   question, if I would have filed that speedy trial

11   motion, the violation of due process, would you have

12   had that heard before I went to court, or what?

13   They said I would have went to trial today

14   regardless if I had filed that, and there was some

15   issue with it because the State of Delaware knew

16   where I was, and they -- a judge in Florida told me

17   they was coming to get me, and I tried everything to

18   get up here.  But Mr. Garey wants to give me a lot

19   of time, and they knew I was there and had a plea

20   agreement to be extradited here, and you know, I

21   just -- he said if I didn't take the plea today,

22   that the motion for the speedy trial would be heard

23   after the trial, and I don't know, I just wanted

19

1 | that on the record.

2 | I don't know why he wanted to put that on

3 | the record if it didn't mean anything, so but I took

4 | the plea. I just would like that question answered

5 | in front. I have had a judge tell me some things

6 | that the prosecutors and attorneys have told me

7 | different, so I don't know, you know, what is up. I

8 | am fighting for my life on this motion, on this

9 | matter.

10 | MR. BERNSTEIN: Your Honor, the reason I

11 | mentioned that is because there is an argument that

12 | can be made that -- however, taking all things into

13 | consideration, Mr. Cochran decided to enter this

14 | plea. I simply wanted to put on the record so

15 | Mr. Cochran understands that there is no question at

16 | all that by pleading guilty he won't be able to

17 | pursue that, at least with respect to these charges.

18 | THE COURT: Has a speedy trial motion been

19 | filed yet?

20 | MR. BERNSTEIN: It has not been filed. It

21 | is in my folder.

22 | THE COURT: All right.

23 | MR. BERNSTEIN: I am just going to file it

20

1    as a matter of record.

2         THE COURT: All right. I understand.

3         I will say this to Mr. Cochran. Had this

4    motion been filed prior to this plea being taken,

5    and of course it should be filed prior to this

6    matter being set, being present for trial, prior to

7    the trial date, excuse me, and the trial date was

8    scheduled for today.

9         MR. BERNSTEIN: I didn't have all the

10   paperwork to back it up.

11        THE COURT: I understand. All I am

12   saying, I am only reciting all this, because if it

13   had been filed the Court would have had to decide it

14   first before it accepted your plea. However, you

15   have chosen at this point to enter the plea the way

16   you did.

17        THE DEFENDANT: Yes, sir. The reason for

18   that is because I was told that the motion would

19   have been filed and I would have went to trial

20   today, and I wouldn't have had the motion heard, and

21   I asked him about it being heard before they took me

22   to trial, and he said I would go to trial today.

23        I believe that there was some -- now he is

03/08/2007 THU 15:51  FAX                                    ⓦ031/051

21

1   saying that there was some argument that could be

2   brought about the violation of a due process, and I

3   was -- all I wanted was just to be fair with this

4   all, you know, and now they are bringing this up and

5   if he had told me that I might have .-- I had nothing

6   to lose to have the motion heard for the speedy

7   trial because it violated my 6th Amendment right,

8   and the charges should be dropped under that.  And I

9   had no, you know, they said if I didn't take, if I

10  didn't -- if I put the motion in for the speedy

11  trial argument that I would have to go to trial

12  today.

13          And now you are saying that that is not

14  true, so I don't know.  I am not a lawyer.  I been

15  trying for two years to get this taken care of, sir,

16  and I just want the fairest and the right way, you

17  know, where I have a 6th Amendment right that was

18  violated, and now he wants to put that on the

19  record, that just shows that there might have been

20  something that could have been done about it.

21          MR. BERNSTEIN:  Your Honor, just to

22  clarify, I told Mr. Cochran that his motion would be

23  heard on the merits before the trial.  However, he

22

1    could not plead guilty and have the motion heard.

2              THE DEFENDANT:   I wasn't going to do that.

3    I was going to see what happened with the speedy

4    trial motion and then see.

5              MR. BERNSTEIN:   There wouldn't be any plea

6    agreement; is that correct, Mr. Garey?

7              MR. GAREY:   That's correct, Your Honor.

8              THE COURT:   That makes sense, obviously.

9    If you had a pending motion for dismissal because of

10   the violation of what you view to be a violation of

11   your Constitutional rights from the fact that you

12   did not have a speedy trial, that would have had to

13   have been decided first before the Court could

14   accept a plea; but it was not filed, so the Court

15   could accept the plea.

16             Now, if you want to think about that for a

17   moment I will give you a chance to talk with your

18   attorney, but I assume you weighed all the pros and

19   cons of doing this and not doing that -- hear me out

20   at this time -- and that is why you are proposing

21   the plea which the Court is prepared to accept at

22   this time.   But if it is your intention to move

23   forward with your motion for speedy trial, then I

23

1   will not accept this plea.  You have to make up your

2   mind what you want to do.

3           THE DEFENDANT:  Right.  Well, I think I am

4   entitled to an answer.  If the motion is heard for

5   the speedy trial first, before I go to trial, and

6   then you decide on that, it is either dismissed or

7   not dismissed, and then you proceed to a trial, or

8   is there a plea?

9           MR. GAREY:  Your Honor, I have something

10  to say.

11          MR. BERNSTEIN:  I gave this to Mr. Garey

12  Friday.

13          THE DEFENDANT:  I am saying apparently

14  there is some argument to it.

15          MR. GAREY:  The State is prepared to

16  extend the plea that we extended to Mr. Cochran.

17  However, if the plea is not accepted, and we hear

18  motions, there will not be a plea agreement.  We

19  will be going to trial.  There is no Constitutional

20  right to a plea by solution.  So that is --

21          THE COURT:  And you will be going to trial

22  on all charges; correct?

23          MR. GAREY:  That is correct.

SHEILA A. DOUGHERTY
Official Court Reporter

## CERTIFICATE OF SERVICE

The Law Office of Joseph M. Bernstein hereby certifies that on _4-4-06_ , a copy of

the attached _Response / Affidavit_ was served by

(✗) First Class Mail

( ) Hand Delivery

on the following:

Marie O'Connor Graham, Esquire
Department of Justice
102 West Water Street
Dover, DE 19901

Donald R. Cochran # 201992
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

_Joseph M B_

Joseph M. Bernstein

# ORIGINAL

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) C.A. No. 02-01-0397 |
| | ) through 0399 |
| | ) |
| vs. | ) |
| | ) |
| DONALD R. COCHRAN, | ) Appeal No. 356, 2003 |
| I.D. No. 0102010757 | ) |
| | ) Sentencing |
| Defendant. | ) June 16, 2003 |

\* \* \* \* \*

BEFORE:  HON. HENRY DUPONT RIDGELY, PRESIDENT JUDGE

\* \* \* \* \*

APPEARANCES:

> DENNIS KELLEHER, ESQUIRE
> Deputy Attorney General
> on behalf of the State of Delaware.


> JOSEPH M. BERNSTEIN, ESQUIRE
> on behalf of the Defendant.



TRANSCRIPT OF SENTENCING

Monday, June 16, 2003



SHEILA A. DOUGHERTY
Official Court Reporter

Exhibit 5

-217-

2

1                                            Courtroom No. 1
                                             June 16, 2003
2    PRESENT:  As noted.

3                    *   *   *   *   *

4            MR. KELLEHER:  Your Honor, this is Monday,

5    June 16.  This is the time the Court set aside for

6    sentencing in the matter of State versus Donald

7    Cochran.

8            MR. BERNSTEIN:  Good morning, Your Honor.

9            THE COURT:  Good morning, Mr. Bernstein.

10           MR. BERNSTEIN:  Thank you.  Your Honor,

11   Mr. Cochran is here for sentencing today on three

12   charges in accordance with his guilty plea.

13   Mr. Cochran pled guilty to burglary first degree,

14   assault first degree, and possession of a deadly

15   weapon during the commission of a felony.

16           I have had a chance to review the

17   presentence report.  I have also reviewed the

18   presentence report with Mr. Cochran, and quite

19   frankly what happened that day is really not in

20   dispute.

21           I think it is fair to say that the victim

22   in this case, Mrs. Naylor, was not the object of

23   Mr. Cochran's desire to go into that house.  What

037/051

3

1  preceded that was he had a long-standing

2  relationship with a woman.  It was a little bit on

3  the rocks.  The victim's son, Tom, was one of

4  Donald's best friends.  He had a conversation with

5  Tom several days before this where he asked him

6  about who is Pamela seeing, what is going on?  I

7  don't know what is going on.  And Tom basically hid

8  from him the fact that he was seeing Pamela.

9          And it wasn't just his girlfriend, it was

10  someone he had a child with, a long-standing

11  relationship of approximately ten years.  He is

12  walking down the street and he sees Pamela's truck

13  in the Naylors' driveway.  He had been drinking

14  earlier that day, he had been using some drugs, and

15  he lost it.  I suppose when I talk to him about this

16  he says, It just clicked, and I got -- I was angry.

17  And I broke into the house.  I went through the

18  front door.  And that's the last thing that Donald

19  remembers.

20          He has no reason to dispute what

21  Mrs. Naylor told the presentence officer about her

22  being at the top of the stairs and coming up the

23  stairs, and grabbing her by the shirt, kind of

4

1   twisting her around.  She also said that she does

2   not believe, although she fell down the stairs, that

3   she does not believe he threw her down the stairs or

4   intended for her to fall down the stairs.  He

5   wasn't -- she wasn't the object of his anger.

6             THE COURT:  At that point.

7             MR. BERNSTEIN:  At that -- now, what

8   happened after that, he has no recollection.  He

9   doesn't know.  She says he came back downstairs and

10  struck her with his fist.  We have no -- I have no

11  reason to disbelieve that.  He has no way to dispute

12  that.  He just simply doesn't know.  That is what

13  happened.

14            He had known -- he has known Mrs. Naylor,

15  his family has known their family for years.  They

16  were friends.  There was no reason for Donald to

17  strike out at Mrs. Naylor.

18            If you look at the presentence report and

19  see the interview that Donald gave to Mr. Shepherd,

20  he is truly remorseful.  There is no question about

21  that.  If he could take it back, he would.  He

22  can't.  And he is here today because he did

23  something rash, impulsive, and there were terrible

5

1   results -- results that he never intended.  And like

2   I said, I can't speak to what happened after he came

3   down the stairs.  I have no reason to dispute what

4   Mrs. Naylor said.  There is really no explanation

5   for why that happened, just someone out of control.

6        If you look at his record, there is just a

7   trail of minor criminal offenses all related in some

8   way to substance abuse.  Donald has, still has,

9   probably always will have a problem dealing with

10  alcohol or drugs.  It is something that distorts his

11  judgment.  He doesn't think straight when he is

12  using alcohol or drugs.  He gets in trouble.  And up

13  to this point, he's never gotten into real serious

14  trouble.

15       This was something, as I said before, he

16  did not intend to happen.  He stands here basically

17  asking the Court to be lenient, as lenient as

18  possible.  He is 42 years old.  This was something

19  that happened because of the relationship.  It

20  happened because he saw something that he didn't

21  expect to see, that in his mind his friend had lied

22  to him, his girlfriend had lied to him.  He had been

23  drinking that day.  He just -- what he did is not

6

1  excusable, what he did is not even explainable.  He

2  is -- his remorse is genuine.

3          I talked to Donald about the sentencing

4  guidelines.  I don't know what the presentence

5  officer asked for.  The State is recommending 18

6  years.  I am going to suggest that is somewhat on

7  the high side.  I think somewhere -- the guidelines

8  in this case are from eight and a half to twelve and

9  a half years.  I would suggest that something

10  midpoint of those guidelines would be appropriate.

11          Donald is going to have a lot of time to

12  think about what he did that day, and how he is

13  going to deal with the rest of his life.  He has got

14  to get his substance abuse problems under control.

15  He needs help with that.  He knows that.  He is

16  asking the Court to give him some help.  I trust the

17  Court will.  But that is something he is going to

18  have to deal with.  He is going to have to deal with

19  it in prison, he is going to have to deal with it

20  when he gets out of prison.  It is something that he

21  knows is a disease, a sickness that he has to deal

22  with if he wants to not only just be a productive

23  citizen, but just to stay alive.  It is going to

7

1    kill him eventually, this problem, if he doesn't get

2    it under control.

3            So I am asking the Court to impose a

4    sentence, as I said, somewhere between the low end

5    of the guidelines and the high end of the

6    guidelines.

7            THE COURT:  Mr. Cochran, is there anything

8    you want to say?

9            THE DEFENDANT:  I just would like Miss

10   Naylor to know that I am truly very sorry for what

11   happened, any pain that I caused her, and that I

12   thank God every night that she is okay, and I pray

13   for her every night since this happened.  It has

14   been two and a half years.

15           I would like to apologize to my mother for

16   letting her down, and just apologize to the Court

17   and you.  It is something I didn't set out to do

18   that day, and I wish I could take it back, and it

19   has pretty much ruined my life and it has bothered

20   me ever since it happened.

21           That is about all I have to say, Your

22   Honor.

23           MR. BERNSTEIN:  One other thing I forgot

8

1    to mention, Your Honor.  There is some credit time

2    in this case, I think from December of 2002.  There

3    is some question about that because of time that

4    Mr. Cochran spent in Florida awaiting extradition

5    back to Delaware.  It is an AID case, and I am not

6    asking the Court to deal with that now, but if I

7    could, after sentencing if the Court -- at least I

8    think in the chronology of the events that the Court

9    decide how much credit time Mr. Cochran is entitled

10   to.

11            THE DEFENDANT:  They were supposed to come

12   to get me --

13            THE COURT:  Well, he is serving a Florida

14   sentence I think.

15            MR. BERNSTEIN:  You know, that's -- I have

16   the documents from Florida.  I would simply like to

17   put that all in a very brief package for Your Honor,

18   with calculation, I think the credit time should be,

19   and give it to the Court to decide that.  It is

20   not -- it is a little too complicated to get into at

21   sentencing today.  I would just like leave to be

22   able to do that.

23            THE COURT:  All right.

9

1          Mr. Kelleher, does the State have any

2   comments?

3          MR. KELLEHER:  Your Honor, David Naylor,

4   the son of the victim, has some comments he would

5   like to make.  I ask that Your Honor hear those now.

6   Once he is done, I will make my comments.

7          THE COURT:  All right.  Good morning.

8          MR. NAYLOR:  Thank you, Your Honor.  I am

9   the second oldest son of Mary Naylor.

10         THE COURT:  Would you state your name for

11  the record?

12         MR. NAYLOR:  David Naylor.  I don't know

13  if you have met Mary Naylor.  This is her in the

14  white.  She weighs about one hundred pounds.  And

15  now listening up here -- I am not a public speaker

16  and I don't have notes, but listening to what was

17  just said, I find a few things that sound

18  disturbing.

19         For one, the fact that the objective of

20  the entry into the house was to see my younger

21  brother, and yet the result was attacking my mother,

22  and to me that doesn't sound like anything to

23  defend.  That sounds worse than if the objective was

SHEILA A. DOUGHERTY
Official Court Reporter

10

1    to come in and attack my mom.

2              You know, she has basically raised her

3    seven kids and she has always been there for us, and

4    this is not completely done.  She still has both

5    mental and physical problems that related from the

6    attack.  And there is another issue that was never

7    brought up to my knowledge.  Ricky is a black belt.

8    That is a weapon in itself.  And this has caused our

9    family like -- this is now two years and we are

10   still suffering, the family, not just myself, but

11   all of the siblings and all their siblings are all

12   part of this.  And if it had been my brother that

13   was attacked, it would have been a thing between two

14   guys.  I would have not even been mad.  Maybe he

15   deserved it.  I don't know.  But the fact that my

16   innocent mother was beaten up and nearly killed,

17   this is not a case where he beat her up and then

18   just walked away.  This is a case where he did not

19   drag her down the stairs.  I have already talked to

20   my mom about that.  He did pull her about the neck

21   which caused her to fall down, and then he dragged

22   her into the front room and proceeded to beat her,

23   and then when she came to she noticed he was in the

11

1    kitchen, and he came running to her, which meant

2    there would have been further harm if she hadn't

3    managed to escape.

4         Now, none of this in my opinion is

5    excusable by the fact that he had an objective to

6    beat my brother up, not my mother. So the family is

7    still suffering.

8         THE COURT: All right. Thank you.

9         Mr. Kelleher.

10        MR. KELLEHER: Your Honor, in reviewing

11   this presentence report, I was somewhat -- found it

12   striking the number of aggravating factors that were

13   cited by the presentence officer. Obviously these

14   three violent felonies the defendant pled to are

15   some of the more serious that the Court encounters

16   in the criminal justice system.

17        As Mr. Naylor just said, his mother is a

18   very small woman. She is elderly. She is home

19   alone when the defendant breaks in and assaults her.

20   This is any woman's worst nightmare. As Your Honor

21   I think alluded to during the defense presentation,

22   whether or not the fall down the stairs was a result

23   of an intentional act on the defendant's part or

SHEILA A. DOUGHERTY
Official Court Reporter

12

1   just sort of throwing her out of the way and she

2   happened to fall down the stairs, that wasn't the

3   end of the assault.  He later came down after

4   satisfying himself that the person he was looking

5   for wasn't there and proceeded to beat this woman in

6   the head with a beer bottle, which again is

7   obviously inexcusable.

8           The presentence report cites as an

9   aggravating factor that this crime was excessively

10  cruel.  Reviewing the TIS Guidelines, that has to be

11  something that the Court -- that shocks the

12  conscience of the Court, and it is the position of

13  the State that an assault of this manner on a victim

14  who is entirely innocent should shock the conscience

15  of the Court.

16          As a result, the State had offered the

17  plea and agreed to cap a recommendation to 18 years.

18  The State would request that the Court impose all of

19  those 18 years.  Considering the defendant's prior

20  history, the facts surrounding this case, we do feel

21  that that is the appropriate sentence.

22          THE COURT:  Any other comment,

23  Mr. Bernstein?

1      MR. BERNSTEIN:  No, Your Honor.

2      THE COURT:  Mr. Cochran, I am not

3   questioning the remorse you have shown as you stated

4   to the Court, or the fact that you may not even

5   remember what happened after a certain point of

6   time, but the fact of the matter is that it is

7   indisputable that this offense against Mrs. Naylor

8   was excessively cruel, and your substance abuse is

9   no excuse.

10      Under all of the circumstances, I will

11  accept the State's recommendation as to capping the

12  sentence at 18 years.  There are a number of

13  aggravating factors, including the excessive

14  cruelty, your prior criminal record, including

15  crimes of violence, the need for correctional

16  treatment, seriousness of the offense, and the

17  vulnerability of the victim, and perhaps others.

18  That is sufficient in my view to justify a

19  substantial period of incarceration.  Ultimately you

20  will be released from incarceration after the

21  opportunity for treatment for substance abuse in a

22  custodial setting, hopefully turn your life around

23  for the better.

14

1          It is therefore the sentence of the Court

2   in Criminal Action K02-01-0399 that the costs of

3   prosecution are suspended.  Effective December 30,

4   2002, the defendant is placed in the custody of the

5   Department of Correction at Supervision Level 5, on

6   the charge of burglary in the first degree, for 20

7   years.  After serving six years, the balance is

8   suspended for nine months at Level 4 Work Release,

9   to be followed by one year at Level 3, then one year

10  at Level 2 supervision.  Defendant shall be held at

11  Level 5 pending space available at Level 4.

12          As to K02-01-0398, on the charge of

13  assault in the first degree, the Court imposes the

14  maximum sentence of ten years at Level 5.

15          As to Criminal Action K02-01-0397, on the

16  charge of possession of a deadly weapon during the

17  commission of a felony, the defendant is placed in

18  the custody of the Department of Correction at

19  Supervision Level 5 for two years, which is a

20  mandatory sentence pursuant to 11 Delaware Code,

21  Section 1447.  Costs of prosecution are suspended as

22  to all charges.

23          The defendant shall have no contact with

15

1    Mary Naylor, Tom Naylor, or Pamela Hawkins.  He

2    shall have no contact with the victim's residence,

3    workplace, or the victim's family members.

4         The defendant shall undergo a mental

5    health evaluation and follow any recommendations for

6    counseling or treatment as deemed appropriate by the

7    Department of Correction.

8         He shall successfully complete anger

9    management counseling treatment program.

10        He shall have no drugs or alcohol during

11   the period of sentence unless medically prescribed.

12        He shall submit to random urinalysis or

13   such other drug testing as deemed appropriate.

14        The defendant shall be evaluated for

15   substance abuse and follow all recommendations for

16   testing, counseling or treatment.

17        While at Level 5, the defendant shall

18   complete any program recommended by the

19   Classification Unit of the Department of Correction.

20        While at Level 5, the defendant shall be

21   evaluated for any emotional and/or psychological

22   problems, participate and complete any treatment

23   recommended by the Classification Unit of the

16

1   Department of Correction.

2           While at Level 5, the defendant shall

3   complete Alternatives to Violence, Life Skills,

4   Thresholds, and the Prerelease Program.

5           You are committed to the custody of the

6   Department of Correction for purposes of carrying

7   out this sentence.

8           Court is in recess until the call of the

9   Court.

10                    *  *  *  *  *

11          (Whereupon the proceedings were

12  concluded.)

13                    *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

SHEILA A. DOUGHERTY
Official Court Reporter

17

1                    CERTIFICATE OF REPORTER

2

3              I, Sheila Dougherty, RMR and Official

4     Court Reporter of the Superior Court, State of

5     Delaware, do hereby certify that the foregoing is an

6     accurate transcript of the testimony adduced and

7     proceedings had, as reported by me, in the Superior

8     Court of the State of Delaware, in and for Kent

9     County, in the case therein stated, as the same

10    remains of record in the office of the Prothonotary

11    of Kent County, at Dover, Delaware.

12              WITNESS my hand this _29th_ day of

13    _September_____ , A.D., 2003.

14

15

16

17

18

19                              _Sheila A. Dougherty_
                                Sheila A. Dougherty
20                              Official Court Reporter

21

22

23

Westlaw.

911 A.2d 802                                                           Page 1

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
**(Cite as: 911 A.2d 802)**

Briefs and Other Related Documents
Guardarrama v. StateDel.Supr.,2006.(The decision
of the Court is referenced in the Atlantic Reporter in
a 'Table of Decisions Without Published Opinions.'
)
Supreme Court of Delaware.
Jose I. GUARDARRAMA, Jr., Defendant Below,
Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 129, 2006.**

Submitted: Sept. 20, 2006.
Decided: Oct. 17, 2006.

**Background:** After defendant was convicted by a
jury of possession with intent to deliver cocaine,
maintaining a dwelling for the use of drugs, and
possession of drug paraphernalia, he filed a motion
for judgment of acquittal. The Superior Court, New
Castle County, denied the motion. Defendant
appealed.

**Holdings:** The Supreme Court, Jack B. Jacobs, J.,
held that:

(1) defendant's conviction for possession with intent
to deliver cocaine and his acquittal on the charge of
trafficking in cocaine were not fatally inconsistent;

(2) evidence supported conviction for possession
with intent to deliver cocaine;

(3) trial court did not abuse its discretion when it
denied defendant's motion for acquittal; and

(4) the exclusion of defendant's mother from the
courtroom while co-defendant was testifying did not
violate defendant's right to a public trial.

Affirmed.

**[1] Criminal Law 110 ☞878(4)**

110 Criminal Law
    110XX Trial
        110XX(K) Verdict
            110k878 Several Counts
                110k878(4) k. Inconsistent Findings.
Most Cited Cases
Defendant's conviction for possession with intent to
deliver cocaine and his acquittal on the charge of
trafficking in cocaine were not fatally inconsistent,
as argued by defendant; evidence was sufficient to
support conviction for possession with intent to
deliver cocaine, and the acquittal on the trafficking
charge could be attributable to jury lenity. 16 Del.C.
§§ 4751(a), 4753A(a)(2).

**[2] Controlled Substances 96H ☞81**

96H Controlled Substances
    96HIII Prosecutions
        96Hk70 Weight and Sufficiency of Evidence
            96Hk81 k. Possession for Sale or
Distribution. Most Cited Cases
Evidence supported conviction for possession with
intent to deliver cocaine; at police station after
defendant's arrest two bags of cocaine were found in
defendant's pants pocket, defendant's ex-girlfriend,
and former co-defendant, testified that she had seen
defendant buy drugs from a "black guy," package
crack cocaine by breaking it off and putting it into
the smaller baggies discovered by police, and resell
the crack cocaine.

**[3] Criminal Law 110 ☞753.2(8)**

110 Criminal Law
    110XX Trial
        110XX(F) Province of Court and Jury in
General
            110k753 Direction of Verdict
                110k753.2 Of Acquittal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

- 344 -
Ex, K

911 A.2d 802

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
(Cite as: **911 A.2d 802**)

110k753.2(8)  k.  Hearing  and
Determination. Most Cited Cases
Trial court did not abuse its discretion when it
denied defendant's motion for acquittal, even
though the state failed to formally oppose the
motion; the court had the discretion to address the
merits of an unopposed motion to prevent a
miscarriage of justice. Superior Court Civil Rule
59(b); Superior Court Criminal Rule 57(d).

**[4] Criminal Law 110 ⚖═635**

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in
General
            110k635  k.  Publicity of Proceedings.
Most Cited Cases
The exclusion of defendant's mother from the
courtroom while co-defendant was testifying did not
violate defendant's right to a public trial; defendant
wrote co-defendant several letters from prison, one
of the letters was hand delivered to co-defendant at
her work by defendant's mother, co-defendant felt
threatened by the letter, defendant's mother was
excluded from the courtroom and the courthouse
only while co-defendant testified, and defendant's
mother was permitted to testify the following day.
U.S.C.A. Const.Amend. 6.

Court Below: Superior Court of the State of
Delaware, in and for New Castle County, Cr. A.
Nos.      IN05-02-1089,      IN05-05-1339W,
IN05-02-1093, IN05-02-1093.

Before STEELE, Chief Justice, BERGER and
JACOBS, Justices.

***ORDER***

JACK B. JACOBS, Justice.
**\*1** This 17th day of October 2006, upon
consideration of the briefs of the parties and the
record in this case, it appears to the Court that:

**\*1** 1. Jose I. Guardarrama, Jr. ("Guardarrama"), the
defendant-below appellant, appeals from a Superior
Court order denying his motion for judgment of
acquittal. Guardarrama contends that the Superior

Court erroneously denied his motion because: (a)
the jury's verdicts were fatally inconsistent; (b) the
Superior Court abused its discretion by deciding the
motion after the State failed to file a response to
Guardarrama's motion for a judgment of acquittal;
and (c) the exclusion of the defendant's mother from
the    courthouse    violated    the    defendant's
constitutional right to a public trial. Because we
find Guardarrama's claims to be devoid of merit, we
affirm.

**\*1** 2. On February 8, 2005, the Wilmington Police
Department executed a warrant to search a
two-story residence located at 134 Lower Oak
Street in the City of Wilmington. When the police
knocked on the front door, Ashley Lafferty ("Ashley
") answered. Walter Lafferty (Ashley's brother) and
her ex-boyfriend, Guardarrama, were the only other
persons present in the house when police arrived.
Lafferty and Guardarrama came downstairs in about
30 seconds.

**\*1** 3. The police went upstairs, and in the second
floor rear bedroom they found: (a) a clear plastic
bag containing 12.09 grams of crack cocaine in the
top drawer of a nightstand beside the bed; (b)
several  small  clear  ziplock  plastic  bags,
Guardarrama's state ID and a letter addressed to the
defendant in the same drawer; (c) several small
plastic bags on the floor along with a box of
sandwich bags; and (d) a box of clear plastic
sandwich bags on a dresser. This rear bedroom
belonged to Ashley, but police noted that male
clothing was lying on the bedroom floor. The police
also found a clear plastic bag containing 17 smaller
plastic bags of crack cocaine on the outside roof
immediately adjacent to the bedroom window. The
weight of the cocaine found on the outside roof
totaled 1.7 grams. At the police station, the police
also recovered two small baggies containing 0.97
grams of crack cocaine from Guardarrama's pants
pocket.

**\*1** 4. Ashley was originally a co-defendant. Under a
plea bargain agreement with the State, Ashley had
entered the drug diversion program by the time of
codefendant Guardarrama's trial, and she testified as
a prosecution witness at that trial. Ashley testified
that: (a) the bag of crack cocaine discovered in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 A.2d 802

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
**(Cite as: 911 A.2d 802)**

drawer of the nightstand belonged to Guardarrama; (b) the cocaine found outside her bedroom window belonged to her brother, Walter Lafferty; (c) she had previously seen Guardarrama package drugs in the plastic bags found by the police in her bedroom; (d) Guardarrama purchased cocaine from a "black guy," then resold it; and (e) Ashley had never seen Guardarrama smoke crack cocaine.

*1 5. Ashley's testimony must be contrasted with the testimony of Detective Thomas Looney, who observed that in his experience a drug seller would usually have 5 to 20 grams of the product, while a user would, at best, be in possession of a gram and a half. Under this experiential standard, Detective Looney testified that the 0.97 grams of crack cocaine packaged in two bags and found in the accused's pants pocket *may or may not* have been possessed for the purpose of resale rather than personal consumption.

*2 6. On March 21, 2005, Guardarrama was indicted on six charges. The jury returned a verdict of not guilty to the charge of trafficking in cocaine. The jury found Guardarrama guilty, however, of: (a) possession with intent to deliver cocaine, (b) maintaining a dwelling for the use of drugs, and (c) possession of drug paraphernalia.

*2 7. After the jury verdict, Guardarrama filed a post-trial motion for judgment of acquittal, arguing that his acquittal of the trafficking cocaine charge was fatally inconsistent with his three convictions on the remaining charges. [FN1] The Superior Court rejected Guardarrama's arguments for two reasons. First, even if the jury did not link the crack cocaine discovered in the nightstand and on the roof with Guardarrama, the defendant still had two bags of cocaine in his pants pocket when he was searched at the police station. That third cocaine stash, together with the other evidence, was a sufficient evidentiary basis to convict Guardarrama of the other three drug offenses. Second, and alternatively, the acquittal of Guardarrama on the cocaine trafficking charge can be attributed to jury lenity.

> FN1. The defendant's reasoning will be discussed in more detail later.

*2 8. In this case, it is undisputed that the standard of review for the first and third claims of error is *de novo*.[FN2] Because the second claim presents a question of law, it is also subject to *de novo* appellate review. [FN3]

> FN2. This Court reviews *de novo* a denial of a motion for judgment of acquittal. *Priest v. State,* 879 A.2d 575, 577 (Del.2005) (this Court reviews *de novo* the trial judge's denial of the defendant's motion for judgment of acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.). Claims of constitutional violations are subject to *de novo* review. *Washington v. State,* 836 A.2d 485, 487 (Del.2003) (a claim of infringement of constitutional rights is reviewed *de novo.).*

> FN3. *Outten v. State,* 720 A.2d 547, 551 (Del.1998).

*2 [1] 9. The defendant argues that there are fatal inconsistencies between his convictions of possession with intent to deliver cocaine and his acquittal of trafficking in cocaine. Under Delaware law, conviction for possession with intent to deliver cocaine requires proof of intent; while a conviction for trafficking in cocaine requires proof of the quantity possessed. Three elements are common to both crimes: (a) the substance is cocaine; (b) the defendant possessed the cocaine; and (c) the defendant knew that the substance he possessed was cocaine.[FN4]

> FN4. To establish trafficking in cocaine, the State must show that: (1) the substance is cocaine; (2) the defendant was in actual or constructive possession of cocaine; (3) the defendant knows that it is cocaine; and (4) defendant must possess at least 10 grams or more of cocaine. To prove the crime of possession with intent to deliver,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 A.2d 802

Page 4

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
(Cite as: 911 A.2d 802)

the State must establish four elements beyond a reasonable doubt: (1) the substance is cocaine; (2) the defendant must know it is cocaine; (3) the defendant must possess the cocaine actually or constructively; and (4) the defendant must intend to deliver the cocaine. 16 *Del. C.* §§ 4751(a), 4753A(a)(2).

*2 10. Because Ashley testified that the cocaine outside the bedroom window belonged to her brother, Walter Lafferty, the only evidence of record relating to Guardarrama's convictions was: (a) the cocaine found in the drawer ("drawer cocaine"); and (b) two baggies of crack cocaine from Guardarrama's pocket ("pocket cocaine"). The drawer cocaine and the pocket cocaine weighed 12.09 grams and 0.97 grams respectively. Because only the weight of the drawer cocaine satisfies the statutory quantity requirement to convict for trafficking in cocaine, the prosecution relied on the drawer cocaine as the basis to charge Guardarrama with trafficking in cocaine. The jury found Guardarrama not guilty of that charge, however.

*2 [2] 11. Attacking his convictions on the remaining charges, Guardarrama claims that he either did not possess the drawer cocaine, or that he did not know the drawer cocaine was cocaine, or both. Both elements are necessary to sustain a conviction of possession with intent to deliver cocaine. Guardarrama argues that because the jury acquitted him of trafficking in cocaine, at least one of these two elements was found not to have been established. Therefore, Guardarrama concludes, the drawer cocaine cannot be used to support a conviction for possession with intent to deliver cocaine.

*3 12. Even if that reasoning is valid, that still leaves the 2 baggies of pocket cocaine as a basis to convict. Because the jury found the defendant guilty of possession with intent to deliver cocaine, the issue becomes whether Guardarrama possessed the two baggies in his pocket with intent to deliver. FN5

FN5. The defendant did not contest these two elements on appeal. In fact, Ashley

testified that when she and Guardarrama were being transported to the Wilmington police station, Guardarrama asked her to take responsibility for the drugs that the police discovered. Also Ashley testified that Guardarrama wrote her letters from prison imploring her to confess that the crack cocaine discovered at her residence belonged to her, not the defendant. This evidence proves that the defendant knew he possessed cocaine rather than other substances.

*3 13. The State demonstrated an intent to deliver the pocket cocaine. It was for the jury to reconcile the conflicting testimony given by Ashley and Detective Thomas Looney. The jury "is free to reject all or part of any witness's testimony [and] need not believe even uncontroverted testimony. An appellate court will not substitute its judgment for the [jury]'s assessments in these areas." FN6

FN6. *Poon v. State,* 880 A.2d 236, 238 (Del.2005).

*3 14. Where "an appeal is grounded on a claim that the evidence was insufficient to convict, the standard of review is whether a *rational* finder of fact, viewing the evidence in the light most favorable to the State, could find guilt beyond a reasonable doubt." FN7

FN7. *Wood v. State,* 836 A.2d 514, 514 (Del.2003).

*3 15. There is ample evidence to support the jury's conclusion that the two baggies of drugs found in Guardarrama's pants pocket were possessed with an intent to deliver. That evidence is as follows: Ashley testified that she had seen Guardarrama: (a) buy drugs from a "black guy," (b) package crack cocaine by breaking it off and putting it into the smaller baggies discovered by the police and (c) resell the crack cocaine. Moreover, Ashley had never seen Guardarrama smoke crack cocaine, nor did she identify him as a drug user, and the police did not discover any paraphernalia for contraband

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 A.2d 802

Page 5

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
**(Cite as: 911 A.2d 802)**

drug consumption during their execution of the search warrant.

\*3 16. Second (and alternatively), the Superior Court held that the inconsistent verdicts are explainable as the product of jury lenity. This Court has upheld convictions that are part of arguably logically inconsistent judgments of acquittal on the basis of jury lenity.[FN8] As the Superior Court stated, "if the jury based its conviction of possession with intent to deliver on the 12.9 grams yet acquitted on trafficking, it could have done so believing the three year mandatory minimum was too harsh. This is lenity, and does not make the verdicts inconsistent." The defendant does not challenge that holding on appeal. On either basis, the claim that the jury verdicts were fatally inconsistent lacks merit.

> FN8. *Whitfield v. State,* 867 A.2d 168, 175 (Del.2004). *See also Garvey v. State,* 873 A.2d 291, 296 (Del.2005) (holding when supported by sufficient evidence, arguably inconsistent jury findings will not be disturbed if they are the product of jury lenity).

\*3 [3] 17. Guardarrama's second argument is that by not granting summarily his motion for acquittal, which the State did not formally oppose, the Superior Court abused its discretion. Superior Court Civil Rule 59(b) is made applicable to criminal cases by Superior Court Criminal Rule 57(d).[FN9] Relying on Superior Court Civil Rule 59(b), the Superior Court held that the defendant's motion for judgment of acquittal was timely filed, but that the State failed to file a response within 10 days.[FN10] Nonetheless, the Superior Court observed that the State's failure to file a response does not relieve the Court of its independent duty to examine the merits of the defendant's motion. The defendant's *implicit* argument is that because the State failed to file a response, his motion should have been granted by default, and that by not doing so, the trial court erred as a matter of law.

FN9. Superior Court Criminal Rule 57(d)

provides: "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court." Super. Ct.Crim. R. 57(b).

FN10. Superior Court Rule of Civil Procedure 59(b) provides in pertinent part: The motion for a new trial shall be served and filed not later than 10 days after the entry of judgment, or the rendition of the verdict, if pursuant to Rule 58, the Court has directed that the judgment shall not be entered forthwith upon the verdict, the motion to be accompanied by a brief and affidavit, if any. The motion shall briefly and distinctly state the grounds therefor.
If the motion is not accompanied by affidavits, the opposing party, within 10 days after service of such motion, may serve and file a short answer to each ground asserted in the motion, accompanied by a brief, if the opposing party desires to file one.
If the motion is accompanied by affidavits, the opposing party has 10 days after such service within which to serve and file that party's answer and opposing affidavits and brief, if any....
The Court shall determine from the motion, answer, affidavits and briefs, whether a new trial shall be granted or denied or whether there shall be oral argument on the motion. A copy of the motion, answer, affidavits and briefs shall be furnished forthwith by the respective parties serving them to the Judge involved. Super. Ct. Civ. R. 59(b).

\*4 18. Read as a whole, Superior Court Civil Rule 59(b) is plainly intended to authorize the trial court to determine from the record "whether a new trial shall be granted or denied or whether there shall be oral argument on the motion." The primary purpose of that Rule is to empower the Superior Court to exercise independent judgment on the merits of the parties' arguments and to determine whether their

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 A.2d 802

Page 6

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
**(Cite as: 911 A.2d 802)**

motions will prevail under the applicable substantive law.

*4 19. The defendant cites no authority for his contention that the Superior Court abused its discretion by considering his claims on the merits, even though the motion was not formally opposed. Manifestly the trial court had the discretion to address the merits of an even unopposed motion for judgment of acquittal, if only to prevent a miscarriage of justice and to avoid undoing a conviction that was lawfully obtained. Therefore, this Court will not disturb the trial court's decision to deny a motion for judgment of acquittal.

*4 20. At trial, the prosecutor raised the possibility of witness intimidation of Ashley by Guardarrama's mother, Ana Guardarrama. The prosecutor established that Ana Guardarrama had delivered a letter to Ashley. After reading the letter and considering the portions Ashley regarded as intimidating, the trial judge excluded the defendant's mother from the courtroom, and also from the courthouse, while Ashley testified. The following day Ana was allowed back into the courthouse to give testimony.

*4 [4] 21. Guardarrama claims that the exclusion of his mother from the courtroom violated his constitutional right to a public trial guaranteed by the Sixth Amendment to the United States Constitution. The constitutional right to a public trial is designed to ensure fairness to the defendant, maintain public confidence in the criminal justice system, provide an outlet for community reaction to crime, ensure that judges and prosecutors fulfill their duties responsibly, encourage witnesses to come forward, and discourage perjury. [FN11] That right is not unqualified, however. In appropriate cases, it must give way to other fundamental rights, such as "the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." [FN12]

> FN11. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Press-Enterprise Co. v. Superior Ct.,* 464 U.S. 501, 508-09, 104 S.Ct. 819, 78

L.Ed.2d 629 (1984).

> FN12. *Waller,* 467 U.S. at 45.

*4 22. The right to public trial can be abridged only on a showing of a compelling or overriding state interest. The U.S. Supreme Court has held that closure of the proceeding must be narrowly tailored to advance that interest, taking into account alternatives short of closure.[FN13] The trial courts have been repeatedly cautioned to exercise their discretionary powers sparingly and only after balancing the right to a public trial with the need to protect witnesses.[FN14] Specifically, trial courts must apply a four-part test in order to determine whether a courtroom may be closed over a defendant's objection: (a) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (b) the closure must be no broader than necessary to protect that interest; (c) the trial court must consider reasonable alternatives to closing the proceeding; and (d) the trial court must make findings adequate to support the closure. FN15

> FN13. *Id.*

> FN14. *People v. Nieves,* 90 N.Y.2d 426, 429-30, 660 N.Y.S.2d 858, 683 N.E.2d 764 (N.Y.1997).

> FN15. *Waller,* 467 U.S. at 48.

*5 23. In this case, the manner in which the Superior Court closed the courtroom *partially* to Ana Guardarrama satisfies all four prongs of the applicable test. Ashley was 19 years old at the time of trial. She received several letters from Guardarrama while he was in prison. One of those letters was delivered to her at her workplace by Guardarrama's mother. The prosecutor established that Ashley felt threatened when she read this letter, because the specific threat "or else" was written at the top of the letter. The connection of the defendant's mother to that threat was clear. It therefore was reasonable for the trial court to find that Ashley would have been fearful about testifying in the presence of the defendant's mother. Lastly,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 A.2d 802                                                                    Page 7

911 A.2d 802, 2006 WL 2950494 (Del.Supr.)
**(Cite as: 911 A.2d 802)**

the Superior Court closed the proceedings to the
defendant's mother only temporarily, because she
was permitted to return to the courtroom to testify
the following day, after Ashley had completed her
testimony. Therefore, the intentional exclusion of
the defendant's mother from the courtroom during
the trial did not violate his right to a public trial.

*5 NOW, THEREFORE, IT IS ORDERED that the
judgments of the Superior Court are **AFFIRMED.**

Del.Supr.,2006.
Guardarrama v. State
911 A.2d 802, 2006 WL 2950494 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2923829 (Appellate Brief) Appellant's
Reply Brief (Aug. 29, 2006)
• 2006 WL 2923831 (Appellate Brief) State's
Answering Brief (Aug. 14, 2006)
• 2006 WL 2618862 (Appellate Brief) Appellant's
Opening Brief (Jul. 7, 2006)
• 2006 WL 2618863 (Appellate Brief) Appellant's
Opening Brief (Jun. 30, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

- 350 -

## CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of the Supreme Court of Delaware, hereby certifies that on March 9, 2007, he caused two copies of the attached document to be placed in the U.S. Mail, first class postage prepaid, addressed to the following:

Donald R. Cochran
No. 201992
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

Loren C. Meyers
Chief of Appeals Division
Dept. of Justice

o

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **DONALD R. COCHRAN,** | § | |
| **DEFENDANT-BELOW,** | § | **APPEAL NO. : 49, 2007** |
| **APPELLANT,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **STATE OF DELAWARE,** | § | |
| **PLAINTIFF-BELOW,** | § | |
| **APPELLEE.** | § | |

### Appellant's Request to Respond to the Appellee's Motion to Affirm.

Pursuant to Rule 25(a)(iii) Supr.Ct.R., the Appellant seeks leave from the Court to respond to the Appellee's Motion to Affirm. In support He offers the following:

1. In its Motion to Affirm, at paragraph 1, the State's Motion reflects false information, where Appellant did not file an untimely appeal, it was an untimely Motion for Modification/Reduction pursuant to Rule 35(b) Super.Ct.CR.R. This is the usage of the Rule 61(i)(3) bar to Relief that has been misstated to deny Post-Conviction Relief.(State's Motion to Affirm at Ex. G). It is only when the law is clear, the sufficiency of the evidence clear, and the exercise of discretion clearly proper that a Motion to Affirm should be granted. (See Jerry C.C. v. Lucille H.C. Del.Supr. (1982) 448 A.2d 223). The law and evidence are not clearly established to justify a Motion to Affirm, therefore it must be denied and the State should be ordered to file an answering brief.

2. At paragraph 2, the State is trying to alter the facts to justify the means of a manifestation of injustice done to Appellant on Arguments I, II, III, and IV of His Opening Brief which does not justify the affirming the Inferior Court's decision to deny Post-Conviction Relief.

   (a). Argument I : Appellant originally waived extradition on August 28, 2001 not August 28, 2002 as the State suggests. Counsel had a Motion to Dismiss on this Argument but declined to file it until the Appellant took a plea agreement, this is not normal norms for

previously asserted and Cochran had shown no cause or prejudice sufficient to excuse this procedural default. Moreover, Cochran had not demonstrated any ineffective assistance of counsel" is contrary to its letter to Judge Witham and case law that an ineffective assistance of counsel claim cannot be raised for first time on appeal, along with Appellant stated that he was coerced into taking the plea by counsel is a matter of record and constitutes a colorable claim that relief can be granted with finally on the trial transcripts Appellant was arguing with his attorney concerning the pretrial motion and other issues.

3. As to paragraphs 3, 4, and 5 of the State's Motion are simple attempts to circumvent the Court's obligation to have before it an answer to all of Appellant's Arguments.

4. As to paragraph 6, the State refers to mitigating evidence that wasn't presented and the effect that it could have possibly had on Appellant's sentence contains an erroneous application of law, where only a judge could consider the evidence and decide whether the evidence is probative or not, also that the presentence investigator never questioned all of the relevant parties in regards to sentencing is enough to qualify as a safeguard against being summarily dismissed.

5. As to paragraph 7, the State or the Order being appealed doesn't even mention counsel's failure to respond and the law in accordance with failure to respond to allegations renders them as admitted, the August 28, 2001 I.A.D. Extradition papers waiving extradition to come back to Delaware, the Court erroneously applied the Rule 61 (i)(3) procedural bar on most of Appellant's claims does not warrant an issuance of granting a Motion to Affirm.

6. As to paragraph 8, the error being complained of renders the plea defective and invalid as being unconstitutionally entered in accordance with both state and federal applications of law is reviewable and would set a new precedent case in Delaware where there are no cases containing these same facts and only in this type of situation would the Court waive Supr.Ct.R. Rule 8's guidelines. (See Monroe v. State Del.Supr. (1995) 652 A.2d 560).

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

**DONALD R. COCHRAN,**
**Defendant-Below,**
**Appellant**

**N.O. : 49, 2007**

V.

**STATE OF DELAWARE,**
**Plaintiff-Below,**
**Appellee**

## MOTION TO RESPOND TO APPELLEE'S MOTION TO AFFIRM

Pursuant to Rule 25 (a) the Appellant seeks the Court to denie Appellee's Motion to Affirm In support he offers the following:

1. It is evident that there was a injustice done of violations of Appellant's constitutional rights which prejudice the Appellant. The record reflects these violations. The State fails to address all claims of Appellant's arguments. The State avoids answering why all claims where not addressed. This is a miscarriage of justice. Therefore the bar can be lifted and relief granted. Therefore the Motion to Affirm is to be denied. And the State ordered to file an answering brief.

2. At paragraph 3, The State is hiding behind what they call deficiency's in Appellant's attempts to invoke I.A.D. The State pursued Appellant to waive extradition thru Florida officials, than fail to bring Appellant back to Delaware after waving extradition on August 28, 2001. The State is trying to justify failing to bring Appellant back within the 180 day time period required by the I.A.D. which also violated the Appellant's Right to a Speedy Trial which is to be had within 120 days under the I.A.D. clause by focusing on other issues other than the real facts. This renders the indictment invalid and caused an unnecessary delay which the State avoids answering. This prejudice the Appellant and is a miscarriage of justice which calls for further inquiry so these claims can be proved to the Court and proper relief granted to Appellant.

3. At paragraph 4 and 5, The State avoids clear evidence of Ineffective Assistance of Counsel. The State fail to address the fact that the plea was coerced to covered up Counsels impropriety's. The record is clear of many constitutional violations due to Counsels faulty legal advise and his failure to investigate. Counsel fails to investigate the Law, mitigating evidence and competency issues. The record is clear that the Appellant's mental condition is questionable. Therefore and evidentiary hearing is to be heard to see if Appellant is able to understand the factual nature of the proceedings. Failure to hold

should be denied and the State ordered to file an answering brief. In closing the Appellant would like to put on record again that Counsel and the State fail to answer all the claims which are the following :       Failure to answer to an Untimely Indictment, Lack of Mitigating Evidence, Coerced Plea by promises, Failure to Review P.S.I. Appellant ask for further inquiry into this matter and that the Motion to Affirm be denied.

Dated: 4 . 2007

Respectfully Submitted,

Donald Cocher

Donald R. Cochran
#201992/ D-East F-19
1181 Paddock Road
Smyrna, Delaware 19977

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DONALD R. COCHRAN, | § |
| | § No. 49, 2007 |
| Defendant Below- | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for Kent County |
| STATE OF DELAWARE, | § Cr. ID No. 0102010757 |
| | § |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: April 4, 2007
Decided: May 17, 2007

Before **HOLLAND**, **BERGER** and **JACOBS**, Justices

### O R D E R

This 17th day of May 2007, upon consideration of the appellant's

opening brief and the appellee's motion to affirm pursuant to Supreme Court

Rule 25(a),[1] it appears to the Court that:

(1)    The defendant-appellant, Donald R. Cochran, filed an appeal

from the Superior Court's January 22, 2007 order denying his motion for

postconviction relief pursuant to Superior Court Criminal Rule 61.[2]    The

plaintiff-appellee, the State of Delaware, has moved to affirm the judgment

---

[1] The Court also has considered the appellant's response to the motion to affirm, which
was filed on April 4, 2007 with the Court's permission. Supr. Ct. R. 25(a) (iii).

[2] The Superior Court adopted the commissioner's report and recommendation. Del. Code
Ann. tit. 10, § 512(b) (1); Super. Ct. Cr. R. 62(a) (5).

mitigating evidence in his favor; d) his counsel rendered ineffective assistance by failing to raise those issues; e) his counsel's Rule 61 affidavit failed to respond to one of his allegations of ineffective assistance; f) the Superior Court and his counsel failed to give him correct information concerning the maximum sentence he was facing; and g) the Superior Court erred by adopting the commissioner's report and recommendation rather than engaging in its own fact-finding.

(5)    Cochran's first three claims were properly denied by the Superior Court as procedurally barred because they were not raised on direct appeal and Cochran failed to demonstrate cause for relief from the procedural default and prejudice from a violation of his rights.[8]  Moreover, Cochran entered Robinson pleas to the charges against him, but presented no evidence that those pleas were involuntary.  As such, Cochran waived any allegations of errors or defects occurring prior to the entry of the pleas.[9]

(6)    In order to prevail on a claim of ineffective assistance in the context of a plea, Cochran must demonstrate that, but for his counsel's professional errors, he would not have entered the plea, but would have

---

[8] Super. Ct. Crim. R. 61(i) (3) (A) and (B); *Younger v. State*, 580 A.2d 552, 555-56 (1990).
[9] *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).

3

acted in a manner contrary to its authority in this case. We, therefore, find this claim, too, to be without merit.

(9)    It is manifest on the face of Cochran's opening brief that this appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.[13]

BY THE COURT:

/s/ Carolyn Berger
Justice

---

[13] On April 27, 2007, after he had filed his response to the motion to affirm, Cochran filed a motion for the appointment of counsel. That motion is untimely. Even if it had been timely, there is no constitutional right to counsel in collateral attacks on convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Although this Court has the discretionary authority to appoint counsel in such cases, we find no compelling reason to justify the appointment of counsel in this case. Supr. Ct. R. 26(b). The motion is, therefore, denied.

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **DONALD R. COCHRAN,** | § | |
| **DEFENDANT-BELOW,** | § | **APPEAL NOS. 50,2007 & 51,2007** |
| **APPELLANT,** | § | |
| | § | **CONSOLIDATED** |
| **V.** | § | |
| | § | |
| **STATE OF DELAWARE,** | § | |
| **PLAINTIFF-BELOW,** | § | |
| **APPELLEE.** | § | |

---

## ON APPEAL FROM ORDERS OF THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

---

This is Appellant's Opening Brief.

Dated: _March 8, 2007_

Respectfully Submitted

_Donald R. Cochran_

**Donald R. Cochran**
**#201992 / D/EF19T**
**1181 Paddock Road**
**Smyrna, DE    19977**

## TABLE OF CONTENTS

DESCRIPTION                                                      PAGE NO.

TABLE OF CONTENTS    ...................................................................................    i

TABLE OF CITATIONS/AUTHORITIES    ...............................................................    iii

NATURE AND STAGE OF PROCEEDINGS    ............................................................    v

SUMMARY OF THE ARGUMENTS    .....................................................................    vi

STATEMENT OF FACTS    ..................................................................................    vii

ARGUMENTS:

I.    THE COURT VIOLATED EX POST FACTO CLAUSE OF THE UNITED
STATES CONSTITUTION AMENDMENT ARTICLE I § 10 CL.1, WHEN IT
IMPOSED THE AMENDED VERSIONS OF THE CRIMINAL OFFENSES AND
GUIDELINES AT SENTENCING.    .........................................................    1

II.    APPRENDI VIOLATION AROSE WHEN THE COURT'S SENTENCE
EXCEEDED THE STATUTORY MAXIMUM ON THE BURGLARY 1ST
DEGREE CHARGE.    .........................................................................    2

III.    SENTENCE IS UNCONSTITUTIONALLY IMPOSED WHERE COUNSEL
WAS INEFFECTIVE TO RECOGNIZE AN EX POST FACTO VIOLATION
AND APPRENDI VIOLATION.    .............................................................    3

IV.    PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY,
AND UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S
FAILURE TO NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE
BEFORE PLEA NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY
LEGAL ADVICE TO APPELLANT AND COURT AS TO THE SENTENCING
GUIDELINES AND MAXIMUM SENTENCE THAT THE COURT WAS
AUTHORIZED TO IMPOSE INVALIDATES APPELLANT'S PLEA AND
CONVICTION—REQUIRING THIS APPELLATE COURT TO REVERSE THE
INFERIOR COURT'S CORRECTION OF AN ILLEGAL SENTENCE AND
CORRECTED SENTENCING ORDERS, AND REMAND FOR FURTHER
PROCEEDINGS.    ..............................................................................    4

V.    PLAIN ERROR FOR COURT NOT TO GIVE EARNED AND STATUTORY
GOOD TIME CREDITS ON P.D.W.D.C.F. CHARGE ON CORRECTED
SENTENCING ORDER, MUST BE REVERSED AS A MATTER OF LAW
WHERE A VIOLATION OF EX POST FACTO HAS OCCURRED.    ...........    6

VI.    FAILURE OF THE INFERIOR COURT TO RESENTENCE APPELLANT
WHILE BEING PRESENT IN OPEN COURT IS REVERSIBLE ERROR
AND VIOLATED RULE 43 SUPER.CT.CR.R; ALSO RULE 43 FED.R. OF
CRIM.PROC., WHERE SAID SENTENCE IS A CORRECTION NOT A
MODIFICATION/REDUCTION REQUIRING REVERSAL AND REMAND. ..    7

**DESCRIPTION**                                                           **PAGE NO.**

CONCLUSION  ...................................................................................................    8

ORDER BEING APPEALED  (Dated January 22, 2007, partially granting Motion, signed
                      by Hon.J. W. Witham)  ................................................................  Ex.A

ORDER BEING APPEALED  (Dated January 22, 2007, Corrected Sentencing Order, signed
                      by Hon.J. W. Witham)  ................................................................  Ex.B

## TABLE OF CITATIONS/AUTHORITIES

**CASES**                                                                           **PAGE NO(S).**

Apprendi v. New Jersey  (2000) 530 U.S. 466, 120 S.Ct. 2348  .......................................  2,3

Baker v. Barbo  3rd Cir. (1999) 177 F.3d 149  ...........................................................  5

Brice v. State  Del.Supr. (2003) 815 A.2d 314 at n.3  .................................................  1,6

Groseclose v. Bell  6th Cir. (1997) 130 F.3d 1161  .....................................................  3

McCarthy v. U.S.  (1969) 394 U.S. 459, 465  .............................................................  4

Patterson v. State  Del.Supr. (1996) 684 A.2d 1234, 1239  ...........................................  4

State of Delaware v. Joseph Magana  ___ A.2d ___ (Del.Super. 2003)  .........................  6

State of Delaware v. Louis Woolford  ___ A.2d ___ (Del.Super.) 2002WL1343827  ...........  4,5

Strickland v. Washington  (1984) 466 U.S. 668, 698  ..................................................  3

U.S. v. Behrens  (1963) 84 S.Ct. 295, 298  ...............................................................  7

U.S. v. Browning  10th Cir. (1995) 61 F.3d 752, 753  ..................................................  4,5

U.S. v. Faulks  3rd Cir. (2000) 201 F.3d 208, 210  ......................................................  7

U.S. v. Gigot  10th Cir. (1998) 147 F.3d 1193  ...........................................................  4

U.S. v. Guerra  5th Cir. (1996) 94 F.3d 989, 995  .......................................................  4

U.S. v. Keller  2nd Cir. (1995) 58 F.3d 884  ..............................................................  1

U.S. v. Moree  5th Cir. (1991) 928 F.2d 654, 655-56  ..................................................  7

U.S. v. Vasquez  3rd Cir. (2001) 271 F.3d 93, 96  .......................................................  2

Webb v. State  Del.Supr. (2001) (Table) —2001WL1586877—(A-7)  ...........................  1,2

Wells v. State  Del.Supr. (1978) 396 A.2d 161  ..........................................................  4,5


## FEDERAL CONSTITUTION

United State Constitution Amendment Article I § 10 cl.1  ..........................................  1,6

**FEDERAL RULES(CONT'D)**                                    **PAGE NO(S).**

Fed.R. of Crim.Proc. Rule 11 ................................................................    4

Fed.R. of Crim.Proc. Rule 35(a) ............................................................    7

Fed.R. of Crim.Proc. Rule 43 ...............................................................    7


**STATE RULES**

Super.Ct.Cr.R. Rule 35(a) .....................................................................    7

Super.Ct.Cr.R. Rule 43 .........................................................................    7


**MISCELLANEOUS**

House Bill No. 210 (A-9) .......................................................................    1,3

## NATURE AND STAGE OF PROCEEDINGS

On December 19, 2006, Appellant filed a Motion to Correct an Illegal Sentence.

On January 22, 2007, Hon.J. W. Witham granted in part and denied in part the Motion.

On January 22, 2007, Hon.J. W. Witham mailed a "Corrected Sentencing Order."

A timely appeal was taken on both orders.

Appellant filed a Motion to Consolidate both Appeals; the Motion was granted.

This is Appellant's Opening Brief.

## SUMMARY OF THE ARGUMENTS

I.  THE COURT VIOLATED EX POST FACTO CLAUSE OF THE UNITED STATES
    CONSTITUTION AMENDMENT ARTICLE I § 10 CL.1, WHEN IT IMPOSED THE
    AMENDED VERSIONS OF THE CRIMINAL OFFENSES AND GUIDELINES AT
    SENTENCING.

II. APPRENDI VIOLATION AROSE WHEN THE COURT'S SENTENCE EXCEEDED
    THE STATUTORY MAXIMUM ON THE BURGLARY 1ST DEGREE CHARGE.

III. SENTENCE IS UNCONSTITUTIONALLY IMPOSED WHERE COUNSEL WAS
     INEFFECTIVE TO RECOGNIZE AN EX POST FACTO VIOLATION AND APPRENDI
     VIOLATION.

IV. PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY, AND
    UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S FAILURE TO
    NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE BEFORE PLEA
    NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY LEGAL ADVICE TO
    APPELLANT AND COURT AS TO THE SENTENCING GUIDELINES AND
    MAXIMUM SENTENCE THAT THE COURT WAS AUTHORIZED TO IMPOSE
    INVALIDATES APPELLANT'S PLEA AND CONVICTION—REQUIRING THIS
    APPELLATE COURT TO REVERSE THE INFERIOR COURT'S CORRECTION OF
    AN ILLEGAL SENTENCE AND CORRECTED SENTENCING ORDERS, AND
    REMAND FOR FURTHER PROCEEDINGS.

V.  PLAIN ERROR FOR COURT NOT TO GIVE EARNED AND STATUTORY GOOD
    TIME CREDITS ON P.D.W.D.C.F. CHARGE ON CORRECTED SENTENCING ORDER,
    MUST BE REVERSED AS A MATTER OF LAW WHERE A VIOLATION OF EX POST
    FACTO HAS OCCURRED.

VI. FAILURE OF THE COURT TO RESENTENCE APPELLANT WHILE BEING
    PRESENT IN OPEN COURT IS REVERSIBLE ERROR AND VIOLATED RULE 43
    SUPER.CT.CR.R.; ALSO RULE 43 FED.R. OF CRIM.PROC. WHERE SAID SENTENCE
    IS A CORRECTION NOT A MODIFICATION/REDUCTION REQUIRING REMAND
    AS A MATTER OF LAW.

## STATEMENT OF FACTS

On February 12, 2001, an arrest warrant was issued for Appellant alleging that he assaulted a

Mrs. Naylor. Appellant has no recollection of anything after kicking in the front door after seeing his

girlfriend's truck parked in the front of the Naylor house. The rest of the facts are a matter of record.

## I.    THE COURT VIOLATED EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AMENDMENT ARTICLE I § 10 CL. 1, WHEN IT IMPOSED THE AMENDED VERSIONS OF THE CRIMINAL OFFENSES AND GUIDELINES AT SENTENCING.

### ARGUMENT:

The inferior Court made an error at sentencing when imposing the amended version of

P.D.W.D.C.F. that changed on July 9, 2001, to make any sentence Mandatory without any possible good

time statutory or earned; the next error made was the Burglary 1st Degree as Amended by House Bill No.

210 where the charge became a Class B felony as it was originally a Class C felony prior to enactment.

These changes were not procedural but structural changes in the way that left the Appellant to be held to a

different Law than when the crime was committed as stated by Law which ultimately left him to severe

sentencing increases, especially on the Burglary 1st Degree charge. The original Class C classification not

only had different guidelines, but the Statutory Maximum was only 10 yrs.(See Webb v. State Del.Supr.

(2001) 788 A.2d 529- 2001 WL 1586877 at (A-7)).

### Excerpts of Law:

"Prohibition against ex post facto laws applies only to retroactive penal statutes that disadvantage

a defendant." (See Brice v. State Del.Supr. (2003) 815 A.2d 314 at n.3- quoting U.S.C.A. Const.Art. I §

10 cl.1 and Constitutional Law-197 Keys Most Cited Cases.).

"When the guidelines are amended after the defendant commits a criminal offense, but before he

is sentenced, and the amendment provision calls for a more severe penalty than the original one, those

guidelines in effect at the time of the offense was committed govern the imposition of sentence." (See

U.S. v. Keller 2nd Cir. (1995) 58 F.3d 884). (Also Id.).

### III.   SENTENCE IS UNCONSTITUTIONALLY IMPOSED WHERE COUNSEL WAS INEFFECTIVE TO RECOGNIZE AN EX POST FACTO VIOLATION AND APPRENDI VIOLATION.

**ARGUMENT:**

On June 16, 2003, Appellant was sentenced under the new statutes for P.D.W.D.C.F. that was put in effect on July 9, 2001, and the Burglary 1st Degree that went into effect when the House Bill No. 210 was passed in 2002. The sentence imposed is clearly unconstitutional.

Excerpts of Law:

Applying the first prong of the Strickland test:  Counsel was unprofessionally inaccurate in his performance by failing to notice 2 constitutional errors that were imposed upon Appellant at sentencing which are Arguments I and II of this Appeal. Applying the second prong of the Strickland test: The sentence must now be vacated due to it is still prejudicing the Appellant. (See Strickland v. Washington (1984) 466 U.S. 668,698).

As to counsel's failure to research the law and Appellant's case. (See Groseclose v. Bell 6th Cir. (1997) 130 F.3d 1161— "Counsel's failure to interview witnesses, conduct any legal research, or obtain and review any records was ineffective assistance."). (A-7 thru -20).

IV.   **PLEA THAT WAS ENTERED INTO UNKNOWINGLY, INVOLUNTARILY, AND UNINTELLIGENTLY MUST BE SET ASIDE WHERE: (1) COURT'S FAILURE TO NOTIFY APPELLANT OF CORRECT MAXIMUM SENTENCE BEFORE PLEA NEGOTIATIONS BEGAN; AND (2) COUNSEL GAVE FAULTY LEGAL ADVICE TO APPELLANT AND COURT AS TO THE SENTENCING GUIDELINES AND MAXIMUM SENTENCE THAT THE COURT WAS AUTHORIZED TO IMPOSE INVALIDATES APELLANT'S PLEA AND CONVICTION—REQUIRING THIS APPELLATE COURT TO REVERSE THE INFERIOR COURT'S CORRECTION OF AN ILLEGAL SENTENCE ORDER AND THE CORRECTED SENTENCING ORDER, AND REMAND FOR FURTHER PROCEEDINGS.**

**STANDARD AND SCOPE OF REVIEW:**

Consequences of guilty plea with respect sentencing that defendant must have knowledge of for his guilty plea to satisfy due process are maximum prison term and fine for offense(s) charged. Defendant's plea of guilty and resulting waiver of his Sixth Amendment right to jury trial was made unintelligently and was therefore invalid, where district court informed defendant before he pleaded guilty to one of two charges that he faced maximum sentence of 60 years in prison if convicted on both charges where he in fact faced 30 year max sentence and there was nothing in record to suggest that defense counsel ever gave defendant the correct information about max sentence. (See U.S. v. Guerra 5ᵗʰ Cir. (1996) 94 F.3d 989,995); Same. (See U.S. v. Gigot 10ᵗʰ Cir. (1998) 147 F.3d 1193); Same. (See State of Delaware v. Louis Woolford ___ A.2d ___ (Del.Super.) 2002WL1343827); Same. (See Wells v. State Del.Supr. (1978) 396 A.2d 161). Rule 11 of the Federal Rules of Criminal Procedure "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." (See McCarthy v. U.S. (1969) 394 U.S. 459, 465). Whether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary, is a question of law reviewed de novo. (See U.S. v. Browning 10ᵗʰ Cir. (1995) 61 F.3d 752, 753). "The Delaware Supreme Court has stated that where there is a serious procedural defect in the plea process or where it clearly appears that the defendant did not knowingly consent to the plea agreement, a sufficient basis exists for withdrawal of the plea regardless of whether there is a basis for a claim of factual innocence or whether there is prejudice to the State." (See Patterson v. State Del.Supr. (1996) 684 A.2d 1234, 1239).

**ARGUMENT:**

It is now clear from the record and the T.I.S. Form, (A-22), as filled out by Counsel for Appellant that the plea was unconstitutionally entered; also the Honorable Judge Witham has put on the record that a "plain error" occurred at sentencing without mitigating the ultimate effect that the error has on the Appellant's conviction. It is now clear that the procedural defect that has made the plea entered into—invalid and in violation of Appellant's Constitutional guarantees to plead guilty to charges "intelligently, knowingly, and voluntarily." (Id. at 465). As to the procedural defect. (Id. at 1239). It is clearly established case law in Delaware and the record here that the charges Appellant has pled guilty to were not punishable by any court of law, and now the plea must be set aside. (Id. at 995); Same. (Id.); Same.

(Id.); Same. (Id.). "Attorney who does not know the basic sentence for an offense at the time his client is contemplating entering a plea is ineffective even if trial court and prosecutor are also ignorant of relevant changes in the law." (See Baker v. Barbo 3rd Cir. (1999) 177 F.3d 149).

Therefore, by Law this Appellate Court is to remand to the inferior Court to address the error and review the inferior Court's remedy for said error *de novo.* (Id.).

**V.    PLAIN ERROR FOR COURT NOT TO GIVE EARNED AND STATUTORY
GOOD TIME CREDITS ON P.D.W.D.C.F. CHARGE ON CORRECTED
SENTENCING ORDER, MUST BE REVERSED AS A MATTER OF LAW
WHERE A VIOLATION OF EX POST FACTO HAS OCCURRED.**

**STANDARD AND SCOPE OF REVIEW:**

Standard and Scope of Review are Plain Error and violation of Ex Post Facto Clause of the
United States Constitution Amendment Article I § 10 cl.1. (Id.)

"Statute which makes defendant ineligible for good time if convicted of Possession of a Deadly
Weapon During the Commission of a Felony did not apply to defendant whose crime was committed
before effective date; statute effective prior to enactment applied to defendant's case." (See State of
Delaware v. Joseph Magana Del.Super. (2003) ___A.2d___ — where good time credits restored.).

**ARGUMENT:**

The arrest warrant was issued for Appellant prior to the enactment of the new P.D.W.D.C.F.,

(February 12, 2001—arrest warrant issued; and July 9, 2001—effective amendment that states "ineligible

for earned or statutory good time.").

Therefore, by Law, Appellant is entitled to earned and statutory good time credits; which as a

matter of Law requires reversal of the inferior Court's decision not to give such credits. (Id.).

**VI.   FAILURE OF THE COURT TO RESENTENCE APPELLANT WHILE BEINGPRESENT IN OPEN COURT IS REVERSIBLE ERROR AND VIOLATED RULE 43 SUPER.CT.CR.R; ALSO FED.R. OF CRIM.PROC. WHERE SAID SENTENCE IS A CORRECTION NOT A MODIFICATION/REDUCTION REQUIRING AN AUTOMATIC REMAND AS A MATTER OF LAW.**

## STANDARD AND SCOPE OF REVIEW:

It is reversible error when defendant is not present for resentencing to allocate where the original sentence has been set aside for correction, (Rule 35(a) Super.Ct.Cr.R. and Fed.R.of Crim.Proc.), and not just a Modification and/or Reduction. It's a violation of Rule 43 to not have Defendant present for resentencing on a Correction of an Illegal Sentence. (See U.S. v. Faulks 3rd Cir. (2000) 201 F.3d 208, 210); Same. (See U.S. v. Moree 5th Cir. (1991) 928 F.2d 654, 655-56—quoting U.S. v. Behrens (1963) 84 S.Ct. 295, 298).

## ARGUMENT:

Failure of the inferior Court to bring Appellant before it for allocution of the new sentence

violated the spirit of Rule 43 of both State and Federal Rules; also Due Process concerns. (Id. at 210);

Same. (Id. at 655-56,--quoting Id. at 298).

Therefore, as a matter of Law, reversal and remand is required.

## CONCLUSION

For the Arguments, Facts, and Legal Authorities cited, Law's demands can only be met by reversing the inferior Court's decision to only minimize the errors and the decision to only send a corrected sentencing order without Appellant present in open court.

Therefore, Appellant respectfully requests that this Honorable Court reverse the inferior Court's decisions being appealed and remand for further proceedings.

Dated: _March 8, 2007_

Respectfully, Submitted,
_Donald R. Cochran_

**Donald R. Cochran**

**#201992 / D/EF19T**

**1181 Paddock Road**

**Smyrna, DE   19977**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| **STATE OF DELAWARE,** | ) |
| | )     IK02-01-0397-R1 |
| v. | )     IK02-01-0398-R1 |
| | )     IK02-01-0399-R1 |
| **DONALD R. COCHRAN,** | ) |
| ID No. 0102010757 | ) |
| | ) |
| Defendant. | ) |

## ORDER

On this 22nd day of January, 2007, upon consideration of the Defendant's Motion for Postconviction Relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

(1)    The defendant Donald R. Cochran ("Cochran") entered a *Robinson* guilty plea on February 3, 2003 to one count of Assault in the First Degree, 11 *Del. C.* § 613; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447. Cochran was facing trial on the above charges along with one count of Unlawful Imprisonment in the First Degree, one count of Criminal Mischief and one count of Non-Compliance with a Condition of a Bond. The charges involved a brutal assault of an innocent elderly female victim while Cochran was under the influence of alcohol and drugs. Following a Presentence Office investigation, Cochran was sentenced on June 16, 2003 to a total of thirty-two years of incarceration, suspended after serving eighteen years for various levels of probation. Had Cochran gone to trial and been convicted as charged, he would have faced over fifty years of incarceration. Cochran filed a *pro se* appeal to the State

*Ex. A.*

*State v. Donald R. Cochran*
**ID No. 0102010757**
January 22, 2007

Postconviction Relief is *denied* as procedurally barred.

Resident Judge

WLW/dmh

oc:   Prothonotary

xc:   Hon. Andrea M. Freud
      Susan Schmidhauser, Esquire
      Joseph M. Bernstein, Esquire
      Mr. Donald R. Cochran, DCC
      Order Distribution (w/Report & Recommendation)
      File

3

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE

VS.

DONALD R COCHRAN

Alias: No Aliases

DOB: 04/21/1961
SBI: 00201992

CASE NUMBER:                          CRIMINAL ACTION NUMBER:
0102010757                            IK02-01-0399wR
                                      BURGLARY 1ST(F)
                                      IK02-01-0398wR
                                      ASSAULT 1ST(F)
                                      IK02-01-0397wR
                                      PDWDCF(F)

COMMITMENT

### CORRECTED SENTENCE ORDER

NOW THIS 22ND DAY OF JANUARY, 2007, IT IS THE ORDER OF
THE COURT THAT: THE ORDER DATED June 16, 2003 IS HEREBY
CORRECTED AS FOLLOWS:

The defendant is adjudged guilty of the offense(s) charged.
Costs are hereby suspended. Defendant is to pay all
statutory surcharges. ·

AS TO IK02-01-0399-wR : TIS
BURGLARY 1ST

Effective December 30, 2002 the defendant is sentenced
as follows:

- The defendant is placed in the custody of the Department
of Correction for 10 year(s) at supervision level 5

- Suspended after serving 6 year(s) at supervision level 5

- Followed by 9 month(s) at supervision level 4 **WORK
RELEASE**

- Followed by 1 year(s) at supervision level 3
**APPROVED ORDER**   1     January 23, 2007 11:01

$Ex. \, B$

$-278-$

STATE OF DELAWARE
      VS.
DONALD R COCHRAN
DOB: 04/21/1961
SBI: 00201992

- Followed by 1 year(s)  at supervision level 2

- Hold at supervision level 5

- Until space is available at supervision level 4 **WORK RELEASE**

Probation is concurrent to any probation now serving.

**AS TO IK02-01-0398-wR : TIS
ASSAULT 1ST**

- The defendant is placed in the custody of the Department of Correction for 10 year(s) at supervision level 5

**AS TO IK02-01-0397-wR : TIS
PDWDCF**

- The defendant is placed in the custody of the Department of Correction for 2 year(s) at supervision level 5

This is a mandatory sentence pursuant to DE1114470000FB .

## SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
    VS.
DONALD R COCHRAN
DOB: 04/21/1961
SBI: 00201992

                    CASE NUMBER:
                    0102010757


Have no contact with Mary Naylor

Have no contact with Tom Naylor

Have no contact with Pamela Hawkins


The defendant shall have no contact with the victim(s)
residence, workplace and/or victim(s) family members.


Defendant is to undergo a mental health evaluation and
follow any recommendations for counseling and treatment as
deemed appropriate by Department of Correction .


Defendant shall successfully complete anger management,
counseling, treatment program.

Have no drugs/alcohol during period of sentence unless
medically prescribed.

Submit to random urinalysis or such other drug testing as
deemed appropriate.

Be evaluated for substance abuse and follow any
recommendations for counseling, testing or treatment deemed
appropriate.


## NOTES

While at Supervision Level V, the defendant shall be
evaluated for a substance abuse program, and complete any
program recommended by the Classification Unit of DOC.

While at Supervision Level V, the defendant shall be
evaluated for emotional and/or psychological problems and
participate in and/or complete any treatment recommended
**APPROVED ORDER**   3     January 23, 2007 11:01

## FINANCIAL SUMMARY

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

                    **CASE NUMBER:**
                    **0102010757**


SENTENCE CONTINUED:

TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED

SHERIFF, KENT ORDERED

SHERIFF, SUSSEX ORDERED

PUBLIC DEF, FEE ORDERED

PROSECUTION FEE ORDERED

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                    3.00

---

TOTAL                                     3.00


**APPROVED ORDER**    5    January 23, 2007 11:01

-382-

## AGGRAVATING-MITIGATING

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

                    CASE NUMBER:
                    0102010757

### AGGRAVATING
PRIOR VIOLENT CRIM. ACTIVITY
LACK OF AMENABILITY
NEED FOR CORRECTIONAL TREATMENT
CUSTODY STATUS AT TIME OF OFFENSE
EXCESSIVE CRUELTY
REPETITIVE CRIMINAL CONDUCT
UNDUE DEPRECIATION OF OFFENSE
VULNERABILITY OF VICTIM

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **DONALD R. COCHRAN,** | § | |
| **DEFENDANT-BELOW,** | § | **APPEAL NOS. 50,2007 & 51,2007** |
| **APPELLANT,** | § | |
| | § | **CONSOLIDATED** |
| **V.** | § | |
| | § | |
| **STATE OF DELAWARE,** | § | |
| **PLAINTIFF-BELOW,** | § | |
| **APPELLEE.** | § | |

## ON APPEAL FROM ORDERS OF THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

This is Appellant's Opening Brief's Appendix.

Dated: *March 8, 2007*

Respectfully Submitted:
*Donald R Cochran*

**Donald R. Cochran**
**#201992 / D/EF19T**
**1181 Paddock Road**
**Smyrna, DE   19977**

## TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                                        <u>A-PAGE NO.</u>

TABLE OF CONTENTS   ……………………………………………………………………   i

Motion and Exhibits   (Dated 12/19/06 and signed by Appellant)   …………..…………………   1

T.I.S. Form   (Dated 2/3/03 and signed by Appellant and Joseph Bernstein)   …….……………   22

Letter   (Dated 2/8/07 and signed by Susan G. Schmidhauser)   …….…………………………   23

In The Superior Court Of The State Of Delaware
In And For Kent County

State of Delaware,

    Plaintiff,

v.

Donald R. Cochran,

    Defendant.

Id. No.: 0102010757

## Motion For Correction Of An Illegal Sentence.

Comes now, Defendant Pro Se in presenting this Motion for Correction of an Illegal sentence pursuant to Rule 35 (a) Super. Ct. Cr. R. to be heard at the Court's earliest convenience, and in support thereof the following Cause is shown:

1. Defendant was Convicted by entering a "Robinson Plea," before the Hon. J. W. L. Witham.

2. Defendant was sentenced by this Honorable Court on June 16, 2003 before Honorable J. D. Ridgely.

A-1

3. The offenses and length of sentences are:

(a) <u>Burglary 1st Deg.</u>: 20 yrs. Level 5 susp. after 6 yrs. for various levels of probation.

(b) <u>Assault 1st Deg.</u>: 10 yrs. Level 5

(c) <u>P.D.W.D.C.F.</u>: 2 yrs. Level 5

4. The following Grounds with Supporting Facts and excerpts of Law are:

<u>Ground One:</u> The Court violated Ex Post Facto Clause of the United States Constitution Amendment Article I § 10 cl 1, when it imposed the Amended versions of the criminal offenses and guidelines at sentencing.

<u>Supporting Facts:</u> The Court made an error at sentencing when imposing the Amended version of P.D.W.D.C.F. that charged on July 15, 2001 to make any sentence Mandatory without any possible good time statutory or earned; the next error made was the Burglary 1st Degree as Amended by House Bill No. 210 where the charge became a Class B felony as it was originally a Class C prior to enactment.

— 2 —

A-2

-387-

These changes were not procedural but structural changes in the way that left the Defendant to be held to a different Law than when the Crime was Committed as Stated by Law which ultimately left Him to severe Sentencing increases, especially on the Burglary 1st Degree Charge. The original Class C classification not only had different guidelines but the Statutory Maximum was only 10 yrs. (Ex. A)

<u>Excerpts of Law</u>: "Prohibition against ex post facto laws applies only to retroactive penal statutes that disadvantage a defendant." (See <u>Brice V. State</u> Del. Supr. (2003) 815 A.2d 314, n3 quoting U.S.C.A. Const. Art. 1 § 10 cl.1 and Constitutional Law -197 Keys Most Cited Cases.)

   "When the guidelines are amended after the defendant commits a criminal offense, but before he is sentenced, and the amendment provision calls for a more severe penalty than the original one, those guidelines in effect at the time of the offense was committed

— 3 —

A-3
— 388 —

govern the imposition of sentence." (See *U.S. v. Keller* 2nd Cir. (1995) 58 F.3d 884). (Ex. A)

Ground Two: *Apprendi* violation arose when the Court's sentence exceeded the Statutory Maximum on the Burglary 1st Degree charge. (See *Apprendi v. New Jersey* (2000) 530 U.S. 466, 120 S.Ct. 2348)

Supporting Facts: On February 13, 2001 an arrest warrant was issued for Donald R. Cochran where finally on June 16, 2003 Defendant received a 20 year Level 5 suspended after 6 yrs. for various levels of probation Sentence outside the Maximum of 10 years for Burglary 1st Degree at the time the offense was committed as a Class C felony. (Ex. A)

Excerpts of Law: "The U.S. Supreme Court held in *Apprendi* that a criminal defendant's constitutional rights are violated when his prescribed Statutory Maximum penalties are increased by any fact, other than a prior conviction, ..." (see *U.S. v. Vasquez* 3rd Cir. (2001) 271 F.3d 93, 96 —

— 4 —

A-4

quoting _Apprendi_, at 490, 120 S.Ct. 2348). The Delaware Supreme Court will remand as it did in the _Webb_ Court, ( _Webb v. State_, Del. Supr. (2001) 788 A.2d 529 - 2001 WL 1586877). (Ex. A).

Ground Three : Sentence is Unconstitutionally imposed where Counsel was Ineffective to recognize an ExPost Facto Violation and _Apprendi_ violation.

Supporting Facts : On June 16, 2003, Defendant was Sentenced under the New Statutes for P.D.W.D.C.F. that was put in effect on July 17, 2001 and the Burglary 1st Degree that went into effect when House Bill No. 210 was passed in 2002. The Sentence Imposed is clearly Unconstitutional.

Excerpts of Law : Applying the first prong of the _Strickland_ test : Counsel was unprofessionally inaccurate in His performance by failing to notice 2 Constitutional errors that were imposed upon Defendant at sentencing which are Grounds One and Two of this Motion. Applying the second prong of the _Strickland_ test : The Sentence

— 5 —

A-5

390

must now be vacated due to it is still prejudicing the Defendant. (see <u>Strickland v. Washington</u> 466 U.S. 668, 678).

As to Counsel's failure to research the law and Defendant's case. (See <u>Groseclose v. Bell</u> 6th Cir. (1997) 130 F.3d 1161 - "Counsel's failure to interview witnesses, conduct any legal research, or obtain and review any records was ineffective assistance."). (Exs. A, B, and C)

<u>Relief Requested</u>: The Court Impose a new sentence with appointment of new counsel or release Movant due to the magnitude of the Constitutional Violations.

Dated: 12-19-06

Respectfully Submitted
Donald R. Cochran
Donald R. Cochran
# 201992
1181 Paddock Road
Smyrna, DE 19977

— 6 —

A-6
-391-

Westlaw.

788 A.2d 529 (Table)

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.)
**Unpublished Disposition**

**(Cite as: 788 A.2d 529, 2001 WL 1586877 (Del.Supr.))**

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
William J. WEBB, Jr., Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
No. 589, 2000.

Submitted Oct. 26, 2001.
Decided Dec. 7, 2001.
Reargument Denied Jan. 30, 2002.

Court Below--Superior Court of the State of Delaware, in and for New Castle County, Cr.A. Nos. 99-08-0767    99-08-0768    99-08-2482 VN97-03-0286-01.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

ORDER
**\*\*1** This 7th day of December 2001, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, William J. Webb, filed this appeal from the November 27, 2000 order of the Superior Court denying his second motion for postconviction relief pursuant to Superior Court Criminal Rule 61. We find no merit to the appeal. Accordingly, we AFFIRM. Because of an error in Webb's sentence for burglary, however, we REMAND to the Superior Court for the limited purpose of correcting Webb's sentencing order.

(2) In this appeal, Webb claims that the Superior Court abused its discretion by dismissing his second motion for postconviction relief as procedurally barred. Specifically, Webb claims that, because the

Superior Court incorrectly stated that he had not asserted a claim of coercion in his first motion for postconviction relief and because the prosecutor's breach of the plea agreement violated his constitutional rights, the procedural bars should not apply. [FN1] Webb also claims that the Superior Court abused its discretion by denying his motion for transcripts of the plea colloquy and sentencing hearings.

> FN1. Super. Ct.Crim. R. 61(i)(2), (4) and (5).

(3) In March 2000, Webb pleaded guilty to Burglary in the First Degree, Assault in the First Degree and Endangering the Welfare of a Child. He also admitted to violating the terms of a previously imposed period of probation. On the burglary conviction, Webb was sentenced to 12 years incarceration at Level V, to be suspended after 5 years for decreasing levels of probation. [FN2] On the assault conviction, he was sentenced to 30 months incarceration at Level V, to be suspended after 24 months for decreasing levels of probation. On the endangering conviction, he was sentenced to 12 months incarceration at Level V, to be suspended for probation. On the violation of probation, Webb was sentenced to 3 years incarceration at Level V. Webb did not file a direct appeal of his convictions or sentences. He did, however, file two postconviction motions, the second of which he now appeals to this Court.

> FN2. Laudably, the State points out that Webb should not have been sentenced to more than 10 years incarceration at Level V on the burglary conviction. 11 Del. C. §§ 826, 4205(b)(3).

(4) When reviewing a motion under Rule 61, a court must first determine that the motion satisfies the procedural requirements of the rule before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EX. A    A-7

Page 1

788 A.2d 529 (Table)                                                                    Page 2

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.)
**Unpublished Disposition**

**(Cite as: 788 A.2d 529, 2001 WL 1586877 (Del.Supr.))**

addressing any substantive issues. [FN3] Contrary to Webb's allegation, the Superior Court did not dismiss his motion on the ground that he had failed to assert a claim of coercion in his previous motion. Rather, the Superior Court correctly held that, to the extent Webb had asserted claims in his previous motion for postconviction relief that were re-asserted in his present motion and to the extent Webb asserted claims in his present motion that had not been asserted previously, all such claims were procedurally barred. [FN4]

> FN3. *Bailey v. State,* Del.Supr., 588 A.2d 1121, 1127 (1991).

FN4. Super. Ct.Crim. R. 61(i)(2) and (4).

(5) Webb next claims that the prosecutor breached the plea agreement by recommending 28, rather than 20, years of Level V imprisonment at the sentencing hearing. [FN5] Webb alleges that this breach constituted a violation of his constitutional rights and rendered the procedural bars inapplicable. Webb is incorrect that the prosecutor's alleged breach of the plea agreement excuses his procedural default. [FN6] Even if the prosecutor did recommend a sentence in excess of what was agreed to, there was no prejudice to Webb since the total amount of the Level V sentence imposed by the Superior Court was less than 20 years.

> FN5. The plea agreement contains the following language: "State agrees not to recommend more than 20 years L[evel] V."

FN6. Super. Ct.Crim. R. 61(i)(2), (4) and (5).

\*\*2 (6) Webb's final claim that the Superior Court abused its discretion by denying his request for transcripts is also unavailing. It was within the discretion of the Superior Court to determine whether transcripts were needed in order to rule on Webb's motion for postconviction relief. [FN7] There was no error or abuse of discretion on the part of the Superior Court in determining that it was able to rule on the motion without the transcripts.

FN7. Super. Ct.Crim. R. 61(d)(3).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. This matter is REMANDED to the Superior Court for correction of Webb's sentence for Burglary in the First Degree from 12 years incarceration at Level V to 10 years incarceration at Level V. Jurisdiction is not retained.

788 A.2d 529 (Table), 2001 WL 1586877 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$A$-8



SPONSOR: Rep. Smith & Rep. Van Sant &
Rep. Wagner & Rep. DiPinto & Rep.
B. Ennis & Sen. Vaughn & Sen.
Sorenson; Reps. Spence, Lee,
Buckworth, Carey, D. Ennis, Ewing,
Fallon, Hudson, Lavelle, Lofink,
Maier, Oberle, Quillen, Reynolds,
Ulbrich, Valihura, George, Gilligan,
Hall-Long, Houghton, Keeley,
Mulrooney, Plant, Williams; Sens.
McDowell, Blevins, Henry, Marshall,
Peterson, Sokola, Venables, Still,
Simpson, Cloutier

## HOUSE OF REPRESENTATIVES

### 142nd GENERAL ASSEMBLY

### HOUSE BILL NO. 210

AN ACT TO AMEND TITLES 10, 11, 16 AND 21 OF THE DELAWARE CODE RELATING TO CERTAIN CRIMES.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

1        Section 1. Amend § 613 of Title 11 of the Delaware Code by striking the phrase "class C felony" as it appears

2    variously in the catchline and in Subsection (c) of said Section, and by inserting in lieu thereof the phrase "class B

3    felony".

4        Section 2. Amend § 632 of Title 11 of the Delaware Code by striking the phrase "class C felony" as it appears

5    variously in the catchline and last sentence of said Section, and by inserting in lieu thereof the phrase "class B felony".

6        Section 3. Amend § 635 of Title 11 of the Delaware Code by striking the phrase "class B felony" as it appears

7    variously in the catchline and body of said statute, and by inserting in lieu thereof the phrase "class A felony", and by

8    striking the last sentence of said Section.

9        Section 4. Amend § 825 of Title 11 of the Delaware Code by redesignating the existing text of said Section as

10    Subsection "(a)", and by adding new Subsections "(b)" and "(c)" to said Section, to read as follows:

11        "(b)    Notwithstanding any provision of this Section or Code to the contrary, any person convicted of Burglary

12                in the Second Degree shall receive a minimum sentence of:

13            (1) one (1) year at Level V; or

14          (2) three (3) years at Level V, if the conviction is for an offense that was committed within five (5)

15          years of the date of a previous conviction for burglary first or second degree or any offense set forth

16          under the laws of the United States, any other state or any territory of the United States which is the

17          same as or equivalent to such offenses, or if the conviction is for an offense that was committed

18          within five (5) years of the date of termination of all periods of incarceration or confinement

19          imposed pursuant to a previous conviction for burglary first or second degree conviction or for any

20          offense set forth under the laws of the United States, any other state or any territory of the United

21          States which is the same as or equivalent to such offenses.".

22          Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

23          Title.

24    (c)   The sentencing provisions of this subsection apply to attempted burglary in the second degree as well as

25          burglary in the second degree.".

26    Section 5. Amend § 826 of Title 11 of the Delaware Code by redesignating the existing text of said Section as

27    Subsection "(a)", and by adding new Subsections "(b)" and "(c)" to said Section, to read as follows:

28    "(b)   Notwithstanding any provision of this Section or Code to the contrary, any person convicted of Burglary

29          in the First Degree shall receive a minimum sentence of:

30          (1) two (2) years at Level V; or

31          (2) four (4) years at Level V, if the conviction is for an offense that was committed within five (5)

32          years of the date of a previous conviction for burglary first or second degree or any offense set forth

33          under the laws of the United States, any other state or any territory of the United States which is the

34          same as or equivalent to such offenses, or if the conviction is for an offense that was committed

35          within five (5) years of the date of termination of all periods of incarceration or confinement

36          imposed pursuant to a previous conviction for burglary first or second degree conviction or for any

37          offense set forth under the laws of the United States, any other state or any territory of the United

38          States which is the same as or equivalent to such offenses.

39          Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

40          Title.".

HR : JFB : DLR
1341420176



$A-10$

-395-

41      (c)     The sentencing provisions of this subsection apply to attempted burglary in the first degree as well as

42              burglary in the first degree.".

43      Section 6. Amend § 832(b) of Title 11 of the Delaware Code by striking said subsection in its entirety, and by

44      substituting in lieu thereof the following:

45      "(b)    Notwithstanding any provisions of this Section or Code to the contrary, any person convicted of robbery

46              in the first degree shall receive a minimum sentence of:

47              (1) three (3) years at Level V; or

48              (2) five (5) years at Level V, if the conviction is for an offense that was committed within ten (10)

49                  years of the date of a previous conviction for robbery in the first degree or any offense set forth

50                  under the laws of the United States, any other state or any territory of the United States which is the

51                  same as or equivalent to such offense, or if the conviction is for an offense that was committed

52                  within ten (10) years of the date of termination of all periods of incarceration or confinement

53                  imposed pursuant to a previous conviction for robbery in the first degree or for any offense set forth

54                  under the laws of the United States, any other state or any territory of the United States which is the

55                  same as or equivalent to such offense, whichever is the later date.".

56      Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this

57      Title.

58      Section 7. Amend § 1448(e) of Title 11 of the Delaware Code by striking said subsection in its entirety, and by

59      substituting in lieu thereof the following:

60      "(e)    Notwithstanding any provision of this Section or Code to the contrary, any person who is a prohibited

61              person as described in this Section and who knowingly possesses, purchases, owns, or controls a firearm

62              or destructive weapon while so prohibited shall receive a minimum sentence of:

63              (1) one (1) year at Level V;

64              (2) three (3) years at Level V, if the person does so within ten (10) years of the date of conviction for

65                  any violent felony or the date of termination of all periods of incarceration or confinement imposed

66                  pursuant to said conviction, whichever is the later date; or

67              (3) five (5) years at Level V, if the person has been convicted on two or more separate occasions of any

68                  violent felony.

Page 3 of 9

HR : JFB : DLR
1341420176

$A-11$

$-396-$

69         Any sentence imposed pursuant to this subsection shall not be subject to the provisions of § 4215 of this Title.

70         For the purposes of this subsection, "violent felony" means any felony so designated by § 4201(c) of this Title,

71         or any offense set forth under the laws of the United States, any other state or any territory of the United States

72         which is the same as or equivalent to any of the offenses designated as a violent felony by § 4201(c) of this

73         Title.".

74         Section 8. Amend § 4201(c) of Title 11 of the Delaware Code by inserting between the phrases "1447A

75 Possession of a Firearm During the Commission of a Felony" and "1455 Engaging in a Firearms Transaction on Behalf of

76 Another (Subsequent Offense)" the following:

77         "1448(e) Possession of a Deadly Weapon by Persons Prohibited (Firearm or Destructive Weapon Purchased,

78         Owned, Possessed or Controlled by a Violent Felon).".

79         Section 9. Amend § 4205(b)(2) of Title 11 of the Delaware Code by striking the phrase "20 years" as it appears

80 therein, and by substituting in lieu thereof the phrase "25 years".

81         Section 10. Amend § 4205(b)(3) of Title 11 of the Delaware Code by striking the phrase "10 years" as it appears

82 therein, and by substituting in lieu thereof the phrase "15 years".

83         Section 11. Amend § 6712(b) of Title 11 of the Delaware Code by adding a new paragraph "(3)" thereto, to read

84 as follows:

85         "(3)    Burglary in the Second Degree, as set forth in § 825 of Title 11, but only if the defendant has not

86                 previously been convicted of Burglary in the Second Degree or Burglary in the First Degree, as

87                 set forth in § 826 of Title 11.".

88         Section 12. Amend Subsections (d), (e) and (h) of § 6712 of Title 11 of the Delaware Code by striking the phrase

89 "§ 4205 of this Title" as it appears variously therein, and by substituting in lieu thereof the phrase "§ 825, § 826 or § 4205

90 of this Title".

91         Section 13. Amend Subparagraphs (a)(1)a., (a)(2)a., (a)(4)a.,(a)(5)a., (a)(6)a., (a)(7)a., and (a)(9)a. of § 4753A

92 of Title 16 of the Delaware Code by striking the phrase "3 years" as it appears variously therein, and by substituting in

93 lieu thereof the phrase "2 years".

94         Section 14. Amend Subparagraphs (a)(1) b., (a)(2) b., (a)(4) b., (a)(5) b., (a)(6) b., (a)(7) b., and (a)(9) b. of §

95 4753A of Title 16 of the Delaware Code by striking the phrase "5 years" as it appears variously therein, and by

96 substituting in lieu thereof the phrase "4 years".

HR : JFB : DLR
1341420176

$A$ -12

$- 397 -$

97        Section 15. Amend Subparagraphs (a)(1) c., (a)(2) c., (a)(4) c., (a)(5) c., (a)(6) c., (a)(7) c., and (a)(9) c. of §

98    4753A of Title 16 of the Delaware Code by striking the phrase "15 years" as it appears variously therein, and by

99    substituting in lieu thereof the phrase "8 years".

100        Section 16. Amend § 4753A(a)(2) of Title 16 of the Delaware Code by striking the phrase "5 grams" as it

101    appears therein, and by substituting in lieu thereof the phrase "10 grams".

102        Section 17. Amend § 4753A(a)(2) a. of Title 16 of the Delaware Code by striking the phrase "5 grams" as it

103    appears therein, and by substituting in lieu thereof the phrase "10 grams".

104        Section 18. Amend § 4763(a) of Title 16 of the Delaware Code by striking said subsection in its entirety, and by

105    substituting in lieu thereof the following:

106        "(a)    *Previous convictions.* −  In any case in which a defendant has previously been convicted of any offense set

107            forth in §§ 4751, 4752, 4753A or 4761 of this Title, or of any offense set forth under the laws of the

108            United States, any other state or any territory of the United States which is the same as or equivalent to

109            any of such offenses, the penalties set forth in §§ 4751 − 4761 of this Title shall be increased as follows:".

110        Section 19. Amend § 4763(a)(1) of Title 16 of the Delaware Code by striking the phrase "Subject to paragraph

111    (3) of this subsection," as it appears in the first sentence of said paragraph.

112        Section 20. Amend § 4763(a)(2) of Title 16 of the Delaware Code by striking the phrase "Subject to paragraph

113    (3)" as it appears in the first sentence of said paragraph.

114        Section 21. Amend § 4763(a)(1) of Title 16 of the Delaware Code by striking subparagraphs c. and d. of said

115    paragraph in their entirety, and by substituting in lieu thereof the following:

116        "c. § 4751 (excepting heroin or any mixture containing heroin) or § 4752, five (5) years.

117        d. § 4751 (heroin or any mixture containing heroin), ten (10) years.

118        Section 22. Amend § 4763(a)(2) of Title 16 of the Delaware Code by striking Subparagraphs a. and b. of said

119    paragraph in their entirety, and by substituting in lieu thereof the following:

120        "a.    § 4751 (excepting heroin or any mixture containing heroin) or § 4752, 3 years.

121        b.    § 4751 (heroin or any mixture containing heroin), 5 years.".

122        Section 23. Amend § 4763(a)(3) of the Delaware Code by striking said paragraph in its entirety.

123        Section 24. Amend § 4763 of Title 16 of the Delaware Code by adding a new Subsection "(d)" thereto, to read as

124    follows:

Page 5 of 9

HR : JFB : DLR
1341420176

A-13
- 398 -

125    "(d)    *Substance abuse treatment* – Notwithstanding any provision of this Section, Title or Code to the contrary,

126            the Department of Correction shall have the authority and discretion during the last 180 days of any Level

127            V sentence imposed pursuant to this Chapter to place the defendant at Level IV.".

128        Section 25. Amend § 921(2) a. of Title 10 of the Delaware Code by inserting between the phrases "unlawful

129    sexual intercourse in the first degree," and "kidnapping in the first degree" as they appear therein the following:

130            "assault in the first degree, robbery in the first degree,".

131        Section 26. Amend § 921(2) b. of Title 10 of the Delaware Code by striking the phrase "robbery in the first or

132    second" as it appears therein, and by substituting in lieu thereof the phrase "robbery in the second degree".

133        Section 27. Amend § 1009(e) of Title 10 of the Delaware Code by adding a new Subsection "(k)" thereto, to read

134    as follows:

135    "(k)    Subject to the provisions governing amenability pursuant to § 1010 of this Title, the Court shall commit a

136            delinquent child to the custody of the Department of Services for Children, Youth and Their Families if

137            the child who has been adjudicated delinquent by this Court of one (1) or more offenses which would

138            constitute either Possession of a Firearm During the Commission of a Felony or Robbery First Degree

139            (where such offense involves either the display of a deadly weapon or the infliction of serious physical

140            injury upon any person who was not a participant in the crime) were the child charged as an adult under

141            the laws of this State. Such child is declared a child in need of mandated institutional treatment, and this

142            Court shall commit the child so designated to the Department of Services for Children, Youth and Their

143            Families for at least a twelve (12) month period of institutional confinement.".

144        Section 28. Amend § 1010(a)(1) by inserting between the phrases "rape in the second degree" and "or

145    kidnapping in the first degree" as they appear therein the following:

146            ", assault in the first degree, robbery in the first degree".

147        Section 29. Amend § 4205 of Title 21 of the Delaware Code by creating a new Subsection "(c)" thereto to

148    provide as follows:

149    "(c)    (1)    For offenses under this Title, except those which involve injury or death caused to another person

150                by the person's driving or operation of the vehicle or which involve a driving under the influence-

151                related conviction or offense as defined in § 4177B(e)(1) a. –d., the terms of imprisonment

152                          defined in this Title may be served at Supervision Accountability Level IV as defined in

153                          § 4204(c)(4) of Title 11.

154         (2)     For offenses under this Title which involve injury caused to another person by the person's

155                          driving or operation of the vehicle or a driving under the influence-related conviction or offense

156                          as defined in §4177B(e)(1)a.–d., any term of imprisonment defined in this Title shall be served at

157                          Supervision Accountability Level V as defined in §4204(c)(5) of Title 11 or at Supervision

158                          Accountability Level IV as defined in §4204(c)(4) of Title 11 provided that such Level IV

159                          placement must be served in a Department of Correction facility which requires full-time

160                          residence at the facility and that the person may not be outside the confines of that facility

161                          without armed supervision.

162         (3)     For offenses under this Title which involve death caused to another person by the person's

163                          driving or operation of the vehicle any term of imprisonment defined in this Title shall be served

164                          at Supervision Accountability Level V as defined in § 4204(c)(5) of Title 11.".

165          Section 30. Amend § 2756(a) of Title 21 of the Delaware Code by striking the phrase "from a violation of § 4177

166 of this Title or a local ordinance substantially conforming thereto," and by inserting in lieu thereof the following:

167          "from a prior or previous driving under the influence-related conviction or offense as defined in § 4177B(e)(1)a.

168 –d. of this Title,".

169          Section 31. Amend § 2756(b) of Title 21 of the Delaware Code by striking the second sentence thereto in its

170 entirety and by inserting in lieu thereof the following:

171          "In addition, for any offense under this Section, if the suspension or revocation resulted from a violation

172 of any criminal statute pertaining to injury or death caused to another person by the person's driving or operation

173 of a vehicle or a driving under the influence-related conviction or offense as defined in § 4177B(e)(1) a. –d. of

174 this Title, the minimum fine shall be $2,000 and shall not be subject to suspension and the minimum period of

175 imprisonment shall not be subject to suspension but shall, notwithstanding any provision of this Section or Title

176 to the contrary, be served subject to the provisions of § 4205(c)(2) of this Title.".

177          Section 32. Amend § 2810 of Title 21 of the Delaware Code by striking the sentence "The periods of

178 imprisonment required under this Section shall not be subject to suspension." as it appears therein, and by substituting in

179 lieu thereof the following:

HR : JFB : DLR
1341420176

A - 15

180        "The periods of imprisonment required under this Section shall not be subject to suspension and if the

181        judgment of the Court prohibiting the operation of a motor vehicle was based in whole or in part upon a

182        conviction of the person for a prior or previous driving under the influence-related conviction or offense as

183        defined in § 4177B(e)(1) a. –d., or in whole or in part upon a conviction under any criminal statute pertaining to

184        injury or death caused to another person by the person's driving or operation of a vehicle, the period of

185        imprisonment shall, notwithstanding any provision of this Section or Title to the contrary, be served subject to

186        the provisions of § 4205(c)(2) of this Title."..

## SYNOPSIS

This Act will ensure that Delaware's prison space is reserved for violent offenders. The penalties currently available to punish offenders convicted of certain violent crimes are inadequate to protect society from them, and are insufficient to deter others from committing similar crimes. The prison space necessary to accommodate this toughening of our sentencing practices will be created by reallocating prison beds currently devoted to certain drug and motor vehicle offenders. Adoption of this Act is recommend by Delaware's Sentencing Accountability Commission (SENTAC).

The changes to Delaware's criminal sentences are summarized below:

| CRIME | CURRENT SENTENCE | NEW SENTENCE |
|---|---|---|
| Murder Second Degree | 10 year minimum and 20 year maximum prison sentence | 15 year minimum prison sentence and maximum sentence of life imprisonment |
| Manslaughter | No minimum prison sentence and 10 year maximum prison sentence | 2 year minimum and 20 year maximum prison sentence |
| Assault First Degree | No minimum prison sentence and 10 year maximum prison sentence | 2 year minimum and 20 year maximum prison sentence |
| Robbery First Degree (1st offense) | Minimum 2 year prison sentence | Minimum 3 year prison sentence |
| Robbery First Degree (2nd offense) | Minimum 4 year prison sentence | Minimum 5 year prison sentence |
| Burglary First Degree | No minimum prison sentence | Minimum 2 year prison sentence |
| Burglary First Degree( 2nd offense) | No minimum prison sentence | Minimum 4 year prison sentence |
| Burglary Second Degree (1st offense | No minimum prison sentence | Minimum 1 year prison sentence |
| Burglary Second Degree (2nd offense) | No minimum prison sentence | Minimum 3 year prison sentence |
| Possession of a Firearm By a Person Prohibited (by a prior violent felony conviction) | 1 year minimum prison sentence | 3 year minimum prison sentence if violent felony conviction within the preceding 10 years |
| All Class B felonies | 20 year maximum prison sentence | 25 year maximum prison sentence |
| All Class C felonies | 10 year maximum prison sentence | 15 year maximum prison sentence |
| Trafficking in Illegal Drugs: First Weight Level | 3 year mandatory minimum prison sentence | 2 year mandatory minimum prison sentence (excepting heroin) |
| Trafficking in Illegal | 5 year mandatory minimum prison | 4 year mandatory minimum prison |

HR : JFB : DLR
1341420176

A-16

| Drugs: Second Weight Level | sentence | sentence (excepting heroin) |
| Trafficking in Illegal Drugs: Third Weight Level | 15 year mandatory minimum prison sentence | 8 year mandatory minimum prison sentence (excepting heroin) |
| Manufacture/ Delivery/Possession with Intent to Deliver Illegal Drugs (Second Offense) | 15 year mandatory minimum prison sentence | 3 year mandatory minimum prison sentence for all drugs except heroin; 5 year mandatory minimum prison sentence for heroin |
| **CRIME** | **CURRENT SENTENCE** | **NEW SENTENCE** |
| Manufacture/ Delivery/Possession with Intent to Deliver Illegal Drugs (with prior drug offense) | 3 year mandatory minimum prison sentence for all drugs except narcotics; 5 year mandatory minimum prison sentence for narcotics | 3 year mandatory minimum prison sentence for all drugs except heroin; 5 year mandatory minimum prison sentence for heroin |

In addition to the changes set forth above, the Act will also increase the minimum weight of cocaine necessary to establish the crime of Trafficking in Cocaine from 5 grams to 10 grams. In order to facilitate substance abuse treatment for those offenders most likely to need it, the Department of Correction is authorized to house any defendant serving a prison sentence for any drug offense at Level IV during the last 180 days of any such sentence.

The Department of Correction will also be authorized to house defendants convicted of most Title 21 traffic offenses at Level IV. Defendants in Title 21 cases involving injury or intoxication who are sentenced to Level V will be housed at either Level V or the Violation of Probation Center, at the discretion of the Department. Defendants in motor vehicle cases involving death who are sentenced to incarceration will continue to be housed at Level V.

The Act will combat the alarming rise in the number of armed robberies and violent assaults committed by juveniles by transferring original jurisdiction over the crimes of Robbery First Degree and Assault First Degree from the Family Court to the Superior Court. By doing so, the Act provides the Superior Court with discretion to either retain jurisdiction over such cases, thereby substantially increasing the range of available penalties, or to transfer the case back to the Family Court for prosecution. In order to provide a meaningful deterrent to the commission of armed violent crimes by juveniles, the Act also establishes a one (1) year mandatory commitment to the custody of the Department for Children, Youth and Their Families for any juvenile adjudicated delinquent in the Family Court for acts constituting the felonies of Possession of a Firearm During the Commission of a Felony or Robbery in the First Degree (where either a deadly weapon is displayed or serious physical injury is caused to the victim).

HR : JFB : DLR
1341420176

$A$-$17$

Westlaw.

DE ST TI 11 § 826                                        Page 1
 11 Del.C. § 826



▷
DELAWARE CODE ANNOTATED
TITLE 11. CRIMES AND CRIMINAL PROCEDURE
PART I. DELAWARE CRIMINAL CODE
CHAPTER 5. SPECIFIC OFFENSES
SUBCHAPTER III. OFFENSES INVOLVING PROPERTY
SUBPART B. CRIMINAL TRESPASS AND BURGLARY
           § 826  Burglary in the first degree; class C felony.

(a) A person is guilty of burglary in the first degree when the person knowingly
enters or remains unlawfully in a dwelling at night with intent to commit a crime
therein, and when, in effecting entry or when in the dwelling or in immediate
flight therefrom, the person or another participant in the crime:

    (1) Is armed with explosives or a deadly weapon; or

    (2) Causes physical injury to any person who is not a participant in the crime.

Burglary in the first degree is a class C felony, except where the person who
suffers physical injury is a person 62 years of age or older in which case any
violation of this section shall be a class B felony.

(b) Notwithstanding any provision of this section or Code to the contrary, any
person convicted of burglary in the first degree shall receive a minimum sentence
of:

    (1) Two years at Level V; or

    (2) Four years at Level V, if the conviction is for an offense that was
    committed within 5 years of the date of a previous conviction for burglary
    first or second degree or if the conviction is for an offense that was
    committed within five (5) years of the date of termination of all periods of
    incarceration or confinement imposed pursuant to a previous conviction for
    burglary first or second degree conviction.

    Any sentence imposed pursuant to this subsection shall not be subject to the
    provisions of § 4215 of this title.

(c) The sentencing provisions of subsection (b) of this section apply to attempted
burglary in the first degree as well as burglary in the first degree.

(11 Del. C. 1953, § 826; 58 Del. Laws, c. 497, § 1; 67 Del. Laws, c. 130, § 8;
70 Del. Laws, c. 186, § 1; 73 Del. Laws, c. 126, § 8; 74 Del. Laws, c. 106, § 5;
74 Del. Laws, c. 345, § 5.)

            <General Materials (GM) - References, Annotations, or Tables>


NOTES, REFERENCES, AND ANNOTATIONS    Ex. C

        ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



A-18

**Effect of amendments.** -- 74 Del. Laws, c. 106, effective June 30, 2003, added (b) and (c).

74 Del. Laws, c. 345, effective July 12, 2004, deleted "or any offense set forth under the laws of the United States, any other state or any territory of the United States which is the same as or equivalent to such offenses" following the first appearance of "second degree" and deleted "or for any offense set forth under the laws of the United States, any other state or any territory of the United States which is the same as or equivalent to such offenses" following "second degree conviction" in the first paragraph of (b)(2).

**Lesser included offense.** -- Criminal trespass in the first degree, under § 823 of this title, is a lesser included offense of burglary under this section. Gates v. State, 424 A.2d 18 (Del. 1980).

**Where the State failed to introduce into evidence the official time of sunrise on the date of the burglary,** the State did not carry its burden of proving the "at night" element of first degree burglary. Blankenship v. State, 447 A.2d 428 (Del. 1982).

**Proof of possession of deadly weapon.** -- To establish the element of possession of a deadly weapon, the State does not need to prove that an unrecovered gun was capable of firing a projectile as required by 11 Del. C. § 222(10). O'Neil v. State, 691 A.2d 50 (Del. 1997).

There was sufficient evidence to support defendant's conviction for possession of a firearm during the commission of a felony in violation of 11 Del. C. § 1447A, and for burglary in the first degree, where the record revealed that the defendant burst into an apartment, demanded a gun from the occupant, who gave defendant a locked safe box containing the gun, where in immediate flight after leaving the apartment, defendant smashed the safe box and obtained the gun; the court indicated that where the weapon was acquired during the "immediate flight" from the burglary, which included the time during which defendant was actively fleeing the scene, the evidence was sufficient to support a finding of possession. Redding v. State, 832 A.2d 1252 (Del. 2003).

**Untimely postconviction motion.** -- Where defendant did not appeal convictions or sentences for unlawful sexual intercourse, burglary, and robbery to the state Supreme Court and where defendant's motion for postconviction relief was filed more than three years after sentencing, the motion was procedurally barred by Super. Ct. Crim. R. 61(i)(1) because defendant did not allege a newly recognized right. State v. Akins, -- A.2d -- (Del. Super. Ct. Feb. 26, 2003).

**11 Del.C. § 826, DE ST TI 11 § 826**

Current through the First Regular Session of the 143rd General Assembly
75 Del. Laws, Ch. 222 (2005)

Delaware Code Annotated. Copyright © 2005 by the State of Delaware.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-19

DE ST TI 11 § 826
**11 Del.C. § 826**

All rights reserved.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$A - 2b$

## Certificate of Service

I, _DonalD Cochran_, hereby certify that I have served a true

and correct cop(ies) of the attached: _Motion For CorRetion of an_

_ILLegal Sentence_ _____ upon the following

parties/person (s):

TO: _Kent County Prothonotary_ TO: _____

_. 38 The Green_ _____

_Dover Delaware_ _____

_____ _. 1990 l_ _____

_____ _____

TO: _John William D.A.G._    TO: _____

_Delaware Department of Justice_ _____

_102 W. Water Street_ _____

_Dover, Delaware_ _____

_____ _19904 -6750_ _____

_____ _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this __19__ day of _December_ _____. 2006

_Donald Cochran #201992_

_D. D.C._
_1181 Paddock Road_
_Smyrna, Delaware_
_A -21           19977_

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR _Kent_ COUNTY

_.ATE OF DELAWARE_ )   ID: _0102010757_

v. )

_Donald Cochran_ )   CRA: _____

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth _4-21-61_   Last grade in school completed _12+h_

| | | |
|---|---|---|
| Have you ever been a patient in a mental hospital? | ☒ Yes ☐ No |
| Are you under the influence of alcohol or drugs at this time? | ☐ Yes ☒ No |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | ☒ Yes ☐ No |
| Have you been promised anything that is not stated in your written plea agreement? | ☐ Yes ☒ No |
| Has your attorney, the State, or anyone threatened or forced you to enter this plea? | ☐ Yes ☒ No |

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
(1) to be **presumed innocent** until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
(2) to a **speedy and public trial**;
(3) to **trial by jury**;
(4) to **hear and question the witnesses** against you;
(5) to **present evidence** in your defense;
(6) to **testify** or not testify yourself; and,
(7) to **appeal** to a higher court?

☒ Yes ☐ No

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---|---|---|---|
| | Incarceration | Amount of Fine (range if applicable) | |
| Burg I | 20 yrs | 2,300 | 2 yr mm / 2-5 < 5 |
| Assault II | 10 20 yrs | '' | up to 30 mos |
| P DW DCF | 20 yrs | Fin '' | 2 yr mm / 2-5 yrs 4 |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:** Incarceration: _50_   Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

| | | |
|---|---|---|
| Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year? | ☒ Yes ☐ No |
| Is there a minimum mandatory penalty? | ☒ Yes ☐ No |
| If so, what is it? _4 yrs_ | |
| Is there a mandatory revocation of driver's license or privileges for this offense or as a result of your plea? | ☐ Yes ☒ No |
| If so, what is the length of revocation? _____ years | |
| Has anyone promised you what your sentence will be? | ☐ Yes ☒ No |
| Were you on probation or parole at the time of this offense? (A guilty plea may constitute a violation.) | ☒ Yes ☐ No |
| Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be a juror, to hold public office, and other civil rights? | ☒ Yes ☐ No |
| Have you been advised that this is an offense which results in the loss of the right to own or possess a deadly weapon? | ☒ Yes ☐ No |
| Have you been advised that this is an offense which requires registration as a sex offender? | ☐ Yes ☒ No |
| Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea? | ☒ Yes ☐ No |
| Have you read and understood all the information contained in this form? | ☒ Yes ☐ No |

_Joseph M B_____+_   _2-3-03_   X _Donald Cochran_

Defense Counsel   Date   Defendant

Print name: _Joseph Bernstein #780_   Print name: _Donald Cochran._

IN THE SUPREME COURT OF THE STATE OF DELAWARE

# COPY

## Transaction No. 14440024

DONALD R. COCHRAN,           )
                             )
        Defendant-Below,     )
        Appellant            )
                             )
    v.                       )        Nos. 50, 2007 and
                             )              51, 2007
                             )
STATE OF DELAWARE,           )        CONSOLIDATED
                             )
        Plaintiff-Below,     )
        Appellee             )

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

**STATE'S ANSWERING BRIEF**

Loren C. Meyers
Chief of Appeals Division
Del. Bar ID 2210
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-8500

April 10, 2007

_408-

**TABLE OF CONTENTS**

TABLE OF CITATIONS.............................................ii

NATURE AND STAGE OF THE PROCEEDINGS..............................1

SUMMARY OF THE ARGUMENT..........................................2

STATEMENT OF FACTS...............................................4

ARGUMENT

    I.    COCHRAN'S SENTENCE FOR POSSESSION OF A
           DEADLY WEAPON DURING THE COMMISSION OF
           A FELONY WAS CORRECT..................................6

    II.   COCHRAN'S CHALLENGE TO HIS SENTENCE FOR
           BURGLARY IS MOOT BECAUSE THE SENTENCE
           WAS CORRECTED BY SUPERIOR COURT.......................9

    III.  COCHRAN MADE OUT NO CLAIM OF INEFFECTIVE
           ASSISTANCE IN RESPECT TO HIS SENTENCE................11

    IV.   COCHRAN'S CLAIM OF INEFFECTIVE ASSISTANCE
           REGARDING HIS GUILTY PLEA WAS NOT PRESENTED
           TO SUPERIOR COURT AND CAN NOT BE CONSIDERED NOW......13

    V.    SUPERIOR COURT IMPROPERLY CORRECTED
           COCHRAN'S SENTENCE WITHOUT BRINGING
           COCHRAN INTO COURT, THUS REQUIRING
           RESENTENCING OF COCHRAN ON THE
           BURGLARY CONVICTION..................................14

CONCLUSION......................................................15

*State v. McAllister*, 2001 WL 1448499
    (Del. Super. Oct. 3, 2001).............................Ex. A

*Rust v. Kearney*, 2001 WL 1628445
    (Del. Super. Sept. 27, 2001)...........................Ex. B

*Rust v. State*, 2002 WL 1316245
    (Del. June 12, 2002)...................................Ex. C

*Stevens v. State*, 1992 WL 151317
    (Del. June 17, 1992)...................................Ex. D

**TABLE OF CITATIONS**

## Cases

*Allen v. State*, 509 A.2d 87 (Del. 1986)....................... 13

*Apprendi v. New Jersey*, 530 U.S. 466 (2000).............. 2,4,10

*Duross v. State*, 494 A.2d 1265 (Del. 1985)................... 13

*Fullman v. State*, 431 A.2d 1260 (Del. 1981)................ 3,14

*Jones v. State*, 672 A.2d 554 (Del. 1996)................... 3,14

*Richmond v. State*, 446 A.2d 1091 (Del. 1982) ...................7

*Rust v. Kearney*, 2001 WL 1628445
   (Del. Super. Sept. 27, 2001).............................. 7

*Rust v. State*, 2002 WL 1316245
   (Del. June 12, 2002).......................................8

*State v. McAllister*, 2001 WL 1448499
   (Del. Super. Oct. 3, 2001) ............................... 7,8

*Stevens v. State*, 1992 WL 151317
   (Del. June 17, 1992).......................................10

*Walls v. State*, 560 A.2d 1038 (Del. 1989) .....................14

*Watson v. Burgan*, 610 A.2d 1364 (Del. 1992)................... 7

## Statutes

Del. Code Ann. tit. 11, §826 (Repl. 1995) ......................9

Del. Code Ann. tit. 11, §832(c) (Repl. 1979) ...................7

Del. Code Ann. tit. 11, §1447 (Repl. 1987) .....................6

Del. Code Ann. tit. 11, §4205(b)(3) (Repl. 1995) ...............9

73 Del. Laws ch. 107 ...........................................6

Supr. Ct. R. 8 ............................................... 13

Super. Ct. Crim. R. 35(b) .....................................11

## **NATURE AND STAGE OF THE PROCEEDINGS**

The grand jury indicted Donald Cochran in January 2002, charging him with first degree burglary, first degree assault, and several related offenses. On February 3, 2003, Cochran entered a *Robinson* plea to first degree burglary, first degree assault, and possession of a deadly weapon during the commission of a felony. In December 2006, Cochran moved to correct his sentence. In January 2007, Superior Court granted the motion in part and denied the motion in part. Cochran then filed two appeals: No. 50, 2007 challenges Superior Court's disposition of the motion to correct the sentence, and No. 51, 2007 is directed at the corrected sentencing order Superior Court issued. The two appeals were subsequently consolidated on Cochran's motion. This is the State's answering brief.

1

## SUMMARY OF ARGUMENT

1. Appellant's arguments 1 and 5 are denied. Cochran's sentence for possession of a deadly weapon during the commission of a felony could not be reduced by good time credit, even if there was no reference in the particular statute to good time credit.

2. Appellant's arguments 1 and 2 are denied. Cochran complained that the burglary sentence initially imposed violated the Ex Post Facto Clause and the rule set out in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Superior Court corrected the sentence, however, and Cochran's arguments in this regard are moot.

3. Appellant's argument 3 is denied. Cochran made out no claim of ineffective assistance of counsel in the context of his weapons sentence. Cochran could not earn good time credit on the weapons sentence, and there was no basis for counsel to make any objection. There was admittedly an error in the burglary sentence, but that sentence was corrected, thus affording Cochran all the relief he would have received.

4. Appellant's argument 4 is denied. Cochran did not claim below that counsel had been ineffective in the context of the guilty plea proceedings. As a result, review is unwarranted under Rule 8. In addition, any error is not "plain" within the meaning of Rule 8 because this Court has previously rejected a claim identical to that now made by Cochran.

5. Appellant's argument 6 is admitted. Cochran should have been brought before the court, with representation by counsel,

2

for purposes of resentencing him on the burglary conviction.

*Jones v. State*, 672 A.2d 554 (Del. 1996); *Fullman v. State*, 431 A.2d 1260, 1264-65 (Del. 1981).

## STATEMENT OF FACTS

The grand jury in January 2002 indicted Donald Cochran, charging him with first degree burglary, first degree assault, possession of a deadly weapon during the commission of a felony, and additional related offenses. The charges stemmed from Cochran's invasion of the home of Mary Naylor in Smyrna on the evening of February 12, 2001. Cochran was looking for Naylor's son, Thomas, whom he had reason to believe was with Cochran's former girlfriend. Once inside the house, Cochran assaulted Mary Naylor, punching her in the face and hitting her on the head with a beer bottle. (B9-10, 15, 19-20).

On February 3, 2003, Cochran entered a *Robinson* plea to first degree burglary, first degree assault, and the weapons offense. (B13-40). Cochran was sentenced on June 16, 2003: Superior Court imposed, for the burglary conviction, a sentence of 20 years imprisonment, suspended after 6 years and to be followed by 9 months at Level IV work release and a total of 2 years probation. For the assault conviction, Cochran was sentenced to 10 years imprisonment; for the weapons conviction, Cochran was sentenced to 2 years imprisonment, the sentence being termed mandatory. (B41-42).

Cochran moved in December 2006 to correct his sentence. According to Cochran, the sentences imposed on the burglary and weapons convictions violated the Ex Post Facto Clause because he was sentenced under provisions that had not been in effect when he committed the crime. (A2-4). Cochran also alleged that the burglary sentence was imposed in violation of *Apprendi v. New*

4

*Jersey*, 530 U.S. 466 (2000), the sentence imposed being greater than the statutory maximum. (A4-5). Finally, Cochran complained that counsel had been ineffective in failing to recognize the errors in the sentences imposed for the burglary and weapons convictions. (A5-6). Superior Court agreed with Cochran as to the burglary conviction, and the court corrected that sentence. (B48, 51). However, Superior Court rejected Cochran's argument with respect to the weapons sentence and denied that part of the motion. (B54-55).

## I.   COCHRAN'S SENTENCE FOR POSSESSION
##      OF A DEADLY WEAPON DURING THE
##      COMMISSION OF A FELONY WAS CORRECT.

### Standard and Scope of Review

The decision of the Superior Court to deny a motion to correct a sentence is subject to plenary review on appeal.

### Argument[1]

Cochran was indicted in February 2001, being charged *inter alia* with possession of a deadly weapon during the commission of a felony ("PDWDCF") (Del. Code Ann. tit. 11, §1447). Cochran pled guilty, on the day he was to go to trial, to first degree burglary, first degree assault, and possession of a deadly weapon during the commission of a felony. In exchange, the prosecution agreed to enter *nolle prosequis* on the remaining counts of the indictment and to recommend no more than 18 years imprisonment at sentencing. (B11). Superior Court sentenced Cochran on the weapons offense to two years imprisonment, the two-year term being designated as mandatory. (B42).

Cochran, in December 2006, moved to correct the sentence imposed upon him for the weapons conviction. According to him, when he committed the crime in February 2001, a sentence for PDWDCF could be reduced by good time. In July 2001, the legislature amended the PDWDCF statute to prohibit the reduction of any PDWDCF sentence by good time. 73 Del. Laws ch. 107 (eff. July 9, 2001). Cochran complained that his sentence reflected the July 2001 amendment and that his sentence was thus more harsh than the law provided at the time he committed the crime. As a

---

[1] This argument responds to arguments 1 and 5 in the opening brief.

6

result, Cochran contended that the sentence violated the Ex Post Facto Clause. (A2-4). In January 2007, Superior Court denied relief on this particular claim, writing "that the law in effect in 2001 which applied to this case" provided that no sentence imposed for conviction of PDWDCF could be reduced by good time credit. (B55).

Contrary to Cochran's thinking, Superior Court was correct in denying relief on the weapons sentence because Cochran's premise is wrong. At the time of Cochran's offense, section 1447(b) read that "[n]o person convicted for a violation of this section shall be eligible for parole or probation during the period of the sentence imposed." In *Richmond v. State*, 446 A.2d 1091 (Del. 1982), this Court interpreted identical language[2] appearing in the first degree robbery statute to mean that a minimum mandatory sentence could not be reduced by good time credits. 446 A.2d at 1093-95. *See also Watson v. Burgan*, 610 A.2d 1364 (Del. 1992) (assumption that sentence for PDWDCF is mandatory and can not be reduced by good time credit). Consistent with *Richmond*, Superior Court has interpreted that precise language in section 1447(b) and in several statutes defining drug offenses to mean that the defendant's sentence can not be reduced by good time credit, even if there is no reference in the particular statute to good time credit. *State v. McAllister*, 2001 WL 1448499 (Del. Super. Oct. 3, 2001) (Ex. A); *Rust v. Kearney*, 2001 WL 1628445 (Del. Super. Sept. 27, 2001)

---

[2] "[N]o person convicted under this section shall be eligible for probation or parole during the first 3 years of such sentence." Del. Code Ann. tit. 11, §832(c) (Repl. 1979).

(Ex. B), *aff'd on other grounds*, 2002 WL 1316245 (Del. June 12, 2002) (Ex. C). As the Superior Court wrote in *McAllister*, "the legislature's addition of the words 'good time' to parole and probation ineligiblity changed nothing substantive. The addition of those words [to section 1447(b)], therefore, only made more clear the prohibition on awarding good time." 2001 WL 1448499, at *1.

In light of *Richmond*, as applied in *McAllister* and *Rust*, Cochran, when he committed his offense in February 2001, could not have his sentence for PDWDCF reduced by good time credit. There was, therefore, no change in the sentencing provisions applicable to Cochran, and he certainly was not subjected to more severe punishment than allowed in February 2001. Cochran thus stated no ex post facto claim, and Superior Court correctly denied relief.

## II.   COCHRAN'S CHALLENGE TO HIS SENTENCE FOR BURGLARY IS MOOT BECAUSE THE SENTENCE WAS CORRECTED BY SUPERIOR COURT.

### Standard and Scope of Review

The decision of the Superior Court to deny a motion to correct a sentence is subject to plenary review on appeal.

### Argument[3]

Cochran was indicted in February 2001, being charged *inter alia* with having committed first degree burglary on the evening of February 12, 2001.  At the time of the offense, first degree burglary was classfied as a class C felony, punishable by 0 to 10 years imprisonment.  Del. Code Ann. tit. 11, §§826, 4205(b)(3) (Repl. 1995).  In July 2001, section 826 was amended to provide that if the burglar caused physical injury (§826(2)) to a person 62 years of age or older, then the crime was classified as a class B felony, punishable by 2 to 20 years imprisonment. Cochran's victim was over 62 years old, and at sentencing, Cochran was sentenced, on the burglary count, to 20 years imprisonment, suspended after 6 years and to be followed by 9 months at Level IV work release and a total of 2 years probation. (Bxx).

In his motion to correct the sentence, Cochran alleged that the sentence imposed on him for the burglary conviction was illegal because it reflected the July 2001 amendment, not the version in place when he committed the offense.  (A2-5). Superior Court agreed with Cochran and corrected the sentence,

---

[3] This argument responds to arguments 1 and 2 in the opening brief.

9

reducing the sentence to 10 years imprisonment, suspended after 6 years and to be followed by 9 months at Level IV work release and a total of 2 years probation.  (B48-49).  On appeal, Cochran complains that the burglary sentence initially imposed violated the Ex Post Facto Clause and the rule set out in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Because Superior Court has corrected the sentence, however, Cochran's arguments in this regard are moot, *Stevens v. State*, 1992 WL 151317, order at ¶¶3-4 (Del. June 17, 1992) (Ex. D), and he offers no basis to overturn the Superior Court decision.

## III. COCHRAN MADE OUT NO CLAIM OF INEFFECTIVE ASSISTANCE IN RESPECT TO HIS SENTENCE.

### Standard and Scope of Review

The decision of the Superior Court to deny a motion to correct a sentence is subject to plenary review on appeal.

### Argument

In his motion to correct the sentence, Cochran charged that the sentence had been illegally imposed because his attorney had provided ineffective assistance, failing to notice the supposed ex post facto errors in the weapons and burglary sentences and the alleged *Apprendi* error affecting the burglary sentence. (A5-6). Superior Court did not address the issue in its order (B54-55), and Cochran renews the argument on appeal.

But Cochran clearly was not entitled to relief on his claim. Assuming for the moment that a claim of ineffective assistance of counsel at sentencing is cognizable under Criminal Rule 35(a), Cochran's motion was untimely. Criminal Rule 35(a) allows Superior Court to correct a sentence imposed in an illegal manner within the time allowed for motions for reduction of sentence. In turn, Criminal Rule 35(b) requires that such a motion be made within 90 days after the imposition of sentence; a motion made outside the 90 day window will be considered only if the defendant establishes "extraordinary circumstances." Cochran's motion was made well past the 90 day deadline, Cochran having been sentenced in June 2003, and the motion set out nothing that would allow Superior Court to conclude that there existed

11

-421-

"extraordinary circumstances" warranting consideration of the motion.

In any event, Cochran made out no claim of ineffective assistance. To the extent that Cochran complained about counsel's failure to detect the error in the weapons sentence, there was no such error. As explained in argument I, *supra*, Cochran could not earn good time credit on the weapons sentence, and there was no basis for counsel to make any objection. There was admittedly an error in the burglary sentence, but that sentence was corrected, thus affording Cochran all the relief he would have received. Given the correction of the burglary sentence, there is no basis for overturning the Superior Court decision.

**IV.  COCHRAN'S CLAIM OF INEFFECTIVE
       ASSISTANCE REGARDING HIS GUILTY
       PLEA WAS NOT PRESENTED TO SUPERIOR
       COURT AND CAN NOT BE CONSIDERED
       NOW.**

### Standard and Scope of Review

Because Cochran's claim of ineffective assistance of counsel
in connection with his guilty plea was not presented to Superior
Court, the issue is reviewable on appeal, if at all, only for
plain error.  Supr. Ct. R. 8.

### Argument

During the plea colloquy, Cochran was advised that the
maximum sentence for first degree burglary was 20 years
imprisonment.  (B24).  Cochran now argues, for the first time,
that his plea was defective because he was given incorrect
information about the maximum sentence.  Cochran also complains
that counsel was ineffective in giving him incorrect information
about his sentencing exposure.  Those two claims were not
presented to the Superior Court, and review at this stage is
foreclosed.  Supr. Ct. R. 8.  *See generally Duross v. State*, 494
A.2d 1265, 1267-69 (Del. 1985).  Moreover, it is not obvious that
any error is "plain" for purposes of applying the plain error
doctrine in this instance:  an identical claim was rejected by
this Court in *Allen v. State*, 509 A.2d 87 (Del. 1986).  Given
Cochran's failure to have advanced this issue in the Superior
Court and the holding in *Allen*, Cochran is not entitled to
reversal of the Superior Court decision on this ground.

13

-423-

**V.   SUPERIOR COURT IMPROPERLY CORRECTED
COCHRAN'S SENTENCE WITHOUT BRINGING
COCHRAN INTO COURT, THUS REQUIRING
RESENTENCING OF COCHRAN ON THE
BURGLARY CONVICTION.**

### Standard and Scope of Review

The decision of the Superior Court to deny a motion to
correct a sentence is subject to plenary review on appeal.

### Argument[4]

After Superior Court corrected Cochran's sentence for first
degree burglary, Cochran wrote to the judge, indicating that he
should have been brought into court for the resentencing.   When
the court asked for the State's position on Cochran's contention,
the prosecutor demurred.   (A23).   Cochran, however, was correct,
notwithstanding the prosecutor's stance.   This Court has twice
decided that defendants in the position as Cochran found himself,
being resentenced because of an error of law in the original
sentence, have a right to be present and with counsel at
resentencing.   *Jones v. State*, 672 A.2d 554 (Del. 1996); *Fullman
v. State*, 431 A.2d 1260, 1264-65 (Del. 1981).   In light of *Jones*
and *Fullman*, the State submits[5] that the burglary sentence should
be vacated and a new sentencing hearing conducted for the purpose
of imposing a new sentence on Cochran for the first degree
burglary conviction.

---

[4] This argument responds to argument 6 in the opening brief.
[5] *See Walls v. State*, 560 A.2d 1038, 1052 (Del. 1989) (State's
confession of error not binding on court; court independently
determines if reversible error occurred).

14

## CONCLUSION

The judgment of the Superior Court should be affirmed as to the sentence imposed on the weapons conviction.  As to the sentence imposed on the burglary conviction, the judgment of the Superior Court should be reversed and the case remanded with instructions to conduct a new sentencing hearing with respect to the burglary conviction.

Loren C. Meyers
Del. Bar ID 2210
Chief of Appeals Division
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500

April 10, 2007

Westlaw.

Not Reported in A.2d

Page 1

Not Reported in A.2d, 2001 WL 1448499 (Del.Super.)
(Cite as: Not Reported in A.2d)

State v. McAllister
Del.Super.,2001.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
STATE
v.
Mel S. McALLISTER
**No. CRIM.A. IN-91-05-203.**

Oct. 3, 2001.

Mr. Mel S. McAllister, Smyrna.
HERLIHY, J.
*1 Dear Mr. McAllister:

You have filed a motion for "correction of sentence. " The basis of that motion revolves around 11 *Del.C.* § 1447 and the sentence of fifteen years which I imposed on you on January 24, 1992 (along with the life sentence for first degree murder).

You make two claims. One is that the SENTAC guidelines provide a presumptive sentence of two to five years. You contend this should have been your sentence. This Court is not bound by those guidelines and can impose any sentence up to the maximum allowed.[FN1] The maximum I could have imposed in 1992 was twenty years.

> FN1. *Ward v. State,* Del.Supr., 567 A.2d 1296 (1989).

Your next claim is that you are entitled to receive good time during that fifteen-year sentence. That claim is not one to be made through a motion to correct a sentence. Nevertheless, I will consider it even though more appropriately presented by means of a writ of *mandamus.*

The argument for entitlement to good time is twofold. One, § 1447 does not explicitly prohibit the Department of Correction from awarding it to you. Two, the recently enacted H.B. 174 which does now explicitly bar the award of good time means prior to that bill's enactment, you were entitled to get it.

The Court is aware that the Department of Correction for many years has not awarded good time for sentences under § 1447. But, that is not the basis for this decision. I enclose a copy of a recent decision of this Court in *Rust v. Kearney.*[FN2] This decision interpreted statutes other than § 1447 but ones which contained the same key language as here. The statutes were drug laws, specifically, 16 *Del.C.* § 4763(a), which says any mandatory minimum "shall not be subject to suspension and no person shall be eligible for probation or parole during such portion of such minimum term." This Court held in *Rust* that this language prohibited the Department of Correction from awarding good time.

> FN2. Del.Super., C.A.No. 01M-03-029, Graves, J. (September 27, 2001).

Section 1447 contains virtually identical language, namely, "[n]o person convicted for a violation of this section shall be eligible for parole or probation during the period of the sentence imposed." [FN3] This was the language in effect on April 29, 1991 when you killed Steven Davis.[FN4] In your case, this Court holds this language has the same effect as found in the drug statute interpreted in *Rust.* The language of § 1447 bars the Department of Correction from awarding you good time.

> FN3. 11 *Del.C.* § 1447(b).

> FN4. 63 *Del. Laws* Ch. 412, 56 *Del. Laws* C. 324.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

-426-
EX .A

Not Reported in A.2d

Not Reported in A.2d, 2001 WL 1448499 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

In light of this holding, the legislature's addition of the words "good time" to parole and probation ineligibility changed nothing substantive. The addition of those words, therefore, only made more clear the prohibition on awarding good time.

CONCLUSION

For the reasons stated herein, the motion for correction of sentence is DENIED.

IT IS SO ORDERED.

Del.Super.,2001.
State v. McAllister
Not Reported in A.2d, 2001 WL 1448499 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

-427-



Not Reported in A.2d                                                                                          Page 1

Not Reported in A.2d, 2001 WL 1628445 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Rust v. Kearney
Del.Super.,2001.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Rodger RUST, Petitioner
v.
Rick KEARNEY, Warden, Respondent
**No. 01M-03-029.**

Sept. 27, 2001.

Rodger L. Rust, Sussex Correctional Institution,
Georgetown.
James W. Adkins, Esquire, Carole E.L. Davis,
Esquire, Department of Justice, Georgetown.
Lauren C. Myers, Esquire, Chief / Appeals
Division, Department of Justice, Wilmington.
GRAVES, J.
**\*1 Dear Mr. Rust and Counsel:**

On March 28, 2001, Rodger Rust (hereinafter "
petitioner") filed a Petition for Writ of Mandamus
with this Court. He sought an order from this Court
compelling the Department of Correction to apply
good time credits to his sentence and thereby reduce
his previously calculated release date. The State of
Delaware ("the State") filed a response on July 18,
2001, opposing the position of the petitioner. This
is the Court's decision denying the petition for writ
of mandamus.

### Background

On April 23, 1996, the petitioner was sentenced on
two convictions of delivery of cocaine, in violation
of 16 *Del.C.* § 4751, and two counts of maintaining
a dwelling for keeping controlled substances, in
violation of 16 *Del.C.* § 4755(a)(5). Because the
petitioner had a previous conviction for possession

of cocaine, 16 *Del.C.* § 4763(a)(2) required the
Court to impose a five-year mandatory minimum
term of imprisonment on each delivery count.
Furthermore, 16 *Del.C.* § 4763(a)(2) states that the
mandatory minimum period of imprisonment "shall
not be subject to suspension and no person shall be
eligible for probation or parole during such portion
of such minimum term."

This Court has previously ruled that when a statute
requires a minimum sentence or a minimum
mandatory sentence, then good times credits shall
apply pursuant to 11 *Del.C.* § 4381(a).[FN1] *State v.
Conner,* Del.Super., Def. ID# 9902016257,
Silverman, J. (March 23, 2001).

> FN1. 11 *Del.C.* § 4381(a) of the *Delaware
> Code* states as follows:
> (a) All sentences imposed for any offenses
> other than a life sentence imposed for class
> A felonies may be reduced by earned good
> time under the provisions of this section
> and rules and regulations adopted by the
> Commissioner of Corrections.

In *State v. Conner,* Judge Silverman determined
that 11 *Del.C.* § 1447A, the offense of possession of
a firearm during the commission of a felony,
required a minimum sentence of three years, but
good time credits should be applied to that offense.
[FN2]

> FN2. The Legislature recently amended 11
> *Del.C.* § 1447A to preclude the availability
> of good time credits to any person
> convicted of this crime. 73 *Del. Laws,* c.
> 107 (2001), thereby statutorily reversing
> the conclusion reached in *State v. Conner,
> supra.*

The State forcefully argues that there is a difference
between 11 *Del.C.* § 1447A, as interpreted in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

−428−
EX. B

Not Reported in A.2d                                                                 Page 2

Not Reported in A.2d, 2001 WL 1628445 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

*Conner,* and the offenses for which the petitioner has been incarcerated. The State is correct. The mandatory minimum sentence under 16 *Del.C.* § 4763(a)(2) is not subject to probation or parole. When *Conner* was decided, § 1447A did not have language limiting probation and parole.

It is the position of the petitioner that the enactment of 11 *Del.C.* § 4381(a) requires the Department of Correction to apply good time to all sentences, other than life sentences, imposed for Class A felonies. I do not find that when the Legislature enacted the Truth-in-Sentencing Act of 1989 they intended to make such a drastic change.

In *Richmond v. State,* Del.Supr., 446 A.2d 1091 (1982), the defendant sought to have good time credits applied to a sentence on robbery in the first degree in spite of the Code's mandate against eligibility for parole during the minimum mandatory three years. The defendant argued that conditional release by way of good time credits was distinguishable from the ban against early release by way of parole. The Supreme Court disagreed and held that when the statute states that an individual shall not have the benefit of probation or parole, then the defendant should not be considered for parole or its good time equivalent "conditional release" until the mandatory or minimum mandatory sentence has been served.

**\*2** I agree with the decision of Judge Silverman in *State v. Conner* wherein he determined that *Richmond* had no bearing as to the crime of 11 *Del.C.* § 1447A because § 1447A as he interpreted it did not have the additional language of not being eligible for probation or parole. But, I do believe *Richmond* does have a bearing on the petitioner's sentence because 16 *Del.C.* § 4763(a)(2) states that he shall not receive the benefit of probation or parole.

I presume that when the Truth-in-Sentencing statutes were enacted, the General Assembly was aware of *Richmond.* Truth-in-Sentencing eliminated parole (11 *Del.C.* § 4354), but the General Assembly did not revisit and modify each of the " minimum mandatory" sentencing statutes where individuals would not be eligible for probation or

parole. There must be a purpose in this. I construe that to be that *Richmond* controls those statutes which still contain the non-eligibility for probation and parole during a minimum mandatory period of imprisonment, such as 16 *Del.C.* § 4763(a)(2).

In so ruling, I am aware that *Richmond* was decided in 1982 and 11 *Del.C.* § 4381 was enacted in 1989. If § 4381 is read literally, then good time would be applied to every criminal offense except for life sentences imposed for a Class A felony. But we know that regardless of this literal language, some statutes have restrictions against early release, such as the language in 16 *Del .C.* § 4763(a)(2).

In *Richmond* the Supreme Court cited to 11 *Del.C.* § 4348, noting that a person released through the application of good time credits shall "be deemed as released on parole". The Legislature likened the application of good time credits to parole. 11 *Del.C.* § 4348 remains as part of our Code. Therefore, my conclusion prevents a defendant from being released early by the application of good time credits when the statute states that the person shall not be eligible for probation or parole.

For the above reasons, the petitioner's Petition for Writ of Mandamus seeking good time credits is denied.

IT IS SO ORDERED.

Del.Super.,2001.
Rust v. Kearney
Not Reported in A.2d, 2001 WL 1628445 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

The undersigned, being a member of the Bar of the
Supreme Court of Delaware, hereby certifies that on April
10, 2007, he caused two copies of the attached document to
be placed in the U.S. Mail, first class postage prepaid,
addressed to the following:

Donald R. Cochran
No. 201992
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

Loren C. Meyers
Chief of Appeals Division
Dept. of Justice

-432-

**IN THE SUPREME COURT OF THE STATE OF DELAWARE**

# COPY

## Transaction No. 14440024

| | |
|---|---|
| **DONALD R. COCHRAN**, ) | |
| ) | |
| Defendant-Below, ) | |
| Appellant ) | |
| ) | |
| v. ) | Nos. 50, 2007 and |
| ) | 51, 2007 |
| ) | |
| **STATE OF DELAWARE**, ) | **CONSOLIDATED** |
| ) | |
| Plaintiff-Below, ) | |
| Appellee ) | |

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

**APPENDIX TO
STATE'S ANSWERING BRIEF**

Loren C. Meyers
Chief of Appeals Division
Del. Bar ID 2210
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-8500

April 10, 2007

## TABLE OF CONTENTS

**PAGE**

Superior Court Docket......................................... 1

Arrest Warrant and Complaint................................. 7

Plea Agreement............................................... 11

Guilty Plea Form............................................. 12

Guilty Plea Colloquy......................................... 13

June 2003 Sentencing Order................................... 41

January 2007 Sentencing Order................................ 48

Superior Court Order (Jan. 22, 2007)......................... 54

i

SUPERIOR COURT CRIMINAL DOCKET                    Page    1
( as of   04/03/2007 )

ate of Delaware v.   DONALD R COCHRAN                          DOB: 04/21/1961
.ate's Atty: MARIE O GRAHAM , Esq.            AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.            RICK


Assigned Judge:

Charges:
| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0102010757 | IK02010397wR | PDWDCF | GLTY | 02/03/2003 |
| 002 | 0102010757 | IK02010398wR | ASSAULT 1ST | GLTY | 02/03/2003 |
| 003 | 0102010757 | IK02010399wR | BURGLARY 1ST | GLTY | 02/03/2003 |
| 004 | 0102010757 | IK02010400w | UNLAW IMPR 1ST | NOLP | 02/03/2003 |
| 005 | 0102010757 | IK02010401w | CRIM MISC <1000 | NOLP | 02/03/2003 |
| 006 | 0102010757 | IK02010402W | NONC W/CON BOND | NOLP | 02/03/2003 |

|     | Event |       |       |
|-----|-------|-------|-------|
| No. | Date  | Event | Judge |

1    01/10/2002
     CASE ACCEPTED IN SUPERIOR COURT.
2    01/10/2002
     CASE CONSOLIDATED WITH 0102015219
3    01/10/2002
     RULE 9 WARRANT ISSUED.
4    10/28/2002                                   FREUD ANDREA MAYBEE
     RULE 9 WARRANT RETURNED, BAIL SET AT
     SECURED BAIL-HELD                 33,000.00 100%
     DEF. WAS ARRAIGNED.
     CCR: 11/12/02 AT 9:00 A.M.
5    10/28/2002                                   FREUD ANDREA MAYBEE
     ARRAIGNMENT CALENDAR - DEFENDANT WAIVED READING; ENTERED PLEA OF NOT
     GUILTY; JURY TRIAL DEMANDED.
     RULE 9 WARRANT RETURNED.
     CCR: 11/12/02 AT 9:00 A.M.
6    11/12/2002                                   VAUGHN JAMES T. JR.
     CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW 12/11, TRIAL 12/16/02
7    11/25/2002
     SUBPOENA(S) ISSUED.
8    12/11/2002                                   RIDGELY HENRY DUPONT
     FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL & FCR 12/16/02
9    12/16/2002                                   RIDGELY HENRY DUPONT
     TRIAL CALENDAR-CONTINUED 2/3, FCR 1/29/03. DEFENSE REQUEST.
     DEFENSE ATTY. IN TRIAL.
10   01/15/2003
     SUBPOENA(S) ISSUED.
11   01/29/2003                                   WITHAM WILLIAM L. JR.

```
                        SUPERIOR COURT CRIMINAL DOCKET              Page    2
                            ( as of  04/03/2007 )
```

```
 ate of Delaware v.  DONALD R COCHRAN                          DOB: 04/21/1961
 .ate's Atty: MARIE O GRAHAM , Esq.          AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.           RICK
```

```
        Event
No.    Date        Event                               Judge
--------------------------------------------------------------------------------
        CASE REVIEW CALENDAR FINAL CASE REVIEW CONTINUED.
        DEFENDANT'S REQUEST-NEW ATTY.  FCR & TRIAL 2/3/03
12     02/03/2003                              WITHAM WILLIAM L. JR.
        TRIAL CALENDAR-JURY TRIAL-PLED GUILTY-PSI ORDERED
13     02/03/2003
        MOTION TO DISMISS FILED AND MOOT AS THE DEFENDANT PLED.
14     03/18/2003
        DEFENDANT'S LETTER FILED.
        RE: REMORSE FOR CRIMES COMMITTED.
15     04/16/2003
        LETTER FROM JOSEPH BERNSTEIN, ESQ. TO JUDGE VAUGHN
        RE: CONTINUANCE OF 04/17/03; APPROVED BY JUDGE VAUGHN ON 04/16/03.
16     04/22/2003
        SENTENCING CALENDAR, SENTENCING CONTINUED.  JUDGE VAUGHN IN MURDER
        TRIAL; TO BE SENTENCED 5/27/03  (DO NOT RE-SCHEDULE W/JV, POSS CONFLIC
17     05/27/2003                              RIDGELY HENRY DUPONT
        SENTENCING CALENDAR, SENTENCING CONTINUED.
        SENTENCING MONDAY, 6/16/03 PJR
18     06/16/2003                              RIDGELY HENRY DUPONT
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
19     07/22/2003
        LETTER FROM PARALEGAL OFFICE TO JOSEPH BERNSTEIN, ESQUIRE
        RE: ATTACHED IS CORRESPONDENCE THE COURT RECEIVED FROM MOTHER OF
        DEFENDANT.
20     07/24/2003
        NOTICE OF APPEAL: 356, 2003
21     08/08/2003
        LETTER FROM PARALEGAL OFFICE TO DONALD COCHRAN.
        RE:INFORMATION ON OBTAINING TRANSCRIPTS.
22     08/18/2003
        MOTION FOR TRANSCRIPT FILED (PRO SE).
23     08/27/2003
        AFFIDAVIT IN SUPPORT OF APPLICATION TO PROCEED IN FORMA PAUPERIS FILED
        (PRO SE).
24     09/08/2003
        MOTION FOR MODIFICATION OF SENTENCE FILED (J. BERNSTEIN).
25     09/09/2003                              RIDGELY HENRY DUPONT
        ORDER: THIS 8TH DAY OF SEPTEMBER, 2003, UPON CONSIDERATION OF DEFEN-
        DANT'S MOTION FOR TRANSCRIPTS FOR PURPOSES OF HIS DIRECT APPEAL TO
        THE SUPREME COURT AND IT APPEARING THAT THE DEFENDANT IS INDIGENT,
        IT IS ORDERED THAT THE MOTION IS GRANTED AND TRANSCRIPTS SHALL BE
        PREPARED OF THE PLEA COLLOQUY ON FEBRUARY 3, 2003 AND THE SENTENCING
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                        ( as of  04/03/2007 )
```

     ate of Delaware v.  DONALD R COCHRAN                    DOB: 04/21/1961
     _ate's Atty: MARIE O GRAHAM , Esq.          AKA: RICK
     Defense Atty: JOSEPH M BERNSTEIN , Esq.          RICK

```
       Event
No.    Date         Event                                  Judge
-------------------------------------------------------------------------------
       ON JUNE 16, 2003 AT STATE'S EXPENSE.
26   09/10/2003
       MOTION FOR MODIFICATION OF SENTENCE FILED (PRO SE).
27   09/12/2003                                      RIDGELY HENRY DUPONT
       ORDER: THIS 12TH DAY OF SEPTEMBER, 2003, NOW THEREFORE IT IS ORDERED
       THAT DECISION ON THE MOTION FOR MODIFICATION OF SENTENCE IS DEFERRED
       UNTIL THE RETURN OF THE RECORD AND MANDATE TO THIS COURT.
28   09/16/2003
       SUPPLEMENT TO MOTION FOR MODIFICATION OF SENTENCE FILED (PRO SE).
29   09/30/2003
       TRANSCRIPT OF PLEA HEARING FILED. (DOUGHERTY)
30   09/30/2003
       TRANSCRIPT OF SENTENCING FILED. (DOUGHERTY)
31   11/13/2003
       DEFENDANT'S LETTER FILED.
       RE: PENDING APPEAL AND MTNMOS (DEFERRED).
32   12/02/2003
       MANDATE FILED FROM SUPREME COURT:  APPEAL DISMISSED.
       SUPREME COURT CASE NO: 356, 2003
     12/17/2003                                      RIDGELY HENRY DUPONT
       MOTION FOR MODIFICATION OF SENTENCE DENIED. SPEEDY TRIAL MOTION WAS
       EXPRESSLY WAIVED DURING PLEA COLLOQUY. NO RIGHT TO CREDIT TIME IN
       FLORIDA.
34   04/05/2004
       DEFENDANT'S LETTER FILED.
       RE: MTNMOS. DENIED 12/17/2003.
35   05/12/2004
       DEFENDANT'S REQUEST FOR RULING ON MOTION SENT.
36   12/20/2004
       DEFENDANT'S LETTER TO PROTHONOTARY FILED.
       RE: LETTER TO PROSECUTOR IN CASE ASKING FOR SUPPORT ON A MOTION FOR
       REVIEW OF SENTENCE. PLEASE PLACE COPY IN FILE.
37   02/01/2005
       MOTION FOR MODIFICATION OF SENTENCE FILED (PRO SE).
38   04/04/2005                                      VAUGHN JAMES T. JR.
       MOTION FOR MODIFICATION OF SENTENCE DENIED.
39   04/19/2005
       COPY OF DOCKET REQUESTED AND SENT.
40   04/19/2005
       NOTICE OF APPEAL, 156, 2005 (PRO-SE)
41   04/19/2005
       LETTER FROM SUPREME COURT STATING RECORD IS DUE NO LATER THAN 5/11/05.
```

SUPERIOR COURT CRIMINAL DOCKET           Page    4
( as of   04/03/2007 )

`ate of Delaware v.  DONALD R COCHRAN                    DOB: 04/21/1961
_ate's Atty: MARIE O GRAHAM , Esq.        AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.            RICK

```
       Event
No.    Date            Event                          Judge
------------------------------------------------------------------------
42    05/11/2005
      RECORDS SENT TO SUPREME COURT.
43    01/03/2006
      MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
      SUPREME COURT CASE NO: 156, 2005
      SUBMITTED: OCTOBER 7, 2005
      DECIDED: DECEMBER 8, 2005
      BEFORE STEELE, CHIEF JUSTICE, BERGER AND JACOBS, JUSTICES
44    02/21/2006
      MOTION FOR POSTCONVICTION RELIEF FILED (PRO SE).
45    02/21/2006
      MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR POSTCONVICTION RELIEF
      FILED (PRO SE).
46    02/21/2006
      MOTION FOR APPOINTMENT OF COUNSEL FILED (PRO SE).
47    02/24/2006                              WITHAM WILLIAM L. JR.
      ORDER OF REFERENCE
      AND NOW, THIS 22ND DAY OF FEBRUARY, 2006, IT IS SO ORDERED THAT MOTION
      FOR POSTCONVICTION RELIEF IS REFERRED TO COMMISSIONER ANDREA MAYBEE
      FREUD FOR PROPOSED FINDINGS AND RECOMMENDATION PURSUANT TO 10 DEL.C.
      SECTION 512(B)(1)(B) AND CRIMINAL RULE 62.
48    02/24/2006                              FREUD ANDREA MAYBEE
      ORDER OF BRIEFING
      AND NOW, THIS 24TH DAY OF FEBRUARY, 2006, IT IS ORDERED THAT:
      1) JOSEPH BERNSTEIN, ESQUIRE, SHALL FILE AFFIDAVIT BY APRIL 5, 2006.
      2) DEPARTMENT OF JUSTICE SHALL FILE LEGAL MEMORANDUM BY MAY 5, 2006.
      3) ANY REPLY BY MOVANT SHALL BE FILED BY JUNE 5, 2006.
49    02/24/2006
      LETTER FROM PARALEGAL OFFICE TO COUNSEL
      RE: NOTICE THAT THE DEFENDANT HAS FILED A MOTION FOR POSTCONVICTION
      RELIEF, PRO SE.
50    04/05/2006
      AFFIDAVIT OF JOSEPH BERNSTEIN, ESQUIRE, TO DEFENDANT'S MOTION FOR
      POSTCONVICTION RELIEF.
51    05/05/2006
      STATE'S RESPONSE TO MOTION FOR POSTCONVICTION RELIEF FILED
      (SUSAN SCHMIDHAUSER, ESQUIRE).
52    05/23/2006
      DEFENDANT'S REPLY BRIEF/MOTION TO RESPOND TO ATTORNEY'S AND STATE'S
      ANSWER TO DEFENDANT'S RULE 61 FILED (PRO SE).
53    05/23/2006
      MEMORANDUM FILED FROM PARALEGAL OFFICE TO COMMISSIONER FREUD
```

SUPERIOR COURT CRIMINAL DOCKET                Page    5
( as of   04/03/2007 )

ate of Delaware v.  DONALD R COCHRAN                        DOB: 04/21/1961
ate's Atty: MARIE O GRAHAM , Esq.        AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.             RICK

```
       Event
No.    Date            Event                           Judge
```
---------------------------------------------------------------------------
      RE: MOTION FOR POSTCONVICTION RELIEF HAS COMPLETED BRIEFING AND
      APPEARS READY FOR YOUR HONOR'S REPORT AND RECOMMENDATION.
54    06/14/2006                            FREUD ANDREA MAYBEE
      MOTION FOR REQUEST FOR APPOINTMENT OF COUSNEL DENIED. LETTER/ORDER
      ISSUED BY COMMISSIONER FREUD.
55    12/07/2006                            FREUD ANDREA MAYBEE
      COMMISSIONER'S REPORT AND RECOMMENDATIONS FILED.
      UPON DEFENDANTS MOTION FOR POSTCONVICTION RELIEF PURSUANT TO SUPERIOR
      COURT CRIMINAL RULE 61 - COMMISSIONER FREUD RECOMMENDS THAT THE
      COURT DENY COCHRAN'S MOTION FOR POST CONVICTION RELIEF AS
      PROCEDURALLY BARRED.
56    12/27/2006
      MOTION FOR CORRECTION OF ILLEGAL SENTENCE FILED (PRO SE).
57    01/22/2007                            WITHAM WILLIAM L. JR.
      ORDER ON THIS 22ND DAY OF JANUARY, 2007, UPON CONSIDERATION OF THE
      DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF, IT IS ORDERED THAT THE
      THOUGHTFUL AND WELL-REASONED COMMISSIONER'S REPORT AND RECOMMENDATION
      IS ADOPTED BY THE COURT AND DEFENDANT'S MOTION FOR POSTCONVICTION
      RELIEF IS DENIED AS PROCEDURALLY BARRED.
      01/22/2007                            WITHAM WILLIAM L. JR.
      ORDER: THE DEFENDANT HAS FILED A MOTION FOR CORRECTION OF AN ILLEGAL
      SENTENCE PURSUANT TO RULE 35 OF THE SUPERIOR COURT. THE COURT HAS
      CAREFULLY REVIEWED THE SUBMISSIONS AND FINDS AS FOLLOWS:
      1. IT WAS IMPROPER TO HAVE SENTENCED MR. COCHRAN TO 20 YEARS AT LEVEL
      5 FOR A CLASS B FELONY (AS TO IK02-01-0399 BURGLARY 1ST), BECAUSE THE
      DEFENDANT'S CRIME WAS ACTUALLY A CLASS C FELONY ONLY PUNISHABLE UP
      TO 10 YEARS AT LEVEL 5. A CORRECTED ORDER WILL BE ISSUED.
      2. THE REMAINING CONTENTIONS OF MR. COCHRAN ARE DENIED SINCE THEY
      ARE NOT MERITORIOUS AND ARE FACTULLY INACCURATE.
      PURSUANT TO 11 DEL.C. SECTION 1447(B), THE DEFENDANT IS NOT ENTITLED
      TO GOOD TIME CREDIT.
      IT IS SO ORDERED THIS 22ND DAY OF JANUARY 2007.
59    01/31/2007
      MOTION FOR RECONSIDERATION OF MOTION FOR CORRECTION OF AN ILLEGAL
      SENTENCE FILED (PRO SE).
60    02/05/2007
      NOTICE OF APPEAL 49, 2007 (PRO-SE)
61    02/05/2007
      NOTICE OF APPEAL 50,2007 (PRO-SE)
62    02/05/2007
      NOTICE OF APPEAL 51, 2007 (PRO-SE)
63    02/08/2007

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    6
                       ( as of   04/03/2007 )

  ate of Delaware v.  DONALD R COCHRAN                       DOB: 04/21/1961
  ate's Atty: MARIE O GRAHAM , Esq.          AKA: RICK
Defense Atty: JOSEPH M BERNSTEIN , Esq.            RICK


        Event
No.   Date            Event                                  Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        MEMORANDUM FROM ATTORNEY GENERAL TO THE COURT REGARDING RESTITUTION
 64   02/09/2007
        STATE'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION
        FOR CORRECTION OF AN ILLEGAL SENTENCE FILED (SUSAN SCHMIDHAUSER, ESQ.)
 65   03/07/2007
        RECORDS SENT TO SUPREME COURT.


            *** END OF DOCKET LISTING AS OF  04/03/2007 ***
                PRINTED BY: JAGVLCM
```

B    06

Adult Complaint and Warrant
# In the Justice of the Peace Court
In and for the
## State of Delaware

### State of Delaware vs. **DONALD R. COCHRAN**

I, BRUCE GRAHAM (05809) of SMYRNA PD, do hereby state under oath or affirmation, to the best of my knowledge, information and belief that the above-named accused violated the laws of the State of Delaware by committing criminal acts in **Kent** county on or about the date, or dates, and at or about the location, or locations, as indicated in Exhibit A hereto attached and made a part hereof.

Wherefore, your affiant prays that the above-named accused may be forthwith approached and held to answer this complaint consisting of **5** charges, and to be further dealt with as the law directs.



X_____

Affiant

Sworn to and subscribed to before me this ____ day of _____, AD _____.

_____
Judge/Commissioner/Court Official

(To be completed by the Judge/Commissioner/Court Official)

A. _____ The crime was committed by a child.
B. _____ A misdemeanor was committed against a child.
C. _____ A misdemeanor was committed by one family member against another family member.
D. _____ Other: Explain

Warrant

To any constable or other authorized person:

Whereas, the foregoing complaint consisting of **5** charges, having been made, as listed in Exhibit A which is attached hereto and incorporated herein, and having determined that said complaint has been properly sworn to and having found that there exists probable cause for the issuance of process, based upon the affidavit of probable cause which is attached hereto and incorporated herein as Exhibit B, you are hereby commanded in the name of the State of Delaware, to take **DONALD R. COCHRAN** accused, and bring same before

**JUSTICE OF THE PEACE COURT 07, FORTHWITH, to answer said charges.**

GIVEN UNDER MY HAND, this ____ day of _____, AD _____.

_____
Judge/Commissioner/Court Official

Executed on _____ by _____     B     07
Case Number: **01 02 010757**   Warrant Number: 58 01 000125

-441-

State of Delaware vs. **DONALD R. COCHRAN**          Case: **01 02 010757**

## Exhibit A

Charge Sequence: 001                    Police Complaint Number: 58 01 002141Arrest Number: INDICTED
Charge: **POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A FELONY**
In Violation of 11 Del.C. § 1447 0000 F B
Location: 18 E COMMERCE STREET - SMYRNA, 19977
TO WIT: DONALD R COCHRAN, on or about the 12th day of February, 2001, in the County of Kent, State of
Delaware, did knowingly possess a deadly weapon during the commission of a felony by possessing beer
bottle, a deadly weapon, during the commission of assault first to wit; Donald Cochran did intentionally strike
Mary Naylor over the head causing fractured bones and several lacerations to her facial area.


Charge Sequence: 002                    Police Complaint Number: 58 01 002141Arrest Number: INDICTED
Charge: **ASSAULT FIRST DEGREE-INTENTIONAL SERIOUS INJURY-WEAPON DANGEROUS INSTRUMENT**
In Violation of 11 Del.C. § 0613 00A1 F C
Location: 18 E COMMERCE STREET - SMYRNA, 19977
TO WIT: DONALD R COCHRAN, on or about the 12th day of February, 2001, in the County of Kent, State of
Delaware, did intentionally cause serious physical injury to MARY NAYLOR by means of a dangerous
instrument by striking Mary Naylor in the face with a beer bottle causing the bottle to shatter which resulted
in several fractured bones and lacerations to the facial area. .


Charge Sequence: 003                    Police Complaint Number: 58 01 002141Arrest Number: INDICTED
Charge: **BURGLARY FIRST DEGREE DWELLING NIGHT PHYSICAL INJURY TO PERSON NOT PARTICIPANT**
In Violation of 11 Del.C. § 0826 0002 F C
Location: 18 E COMMERCE STREET - SMYRNA, 19977
TO WIT: DONALD R COCHRAN, on or about the 12th day of February, 2001, in the County of Kent, State of
Delaware, did knowingly enter or remain unlawfully in a dwelling at night located at 18 E. COMMERCE
STREET SMYRNA, DE. with the intent to commit the crime of Assault 1st therein and while in said dwelling
did cause physical injury to MARY NAYLOR, who was not a participant in the crime by did stike Mary Naylor
several times in the face with a closed fist and one time with a beer bottle causing several lacerations that
required stitches and was also found to have several fractures to her right side of the face. .


Charge Sequence: 004                    Police Complaint Number: 58 01 002141Arrest Number: INDICTED
Charge: **UNLAWFUL IMPRISONMENT FIRST DEGREE**
In Violation of 11 Del.C. § 0782 0000 F G
Location: 18 E COMMERCE STREET - SMYRNA, 19977
TO WIT: DONALD R COCHRAN, on or about the 12th day of February, 2001, in the County of Kent, State of
Delaware, did knowingly and unlawfully restrain another person under circumstances which expose that
person to the risk of serious physical injury to wit; Donald Cochran did knowingly and unlawfully restrain
Mary Naylor in her residence while committing the crime of Assault 1st.


Charge Sequence: 005                    Police Complaint Number: 58 01 002141Arrest Number: INDICTED
Charge: **CRIMINAL MISCHIEF UNDER $1000 DAMAGE PROPERTY**
In Violation of 11 Del.C. § 0811 00A1 M
Location: 18 E COMMERCE STREET - SMYRNA, 19977
TO WIT: DONALD R COCHRAN, on or about the 12th day of February, 2001, in the County of Kent, State of
Delaware, did intentionally cause damage of less than $1000.00 to property consisting of front door to
residence belonging to MARY NAYLOR.

State of Delaware vs. **DONALD R. COCHRAN**                Case: **01 02 010757**

# Exhibit B

SBI Number: **00201992**                        Also Known As:
Date of Birth/Age: **Apr 21, 1961 (40)**        Sex: **Male**                                Race: **White**
Eye Color: **Blue**              Hair Color: **Blonde/Strawberry**   Height: **5'11"**                Weight: **200 lbs**
Driver's License: **DE - 0309329**                      Social Security Number: **221483455**

Address:  **27 TOLBERT CIR
          DOVER, DE 19904**

Phone:

Employer: **RC FENCES**

Date and Times of Offense: **Between 02/12/2001 at 2015 and 02/12/2001 at 2030**

Your affiant BRUCE GRAHAM can truly state that:

1) Your affiant is employed by the Smyrna Police Department and has been so for over 11 years currently assigned to the criminal investigation unit.

2) Your affiant received a call from the Smyrna Police Department reference to an assault that just occurred involving a 73 year old female.

3) Your affiant responded to the scene of the crime which was 18 E. Commerce St.

4) Your affiant upon arrival was made aware that the victim Mary Naylor was transported to Bay Health Medical Center.

5) Your affiant was given information about what occurred.

6) Your affiant at the scene interviewed Witness Hawkins who was inside the residence when incident occurred. W-Hawkins stated she and her boyfriend Thomas Naylor had just walked into the residence when they heard a loud banging noise coming from the front door. W-Hawkins then stated she realized someone was trying to break into the front door. W-Hawkins stated her boyfriend grabbed her and yelled for her to go out the back door which they did.

7) Your affiant then interviewed Witness Thomas Naylor who is W-Hawkins boy- friend and was also in the residence. W-Naylor stated he heard a loud banging sound coming from the front door and realized someone was attempting to break into the residence. W-Naylor told affiant that he gabbed his girlfriend and they both ran out the front door.

8) Your affiant was told by both witnesses that even though they did not see Donald Cochran they know it was him from threats he made just last week.

9) Your affiant after speaking to the witnesses responded to Bayhealth Medical Center and interviewed victim Mary Naylor.

10) Your affiant questioned Naylor about the incident. Naylor stated she was upstairs in her bed watching television when she heard several loud noises coming from her front door. Naylor stated by the time she was able to walk to the top of the stairs she was met by Donald Cochran whom she knows from dealings with in the past. Naylor stated that Cochran grabbed by the collar of her sweat shirt and started dragging her to the foot of the stairs. Naylor stated that Cochran kept asking where is he refering to her son Thomas Naylor. At one point Cochran started punching her in the face several times. Naylor let go of the sweat shirt and started looking through the rooms upstairs. At this point Naylor tried to go downstairs in an attempt to leave but Cochran ran down after her striking her several more times in the area of the face. Naylor tried several times to run out the front door but Cochran kept forcing her to stay inside the residence striking her several times

                                                    Affiant
                        _____
Sworn and subscribed before me this ____ day of _____, AD _____

                                                    _____
                                                    Judge/Commissioner/Court Official

                                        B     09
                                        _443 -

State of Delaware vs. **DONALD R. COCHRAN**          Case: **01 02 010757**

and at one point Naylor stated that Cochran struck her in the head with a hard object which was later found to be a beer bottle which was shattered on the floor of the living room. Naylor stated she was able to get out the front door and run down the street for help. Naylor told writer that Cochran ran in an unk. direction.

11) Your affiant spoke to the doctors at the hospital and told writer that victim had numerous facial lacerations which will need stitches and had fractures on the right side of her face.

12) Your affiant estimated the damage to the door is approx. $150.00.

Location of Offense: **18 E COMMERCE STREET - SMYRNA, 19977**

Affiant: BRUCE GRAHAM (05809) of SMYRNA PD

| Victims: | Date of Birth | Relationship Victim to Defendant |
|---|---|---|
| MARY NAYLOR | 03/03/1927 | Acquaintance |
| SOCIETY/PUBLIC | | |

_____
Affiant

Sworn and subscribed before me this ____ day of _____ , AD _____

_____
Judge/Commissioner/Court Official

B    1 0

Superior Court of the State of Delaware, _KEN'T_ County

# PLEA AGREEMENT

State of Delaware v. _DONALD R. COCHRAN_

Case No(s): _0102 010757_ Cr.A.#s: _02-01-0397 thru 0402_
_0102015219 0102070_
_0102015219_

☐ Title 11HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

Defendant will plead guilty to:    _ROBINSON_

| Count | Cr.A.# | Charge | [LIO if applicable] |
|---|---|---|---|
| 1 | 02-01-0399 | Burglary 1st |
| 2 | 02-01-0398 | assault - 1st |
| 3 | 02-01-0397 | PDWDCF |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☒ all remaining charges on this indictment:

Count    Cr.A#    Charge

**Sentence Recommendation/Agreement:**    ☒ PSI    ☐ Immediate Sentencing

**State and Defendant agree to the following:**
☒ Restitution: _____
☒ No _____ contact w/ _MARY NAYLOR, TOM NAYLOR_
☒ Other Conditions: _or PAM HAWKINS_
- _State agrees A is not eligible under 11 Del C 4214(b)_
_be sentenced as Habitual Offender,_
- _at Sentencing, pState will recommend no more_
_tha 18 years @ level 5_

DAG: _JOHN R GAREY_    DEF. COUNSEL: _Joseph Bernstein_
PRINT NAME    PRINT NAME

_John R Garey_    _Joseph M B_
SIGNATURE    SIGNATURE

DEFENDANT: _Donald Col_
Date _020303_

_Exhibit C_

XC: Attorney for Defendant, Defendant    Page / of /
Attorney General, Attorney General Worksheet

B    11

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR _Kent_ COUNTY

**STATE OF DELAWARE** )   ID: 0102010757

v. _Donald Cochran_ )   CRA: _____

)

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth _4-21-61_   Last grade in school completed _12+h_

| | Yes | No |
|---|---|---|
| Have you ever been a patient in a mental hospital? | ☒ | ☐ |
| Are you under the influence of alcohol or drugs at this time? | ☐ | ☒ |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | ☒ | ☐ |
| Have you been promised anything that is not stated in your written plea agreement? | ☐ | ☒ |
| Has your attorney, the State, or anyone threatened or forced you to enter this plea? | ☐ | ☒ |

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
(1) to be presumed innocent until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
(2) to a speedy and public trial;
(3) to trial by jury;
(4) to hear and question the witnesses against you;
(5) to present evidence in your defense;
(6) to testify or not testify yourself; and,
(7) to appeal to a higher court?    ☒ Yes ☐ No

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---|---|---|---|
| | Incarceration | Amount of Fine (range if applicable) | |
| Burg I | 20 yrs | 2,300 | 2 yr mm / 2-5 5-5 |
| Assault II | 10 20 yrs | '' | up to 30 mos |
| PDW DCF | 20 yrs | 2m '' | 2 yr mm / 2.5 yrs 4-5 |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:**   Incarceration: _50_   Fine: _____

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

| | Yes | No |
|---|---|---|
| Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year? | ☒ | ☐ |
| Is there a minimum mandatory penalty? | ☒ | ☐ |

If so, what is it? _4 yrs_

| | Yes | No |
|---|---|---|
| Is there a mandatory revocation of driver's license or privileges for this offense or as a result of your plea? | ☐ | ☒ |

If so, what is the length of revocation? _____ years

| | Yes | No |
|---|---|---|
| Has anyone promised you what your sentence will be? | ☐ | ☒ |
| Were you on probation or parole at the time of this offense? (A guilty plea may constitute a violation.) | ☒ | ☐ |
| Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be a juror, to hold public office, and other civil rights? | ☒ | ☐ |
| Have you been advised that this is an offense which results in the loss of the right to own or possess a deadly weapon? | ☒ | ☐ |
| Have you been advised that this is an offense which requires registration as a sex offender? | ☐ | ☒ |
| Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea? | ☒ | ☐ |
| Have you read and understood all the information contained in this form? | ☒ | ☐ |

_Joseph M B_____   _2-3-03_   X _Donald Coch_

Defense Counsel   Date   Defendant

Print name: _Joseph Bernstein #780_   Print name: _Donald Cochran._

**Exhibit D**

Copies: Superior Court, Attorney General, Attorney for Defendant, Defendant   Document No.: 02-03-10-00-05-01 (Rev. 03/09/00)

B   1 2

# ORIGINAL

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) C.A. No. 02-01-0397 |
| | ) through 0399 |
| | ) |
| vs. | ) |
| | ) |
| DONALD R. COCHRAN, | ) Appeal No. 356, 2003 |
| I.D. No. 0102010757 | ) |
| | ) Guilty Plea |
| Defendant. | ) February 3, 2003 |

\* \* \* \* \*

BEFORE:  HON. WILLIAM L. WITHAM, JR., JUDGE

\* \* \* \* \*

APPEARANCES:

        JOHN R. GAREY, ESQUIRE
        Deputy Attorney General
        on behalf of the State of Delaware.

        JOSEPH M. BERNSTEIN, ESQUIRE
        on behalf of the Defendant.

TRANSCRIPT OF GUILTY PLEA

Monday, February 3, 2003

SHEILA A. DOUGHERTY
Official Court Reporter

Exhibit H

B    13

☒038/101

                                                                    2

1                                           Courtroom No. 7
                                            February 3, 2003
2    PRESENT:  As noted.

3                        *  *  *  *  *

4              MR. GAREY:  Your Honor, this is the matter

5    of State of Delaware versus Donald R. Cochran.  The

6    matter was scheduled for trial and final case review

7    today.  The State and defense have reached an

8    agreement which we believe will resolve the matter

9    without a trial.

10             It is my understanding Mr. Cochran will be

11   entering a plea of -- a Robinson plea to three

12   felony charges:  Count 1, burglary in the first

13   degree, 02-01-0399; Count 2, assault in the first

14   degree, 02-01-0398; and Count 3, possession of a

15   deadly weapon during the commission of a felony,

16   02-01-0397.  We are requesting the Court order a

17   presentence investigation.

18             The State concurs that the defendant is

19   not eligible to be sentenced under 4214 and we will

20   not be seeking same.  Likewise, at the time of

21   sentencing the State will not recommend a Level 5

22   sentence in excess of 18 years.

23             THE COURT:  All right.  This is going to

                        SHEILA A. DOUGHERTY
                        Official Court Reporter

3

1  be a Robinson plea?

2          MR. GAREY:  Yes, Your Honor.

3          MR. BERNSTEIN:  That's correct.

4          THE COURT:  What is the offer of proof?

5          MR. BERNSTEIN:  Your Honor, can the State

6  make a proffer at this point?

7          THE COURT:  Yes.

8          MR. GAREY:  Had the matter proceeded to

9  trial, Your Honor, the State would have presented

10  the testimony of Mary Naylor.  Ms. Naylor would have

11  testified that on the Monday evening, February 12,

12  2001, she was at her residence in Smyrna, Delaware,

13  Kent County; that approximately 8:00 p.m., actually

14  8:15 to 8:30 in the evening, after dark, she was

15  assaulted in her residence by the defendant, Donald

16  Cochran.  That he broke in, unannounced, struck her

17  repeatedly about the head, and struck her also with

18  a beer bottle.  State would have presented

19  photographs of the crime scene which would have

20  corroborated the testimony of Mrs. Naylor, and I

21  believe that the evidence would have been sufficient

22  to obtain a conviction.

23          THE COURT:  All right.  And was

4

1   Mr. Cochran operating under some degree of --

2           MR. BERNSTEIN:  Your Honor, the basis for

3   the Robinson plea is this:  Mr. Cochran, beyond

4   recalling kicking in the door to the residence, has

5   no recollection of the events that occurred after

6   that.  He was in a highly intoxicated state and also

7   had been using drugs that day.

8           There was some -- the reasoning -- there

9   was a reason, a reason he went into the house.  The

10  reason he went into the house was he had a long-term

11  relationship with Mrs. Naylor's daughter.  He was

12  walking by the residence, saw the daughter's truck

13  parked outside.  He wanted to -- some things he

14  wanted to discuss with her.  The victim in this case

15  was not -- was a totally unintended victim.  She

16  happened to be there.

17          Mr. Cochran had some issues with the

18  victim's daughter, and those are things we will get

19  into more detail about at sentencing, but for

20  present purposes Mr. Cochran does not have a

21  recollection beyond going into the house.  To put it

22  in his words, he snapped.  We have no reason -- I

23  have looked at the pictures.  Mr. Cochran has had an

5

1    opportunity to look at them.  I don't believe there

2    really is any dispute that the victim here suffered

3    these injuries, the way she suffered them, and at

4    whose hand.  The victim knows Mr. Cochran, has known

5    him for a while.  It is not a question of a stranger

6    on stranger here.  So we believe there is a factual

7    basis for the plea.

8              THE COURT:  Okay.

9              MR. BERNSTEIN:  May we continue with the

10   colloquy if the Court will have Mr. Cochran sworn?

11             THE COURT:  Before I do that I want to

12   take a one minute recess, and I will be right back.

13             MR. GAREY:  I wanted to say it wasn't the

14   victim's daughter, it was a friend of the victim's

15   son.

16             THE COURT:  All right.  One minute recess.

17   Be right back.

18             (A brief recess was taken.)

19             MR. BERNSTEIN:  One correction, Your

20   Honor.  I misspoke when I said the dispute that

21   Mr. Cochran had was with Miss Naylor's daughter.  It

22   was with her son.  I wanted to clear that up.  Is

23   that right?

6

1              THE COURT:  All right.  Thank you,

2    Mr. Bernstein.

3              I will ask Mr. Cochran to come forward to

4    the podium and be sworn in.  Any objections to

5    swearing on the Bible, Mr. Cochran?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  All right.  Please swear him.

8                        *  *  *  *  *

9                    DONALD R. COCHRAN

10                       *  *  *  *  *

11             the defendant herein, being duly sworn,

12             was examined and testified as follows:

13   BY THE COURT:

14        Q.   All right, Mr. Cochran, I have some

15   questions which I need to have answered under oath.

16   That is the purpose of your being sworn in.

17        A.   Yes, sir.

18        Q.   You heard the statements of your attorney,

19   Mr. Bernstein, as well as the statements of the

20   prosecution.  I want to ask you:  Did you hear

21   everything that was said?

22        A.   Yes, sir.

23        Q.   Was everything said true and correct?

7

1        A.    No, sir.

2        Q.    What I am asking you, everything that the

3    attorneys, that is, Mr. Bernstein stated.

4        A.    He didn't get all the facts right, sir.  I

5    been two years.  This will be -- I am fighting for

6    my life here, and he didn't state some facts right

7    that should be stated right, and the reason why I

8    just didn't go in, and I don't remember what

9    happened to her, but he didn't state all the facts

10   right.

11       Q.    Are you saying that Mr. Bernstein did not

12   state all the facts that you thought he should have

13   stated?

14       A.    Yes, sir.  He was basically right, but he

15   doesn't have the facts right.  It wasn't

16   Mrs. Naylor's daughter, it was the woman I had been

17   seeing for ten years was sleeping around with

18   someone I called a friend, Tom Naylor, and I had

19   been drinking heavy and on drugs, and was going to

20   get more drugs, and they had lied to me.  Tom Naylor

21   had lied to me.  He was a friend and said he didn't

22   know who she was seeing, and I was getting some more

23   drugs and happened to see the truck at her -- his

SHEILA A. DOUGHERTY
Official Court Reporter

B    19

8

1    house, and I snapped from there, and all I remember

2    was kicking the door in. I don't remember the

3    events that happened inside. I had a blackout. And

4    that's the facts.

5        Q.   Okay. Most of what you said seems to me

6    to not be totally contrary to what your attorney

7    stated. Do you -- but do you want a moment to talk

8    with your attorney again?

9        A.   No, sir. He just said that it was the

10   victim's daughter and it wasn't the victim's

11   daughter.

12            THE COURT:  That is the only inaccuracy?

13            MR. BERNSTEIN:  I just corrected that.

14            THE COURT:  I understand, Mr. Bernstein.

15   BY THE COURT:

16       Q.   That was the only inaccuracy that you

17   recall; correct?

18       A.   Yes, sir.

19       Q.   Did not Mr. Bernstein make a correction to

20   that?

21       A.   She said it was his son -- he said it was

22   her son, but it was the woman I had been seeing,

23   about ten years, and Mrs. Naylor's son.

SHEILA A. DOUGHERTY
Official Court Reporter

B    20

9

1      Q.    So he was -- when Mr. Bernstein corrected

2   himself, he was then correct; is that right?

3      A.    Yes, sir.

4      Q.    Okay.  All right.  Other than that

5   everything that was stated is correct; is that

6   correct?

7      A.    Yes, sir.

8      Q.    I am sorry about using the word so many

9   times.

10     A.    Well, I am sorry.  I am fighting -- I just

11  wanted to get this straight because, you know.

12     Q.    All right.  I understand.  All right.  Do

13  you understand you have a right to speedy trial

14  with the assistance of a lawyer, and you waive these

15  rights by -- you give up these rights by pleading

16  guilty today.  Do you understand that?

17     A.    Yes, sir.

18     Q.    Thank you.  Have you read or had read to

19  you the charges for which you are going to be

20  pleading no contest to in essence?

21     A.    Yes, sir.

22     Q.    Okay.  Those charges are basically one

23  count of burglary first, a second count of assault

SHEILA A. DOUGHERTY
Official Court Reporter

B      21

10

1    second, a third count of possession of a deadly

2    weapon during the commission of a felony.

3          MR. GAREY:  Your Honor, that is assault

4    first degree.

5          THE COURT:  Possession of deadly weapon

6    during the commission of felony?

7          MR. GAREY:  No.  The second charge is

8    assault in the first degree, not second.

9    BY THE COURT:

10       Q.   One assault first degree and one assault

11   burglary -- I am sorry -- one assault first degree,

12   one burglary first degree.  Okay.  And I believe

13   Mr. Garey has made a presentation on what the

14   State's evidence would be on the charges.  Do you

15   recall hearing that evidence?

16       A.   Yes, sir.

17       Q.   Have you signed and read the Truth in

18   Sentencing guilty plea statement?

19       A.   Yes.

20       Q.   Okay.  Let's refer to that at this time.

21   This statement:  Do you have a copy in front of you?

22       A.   Yes.

23       Q.   Okay.  This statement indicates,

SHEILA A. DOUGHERTY
Official Court Reporter

B    22

12

1   Court, but who pleads guilty before trial.  You

2   waive these rights.  Do you understand that?

3         A.    Yes.

4         Q.    Okay.  These rights are outlined for you

5   in paragraphs one through seven.  Do you see that?

6         A.    Yes.

7         Q.    On the form?

8         A.    Yes, sir.

9         Q.    Okay.  Is it your intention to waive these

10  rights by pleading guilty right now?

11        A.    Yes, sir.

12        Q.    Okay.  And did you fill out the rest of

13  the form correctly?

14        A.    Yes, sir, we did.

15        Q.    Okay.  Now, this form, as I mentioned

16  before -- we will get it straight now -- indicates

17  you will be pleading no contest or under State

18  versus Robinson to one count of burglary in the

19  first degree, which carries a maximum statutory

20  penalty of up to 20 years, plus a fine of up to

21  $2,300.

22              THE COURT:  I think -- isn't that at the

23  discretion of the Court, Mr. Garey?  Isn't the fine

SHEILA A. DOUGHERTY
Official Court Reporter

B      24

03/08/2007 THU 13:21 FAX                                                    ⊠049/101

13

1    at the discretion of the Court?

2              MR. GAREY:  Yes, Your Honor.

3              MR. BERNSTEIN:  I believe so.

4    BY THE COURT:

5        Q.    Under burglary first.  Okay.  Then under.

6    assault first we have a potential maximum penalty to

7    you of up to ten years imprisonment, and a fine at

8    the discretion of the Court, as well as a 20-year

9    potential incarceration for possession of a deadly

10   weapon during the commission of a felony.  So

11   altogether when you add up the total maximum

12   penalties you are facing, you are facing a potential

13   incarceration of up to 50 years in jail at Level 5,

14   plus fines determined at the discretion of the Court

15   according to law.  Do you understand that?

16       A.    Yes.

17       Q.    Okay.  Do you also understand because of

18   the nature of the offenses that you are going to be

19   entering this plea today, that you are also facing a

20   minimum mandatory penalty of up to four years

21   imprisonment.  Do you understand that?

22       A.    Yes, sir.

23       Q.    Okay.  Having said all that, and despite

14

1    that, is it your intention to plead guilty today?

2         A.    Yes.

3         Q.    Pursuant to the Robinson plea?

4         A.    Yes, sir.

5         Q.    A Robinson plea; is that correct?

6         A.    Yes.

7         Q.    Has anyone forced or threatened you to

8    enter this plea today?

9         A.    Yes.  No, sir.

10        Q.    Are you in fact for purposes -- let me

11   explain something to you.  I should have explained

12   this to you earlier.  When I asked you whether you

13   were going to plead guilty, I am saying that because

14   for purposes of the plea colloquy that we are going

15   to treat this plea just as if you are pleading

16   guilty, where all the elements of the crime are

17   being admitted, even though you are going to be

18   pleading no contest or a plea pursuant to State

19   versus Robinson.  Do you understand that?

20        A.    Yes.

21        Q.    Okay.  And when I say "guilty," that is

22   what I am referring to.

23        A.    Yes, sir.

03/08/2007 THU 13:21  FAX                                            ☒051/101

15

1      Q.   Okay.  All right.  So no one has forced or

2   threatened you to enter this plea today; is that

3   correct?

4      A.   No, sir.

5      Q.   Are you in fact guilty of this plea?

6      A.   Yes.

7      Q.   I am sorry.  These crimes?

8      A.   Yes.

9      Q.   Turning next to the Truth in Sentencing

10  Guilty Plea Form -- I am sorry.  We just went over

11  that, but I did not ask you this.  Did you sign this

12  form in your own handwriting?

13     A.   Yes, sir.

14     Q.   Okay.  Now, referring to the plea

15  agreement, the plea agreement which has been

16  reviewed by counsel today, and discussed with you as

17  well, does this plea agreement reflect everything

18  that you have agreed to do?

19     A.   Yes.

20     Q.   Did you sign the form?

21     A.   Yes.

22     Q.   Thank you.  Have you had enough time to

23  talk to your attorney about this?

16

1      A.   Yes.

2      Q.   Thank you. Do you believe your attorney

3  has fully advised you of your rights pertaining to

4  your plea?

5      A.   Yes.

6      Q.   And has he otherwise represented you in

7  this case to your satisfaction?

8      A.   Yes.

9      Q.   Thank you.

10     THE COURT:  All right.  Mr. Bernstein, is

11  there any reason why the Court should not accept

12  this plea?

13     MR. BERNSTEIN:  No.  There are a couple

14  other things I wanted to put on the record.

15       One of the things that I looked into when

16  I got into this case was potential speedy trial

17  claim on Mr. Cochran's part because of the fact that

18  he was brought back on a detainer from Florida.  I

19  looked into that and in fact had prepared a written

20  motion for -- on speedy trial grounds, had this case

21  gone to trial.  For the record, I am just going to

22  file that motion with the Court.

23       I explained to Mr. Cochran that because he

17

1    is entering a guilty plea he will not be able to

2    raise that in the future or now.  I also told

3    Mr. Cochran that, and Mr. Cochran has given this

4    matter quite a bit of thought.  These are very

5    serious charges obviously.  And I explained to

6    Mr. Cochran that once the Court accepts this plea he

7    can't come back tomorrow and say, "I want to take it

8    back."

9            As I said, I say that because I know

10   Mr. Cochran has given this matter a lot of thought

11   and he ultimately decided that this plea was in his

12   best interest in the long run, and that is why he is

13   standing here today, but I want to make sure that

14   those things, the fact that there was a potential

15   speedy trial motion, he is aware of that, and he

16   knows he is giving that up as part of this plea

17   agreement, and it is on the record, and he

18   understands that.

19           THE COURT:  All right.  Thank you,

20   Mr. Bernstein.

21           Mr. Bernstein is quite accurate,

22   Mr. Cochran.  If that motion is going to be filed,

23   and you may file the motion if you wish, but despite

18

1   that if you are going to enter your plea today, and
2   the Court is going to treat your plea as a guilty
3   plea, which it can do so under the law, you are
4   going to make that matter moot and that matter will
5   not be successful at this point and because you are
6   facing some pretty serious time because of these
7   charges.  Do you have something else you want to
8   say?

9           THE DEFENDANT:  No.  I just wanted to
10  question, if I would have filed that speedy trial
11  motion, the violation of due process, would you have
12  had that heard before I went to court, or what?
13  They said I would have went to trial today
14  regardless if I had filed that, and there was some
15  issue with it because the State of Delaware knew
16  where I was, and they -- a judge in Florida told me
17  they was coming to get me, and I tried everything to
18  get up here.  But Mr. Garey wants to give me a lot
19  of time, and they knew I was there and had a plea
20  agreement to be extradited here, and you know, I
21  just -- he said if I didn't take the plea today,
22  that the motion for the speedy trial would be heard
23  after the trial, and I don't know, I just wanted

☐005/051

19

1    that on the record.

2            I don't know why he wanted to put that on

3    the record if it didn't mean anything, so but I took

4    the plea.  I just would like that question answered

5    in front.  I have had a judge tell me some things

6    that the prosecutors and attorneys have told me

7    different, so I don't know, you know, what is up.  I

8    am fighting for my life on this motion, on this

9    matter.

10           MR. BERNSTEIN:  Your Honor, the reason I

11   mentioned that is because there is an argument that

12   can be made that -- however, taking all things into

13   consideration, Mr. Cochran decided to enter this

14   plea.  I simply wanted to put on the record so

15   Mr. Cochran understands that there is no question at

16   all that by pleading guilty he won't be able to

17   pursue that, at least with respect to these charges.

18           THE COURT:  Has a speedy trial motion been

19   filed yet?

20           MR. BERNSTEIN:  It has not been filed.  It

21   is in my folder.

22           THE COURT:  All right.

23           MR. BERNSTEIN:  I am just going to file it

SHEILA A. DOUGHERTY
Official Court Reporter

20

1   as a matter of record.

2            THE COURT:  All right.  I understand.

3            I will say this to Mr. Cochran.  Had this

4   motion been filed prior to this plea being taken,

5   and of course it should be filed prior to this

6   matter being set, being present for trial, prior to

7   the trial date, excuse me, and the trial date was

8   scheduled for today.

9            MR. BERNSTEIN:  I didn't have all the

10  paperwork to back it up.

11           THE COURT:  I understand.  All I am

12  saying, I am only reciting all this, because if it

13  had been filed the Court would have had to decide it

14  first before it accepted your plea.  However, you

15  have chosen at this point to enter the plea the way

16  you did.

17           THE DEFENDANT:  Yes, sir.  The reason for

18  that is because I was told that the motion would

19  have been filed and I would have went to trial

20  today, and I wouldn't have had the motion heard, and

21  I asked him about it being heard before they took me

22  to trial, and he said I would go to trial today.

23           I believe that there was some -- now he is

SHEILA A. DOUGHERTY
Official Court Reporter

B    32

03/08/2007 THU 15:46 FAX                                                                    ☑007/051

21

1    saying that there was some argument that could be

2    brought about the violation of a due process, and I

3    was -- all I wanted was just to be fair with this

4    all, you know, and now they are bringing this up and

5    if he had told me that I might have -- I had nothing

6    to lose to have the motion heard for the speedy

7    trial because it violated my 6th Amendment right,

8    and the charges should be dropped under that.  And I

9    had no, you know, they said if I didn't take, if I

10   didn't -- if I put the motion in for the speedy

11   trial argument that I would have to go to trial

12   today.

13          And now you are saying that that is not

14   true, so I don't know.  I am not a lawyer.  I been

15   trying for two years to get this taken care of, sir,

16   and I just want the fairest and the right way, you

17   know, where I have a 6th Amendment right that was

18   violated, and now he wants to put that on the

19   record, that just shows that there might have been

20   something that could have been done about it.

21          MR. BERNSTEIN:  Your Honor, just to

22   clarify, I told Mr. Cochran that his motion would be

23   heard on the merits before the trial.  However, he

SHEILA A. DOUGHERTY
Official Court Reporter

B    33

22

1   could not plead guilty and have the motion heard.

2          THE DEFENDANT:  I wasn't going to do that.

3   I was going to see what happened with the speedy

4   trial motion and then see.

5          MR. BERNSTEIN:  There wouldn't be any plea

6   agreement; is that correct, Mr. Garey?

7          MR. GAREY:  That's correct, Your Honor.

8          THE COURT:  That makes sense, obviously.

9   If you had a pending motion for dismissal because of

10  the violation of what you view to be a violation of

11  your Constitutional rights from the fact that you

12  did not have a speedy trial, that would have had to

13  have been decided first before the Court could

14  accept a plea; but it was not filed, so the Court

15  could accept the plea.

16         Now, if you want to think about that for a

17  moment I will give you a chance to talk with your

18  attorney, but I assume you weighed all the pros and

19  cons of doing this and not doing that -- hear me out

20  at this time -- and that is why you are proposing

21  the plea which the Court is prepared to accept at

22  this time.  But if it is your intention to move

23  forward with your motion for speedy trial, then I

03/08/2007 THU 15:47 FAX                                              ☑009/051

23

1   will not accept this plea.  You have to make up your

2   mind what you want to do.

3           THE DEFENDANT:  Right.  Well, I think I am

4   entitled to an answer.  If the motion is heard for

5   the speedy trial first, before I go to trial, and

6   then you decide on that, it is either dismissed or

7   not dismissed, and then you proceed to a trial, or

8   is there a plea?

9           MR. GAREY:  Your Honor, I have something

10  to say.

11          MR. BERNSTEIN:  I gave this to Mr. Garey

12  Friday.

13          THE DEFENDANT:  I am saying apparently

14  there is some argument to it.

15          MR. GAREY:  The State is prepared to

16  extend the plea that we extended to Mr. Cochran.

17  However, if the plea is not accepted, and we hear

18  motions, there will not be a plea agreement.  We

19  will be going to trial.  There is no Constitutional

20  right to a plea by solution.  So that is --

21          THE COURT:  And you will be going to trial

22  on all charges; correct?

23          MR. GAREY:  That is correct.

24

1            THE COURT:  Okay.

2            THE DEFENDANT:  Well, just go ahead with

3    this.

4            THE COURT:  Do you want to take a moment

5    to talk to your attorney?  I can break.

6            THE DEFENDANT:  No.  It is all right.  I

7    will take -- I will take the Robinson.

8            THE COURT:  All right.  So you are

9    prepared to go forward?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Okay.  All right.  So you have

12    had enough time to talk with your attorney; is that

13    correct?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  Okay.  And Mr. Bernstein has

16    stood up and made that presentation.

17            Other than that, Mr. Bernstein, is there

18    any other reason why this Court should not go

19    forward with the plea?

20            MR. BERNSTEIN:  No.  I just wanted to make

21    sure the Court was aware of those facts and that

22    Mr. Cochran was aware that he had a right to pursue

23    one or the other, but not both.

SHEILA A. DOUGHERTY
Official Court Reporter

B    36

25

1          THE COURT:  Okay.  I think we pretty much

2   fleshed that out and made that pretty clear, is my

3   understanding.

4          Mr. Cochran does understand that; correct?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Thank you, Mr. Cochran.

7   Thank you, Mr. Bernstein.

8          Just a minute.  We are not quite done yet.

9          Mr. Garey, is there any other reason why

10  you see -- a reason why this Court should not accept

11  this plea?

12         MR. GAREY:  No, Your Honor.

13         THE COURT:  Okay.  All right.  The Court,

14  having heard the presentations by the attorneys and

15  having gone through the plea colloquy with the

16  defendant, and having taken some time to explain

17  both the nature of what the Robinson plea is all

18  about and having explained that to him, the Court is

19  satisfied that there is sufficient proof to

20  establish that the prosecution could present a prima

21  facie case before the Court, and there is a basis in

22  fact for the plea, and there is also a basis for

23  Mr. Cochran to enter the Robinson plea as well.

03/08/2007 THU 15:47  FAX                                          ☒012/051

26

1        Therefore, the Court will accept the plea

2   as submitted, and in accordance with the

3   recommendation submitted to the Court by counsel I

4   will order a presentence investigation be conducted

5   by our ISO office at this time.

6        What date are we going to have for the

7   sentencing?

8        THE CLERK:  April 17.

9        THE COURT:  April 17.  Now, let me also

10  just take a moment to explain, Mr. Cochran, what the

11  sentencing will be all about.

12        THE DEFENDANT:  Yes, sir. .

13        THE COURT:  At that time your attorney,

14  Mr. Bernstein, may appear on your behalf, and so the

15  State through Mr. Garey.  I will receive from a

16  presentence officer, who is an officer of this

17  Court, he will conduct an investigation about who

18  you are, your background.  He will explain what he

19  finds about the nature of the offenses for which you

20  are pleading, entering your plea about, and he will

21  also solicit information from any victims about

22  restitution potentially, and also you will have an

23  opportunity, if you wish, to submit any letters of

SHEILA A. DOUGHERTY
Official Court Reporter

B    38

28

1   know in advance.

2           MR. BERNSTEIN:  No.  I have my calendar

3   here and that is a good date.

4           THE COURT:  Okay.  All right.  Is that it?

5           THE BAILIFF:  That is it, Your Honor.

6           THE COURT:  That is all.  Thank you very

7   much.

8                    *  *  *  *  *

9           (Whereupon the proceedings were

10  concluded.)

11                   *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE

    VS.

DONALD R COCHRAN

Alias: See attached list of alias names.

DOB: 04/21/1961
SBI: 00201992

CASE NUMBER:                    CRIMINAL ACTION NUMBER:
0102010757                          IK02-01-0399w
                                    BURGLARY 1ST(F)
                                    IK02-01-0398w
                                    ASSAULT 1ST(F)
                                    IK02-01-0397w
                                    PDWDCF(F)

COMMITMENT

## SENTENCE ORDER

NOW THIS 16TH DAY OF JUNE, 2003, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
Costs are hereby suspended.  Defendant is to pay all
statutory surcharges.


AS TO IK02-01-0399-w : TIS
BURGLARY 1ST

Effective December 30, 2002  the defendant is sentenced
as follows:

- The defendant is placed in the custody of the Department
of Correction for 20 year(s) at supervision level 5

- Suspended after serving 6 year(s) at supervision level 5

- Followed by 9 month(s)  at supervision level 4 **WORK
RELEASE**

- Followed by 1 year(s)  at supervision level 3

- Followed by 1 year(s)  at supervision level 2
**APPROVED ORDER**     1       June 16, 2003 10:06

B    41

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

- Hold at supervision level 5

- Until space is available at supervision level 4 **WORK RELEASE**

Probation is concurrent to any probation now serving.

**AS TO IK02-01-0398-w : TIS**
**ASSAULT 1ST**

- The defendant is placed in the custody of the Department of Correction for 10 year(s) at supervision level 5

**AS TO IK02-01-0397-w : TIS**
**PDWDCF**

- The defendant is placed in the custody of the Department of Correction for 2 year(s) at supervision level 5

This is a mandatory sentence pursuant to DE1114470000FB .

## SPECIAL CONDITIONS BY ORDER

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

                        **CASE NUMBER:**
                        **0102010757**

Have no contact with Mary Naylor

Have no contact with Tom Naylor

Have no contact with Pamela Hawkins

The defendant shall have no contact with the victim(s)
residence, workplace and/or victim(s) family members.

Defendant is to undergo a mental health evaluation and
follow any recommendations for counseling and treatment as
deemed appropriate by Department of Correction .

Defendant shall successfully complete anger management,
counseling, treatment program.

Have no drugs/alcohol during period of sentence unless
medically prescribed.

Submit to random urinalysis or such other drug testing as
deemed appropriate.

Be evaluated for substance abuse and follow any
recommendations for counseling, testing or treatment deemed
appropriate.

### NOTES
While at Supervision Level V, the defendant shall be
evaluated for a substance abuse program, and complete any
program recommended by the Classification Unit of DOC.

While at Supervision Level V, the defendant shall be
evaluated for emotional and/or psychological problems and
participate in and/or complete any treatment recommended
**APPROVED ORDER**    3    June 16, 2003 10:06

B    43

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

by the Classification Unit of DOC and the medical provider
of DOC.

While at Supervision Level V, the defendant shall complete
the following programs:  Alternatives to Violence, Life
Skills, Thresholds, and the Prerelease Program.

JUDGE HENRY DUPONT RIDGELY

B      44

## FINANCIAL SUMMARY

**STATE OF DELAWARE**
**VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

CASE NUMBER:
0102010757

SENTENCE CONTINUED:

TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED

SHERIFF, KENT ORDERED

SHERIFF, SUSSEX ORDERED

PUBLIC DEF, FEE ORDERED

PROSECUTION FEE ORDERED

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                3.00

---

TOTAL                                 3.00

B    45

## LIST OF ALIAS NAMES

**STATE OF DELAWARE**
          **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

                              **CASE NUMBER:**
                                   **0102010757**

RICK

B    46

## AGGRAVATING-MITIGATING

**STATE OF DELAWARE**
     **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

                **CASE NUMBER:**
                **0102010757**

**AGGRAVATING**
PRIOR VIOLENT CRIM. ACTIVITY
LACK OF AMENABILITY
NEED FOR CORRECTIONAL TREATMENT
CUSTODY STATUS AT TIME OF OFFENSE
EXCESSIVE CRUELTY
REPETITIVE CRIMINAL CONDUCT
UNDUE DEPRECIATION OF OFFENSE
VULNERABILITY OF VICTIM

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE

vs.

DONALD R COCHRAN

Alias: No Aliases

DOB: 04/21/1961
SBI: 00201992

CASE NUMBER:                          CRIMINAL ACTION NUMBER:
0102010757                               IK02-01-0399wR
                                         BURGLARY 1ST(F)
                                         IK02-01-0398wR
                                         ASSAULT 1ST(F)
                                         IK02-01-0397wR
                                         PDWDCF(F)

COMMITMENT

### CORRECTED SENTENCE ORDER

NOW THIS 22ND DAY OF JANUARY, 2007, IT IS THE ORDER OF
THE COURT THAT: THE ORDER DATED June 16, 2003 IS HEREBY
CORRECTED AS FOLLOWS:

The defendant is adjudged guilty of the offense(s) charged.
Costs are hereby suspended. Defendant is to pay all
statutory surcharges.

AS TO IK02-01-0399-wR : TIS
BURGLARY 1ST

Effective December 30, 2002 the defendant is sentenced
as follows:

 - The defendant is placed in the custody of the Department
of Correction for 10 year(s) at supervision level 5

 - Suspended after serving 6 year(s) at supervision level 5

 - Followed by 9 month(s) at supervision level 4 **WORK
RELEASE**

 - Followed by 1 year(s) at supervision level 3
**APPROVED ORDER**    1        January 23, 2007 11:01

B    48

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

- Followed by 1 year(s)  at supervision level 2


- Hold at supervision level 5


- Until space is available at supervision level 4 <u>**WORK**</u>
<u>**RELEASE**</u>

Probation is concurrent to any probation now serving.


**AS TO IK02-01-0398-wR : TIS**
**ASSAULT 1ST**

- The defendant is placed in the custody of the Department
of Correction for 10 year(s) at supervision level 5


**AS TO IK02-01-0397-wR : TIS**
**PDWDCF**

- The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5


This is a mandatory sentence pursuant to DE1114470000FB .

## SPECIAL CONDITIONS BY ORDER

**STATE OF DELAWARE**
**VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

**CASE NUMBER:**
**0102010757**

Have no contact with Mary Naylor

Have no contact with Tom Naylor

Have no contact with Pamela Hawkins

The defendant shall have no contact with the victim(s) residence, workplace and/or victim(s) family members.

Defendant is to undergo a mental health evaluation and follow any recommendations for counseling and treatment as deemed appropriate by Department of Correction .

Defendant shall successfully complete anger management, counseling, treatment program.

Have no drugs/alcohol during period of sentence unless medically prescribed.

Submit to random urinalysis or such other drug testing as deemed appropriate.

Be evaluated for substance abuse and follow any recommendations for counseling, testing or treatment deemed appropriate.

### NOTES

While at Supervision Level V, the defendant shall be evaluated for a substance abuse program, and complete any program recommended by the Classification Unit of DOC.

While at Supervision Level V, the defendant shall be evaluated for emotional and/or psychological problems and participate in and/or complete any treatment recommended
**APPROVED ORDER**    3       January 23, 2007 11:01

B    50

**STATE OF DELAWARE**
        **VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

by the Classification Unit of DOC and the medical provider
of DOC.

While at Supervision Level V, the defendant shall complete
the following programs:  Alternatives to Violence, Life
Skills, Thresholds, and the Prerelease Program.
==================================
CORRECTED SENTENCE ORDER

And now, this 22nd day of January, 2007, the sentence order
dated June 16, 2003 is hereby corrected to reflect that it
was improper to have sentenced Mr. Cochran to 20 years at
Level 5 for a Class B Felony as to IK02-01-0399 Burglary
1st, becasuse the defendant's crime was actually a Class C
Felony only punishable up to 10 years at Level 5.

Pursuant to 11 Del.C. Section 1447(b), the defendant is not
entitled to good time credit.

All previous terms and condtions shall remain as imposed.
==================================

**JUDGE WILLIAM L WITHAM JR.**

## FINANCIAL SUMMARY

**STATE OF DELAWARE**
**VS.**
**DONALD R COCHRAN**
**DOB: 04/21/1961**
**SBI: 00201992**

**CASE NUMBER:**
**0102010757**

SENTENCE CONTINUED:

TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED

SHERIFF, KENT ORDERED

SHERIFF, SUSSEX ORDERED

PUBLIC DEF, FEE ORDERED

PROSECUTION FEE ORDERED

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                    3.00

---

TOTAL                                     3.00

**APPROVED ORDER**    5    January 23, 2007 11:01

B    52

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

**DONALD R. COCHRAN,**
      Defendant-Below,
      Appellant

                                   **Nos.  50, 2007 and**
                                        **51, 2007**
                                    **Consolidated**

V.

**STATE OF DELAWARE,**
      Plaintiff-Below,
      Appellee

## MOTION TO ANSWER TO STATES ANSWERING BRIEF

Dated: April 20, 2007

                             **Respectfully, Submitted**
                             Donald Cochran
                             **Donald R. Cochran**
                                 **D.C.C.**
                               **1181 Paddock Road**
                             **Smyrna, Delaware 19977**

Therefore, in closing Petitioners Counsel was ineffective for failing to investigate and research this case and for allowing Petitioner to enter into a Plea that was Unconstitutional and that carried an Illegal Sentence that no Court of Law could legally impose. Petitioner also was not given good time credits on the  P.D.W.D.C.F. charge which Petitioner is entitled to under than existing Delaware Law. And Petitioner was not brought back before the Court to be resentenced on the Illegal Sentence that Petitioner was sentenced to. Therefore, Petitioner asks this Court to set aside Petitioners Plea and to give good time credit to Petitioner on the P.D.W.D.C.F charge which he is entitled to and to bring Petitioner back before the Superior Court to be resentenced on the Illegal Sentence that was given to Petitioner and to be able to speak on his behalf. And therefore grant the Appeal Nos. 50, 2007 / 51, 2007 and to grant any and all relief that this Court thinks Petitioner is entitled to.

Dated: April 20th 2007

Respectfully, Submitted

Donald R. Cochran
D.C.C
1181 Paddock Road
Smyrna, Delaware 19977

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DONALD R. COCHRAN, | § |
| | § Nos. 50 and 51, 2007 |
| Defendant Below- | § CONSOLIDATED |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for Kent County |
| STATE OF DELAWARE, | § Cr. ID No. 0102010757 |
| | § |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: August 13, 2007
Decided: September 28, 2007

Before **STEELE**, Chief Justice, **HOLLAND** and **JACOBS**, Justices

## O R D E R

This 28th day of September 2007, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)    The defendant-appellant, Donald R. Cochran, filed appeals from the Superior Court's January 22, 2007 corrected sentencing order and its January 22, 2007 decision and order granting in part and denying in part his motion to correct an illegal sentence pursuant to Superior Court Criminal Rule 35(a).[1]  Because Cochran was not present in the Superior Court with counsel when his burglary sentence was corrected, that sentence must be VACATED and this matter REMANDED to the Superior Court for further

---

[1] Cochran also filed a separate motion for the appointment of counsel.

-496-



proceedings in accordance with this Order. The remainder of the Superior Court's rulings are AFFIRMED, albeit on grounds different from those relied upon by the Superior Court.[2]

(2)    In February 2003, Cochran entered a Robinson plea to Burglary in the First Degree, Assault in the First Degree, and Possession of a Deadly Weapon During the Commission of a Felony, crimes that he had committed in February 2001. On the burglary conviction, he was sentenced to 20 years at Level V, to be suspended after 6 years for decreasing levels of supervision. On the assault conviction, he was sentenced to 10 years at Level V. On the weapon conviction, he was sentenced to 2 years at Level V.

(3)    In December 2006, Cochran filed a motion to correct an illegal sentence pursuant to Superior Court Criminal Rule 35(a). Cochran claimed that he should have been sentenced to no more than 10 years on his burglary conviction and that his sentence for the weapon offense should be reduced by good time. The Superior Court agreed with Cochran's first claim and issued a corrected sentencing order reducing his sentence for burglary to 10 years at Level V, but denied Cochran's second claim.

(4)    In this appeal, Cochran claims that a) the Superior Court improperly denied his claim that good time credit should be applied to his

---

[2] *Unitrin, Inc. v. American General Corp.*, 651 A.2d 1361, 1390 (Del. 1995).

sentence on the weapon conviction; b) the Superior Court improperly imposed a 20-year sentence on the burglary conviction; c) his illegal sentences were imposed due to the ineffective assistance of his counsel; d) his plea was involuntary because his counsel gave him incorrect information about the maximum sentence he could receive; and e) the Superior Court improperly corrected his sentence for burglary without his being present in court and accompanied by counsel.

(5)    Cochran's first claim, in essence, challenges the Department of Correction's ("DOC's") failure to apply good time credits to his sentence on the weapon conviction. The proper procedural vehicle for the remedy sought by Cochran is a petition for a writ of mandamus, not a Rule 35(a) motion.[3] A writ of mandamus is a means for the Superior Court to compel a public agency such as the DOC to perform a duty where: the petitioner has a clear right to the performance of the duty; no other adequate remedy is available; and the public agency has arbitrarily failed or refused to perform

---

[3] *Ortiz v. State*, Del. Supr., No. 645, 2006, Jacobs, J. (July 2, 2007) (citing *Snyder v. Andrews*, 708 A.2d 237 (Del. 1998); *Meades v. Hosterman*, Del. Supr., No. 239, 2006, Ridgely, J. (Aug. 23, 2006); and *Clough v. State*, 686 A.2d 158, 159 (Del. 1996)).



its duty.[4]  We, therefore, conclude that the Superior Court properly denied Cochran's first claim.[5]

(6)    Cochran next claims that the burglary sentence originally imposed by the Superior Court was illegal because it reflected the July 2001 amendment to the first-degree burglary statute rather than the version of the statute in effect at the time he committed his crimes.[6]  Because the Superior Court agreed with this claim, and corrected Cochran's sentence to reflect the correct version of the statute, this claim is now moot.

(7)    Cochran next claims that his illegal sentences were imposed as a result of the ineffective assistance of his counsel. Specifically, Cochran alleges that, because his counsel did not know the law relating to his case, he did not challenge the imposition of the illegal sentences.  An ineffective assistance of counsel claim is not cognizable under Rule 35(a).  The narrow function of Rule 35 is to permit correction of an illegal sentence, not to re-examine alleged errors occurring prior to the imposition of sentence.[7]  The proper procedural vehicle for an ineffective assistance of counsel claim that was not raised in the proceedings leading to the judgment of conviction is a

---

[4] *Clough v. State*, 686 A.2d at 159.

[5] We note that, in its decision, the Superior Court incorrectly referred to a version of Del. Code Ann. tit. 11, § 1447(b) that was not yet in effect at the time Cochran committed his crimes.

[6] Del. Code Ann. tit. 11, §§ 826, 4205(b) (3).

[7] *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998) (citing *Hill v. United States*, 368 U.S. 424, 430 (1962)).

4

postconviction motion under Rule 61. We, therefore, conclude that the Superior Court properly denied this claim.

(8)    Cochran next claims that his Robinson plea was involuntary because his counsel did not properly advise him concerning his sentence. This claim was not presented to the Superior Court in the first instance. For that reason, we decline to consider the claim in this appeal.[8]

(9)    Cochran's final claim is that the Superior Court improperly corrected the sentence on his burglary conviction without his being present and represented by counsel. The record reflects that, after the Superior Court corrected Cochran's sentence for burglary, Cochran wrote a letter to the Superior Court complaining that he should have been present in court for the re-sentencing.

(10)    This Court has previously held that, when a defendant is being re-sentenced because of an error of law in the original sentence, regardless of whether the sentence is being increased or reduced, he has a right to be present in court, with counsel, for the re-sentencing.[9] As such, we conclude that it was erroneous for the Superior Court to correct Cochran's sentence without Cochran being present in court and represented by counsel. On

---

[8] Supr. Ct. R. 8.

[9] *Jones v. State*, 672 A.2d 554, 555-56 (Del. 1996); *Fullman v. State*, 431 A.2d 1260, 1264-65 (Del. 1981).



remand, Cochran must be re-sentenced in accordance with the requirements outlined above.[10]

NOW, THEREFORE, IT IS ORDERED that Cochran's burglary sentence is VACATED and the matter is hereby REMANDED to the Superior Court for further proceedings in accordance with this Order. The remainder of the Superior Court's rulings are AFFIRMED. Jurisdiction is not retained.[11]

BY THE COURT:

Chief Justice

---

[10] The State of Delaware laudably concedes this point.

[11] There is no constitutional right to the appointment of counsel in postconviction proceedings. *Floyd v. State*, Del. Supr., No. 194, 1992, Veasey, C.J. (July 13, 1992) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). We do not find good cause for the appointment of counsel in this case. Therefore, Cochran's motion for the appointment of counsel is denied.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DONALD R. COCHRAN, | : |
| | : |
| Defendant Below- | : . |
| Appellant, | : |
| | : |
| v. | : No. 356, 2003 |
| | : |
| STATE OF DELAWARE, | : |
| | : |
| Plaintiff Below- | : |
| Appellee. | : |

## STATE'S ANSWER

Pursuant to this Court's August 18, 2003 Order, the Appellee, the State of Delaware, responds, as follows:

1. On or about February 3, 2003 Donald R. Cochran, with the assistance of legal counsel, entered Robinson pleas in the Kent County Superior Court to first degree burglary, first degree assault, and possession of a deadly weapon during the commission of a felony [ Cr. A. Nos. IK02-01-0397 thru IK02-01-0399]. After the preparation of a pre-sentence investigation, Cochran was sentenced on June 16, 2003. Thereafter, Cochran filed an untimely *pro se* appeal of his convictions and sentences. In response to this Court's Order to Show Cause why the untimely appeal should not be dismissed, Cochran claimed that his transfer to the Secured Housing Unit of the Delaware Correctional Center resulted in the confiscation of his personal property and a lack of access to the prison law library. (*See* Department of Correction records attached collectively as Exhibit A). It appears that Cochran did receive

paper, envelopes, and an ink pen on June 26, 2003.  (Exhibit B).

2.   Cochran has not established just cause for failing to file a timely appeal in this case.  First, Cochran does not explain why if he was represented by legal counsel in the Superior Court, he could not have instructed his former counsel to docket this appeal. See Roe v. Flores-Orteqa, 120 S. Ct. 1029, 1036 (2000).  Second, Cochran had writing materials on June 26 (Exhibit B) and could 0simply have written to this Court at that time expressing a desire to appeal.  Third, Cochran's appeal appears to be merely an attack upon his guilty plea and such a claim should first be developed in the trial court through the filing of a motion to withdraw that plea or other appropriate motion.  If Cochran is dissatisfied with the Superior Court's disposition of that request, he can then appeal and this Court will have a factual record to review.  Fourth, Cochran has not definitively demonstrated the extent of any claimed impediment to law library access or explained when he was otherwise first able to file his appeal, which appears only to be a day or two late.  For these reasons, Cochran's untimely appeal must be dismissed for lack of jurisdiction.  See 10 Del. C. § 147; Del. Supr. Ct. R. 6(a)(ii); Eller y. State, 531 A.2d 951, 953 (Del. 1987); Braxton v. State, 479 A.2d 831, 833-34 (Del. 1984).  Cochran does not fall within the recognized exception of Bey v. State, 402 A.2d 362, 363-64 (Del. 1974), since there is no alleged action or inaction of court personnel resulting in this untimely appeal.

3.   And in more general terms, there is no basis to hold the State accountable for any delay occasioned by the prison

regulations.  Under state law, the notice of appeal must be filed
"within 30 days after the date of the judgment or decree."  10 Del.
C. § 147.  Though Rule 6 contains the same language, the source of
the time limit is § 147.  *See*    Del. Supr. Ct. R. 6.  The 30 day
period is "jurisdictional."  Carr v. State, 554 A.2d 778, 779 (Del.
1989).  In turn, § 147 does not contain any provision for an
exception to the 30 day limit.  In the absence of any legislative
authorization, the Court cannot create an exception to the statutory
time limit.  *E.g.,* Missouri v. Jenkins, 495 U.S. 33, 45 (1990);
Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999).  Thus, there is
no statutory basis for attributing to the State any delay in the
filing of an appeal that might stem from regulations of the
Department of Correction (DOC), and in the absence of any statutory
provision, the exception cannot be created.  Of course, there is a
long-standing exception when the untimely filing is because of
deficiencies by court personnel.  That exception, however, appears
to be grounded in the Court's administrative authority under Article
IV, Section 13 of the Delaware Constitution, and the existence of
that rule does not undercut the limitation of § 147.

    4.  The notion also fundamentally misapprehends the
relationship between the Attorney General and DOC.  The Attorney
General has the statutory responsibility to prosecute criminal
offenses (29 Del. C. § 2504), but prosecutions are to be brought in
the name of the State as the sovereign power (Del. Const. Art. IV, §
33).  The "State," however, is not monolithic; the Department of
Justice, headed by the Attorney General, and DOC are separate

3

-501 -

agencies.  The Commissioner of Correction has broad statutory
authority to establish regulations and operations.  11 Del. C. §
6517.  The Attorney General, apart from her statutory responsibility
to provide legal counsel to DOC (29 Del. C. § 2504(3)), has no
operational authority over DOC.  Given the Attorney General's lack
of any authority over the operations of DOC, there is no basis to
attribute actions by DOC to the Attorney General *qua* prosecutor.

        5.  Attribution would also create inconsistent rules.  For a
prisoner to prevail in a lawsuit about access to the courts, the
defendant must establish actual injury, frustration or impediment of
efforts to pursue a non-frivolous legal claim.  <u>Lewis v. Casey</u>, 518
U.S. 343, 351-53 (1996).  In civil litigation, DOC as an entity and
individual officers could assert various defenses, such as qualified
immunity and the absence of any reckless or intentional conduct.  10
Del. C. §4001.

        WHEREFORE, this untimely appeal must be dismissed for lack of
jurisdiction.

                                    John Williams
                                    Deputy Attorney General
                                    Delaware Bar I.D. No. 365

                                    Delaware Department of Justice
                                    102 West Water Street
                                    Dover, Delaware 19904-6750
                                    (302) 739-4211 (ext. 263)

DATE: September 22, 2003

4

- 502 -

IN THE SUPREME COURT OF THE STATE OF DELAWARE

DONALD R. COCHRAN　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　: No. 356, 2003
　　　　　　　　　　　　　　　　　　:
STATE OF DELAWARE　　　　　　　　　:

## CERTIFICATE OF MAILING

COUNTY OF KENT　　　　　:
　　　　　　　　　　　　: SS:
STATE OF DELAWARE　　　:

　　　　BE IT REMEMBERED that on this 22nd day of September, 2003, personally appeared before me, a Notary Public in and for the County and State aforesaid, Mary Darling, known to me personally to be such, who after being duly sworn did depose and state:

　　　　(1)　That she is employed as a legal secretary in the Department of Justice, 102 West Water Street, Dover, Delaware.

　　　　(2)　That on September 22, 2003, she did deposit in the mail, two copies of the attached State's Answer in the above-captioned matter properly addressed to Donald R. Cochran, SBI #00201992, Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977.

_Mary Darling_

SWORN TO and subscribed
before me the day aforesaid.

_____
Notary Public

SUSANNE KEENE
My
Commission
Expires
10-13-05
State of
Delaware
NOTARY PUBLIC

-503-

**Customer Copy**
Label 11-B September 2002

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE® **Post Office To Addressee**

ER 429069884 US

**ORIGIN (POSTAL USE ONLY)**

| PO ZIP Code | Day of Delivery | Flat Rate Envelope |
|---|---|---|
| 19901 | ☐ Next ☐ Second | ☐ |

| Date In | | | Postage |
|---|---|---|---|
| Mo. 7 Day 15 Year 03 | ☐ 12 Noon ☐ 3PM | | $ 13.65 |

| Time In | | | Return Receipt Fee |
|---|---|---|---|
| 1238 ☐ AM ☐ PM | Military ☐ 2nd Day ☐ 3rd Day | | |

| Weight | Int'l Alpha Country Code | COD Fee | Insurance Fee |
|---|---|---|---|
| lbs. 3 ozs. | | $ | $ |

| No Delivery ☐ Weekend ☐ Holiday | Acceptance Clerk Initials | Total Postage & Fees |
|---|---|---|
| | Pawlik | $ 13.65 |

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | Employee Signature |
|---|---|---|
| Mo. Day | ☐ AM ☐ PM | |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

DOVER DE 1990
JUL 15

**CUSTOMER USE ONLY**
PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.
USPS
Federal Agency Acct. No. or
Postal Service Acct. No.

WAVER OF SIGNATURE (Domestic Only)
Additional merchandise insurance is void if waiver of signature is requested.
I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

☐ NO DELIVERY ☐ Weekend ☐ Holiday

Customer Signature

**FROM:** (PLEASE PRINT)  PHONE (   )

C.O. Richardson
27 Tolbert Circle
Dover, DE 19901

**TO:** (PLEASE PRINT)  PHONE (   )

Supreme Court
Supreme Court of Delaware
55 The Green
Dover DE
| 1 | 9 | 9 | 0 | 1 | + | | | | |

FOR PICKUP OR TRACKING CALL 1-800-222-1811

www.usps.com

PRESS HARD. You are making 3 copies.

-504-

12

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONALD R. COCHRAN, | § | 2003 NOV 12 P 3: 15 |
| | § | DEPUTY CLERK |
| Defendant Below- | § | No. 356, 2003 WASHINGTON |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for Kent County |
| | § | Cr. A. Nos. IK02-01-0397 thru |
| Plaintiff Below- | § | 0399 |
| Appellee. | § | |

Submitted: October 2, 2003
Decided:   November 12, 2003

Before **VEASEY,** Chief Justice, **HOLLAND** and **JACOBS,** Justices

## O R D E R

This 12th day of November 2003, it appears to the Court that:

(1)    On July 18, 2003, the Court received the appellant's notice of appeal from the Superior Court's June 16, 2003 sentencing order. Pursuant to Supreme Court Rule 6, a timely notice of appeal should have been filed on or before July 16, 2003.

(2)    On July 18, 2003, the Clerk issued a notice pursuant to Supreme Court Rule 29(b) directing the appellant to show cause why the appeal should not be dismissed as untimely filed. The appellant filed his response to the notice to show cause on July 28, 2003. The Clerk then directed the State to



file an answer to which the appellant subsequently filed a reply. The appellant states that the Department of Correction failed to supply him with paper and pen quickly enough for him to file a timely notice of appeal. While the appellant states that his notice of appeal was delayed for 10 days because he did not have pen and paper, he does not explain why he was not able to file his notice of appeal within the 30-day appeal period. [1]

(3)     Time is a jurisdictional requirement.[2]  A notice of appeal must be received by the Office of the Clerk of this Court within the applicable time period in order to be effective.[3]  Unless the appellant can demonstrate that the failure to file a timely notice of appeal is attributable to court-related personnel, his appeal can not be considered. [4]

(4)     There is nothing in the record that reflects that the appellant's failure to file a timely notice of appeal in this case is attributable to court-related personnel.  Consequently, this case does not fall within the exception

---

[1]SUPR. CT. R. 6(a) (A notice of appeal must be filed within 30 days after entry upon the docket of the judgment or order being appealed.)

[2]*Carr v. State*, 554 A.2d 778, 779 (Del. 1989).

[3]SUPR. CT. R. 10(a).

[4]*Bey v. State*, 402 A.2d 362, 363 (Del. 1979).



-506-

to the general rule that mandates the timely filing of a notice of appeal. Thus,

the Court concludes that the within appeal must be dismissed.

NOW, THEREFORE, IT IS ORDERED, pursuant to Supreme Court

Rules 6(a) and 29(b), that the within appeal is DISMISSED.

BY THE COURT:

Chief Justice





JOSEPH R. BIDEN, III
ATTORNEY GENERAL

DEPARTMENT OF JUSTICE
KENT COUNTY
102 WEST WATER STREET
DOVER, DE 19904

CRIMINAL DIVISION (302) 739-4211
FAX (302) 739-6727
CIVIL DIVISION (302) 739-7641
FAX (302) 739-7652
TTY (302) 739-1545

February 8, 2007

The Honorable William Witham Jr.
Judge - Superior Court
38 The Green
Dover, DE 19901

RE:    State v. Donald Cochran
       Case No. 0102010757

Dear Judge Witham:

Please accept this letter as the State's response to the defendant's letter to the Court dated January 27, 2007.

The State takes no position as to whether Mr. Cochran should have been brought before the Court when re-sentenced. However, the State would object to the defendant presenting any mitigating evidence since that would effectively be a motion to reduce sentence. The time to file such a motion has passed. Furthermore, any mitigating evidence should have been presented by his attorney at the time of sentencing.

Very truly yours,

SUSAN G. SCHMIDHAUSER
Deputy Attorney General

SGS/djh

cc:    Prothonotary
       Donald R. Cochran, DCC